Ashley I. Kissinger (No. 193693)
email: akissinger@lskslaw.com
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1888 Sherman Street, Suite 370
Denver, CO  80203
Phone: (303) 376-2407
Fax: (303) 376-2401

Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com
Kevin Vick (No. 220738)
email: kvick@jassyvick.com
JASSY VICK CAROLAN
601 Montgomery Street, Suite 850
San Francisco, CA  94111
Phone: (415) 539-3399
Fax: (415) 539-3394

*Attorneys for Plaintiff*
*Electronic Frontier Foundation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>GLOBAL EQUITY MANAGEMENT (SA) PTY )<br>LTD, )<br><br>Defendant. ) | Case No.  _____<br><br>**COMPLAINT FOR**<br>**DECLARATORY JUDGMENT** |

Plaintiff Electronic Frontier Foundation ("EFF") alleges as follows:

**INTRODUCTION**

1.      This action arises out of an injunction that imposes a prior restraint on the speech of an American non-profit advocacy organization based in San Francisco.  The injunction, which was entered by an Australian court in a lawsuit filed against EFF there by Global Equity Management (SA) Pty Ltd ("GEMSA"), would never withstand constitutional scrutiny in the United States.  It orders EFF to "immediately remove" from its website an article EFF published that discusses a matter of public concern, and it enjoins EFF from "publishing any content with respect to [GEMSA's] intellectual property."  The order states that if EFF does not comply, "its assets may be [sic] seized and it directors [sic] and other officers may be liable to be imprisoned for contempt of Court."

2.      The article on which the injunction is based (1) states accurate facts about a U.S. patent owned by GEMSA and litigation GEMSA has brought in the United States to enforce that patent; (2) discloses to readers, through links, the patent itself and two of GEMSA's district court complaints; (3) summarizes EFF's deep skepticism concerning GEMSA's infringement lawsuits in the United States; and (4) conveys EFF's opinion, based on these disclosed facts and public records, that GEMSA's lawsuits highlight the need for patent reform.  More directly, the article calls GEMSA's patent, which claims a graphical user interface that depicts file storage as a set of filing cabinets, a "stupid" patent.  An injunction issued by an American court arising from the publication of this article would undoubtedly violate the First Amendment to the United States Constitution and would be inconsistent with the common law of defamation in California.

3.      The practice of bringing claims against U.S. citizens in foreign jurisdictions with lesser protections for speech - known as "libel tourism" - has the pernicious effect of chilling Americans' lawful, constitutionally protected speech.  In 2010, Congress enacted the SPEECH Act, 28 U.S.C. §§ 4101-05, to protect against that chilling effect.  The SPEECH Act provides that foreign judgments arising from U.S. citizens' speech are not enforceable if they do not pass muster under American legal and constitutional standards.  It also permits American citizens to seek

1

declaratory relief from foreign judgments that offend those standards.  EFF seeks such declaratory relief by this action.

**PARTIES**

4.     Plaintiff EFF is the leading non-profit organization defending civil liberties in the digital world.  Founded in 1990, EFF is a donor-funded 501(c)(3) organization that champions user privacy, free expression, and innovation through impact litigation, policy analysis, grassroots activism, and technology development.  EFF uses the unique expertise of its attorneys, technologists, and activists to defend free speech online, fight illegal surveillance, advocate for users and innovators, and support freedom-enhancing technologies.  An important part of its work is educating policymakers, the press, and the public through its blog, Deeplinks, which offers news and commentary on digital issues.  EFF also publishes comprehensive whitepapers and educational guides, and its attorneys, technologists, and activists speak regularly on digital issues in a variety of fora.  EFF is based in San Francisco, California.

5.     Defendant Global Equity Management (SA) Pty Ltd ("GEMSA") is a privately held Australian corporation.  GEMSA has filed numerous patent lawsuits in the United States District Court for the Eastern District of Texas alleging that other companies have violated patents that GEMSA holds.  *See, e.g.*, *Global Equity Mgmt. (SA), Pty. Ltd. v. Ericsson, Inc.*, No. 2:16-cv-00618-RWS-RSP, 2017 WL 365398, at *1-2 (E.D. Tex. Jan. 25, 2017) (describing 37 patent lawsuits filed by GEMSA).[1]

**JURISDICTION AND VENUE**

6.     This action arises and is brought under the Securing the Protection of our Enduring and Established Constitutional Heritage Act (the "SPEECH Act"), 28 U.S.C. §§ 4101-05, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 02.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(2), and 4101-05.

7.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

---

[1] A copy of this Order is attached hereto as Exhibit 1.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

8.      GEMSA's contacts with this District subject it to this Court's jurisdiction.  As set forth in further detail at Paragraphs 19-34 below, GEMSA:

    a.      Emailed a demand letter to EFF in August 2016, demanding that EFF take certain actions in San Francisco to benefit GEMSA, including removing the article from EFF's website;

    b.      Obtained a court injunction in October 2016 that requires EFF to undertake significant acts in San Francisco, prohibits it from engaging in lawful speech there, and threatens penalties that would be felt by EFF and its directors and officers there;

    c.      Purported to serve EFF with the injunction in December 2016 at its offices in San Francisco; and

    d.      Mailed a letter to EFF at its offices, dated January 20, 2017, that enclosed a copy of the injunction, again demanding that EFF undertake certain acts in San Francisco, and threatening to pursue all available legal remedies, including whatever relief "the relevant court may deem just and proper," if EFF did not comply.

**FACTS**

**EFF'S "STUPID PATENT OF THE MONTH" SERIES**

9.      One component of EFF's overall mission to support online privacy, free expression, and innovation is to promote reform of the U.S. patent system so that it supports the development of new digital technologies, particularly by individuals, nonprofits, and small businesses.  EFF argues that the patent system is broken in many ways, including that the Unites States Patent and Trademark Office ("USPTO") far too often issues questionable patents for digital technology that is not innovative, and that "patent trolls" acquire those questionable patents and use the threat of costly litigation to extract exorbitant and unjust licensing fees.  As part of this work, EFF documents the harm caused by inappropriate patents, has filed reexamination petitions and an *inter partes* review challenging patents at the USPTO, litigates on behalf of small businesses targeted by

bogus infringement claims where there is a broader public interest, files amicus briefs, and advocates in favor of patent reform at the USPTO, in Congress, and to the general public.

10.     In 2014 EFF began publishing a series of articles on its website called "Stupid Patent of the Month" to call attention to examples of questionable patents that stifle innovation, harm the public, and can be used to shake down unsuspecting users of commonplace processes or technologies.  EFF explains to readers that the series is intended to highlight "spectacularly dumb patents that have been recently issued or asserted.  With this series, we hope to illustrate by example just how badly reform is needed—at the Patent Office, in court, and in Congress." *Stupid Patent of the Month*, Elec. Frontier Found., https://www.eff.org/issues/stupid-patent-month.[2]  Each article describes the patent, explains the basis for EFF's opinion that it is "stupid," and shows how the patent is being or could be misused to stifle innovation or harm the public.  The articles often urge readers to contact members of Congress to support patent reform legislation.

11.     The featured patents often are being asserted by "patent trolls" in actual or threatened litigation.  As one court has explained, the term "patent troll" usually refers to "an entity that enforces patent rights against accused infringers in an attempt to collect licensing fees, but does not manufacture products or supply services based upon the patents in question." *Cascades Computer Innovation LLC v. RPX Corp.*, No. 12-CV-01143 YGR, 2013 WL 316023, at *1 (N.D. Cal. Jan. 24, 2013) (citations omitted).  In EFF's view, "[a] patent troll uses patents as legal weapons, instead of actually creating any new products or coming up with new ideas.  Instead, trolls are in the business of litigation (or even just threatening litigation)." *Patent Trolls*, Elec. Frontier Found., https://www.eff.org/issues/resources-patent-troll-victims.[3]

12.     The "Stupid Patent of the Month" series has succeeded in raising public awareness of the problem of inappropriate patents and has driven positive change.  For example, IBM recently filed a formal disclaimer with the USPTO dedicating a patent to the public after EFF featured it as the "Stupid Patent of the Month" for February 2017.  Daniel Nazer, *Stupid Patent of the Month:*

---

[2] A printout of this page is attached hereto as Exhibit 2.

[3] A printout of this page is attached hereto as Exhibit 3.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

*IBM Patents Out-of-Office Email*, Deeplinks Blog (Mar. 1, 2017),

https://www.eff.org/deeplinks/2017/02/stupid-patent-month-ibm-patents-out-office-email.[4]  The

patent, granted in January 2017 from an application filed in 2010, covers an out-of-office email

system similar to those already in widespread use for decades.

13.     Many of the "Stupid Patent of the Month" posts (including the one at issue here) are

written by Daniel Nazer, an EFF staff attorney.  Before joining EFF, Mr. Nazer was a patent

litigator in the San Francisco law firm now known as Keker, Van Nest & Peters, and a Residential

Fellow at Stanford Law School's Center for Internet and Society.

### THE JUNE 2016 "STUPID PATENT OF THE MONTH"

14.     Beginning in October 2015, GEMSA filed more than three dozen patent

infringement lawsuits in the Eastern District of Texas, asserting that the defendants had infringed

two patents GEMSA owns:  U.S. Patent No. 6,690,400 ("the '400 patent") and U.S. Patent No.

7,356,677 ("the '677 patent").  *See* Ex. 1 (discussing the suits).  The defendants included a broad

range of mostly household-name businesses that use Amazon Web Services technology,[5] including

those in the travel industry such as Airbnb, Expedia, and TripAdvisor; consumer products firms

such as Johnson & Johnson and General Electric; and high-tech companies such as Uber, Netflix,

and Spotify.

15.     This flurry of lawsuits drew Mr. Nazer's attention.  Upon reviewing the '400 patent,

he decided to name it as Stupid Patent of the Month for June 2016.  *See* Daniel Nazer, *Stupid

Patent of the Month: Storage Cabinets on a Computer*, Deeplinks Blog (June 30, 2016),

https://www.eff.org/deeplinks/2016/06/stupid-patent-month-storage-cabinets-computer.[6]  In that

post (the "Article"), Mr. Nazer accurately described the '400 patent and GEMSA's litigation efforts

and sharply criticized both the patent and GEMSA's lawsuits.

---

[4] A copy of this article is attached hereto as Exhibit 4.

[5] As explained on its website, "Amazon Web Services (AWS) is a secure cloud services platform, offering compute power, database storage, content delivery and other functionality to help businesses scale and grow."  *See* https://aws.amazon.com/what-is-aws/.

[6] A printout of the Article is attached hereto as Exhibit 5.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

16.     The Article begins:

> How do you store your paper files?  Perhaps you leave them
> scattered on your desk or piled on the floor.  If you're more
> organized, you might keep them in a cabinet.  This month's stupid
> patent, US Patent No. 6,690,400 (the '400 patent), claims the idea
> of using "virtual cabinets" to graphically represent data storage and
> organization.  While this is bad, the worse news is that the patent's
> owner is suing just about anyone who runs a website.

On EFF's website, the patent number is a highlighted hyperlink to the full text of the patent

archived on Google Patents at https://www.google.com/patents/US6690400.  Thus, with a simple

mouse click, readers can read the patent for themselves.[7]

17.     Next, Mr. Nazer describes the patent's history and context, summarizes the patent's

claims, and discusses GEMSA's role in asserting it:

> The '400 patent is owned by Global Equity Management (SA)
> Pty. Ltd. ("GEMSA") which seems to be a classic patent troll.
> GEMSA is incorporated in Australia and appears to have no
> business other than patent litigation.  The patent began its life with
> a company called Flash VOS.  This company once offered a
> product that allowed users to run multiple operating systems on
> personal computers with x86-compatible processors.  The '400
> patent describes a graphical user interface for this system.  The
> interface allows users to interact with "graphical depictions of
> cabinets" that represent memory partitions and different operating
> systems.
>
> GEMSA says that Flash VOS moved the computer industry a
> "quantum leap forwarded in the late 90's when it invented Systems
> Virtualization."  But Flash VOS didn't invent partitions, didn't
> invent virtual machines, and didn't invent running multiple
> operating systems on a single computer.  All of these concepts
> predate its patent application, some by decades.  In any event, the
> '400 patent claims only a very specific, and in our view, quite
> mundane user interface.
>
> Importantly, the '400 patent's claims require very specific
> structures.  For example, claim 1 requires "a secondary storage
> partitions window" and "at least one visible cabinet representing a
> discrete operating system."  A user interface must have all of these
> features to infringe the claim.

Hyperlinks in this section include a link to an archived version of the Flash VOS website (linked

from the phrase "once offered"), a description of the 1990s-vintage x86 computer processors

(linked from the word "x86"), and the history of virtualization technology (linked from the phrase

_____

[7] A printout of the hyperlinked patent is attached hereto as Exhibit 6.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

"virtual machines").[8]  Illustrating the playful and hyperbolic nature of the post, hyperlinks also included a picture of a t-shirt emblazoned with a map of Australia captioned with the slang "Straya!" (linked from the word "Australia") and an article discussing the history of the clichéd use of the term "quantum leap" (linked from the word "quantum").

18.    The Article closes with Mr. Nazer discussing and criticizing GEMSA's litigation, and advocating patent reform legislation:

> In the past year, GEMSA has sued dozens of companies, ranging from Airbnb to Zillow.  In each case, it makes the bare assertion that the defendant's website infringes the '400 patent.  For example, it simply states that "AIRBNB maintains, controls and/or operates a website with a graphical user interface ("GUI") at www.airbnb.com that infringes one or more claims of the '400 patent."

> GEMSA doesn't explain how Airbnb's website satisfies highly specific claim limitations like "a virtual cabinet representing a discrete operating system."  In fact, the accused website bears almost no similarity to GEMSA's supposed invention:



> As far as we can tell, GEMSA seems to think that anyone with a website that links to hosted content infringes its patent. Complaints with such sparse, and implausible, infringement allegations should be thrown out immediately for failure to state a claim.

> There will be no prizes for guessing where GEMSA has filed its litigation.  Every one of its cases was filed in the Eastern District of Texas, where we have long complained that local rules favor patent trolls like GEMSA.  Venue reform legislation currently before Congress would stop trolls flocking to the Eastern District of Texas.  That might help reduce abusive patent trolling.  But we still need broader patent reform to ensure that such weak patents don't lead to abusive troll litigation.

---

[8]  Printouts of these hyperlinked pages are collectively attached hereto as Exhibit 7.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

Hyperlinks in this final section include links to copies of GEMSA's complaints against Airbnb and Zillow from those companies' names and links to previous EFF articles on "patent troll" litigation and patent reform legislation.[9]  The inclusion of a diagram from the '400 patent and screenshots from one of the allegedly infringing websites provide the reader with further background and context for the Article's criticism of GEMSA and its patent.

19.     On July 22, 2016, Amazon Web Services, Inc., filed a declaratory judgment action against GEMSA in the Eastern District of Virginia seeking a declaration of non-infringement and invalidity of the '400 and '677 patents.  *See* Complaint, *Amazon Web Servs., Inc. v. Global Equity Mgmt. (SA) Pty. Ltd.*, No. 3:16-cv-00619-MHL (E.D. Va. July 22, 2016) (Doc. 1).[10]  In January 2017, the Eastern District of Texas stayed more than 30 lawsuits still pending there that involved infringement claims against Amazon Web Services clients.  *See* Ex. 1.  On March 24, 2017, the Eastern District of Texas transferred GEMSA's remaining four lawsuits in that forum to the Northern District of California.  Order, *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 15-cv-01702-RWS-RSP (E.D. Tex. Mar. 24, 2017) (Doc. 73).

## GEMSA'S THREATS AND ITS AUSTRALIAN LITIGATION AGAINST EFF

20.     GEMSA did not take EFF's criticism well.  Two months after the Article appeared, in August 2016, GEMSA's Australian counsel, Pasha Mehr, emailed EFF a letter captioned "Demand of Apology for Slander and Defatory [sic] Statements" (the "Demand Letter").[11]  GEMSA accused EFF of engaging in "defamatory, false and malicious slander" by posting the Article "with the intention of portraying our client's intellectual property as stupid in addition to numerous other malicious lies and misleading statements about the '400 patent owned by Our Client."

---

[9]  A copy of the pages hyperlinked at "Eastern District of Texas" and at "long complained" are collectively attached hereto as Exhibit 8, together with two Eastern District of Texas orders hyperlinked therein.

[10] A copy of the complaint (without exhibits) is attached hereto as Exhibit 9.

[11] A copy of the Demand Letter is attached hereto as Exhibit 10.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

21.     Although GEMSA did not specify which statements in the Article are purportedly false or otherwise misleading, it "requested" that EFF draft "an unqualified apology and retraction, to be copied to all users having viewed your website since the date of that publication in additional [sic] to diligent effort to removing all copies of the said published article from the internet." GEMSA also demanded EFF's "unconditional agreement to payment of all the damages your article may cause as compensation."  GEMSA did not state what those purported damages were, or their amount.  It closed with a threat to "institute a suit against you in a court of law" if EFF did not capitulate to its demands within two weeks.

22.     EFF engaged an Australian law firm, King & Wood Mallesons, for the limited purpose of responding to the Demand Letter.  On September 13, 2016, that firm responded to Mr. Mehr (the "First Response"), explaining that EFF would not accede to GEMSA's demands.[12]  It noted that the Demand Letter was "very vague and fails to specify any specific statements in the Article that are considered to be defamatory."  It asked GEMSA to clarify which specific statements in the Article it considered to be actionably defamatory, what the "suggested imputations" of each statement were, and the relevant law on which GEMSA relied for its assertions.

23.     GEMSA never responded.  Instead, in October 2016, it filed suit against EFF in the Supreme Court of South Australia.  GEMSA did not properly serve copies of the case-initiating documents on EFF in the United States pursuant to the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and EFF did not waive service.

24.     On or around October 4, 2016, GEMSA filed an Interlocutory Application with the Australian court seeking an order requiring EFF to "immediately remove" the Article from its website and restraining EFF "from publishing any content with respect to [GEMSA's] intellectual property."[13]

---

[12] A copy of the First Response is attached hereto as Exhibit 11.

[13] A copy of the Interlocutory Application and accompanying Summons is attached hereto as Exhibit 12.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

25.     In support of its Interlocutory Application, GEMSA submitted the Affidavit of Schumann Rafizadeh, who attests that he is the inventor of the '400 patent and "the Director and Shareholder of the Plaintiff."[14]  Mr. Rafizadeh did not assert in the Affidavit that any statements contained in the Article are false or otherwise misleading.  He did expressly state that, when he "consulted with GEMSA's U.S. based legal team" about EFF's Article, they "advised [him] to retain representation in Australia."

26.     Two weeks later, on or around October 20, GEMSA made further filings in the Supreme Court of South Australia, including a Statement of Claim and a Second Affidavit of Schumann Rafizadeh.  Again, GEMSA failed to serve EFF.  GEMSA mailed the documents to King & Wood Mallesons despite having been previously informed by the firm that it no longer represented EFF.

27.     In the Statement of Claim, GEMSA purported to assert causes of action against EFF for violation of Australia's Competition and Consumer Act by way of alleged "misleading and deceptive conduct," and for common law "negligent misstatement of fact."[15]  The Statement sets forth nine "representations" in the Article that GEMSA asserts are "misleading or deceptive or likely to mislead or deceive."  According to the Statement of Claim, the challenged "representations" and the reasons they are misleading are:

      a.     The '400 patent is "stupid."

           GEMSA's assertion:  The '400 patent "is not in fact 'stupid.'"

      b.     The '400 patent "has claimed the idea of using virtual cabinets to graphically represent data storage and organization."

           GEMSA's assertion:  This description "does not accurately depict the complexities involved with the Patent."

---

[14] A copy of the Affidavit of Schumann Rafizadeh (without exhibits) is attached hereto as Exhibit 13.  Mr. Rafizadeh is identified by the USPTO as one of two inventors of the '400 patent in 1999. Ex. 6.  He assigned the patent to Flash VOS, Inc. on the date the patent was filed in 1999, and Flash VOS then assigned it to GEMSA in 2014.  *Id.*

[15] A copy of the Statement of Claim is attached hereto as Exhibit 14.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

c.    GEMSA "is suing anyone who runs a website." (This alleged "representation" misquotes the Article. The Article said GEMSA "is suing *just about* anyone who runs a website.")

    <u>GEMSA's assertion</u>: It "does not in fact sue anyone who runs a website."

d.    GEMSA "is a classic patent troll." (This alleged "representation" misquotes the Article. The Article said GEMSA "seems to be" a classic patent troll.)

    <u>GEMSA's assertion</u>: It is "not in fact a classic patent troll."

e.    GEMSA "once offered a product that allowed its users to run multiple operating systems on personal computers with x86-compatible processors." (This alleged "representation" misquotes the Article. The Article said that *Flash VOS*, the company that obtained the patent from the USPTO, once offered such a product.)

    <u>GEMSA's assertion</u>: This description "does accurately portray the complexities and uses involved with its product." (Presumably GEMSA intended to insert the word "not" after "does.")

f.    GEMSA's "product 'FLASH VOS' did not invent partitions, did not invent virtual machines and did not invent running multiple operating systems on a single computer." (This alleged "representation" misquotes the Article. The Article made these statements about *the company Flash VOS*, not about a "product" owned by GEMSA.)

    <u>GEMSA's assertion</u>: EFF "did not have reasonable grounds for making" this statement.

g.    GEMSA's "patent claims require very specific structures, namely a 'secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'" (This alleged "representation" misquotes the Article. The Article said "*the '400 patent's* claims require very specific structures. *For example, claim 1* requires 'a secondary storage

11

partitions window' and 'at least one visible cabinet representing a discrete operating system.'")

<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

  h. GEMSA "seems to think that anyone with a website that links to hosted content infringes its patent."

<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

  i. GEMSA "issued patent claims in the Eastern District of Texas because local rules favour patent trolls."  (This alleged "representation" misquotes the Article.  The Article said "[e]very one of [GEMSA's] cases was filed in the Eastern District of Texas," and noted that that court's local rules "favor patent trolls like GEMSA.")

<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

28. Notably, the *only* statements the Statement of Claim alleges are *false* – that the patent is "stupid," that GEMSA is a "patent troll," and that GEMSA "is suing anyone with a website" – are plainly hyperbolic statements of opinion.  (With respect to two other statements, GEMSA merely asserts that the Article fails to "accurately portray the complexities" of its patent, and with respect to four others, GEMSA not only does not dispute their veracity but also does not offer any hint as to how they could possibly be actionable.)

29. In his Second Affidavit,[16] Mr. Rafizadeh conceded that "GEMSA largely makes its profits from the licensing fees borne by companies who have used, or who are interested in using, the Patent product."  GEMSA's website confirms GEMSA's aggressive litigation strategy, warning

---

[16] A copy of the Second Affidavit of Schumann Rafizadeh (without exhibits) is attached hereto as Exhibit 15.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

its readers that "GEMSA has patented rights to main storage virtualization technologies and intends to vigorously defends [sic] those rights against infringements by any e-commerce site."[17]

30.     Although Mr. Rafizadeh vaguely referenced "misrepresentations published in the article," he did not endeavor to identify the alleged misrepresentations or to explain how they are false or misleading.

31.     Mr. Rafizadeh surmised in the Second Affidavit, without offering any evidence in support, that EFF's Article is the cause of numerous problems GEMSA has encountered in trying to enforce the patent in the United States, including that "mediations were cancelled or delayed," that companies GEMSA has sued have shown a "reduced interest in pursuing pre-trial settlement negotiations," that GEMSA has been sued by Amazon for declaratory judgment of non-infringement and invalidity of patents, that "U.S. Defendants have joined and instated two Interparte Proceedings against GEMSA" for the first time, that the Eastern District of Texas set a *Markman* hearing to "confirm the legitimacy of the patent,"[18] and that the court "ruled that a third party expert be appointed to investigate the authenticity of the Patent."

32.     Mr. Rafizadeh alluded – again, without offering any evidence – to an alleged conspiracy to "sabotage [GEMSA's] position" purportedly carried out by EFF, one of its donors (Mark Cuban), Airbnb and Zillow.[19]  And he falsely contended that EFF's Article hyperlinks to "unsealed" complaints filed by GEMSA against Airbnb and Zillow that "are not available in the public domain and can only be obtained through one of the Defendants in that litigation."  In fact, both complaints are available to the public (including on PACER),[20] there has never been a motion

---

[17] A copy of this page from GEMSA's website is attached hereto as Exhibit 16.

[18] In a *Markman* hearing, the court does not "confirm the legitimacy of" of a patent.  Rather, it "construe[s] the contested claims of the patents" so that "a jury can determine whether the accused products infringe."  *In re Papst Licensing GmbH & Co. KG Litig.*, 905 F. Supp. 2d 43, 45 n.4 (D.D.C. 2012), *judgment entered*, 987 F. Supp. 2d 58 (D.D.C. 2013), *vacated and remanded on other grounds sub nom. In re Papst Licensing Digital Camera Patent Litig.*, 778 F.3d 1255 (Fed. Cir. 2015).

[19] In Paragraph 14, Mr. Rafizadeh inaccurately cites to a news article as "EFF Patent Gets Half-Million-Dollar Boost from Mark Cuban and Notch."  In fact, that news article is titled  "EFF Patent *Project* Gets Half-Million-Dollar Boost from Mark Cuban and Notch."[19]  EFF does not own any patents.

[20] Copies of the docket sheets from PACER for both cases are collectively attached hereto as Exhibit 17.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

to seal the complaint filed in either lawsuit, and GEMSA's own press release announcing its first wave of lawsuits attaches a copy of one of the complaints and explicitly notes that they are public records available on PACER.[21]

33.    EFF did not appear in the Australian suit.

### THE AUSTRALIAN COURT INJUNCTION AND ITS EFFECTS ON EFF

34.    On October 31, 2016, the Australian court issued an "Order with Injunction" (the "Australian Injunction") against EFF, which GEMSA purported to serve on EFF at its California offices on December 21, 2016.[22]    The Australian Injunction orders EFF to immediately remove the Article from its website and not to otherwise disseminate it.    It also states: "Until further order [EFF is] restrained from publishing any content with respect to the Plaintiff's intellectual property," a statement that, on its face, applies to speech about other GEMSA patents that EFF has never before mentioned.    It warns that if EFF "does not comply with this order its assets may be seized and it [sic] directors and other officers may be liable to be imprisoned for contempt of Court."    It contains no discussion of the court's analysis.

35.    GEMSA's counsel emailed another letter to EFF on January 20, 2017 (the "Second Demand Letter"), enclosing a copy of the Australian Injunction.[23]    In it, GEMSA asserted that, by not removing the Article from its website, EFF is in "continued violation of Australian laws" and that if EFF does not comply with the order to take down the article, it "may be liable for contempt of Court."    GEMSA demanded that EFF take down the Article and "make immediate arrangements for any links to the article to be removed from the world wide web including any and all other websites which references [sic] the infringing [sic] material."    GEMSA threatened that if EFF does not take such steps, "we will be forced to do so at your expense."    GEMSA also demanded that EFF pay "compensation" to GEMSA for purported damages "in the vicinity of $750,000.00" within

---

[21] *See* Ex. 16.

[22] A copy of the Australian Injunction, together with the documents that accompanied its delivery, is attached hereto as Exhibit 18.

[23] A copy of the Second Demand Letter is attached hereto as Exhibit 19.

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____

twenty-one days, and threatened to "seek full monetary damages and equitable relief" that the "relevant court" may deem proper.

36.     EFF responded to Mr. Mehr on February 10, 2017 (the "Second Response") through its U.S. counsel.[24]  The Second Response stated, in part:

> EFF will not be bullied into paying GEMSA, having its speech muzzled, or censoring itself.  The [Australian] court's order, which runs contrary to longstanding United States law and the U.S. Constitution, is unenforceable.  Moreover, GEMSA's claims against EFF are baseless. Among other things, EFF's commentary includes substantially true facts, protected opinion, and rhetorical hyperbole, and is privileged under the law and the First Amendment of the U.S. Constitution.

37.     EFF has not removed the Article from its website and does not intend to do so.  The Article is a statement of EFF's opinion about GEMSA's patent based on disclosed facts and public information, commentary that is of significant public concern and protected by the First Amendment to the United States Constitution.

38.     Nevertheless, the Australian Injunction has cast a shadow over the legality of EFF's speech about GEMSA's '400 patent and litigation, and is chilling EFF's further speech.  Given the present uncertainty concerning the injunction's enforceability in the United States, EFF feels constrained from speaking further about these topics – indeed, about any of GEMSA's patents, since the order sweeps that broadly – aside from simply reporting about this declaratory judgment action to its readers.

39.     Also of significant concern to EFF is that, absent an order from a United States court declaring the Australian Injunction repugnant to U.S. law and unenforceable here, GEMSA will follow through on its counsel's threat and successfully use the injunction to persuade American search engines to "deindex" the Article, which would effectively preclude EFF from speaking publicly on this important U.S. legal and political issue altogether.[25]

---

[24] A copy of the Second Response is attached hereto as Exhibit 20.

[25] "Deindexing" is a process by which a search engine disables the computer code that directs an internet searcher to a particular webpage.  Thus, when an article has been "deindexed," any search that otherwise would have resulted in the webpage being included in the list of results will no longer produce a list containing that webpage in the results.  Search engines generally permit users to submit "removal requests" requesting that particular webpages be deindexed.  *See, e.g.,*

**FIRST CAUSE OF ACTION**

**FOR DECLARATORY JUDGMENT UNDER THE SPEECH ACT, 28 U.S.C. §§ 4101-05**

40.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 38 of the Complaint.

41.     The Australian Injunction is a "foreign judgment for defamation" under 28 U.S.C. § 4102.

42.     It is apparent from the face of the Australian Injunction, and the Statement of Claim and Interlocutory Application that led to its entry, that the law applied by the Australian court when it entered the injunction against EFF does not provide as much protection for freedom of speech and press as the First Amendment to the United States Constitution.  For example and without limitation, the injunction does not protect a state interest of the highest order, nor is it narrowly tailored to achieve that objective, as would be necessary in the United States for such a prior restraint order to pass constitutional muster.  GEMSA has not met – and cannot meet – these fundamental First Amendment requirements.  Moreover, the injunction is facially overbroad:  It prohibits *all* future speech by EFF about *any* of GEMSA's intellectual property.

43.     The law applied by the Australian court when it entered the injunction against EFF did not provide as much protection for freedom of speech as California state and constitutional law would provide.  For example and without limitation, the Australian court did not grant the protections from GEMSA's baseless claims that would have been afforded by California's Anti-SLAPP statute, Cal. Civ. Proc. Code §§ 425.16 *et seq.*

44.     The Article is not actionable under well-established First Amendment and California precedent because, among other things, the statements in the Article are: (1) true; (2) constitutionally protected statements of opinion based on true disclosed facts; (3) constitutionally protected rhetorical hyperbole; (4) privileged as fair and accurate reports of government

---

https://support.google.com/legal/answer/3110420 (Google's "Legal Removal Request," a copy of which is attached hereto as Exhibit 21).

documents; (5) made without the requisite degree of fault; and/or (6) not "of and concerning" GEMSA.

45.     The exercise of jurisdiction over EFF by the Australian court in the Australian lawsuit did not comport with the due process requirements that are imposed on domestic courts by the United States Constitution.  For example and without limitation, GEMSA did not properly serve the case initiating documents on EFF pursuant to the Hague Convention.

46.     Therefore, EFF seeks a declaratory judgment that the Australian Injunction is repugnant to the Constitution and laws of the United States and cannot be recognized or enforced in the United States.

## SECOND CAUSE OF ACTION

### FOR DECLARATORY JUDGMENT UNDER
### THE DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-02

47.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 45 of the complaint.

48.     There is an actual controversy between GEMSA and EFF.

49.     It is apparent from the face of the Australian Injunction, and the Statement of Claim and Interlocutory Application that led to its entry, that the law applied by the Australian court when it entered the injunction against EFF does not provide as much protection for freedom of speech and press as the First Amendment to the United States Constitution.  For example and without limitation, the injunction does not protect a state interest of the highest order, nor is it narrowly tailored to achieve that objective, as would be necessary in the United States for such a prior restraint order to pass constitutional muster.  GEMSA has not met – and cannot meet – these fundamental First Amendment requirements.  Moreover, the injunction is facially overbroad:  It prohibits *all* future speech by EFF about *any* of GEMSA's intellectual property.

50.     The law applied by the Australian court when it entered the injunction against EFF did not provide as much protection for freedom of speech as California state and constitutional law would provide.  For example and without limitation, the Australian court did not apply the

substantive immunity from GEMSA's baseless claims that would have been afforded by California's Anti-SLAPP statute, Cal. Civ. Proc. Code §§ 425.16 *et seq.*

51.    The Article is not actionable under well-established First Amendment and California precedent because, among other things, the statements in the Article are: (1) true; (2) constitutionally protected statements of opinion based on true disclosed facts; (3) constitutionally protected rhetorical hyperbole; (4) privileged as fair and accurate reports of government documents; (5) made without the requisite degree of fault; and/or (6) not "of and concerning" GEMSA.

52.    The exercise of jurisdiction over EFF by the Australian court in the Australian lawsuit did not comport with the due process requirements that are imposed on domestic courts by the United States Constitution.  For example and without limitation, GEMSA did not properly serve the case initiating documents on EFF pursuant to the Hague Convention.

53.    Therefore, EFF seeks a declaratory judgment that the Australian Injunction is repugnant to the public policy and laws of California and the United States and is therefore not recognizable or enforceable in the United States.

## **PRAYER FOR RELIEF**

WHEREFORE, EFF respectfully requests that the Court:

(1)    Declare that the Australian Injunction is repugnant to the United States Constitution and the laws of California and the United States;

(2)    Declare that the Australian Injunction cannot be recognized or enforced in the United States; and

1    (3)    Grant EFF such further relief as the Court deems appropriate, including awarding

2  EFF its attorneys' fees and costs.

3  DATED:  April 12, 2017                     Respectfully submitted by:

4

5                                            _____ s/ Ashley I. Kissinger _____
                                             Ashley I. Kissinger (No. 193693)
6                                            email: akissinger@lskslaw.com
                                             LEVINE SULLIVAN KOCH & SCHULZ, LLP
7                                            1888 Sherman Street, Suite 370
                                             Denver, CO  80203
8                                            Phone: (303) 376-2400
                                             Fax: (303) 376-2401

9

10                                           Duffy Carolan (No. 154988)
                                             email: dcarolan@jassyvick.com
11                                           Kevin Vick (No. 220738)
                                             email: kvick@jassyvick.com
12                                           JASSY VICK CAROLAN
                                             601 Montgomery Street, Suite 850
13                                           San Francisco, CA  94111
                                             Phone: (415) 539-3399
14                                           Fax: (415) 539-3394

15                                           *Attorneys for Plaintiff*
                                             *Electronic Frontier Foundation*

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT
Case No. _____