Exhibit 8

https://www.eff.org/deeplinks/2015/08/deep-dive-why-we-need-venue-reform-restore-fairness-patent-litigation



SEARCH

AUGUST 17, 2015 | BY DANIEL NAZER

# Deep Dive: Why We Need Venue Reform to Restore Fairness to Patent Litigation

Back in 2011, This American Life toured an office building in Marshall, Texas, and found eerie hallways of empty offices that serve as the 'headquarters' of patent trolls. For many, that was the first introduction to the strange world of the Eastern District of Texas, its outsized role in patent litigation and especially its effective support of the patent troll business model. Trolls love the Eastern District for its plaintiff–friendly rules, so they set up paper corporations in the district as an excuse to file suit there. Meanwhile, defendants find themselves dragged to a distant, inconvenient, and expensive forum that often has little or no connection to the dispute.

The remote district's role has only increased since 2011 and the latest data reveals that the Eastern District of Texas is headed to a record year. An astonishing 1,387 patent cases were filed there in the first half of 2015. This was 44.4% of all patent cases nationwide. And almost all of this growth is fueled by patent trolls.

Happily, lawmakers have finally moved to restore some balance. The latest version of the Innovation Act in the House includes language that would make it much harder for trolls to file in the Eastern District of Texas. The proposal goes under the decidedly mundane name of "venue reform" but it could actually be crucial to the effort fix our broken patent system.

### The Luckiest Court in the Universe

The Eastern District of Texas is a federal court district running along the Texas–Louisiana border. The district covers a largely rural area without much of a technology industry. It is just one of 94 federal district courts. (Some states, like Vermont, have a single federal district, while others, like Texas and California, have as many as four.) If patent cases were distributed evenly among the federal district courts, each one would have received about 33 cases so far this year – a far cry from the 1,387 filings in the Eastern District of Texas.

Accident? We don't think so. In fact, we ran a calculation to see how likely it is that at least 1387 of 3122 patent cases might end up there by chance. This was the result:

Input:

$$\frac{93^{-1387+3122}\binom{3122}{1387}}{94^{3122}} \, _2F_1\left(1, 1387-3122; 1+1387; -\frac{1}{93}\right)$$

$\binom{n}{m}$ is the binomial coefficient

$_2F_1(a, b; c; x)$ is the hypergeometric function

Decimal approximation:

Fewer digits   More digits

5.635063167904292650623994045119129281832582911473192581848509546475475385821763859400683050125239891587411215... × 10^{-1816}

This probability is so vanishingly small that you'd be more likely to win the Powerball jackpot 200 times in a row. Obviously, something other than chance is attracting trolls to this remote district.

Now that folks are taking notice, some Eastern District of Texas jurists are feeling a bit defensive. Former Judge Leonard Davis, for example, recently said: "To say the Eastern District is responsible [for the patent troll problem] is to say that the Southern District of Texas is responsible for immigration problems." This is nonsense. The Southern District of Texas gets

---

Donate to EFF

**Stay in Touch**

Email Address

Postal Code (optional)

SIGN UP NOW

**NSA Spying**

 eff.org/nsa-spying

EFF is leading the fight against the NSA's illegal mass surveillance program. Learn more about what the program is, how it works, and what you can do.

**Follow EFF**

Let's not make the Register of Copyrights even more vulnerable to capture by special interests.
https://www.eff.org/deeplinks
APR 10 @ 5:11PM

We're looking for a full-time grassroots activist to help us build a movement across the United States. Apply today.
https://www.eff.org/deeplinks
APR 10 @ 10:52AM

Does the Constitution apply at the U.S. border? Yes, but....
https://www.eff.org/deeplinks
APR 10 @ 10:23AM

Twitter   Facebook   Identi.ca

**Projects**

Bloggers' Rights

Coders' Rights

Encrypt the Web

Free Speech Weak Links

https://www.eff.org/deeplinks/2015/08/deep-dive-why-we-need-venue-reform-restore-fairness-patent-litigation

immigration cases because it sits on the U.S.–Mexico border. There is no equivalent reason for the Eastern District of Texas to be a hotbed of patent litigation. To understand why the district sees so much patent trolling, we need to look deeper.

*How We Got Here*

The Eastern District of Texas was not always so popular. In 1999, only fourteen patent cases were filed there. By 2003, the number of filings had grown to fifty-five. Ten years later, in 2013, it was 1,495.

This massive rise in litigation followed the appointment of Judge T. John Ward in 1999, and his drive to create local patent rules. Judge Ward's rules, while similar to patent rules in other federal districts, had some additional plaintiff-friendly features such as a compressed discovery schedule and a short timeline to trial. This so-called "rocket docket" attracted patent plaintiffs eager to use the compressed schedule to pressure defendants to settle. For those cases that went to trial, the district got a reputation for huge patent verdicts. As one commentator explained, the Eastern District's "speed, large damage awards, outstanding win-rates, likelihood of getting to trial, and plaintiff-friendly local rules suddenly made [it] the venue of choice for patent plaintiffs."

The explosion in patent litigation promptly led to a burst of new economic activity in East Texas. As the BBC wrote, Marshall is a "sleepy town kept busy with patent cases." The patent litigation boom creates business for hotels, restaurants, trial graphics services, copying, expert witnesses, jury consultants, court-appointed technical advisers, and, of course, lawyers. In other words, patent litigation has become important to the economic health of the communities surrounding the courthouse. But the federal courts don't exist to generate business for a particular region.

*Tipping The Scales on Both Procedure and Substance*

So why are these plaintiff-friendly rules so important? First, the rules impose particular burdens on defendants. If a patent case proceeds to discovery—the process whereby parties hand over information potentially relevant to the case—it will usually be more expensive in the Eastern District of Texas. This is because the local discovery order in patent cases requires parties to automatically begin producing documents before the other side even requests them. In patent troll cases, this imposes a much higher burden on defendants. Operating companies might be forced to review and disclose millions of documents while shell-company patent trolls tend to have very few documents. Trolls can exploit this imbalance to pressure defendants to settle.

Second, the rules make it harder to eliminate cases early. The Supreme Court's decision in *Alice v CLS Bank* invalidated many of the low-quality software patents favored by patent trolls. But this only helps defendants if they are able to get a ruling to that effect from the judge overseeing their case. Judges Rodney Gilstrap and Robert Schroeder recently indicated that they would require patent defendants to ask permission before they can file a motion to dismiss raising *Alice*. This means that defendants in the Eastern District of Texas will more often be forced to go through expensive discovery.

When judges in the Eastern District do issue rulings on challenges raising *Alice*, their decisions are very different from jurists in other parts of the country. Recent data from Docket Navigator analyzed all challenges under 35 USC § 101 so far this year:

- Nationwide: 71% granted or partially granted; 29% denied (76 decisions)
- Northern District of California: 82% granted or partially granted; 18% denied (11 decisions)
- District of Delaware: 90% granted or partially granted; 10% denied (10 decision)
- Eastern District of Texas: 27% granted; 73% denied (11 decisions)

While each challenged patent claim is different, the overall trend suggests judges in the Eastern District of Texas are applying *Alice* in a way that is far more favorable to patent owners.

Global Chokepoints

HTTPS Everywhere

Manila Principles

Medical Privacy Project

Open Wireless Movement

Patent Busting

Privacy Badger

Student Activism

Student Privacy

Surveillance Self-Defense

Takedown Hall of Shame

Teaching Copyright

Transparency Project

Trolling Effects

Ways To Help

https://www.eff.org/deeplinks/2015/08/deep-dive-why-we-need-venue-reform-restore-fairness-patent-litigation

The _Alice_ decision, and its companion, _Octane Fitness v. Icon Health & Fitness_ gave judges additional tools for quickly dismissing meritless patent cases and holding unscrupulous plaintiffs to account. This means that patent trolls—particularly those that bring weak cases hoping to use the cost of defense to extort a settlement—now need a favorable forum more than ever. Small wonder we've seen a spike in EDTX filings.

We have also written about unfair rules that make it harder for patent defendants to file for summary judgment in the Eastern District of Texas. These rules have a real impact. A recent study found that judges in the Eastern District granted only 18% of motions for summary judgment of invalidity while the national grant rate is 31%. And that statistic, of course, does not include all the summary judgment motions that would have been filed had the defendant been given permission.

Judges in the Eastern District of Texas have also harmed defendants by delaying rulings on motions to transfer (these are motions where the defendant asks for the case to be moved to a more sensible location). Delay prejudices defendants because they are stuck litigating an expensive case in a remote forum while the judge sits on the motion. (The judges' rules make clear that a pending motion to transfer or a motion to dismiss is not grounds to stay discovery in a case). The Federal Circuit recently issued a stern order (PDF) finding that an Eastern District magistrate judge had "arbitrarily refused to consider the merits" of a transfer motion. When that transfer motion was finally considered, it was granted (PDF), but not until after extensive litigation had already occurred, and requiring the parties to pay for a court-appointed technical advisor (PDF). More generally, studies have also found the Eastern District of Texas is reversed by the Federal Circuit at a higher rate compared to other districts.

### Venue Reform Can Fix the Mess

It's time for Congress to act. Although the Federal Circuit has overruled some of the Eastern District of Texas' most egregious venue decisions, it has failed to bring basic fairness to where patent cases are litigated. We need new legislation to clarify that patent cases belong in forums with a real connection to the dispute.

Fortunately, Congress is looking at the problem. Representative Darrell Issa recently offered an amendment (PDF) to the Innovation Act that would tighten venue standards in patent cases. On June 11, the House Judiciary Committee approved the amendment. If this bill becomes law, shell company patent trolls will no longer be able to drag out of state operating companies all the way to Eastern Texas.

It's long past time for Congress to bring fairness to where, and how, patent cases are litigated. Contact your representative and tell them to pass the Innovation Act and to ensure that any final bill includes meaningful venue reform.

Patents   Patent Trolls   Innovation

**MORE DEEPLINKS POSTS LIKE THIS**

JUNE 2015

Judges in Texas Unfairly Impose New Requirements on Patent Defendants

AUGUST 2015

With Kafkaesque Flourish, the Eastern District of Texas Penalizes Parties for Following the Rules

OCTOBER 2015

For Patent Trolls, Location Is Everything

MARCH 2016

Tell the Senate: Pass the VENUE Act

JULY 2014

Why Do Patent Trolls Go to Texas? It's Not for the BBQ

**RECENT DEEPLINKS POSTS**

APR 8, 2017

Ninth Circuit Sends a Message to Platforms: Use a Moderator, Go to Trial

APR 7, 2017

Dream Job Alert: Defend Digital Freedom as an EFF Activist

APR 6, 2017

Twitter Fights Effort by Customs and Border Protection to Identify Administration Critic

APR 6, 2017

Border Search Bill Would Rein in CBP

APR 6, 2017

The Four Flavors of Automated License Plate Reader Technology

https://www.eff.org/deeplinks/2015/08/deep-dive-why-we-need-venue-reform-restore-fairness-patent-litigation

**DEEPLINKS TOPICS**

Fair Use and Intellectual Property: Defending the Balance

Free Speech

Innovation

UK Investigatory Powers Bill

International

Know Your Rights

Privacy

Trade Agreements and Digital Rights

Security

State-Sponsored Malware

Abortion Reporting

Analog Hole

Anonymity

Anti-Counterfeiting Trade Agreement

Artificial Intelligence & Machine Learning

Biometrics

Bloggers' Rights

Border Searches

Broadcast Flag

Broadcasting Treaty

CALEA

Cell Tracking

Coders' Rights Project

Computer Fraud And Abuse Act Reform

Content Blocking

Copyright Trolls

Council of Europe

Cyber Security Legislation

CyberSLAPP

Defend Your Right to Repair!

Development Agenda

Digital Books

Digital Radio

Digital Video

DMCA

DMCA Rulemaking

Do Not Track

DRM

E-Voting Rights

EFF Europe

Electronic Frontier Alliance

Encrypting the Web

Export Controls

Eyes, Ears & Nodes Podcast

FAQs for Lodsys Targets

File Sharing

Fixing Copyright? The 2013–2016 Copyright Review Process

FTAA

Genetic Information Privacy

Government Hacking and Subversion of Digital Security

Hollywood v. DVD

How Patents Hinder Innovation (Graphic)

ICANN

International Privacy Standards

Internet Governance Forum

Law Enforcement Access

Legislative Solutions for Patent Reform

Locational Privacy

Mandatory Data Retention

Mandatory National IDs and Biometric Databases

Mass Surveillance Technologies

Medical Privacy

Mobile devices

National Security and Medical Information

National Security Letters

Net Neutrality

No Downtime for Free Speech

NSA Spying

OECD

Offline : Imprisoned Bloggers and Technologists

Online Behavioral Tracking

Open Access

Open Wireless

Patent Busting Project

Patent Trolls

Patents

PATRIOT Act

Pen Trap

Policy Analysis

Printers

Public Health Reporting and Hospital Discharge Data

Reading Accessibility

Real ID

Reclaim Invention

RFID

Search Engines

Search Incident to Arrest

Section 230 of the Communications Decency Act

Shadow Regulation

Social Networks

SOPA/PIPA: Internet Blacklist Legislation

Student Privacy

Stupid Patent of the Month

Surveillance and Human Rights

Surveillance Drones

Terms Of (Ab)Use

Test Your ISP

The "Six Strikes" Copyright Surveillance Machine

The Global Network Initiative

The Law and Medical Privacy

TPP's Copyright Trap

Trans-Pacific Partnership Agreement

Travel Screening

TRIPS

Trusted Computing

Video Games

Wikileaks

WIPO

Transparency

Uncategorized



https://www.eff.org/deeplinks/2014/07/why-do-patent-trolls-go-texas-its-not-bbq



SEARCH

JULY 9, 2014 | BY DANIEL NAZER AND VERA RANIERI

## Why Do Patent Trolls Go to Texas? It's Not for the BBQ

There is a lot in our current patent system that is in need of reform. The Patent Office is too lax in granting patents. Federal Circuit case law has consistently favored patentees. Another part of this problem is the forum shopping by patentees that leads to a disproportionate number of cases being filed in the Eastern District of Texas.

Back in 2011, *This American Life* did a one-hour feature called "When Patents Attack!" The story included a tour of ghostly offices in Marshall, Texas, where shell companies have fake headquarters with no real employees. For many people, it was their first introduction to the phenomenon that is the Eastern District of Texas, a largely rural federal court district that has somehow attracted a huge volume of high-tech patent litigation.

The Eastern District of Texas is still number one for patent cases. Last year, there were just over 6,000 patent suits filed in federal courts around the country. One in four of these cases (24.54% to be exact) were filed in the Eastern District of Texas. But why do patent plaintiffs, especially trolls, see it as such a favorable forum? Partly, the district's relatively rapid litigation timetable can put pressure on defendants to settle. But other local practices in the Eastern District also favor patentees. And, in our view, they do so in a way that is inconsistent with the governing Federal Rules, and work to mask the consistent refusal by the courts in the Eastern District to end meritless cases before trial.

The podcasting patent troll litigation provides a recent case study. EFF is currently fighting the patent troll Personal Audio at the Patent Office, where we're arguing that U.S. Patent 8,112,504 (the "podcasting patent") is invalid. But Personal Audio is also involved in litigation against podcasters and TV companies in the Eastern District of Texas. We've been following that case, and unsurprisingly, the defendants there are also arguing that the podcasting patent is invalid. Specifically, the defendants are arguing that earlier publications and websites describe the system for "disseminating media content" that Personal Audio says it invented.

Recently, something happened in that case that we thought deserved notice: the defendants were denied the opportunity to have the judge rule on summary judgment on this issue. This deserves a bit of explanation: generally, parties go to trial to have their rights decided by a jury. But the Federal Rules provide the parties the right to get "summary judgment" (i.e., a decision from the judge) where there is no "genuine dispute as to any material fact." To be clear, this doesn't mean the parties have to agree on all the facts. What it means is that where the only disputes are not genuine (e.g., there isn't enough evidence to support an argument) or not material (e.g., the resolution of the dispute would not change the outcome) summary judgment should be granted.

Unfortunately, the podcasting defendants in Texas weren't even given this opportunity. You see, in the Eastern District of Texas, judges require parties to seek *permission* to file a motion for summary judgment. That is, unless and until the judge lets you file your motion (even if it is clear as day that you're going to win), you're going to trial. The defendants in Texas sought that permission, but in a one-sentence order, their request was denied. (Note: The judge is allowing the defendants to file summary judgment on other issues, namely non-infringement and license).

Why this is important is that according to Federal Rules of Civil Procedure 56, defendants have a right to file a summary judgment motion and to have that motion decided. But in the Eastern District of Texas, the judge's "rule" effectively denies them these rights, which we think is contrary to the law. Furthermore, this requirement likely masks the true value of the already low grant rate of summary judgment. A recent study found that judges in the Eastern District of Texas granted only 18% of motions for summary judgment of invalidity. (In contrast, the

Donate to EFF

Stay in Touch

Email Address

Postal Code (optional)

SIGN UP NOW

NSA Spying

 eff.org/nsa-spying

EFF is leading the fight against the NSA's illegal mass surveillance program. Learn more about what the program is, how it works, and what you can do.

Follow EFF

Let's not make the Register of Copyrights even more vulnerable to capture by special interests.
https://www.eff.org/deeplinks
APR 10 @ 5:11PM

We're looking for a full-time grassroots activist to help us build a movement across the United States. Apply today.
https://www.eff.org/deeplinks
APR 10 @ 10:52AM

Does the Constitution apply at the U.S. border? Yes, but....
https://www.eff.org/deeplinks
APR 10 @ 10:23AM

Twitter   Facebook   Identi.ca

Projects

Bloggers' Rights

Coders' Rights

Encrypt the Web

Free Speech Weak Links

https://www.eff.org/deeplinks/2014/07/why-do-patent-trolls-go-texas-its-not-bbq

grant rate nationwide is 31%.) Considering that the study did not include instances where the defendant wasn't allowed to file summary judgment in the first place, we wouldn't be surprised if the true grant rate were much lower, and thus even further out-of-whack with the national average.

So why don't parties challenge the judge's rule? We don't know for sure, but we have a good guess. And it has to do with the fact that a single judge in the Eastern District had over 900 patent cases assigned to him in 2013.

Patentees and defendants (and of course, their lawyers) are often "repeat players," meaning they will be in front of the same judge on many different occasions in different cases. It's easy to see how telling a judge his rules are invalid may not be the best thing to do when you're usually trying to get him to agree with you. Given the volume of high-stakes litigation there, no one wants to be unpopular in Eastern District of Texas. (Indeed, of all the ice rinks in all the towns in all the world, why would patent heavyweight Samsung sponsor a rink directly in front of the courthouse in Marshall?) Another reason that this type of rule may not get challenged is that it's just not worth it. Even if you get to file your summary judgment motion, that doesn't mean that the judge will actually rule in a timely fashion (thus saving the expense of preparing for an unnecessary trial) or that you'll win. By the time you get to the point of appeal, you have many more important issues that you want the appeals court to consider. In the end, the parties are just stuck with the judge's rules and cases that should be decided quickly and early are left to languish.

And for patent trolls, this is a good thing. A plaintiff that doesn't have its weak case quickly and cheaply rejected increases its settlement pressure and keeps its patent alive longer. In contrast, a defendant, faced with the possibility of significant trial costs, will more likely succumb to settlement pressure in order to get the case to go away at the least cost. Thus patent trolls, who are often asserting extremely broad and likely-invalid patents, are incentivized to file in the Eastern District of Texas knowing that there's *another* hurdle an accused infringer has to overcome in order to win the case.

To be clear, local rules like those in the Eastern District violate the rights of both plaintiffs and defendants. By either refusing to rule on summary judgment or delaying a ruling right until the eve of trial, both sides incur significant costs. But it is easy to see how this would have a larger impact on those accused of infringing patents, especially in cases where the damages are less than the cost to go to trial.

We sympathize with judges who are trying to manage busy dockets. Understandably, the Court does not want to be faced with frivolous motions, or with five motions from both sides. But the court has other methods of dealing with these issues (for example limiting page length or allowing only one brief on all issues). What the court is not entitled to do, however, is prevent the parties from filing at all.

With respect to the podcasting patent, we've linked to the parties' papers on this issue here (defendants' letter requesting permission to file a motion), here (Personal Audio's response), and here (defendants' reply letter). You can make up your own mind, but, in our view, Personal Audio made no showing of any genuine or material dispute. The Federal Rules, properly applied, do not allow a party to survive summary judgment with such weak and unsupported arguments.

The defendants in the podcasting case may still win a motion for summary judgment of non-infringement, but unfortunately that could leave Personal Audio free to sue others. But because of the judge's order, if the current defendants in Texas want to invalidate the podcasting patent, they're going to have to go to trial. It is unfair and irregular procedures like these that make the Eastern District of Texas such a popular destination for patent trolls. As part of any true patent reform, this kind of forum-shopping incentive needs to end.

# Files

ecf_122_-_letter_brief_re_sj_of_invalidity.pdf
ecf_185_-_order_re_sj_filing.pdf
ecf_148_-_pa_response_to_letter_brief_re_sj_of_invalidity.pdf
ecf_165_-_reply_letter_brief_re_sj_of_invalidity.pdf

Patents   Patent Trolls   Innovation

Global Chokepoints

HTTPS Everywhere

Manila Principles

Medical Privacy Project

Open Wireless Movement

Patent Busting

Privacy Badger

Student Activism

Student Privacy

Surveillance Self-Defense

Takedown Hall of Shame

Teaching Copyright

Transparency Project

Trolling Effects

Ways To Help

https://www.eff.org/deeplinks/2014/07/why-do-patent-trolls-go-texas-its-not-bbq

Related Cases

EFF v. Personal Audio LLC

**MORE DEEPLINKS POSTS LIKE THIS**

AUGUST 2014

The Good, the Bad, and the Ugly of Adam Carolla's Settlement with the Podcasting Troll

AUGUST 2015

Deep Dive: Why We Need Venue Reform to Restore Fairness to Patent Litigation

SEPTEMBER 2014

After Setback in Texas, the Fight Against Podcasting Patent Troll Will Continue

JUNE 2015

Judges in Texas Unfairly Impose New Requirements on Patent Defendants

OCTOBER 2015

For Patent Trolls, Location Is Everything

**RECENT DEEPLINKS POSTS**

APR 8, 2017

Ninth Circuit Sends a Message to Platforms: Use a Moderator, Go to Trial

APR 7, 2017

Dream Job Alert: Defend Digital Freedom as an EFF Activist

APR 6, 2017

Twitter Fights Effort by Customs and Border Protection to Identify Administration Critic

APR 6, 2017

Border Search Bill Would Rein in CBP

APR 6, 2017

The Four Flavors of Automated License Plate Reader Technology

**DEEPLINKS TOPICS**

Fair Use and Intellectual Property: Defending the Balance

Free Speech

Innovation

UK Investigatory Powers Bill

International

Know Your Rights

Privacy

Trade Agreements and Digital Rights

Security

State-Sponsored Malware

Abortion Reporting

Analog Hole

Anonymity

Anti-Counterfeiting Trade Agreement

Artificial Intelligence & Machine Learning

Biometrics

Bloggers' Rights

Border Searches

Broadcast Flag

Broadcasting Treaty

CALEA

Cell Tracking

Coders' Rights Project

Computer Fraud And Abuse Act Reform

Content Blocking

Copyright Trolls

Council of Europe

Cyber Security Legislation

CyberSLAPP

Defend Your Right to Repair!

Development Agenda

Digital Books

Digital Radio

Digital Video

DMCA

DRM

E-Voting Rights

EFF Europe

Electronic Frontier Alliance

Encrypting the Web

Export Controls

Eyes, Ears & Nodes Podcast

FAQs for Lodsys Targets

File Sharing

Fixing Copyright? The 2013–2016 Copyright Review Process

FTAA

Genetic Information Privacy

Government Hacking and Subversion of Digital Security

Hollywood v. DVD

How Patents Hinder Innovation (Graphic)

ICANN

International Privacy Standards

Internet Governance Forum

Law Enforcement Access

Legislative Solutions for Patent Reform

Locational Privacy

Mandatory Data Retention

Mandatory National IDs and Biometric Databases

Mass Surveillance Technologies

Medical Privacy

Mobile devices

National Security and Medical Information

National Security Letters

Net Neutrality

No Downtime for Free Speech

NSA Spying

OECD

Offline : Imprisoned Bloggers and Technologists

Online Behavioral Tracking

Patent Trolls

Patents

PATRIOT Act

Pen Trap

Policy Analysis

Printers

Public Health Reporting and Hospital Discharge Data

Reading Accessibility

Real ID

Reclaim Invention

RFID

Search Engines

Search Incident to Arrest

Section 230 of the Communications Decency Act

Shadow Regulation

Social Networks

SOPA/PIPA: Internet Blacklist Legislation

Student Privacy

Stupid Patent of the Month

Surveillance and Human Rights

Surveillance Drones

Terms Of (Ab)Use

Test Your ISP

The "Six Strikes" Copyright Surveillance Machine

The Global Network Initiative

The Law and Medical Privacy

TPP's Copyright Trap

Trans-Pacific Partnership Agreement

Travel Screening

TRIPS

Trusted Computing

Video Games

Wikileaks

WIPO

Transparency

https://www.eff.org/deeplinks/2014/07/why-do-patent-trolls-go-texas-its-not-bbq

DMCA Rulemaking          Open Access                    Uncategorized
Do Not Track             Open Wireless
                         Patent Busting Project



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**


**STANDING ORDER REGARDING SUBMISSION OF LETTER BRIEFS FOR
CASES ASSIGNED TO JUDGE RODNEY GILSTRAP AND JUDGE ROY S. PAYNE**


For certain purposes, this Court requires parties to submit letter briefs to the Court.  Where the Court has required submission of a letter brief, the filing procedure is as follows.  The letter brief should be addressed to either United States District Judge Rodney Gilstrap or United States Magistrate Judge Roy S. Payne, as appropriate, and filed electronically by attaching the letter brief as an Exhibit to a Notice of Compliance referencing the order that directed the submission of the letter brief.  Said Notice must comply with all applicable local rules.  Attached hereto is an exemplar of a Notice of Compliance.  All letter briefs, unless specifically directed otherwise by a case-specific order, are to be submitted without attachments.

This Order shall apply to all cases assigned to either United States District Judge Rodney Gilstrap or United States Magistrate Judge Roy S. Payne regardless of the division within the district in which such cases were originally filed.


**So ORDERED and SIGNED this 3rd day of February, 2012.**


RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

P., INC.,                                     §
                                              §
          Plaintiff,             §
v.                                            §       CIVIL ACTION NO. 2:12-CV-999
                                              §
D. CORPORATION, et al.,                       §
                                              §
          Defendants.            §


## NOTICE OF COMPLIANCE WITH COURT'S
## MOTION PRACTICE ORDER


In compliance with the Court's Motion Practice Order (Dkt. No. 20), D. Corporation files this Notice of its letter to the Court requesting permission to file a motion for summary judgment that no asserted claim of U.S. Patent No. 1,234,567 is infringed by the accused device.  A copy of the letter is attached as Exhibit 1.


                                   Respectfully Submitted,


Dated: January 20, 2012        By:    /s/ Charles B. Attorney

                                   Charles B. Attorney (admitted *pro hac vice*)
                                   CBAttorney@DFirm.com
                                   DEFENSE FIRM, LLP
                                   100 N. Legal St.
                                   Anywhere, Texas 00000
                                   Telephone: 800-555-1212
                                   Facsimile: 866-555-1212

                                   *Attorney for Defendant D. Corporation*



**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on the 20th day of January, 2012, the foregoing pleading was electronically filed with the Court.  Pursuant to Local Rule CV-5, this constitutes service on the following counsel:

James K. Lawyer
JKLawyer@PEFirm.com
PATENT ENFORCERS FIRM LLC
100 Somewhere Else, CA 00000
Phone: 800-555-1212
Fax: 866-555-1212

By:      /s/ Charles B. Attorney
         Charles B. Attorney (admitted *pro hac vice*)
         CBAttorney@DFirm.com
         DEFENSE FIRM, LLP
         100 N. Legal St.
         Anywhere, Texas 00000
         Telephone: 800-555-1212
         Facsimile: 866-555-1212

# EXEMPLAR

# EXHIBIT 1

# EXEMPLAR

**DEFENSE FIRM, LLP**

**Charles B. Attorney**

January 20, 2012

800-555-1212 (t)
866-555-1212 (f)
CBAttorney@DFirm.com

The Honorable Rodney Gilstrap
U.S. District Court for the Eastern District of Texas
100 East Houston Street
Marshall, TX 75670

Re:     *P., Inc. v. D. Corp.*, Civil Action No. 2:12-CV-999

Dear Judge Gilstrap:


Defendant D. Corp. respectfully requests permission to file a motion for summary judgment of non-infringement of any asserted patent in the above-captioned patent infringement case.

D. Corp. is entitled to summary judgment for the following reasons . . . { }

For the foregoing reasons, D. Corp. respectfully requests permission to file a motion for summary judgment of non-infringement.

Respectfully submitted,

    { signature }


Charles B. Attorney

cc: all counsel of record (by ECF)



EXEMPLAR

Defense Firm, LLP, 100 N. Legal St., Anywhere, Texas 00000

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| [PLAINTIFF] | § | |
| | § | |
| v. | § | Case No. 2:00-CV-000-JRG-RSP |
| | § | |
| [DEFENDANT][, et al.] | § | |

**SAMPLE DISCOVERY ORDER FOR PATENT CASES
ASSIGNED TO JUDGE RODNEY GILSTRAP AND JUDGE ROY PAYNE**

[*Instructions:   The parties are expected to meet and confer prior to submitting a proposed Discovery Order based upon this model order.   Only the underlined portions (in paragraphs 5 and 12) may be modified by the parties according to the needs of the case.*]

After a review of the pleaded claims and defenses in this action, in furtherance of the management of the Court's docket under Federal Rule of Civil Procedure 16, and after receiving the input of the parties to this action, it is ORDERED AS FOLLOWS:

1.  **Initial Disclosures.**   In lieu of the disclosures required by Federal Rule of Civil Procedure 26(a)(1), each party shall disclose to every other party the following information:

    (a)     the correct names of the parties to the lawsuit;

    (b)     the name, address, and telephone number of any potential parties;

    (c)     the legal theories and, in general, the factual bases of the disclosing party's claims or defenses (the disclosing party need not marshal all evidence that may be offered at trial);

    (d)     the name, address, and telephone number of persons having knowledge of relevant facts, a brief statement of each identified person's connection with the

case, and a brief, fair summary of the substance of the information known by any such person;

(e)     any indemnity and insuring agreements under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment;

(f)     any settlement agreements relevant to the subject matter of this action; and

(g)     any statement of any party to the litigation.

2.    **Disclosure of Expert Testimony.**   A party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705, and:

(a)     if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony, provide the disclosures required by Federal Rule of Civil Procedure 26(a)(2)(B) and Local Rule CV-26; and

(b)     for all other such witnesses, provide the disclosure required by Federal Rule of Civil Procedure 26(a)(2)(C).

3.    **Additional Disclosures.**   Without awaiting a discovery request,[1] each party will make the following disclosures to every other party:

(a)     provide the disclosures required by the Patent Rules for the Eastern District of Texas with the following modifications to P.R. 3-1 and P.R. 3-3:

---

[1]   The Court anticipates that this disclosure requirement will obviate the need for requests for production.

     i.    If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

    ii.    If a party claiming patent infringement exercises the provisions of Paragraph 3(a)(i) of this Discovery Order, the party opposing a claim of patent infringement may serve, not later than 30 days after receipt of a Paragraph 3(a)(i) disclosure, supplemental "Invalidity Contentions" that amend only those claim elements identified as software limitations by the party claiming patent infringement.

(b)    produce or permit the inspection of all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas; and

(c)    provide a complete computation of any category of damages claimed by any party to the action, and produce or permit the inspection of documents or other evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered, except that the disclosure of

- 3 -

the computation of damages may be deferred until the time for Expert Disclosures if a party will rely on a damages expert.

**4.      Protective Orders.**  The Court will enter the parties' Agreed Protective Order.

**5.      Discovery Limitations.**     The discovery in this cause is limited to the disclosures described in Paragraphs 1-3 together with: [ <u>40 interrogatories per side, 40 requests for admissions per side, the depositions of the parties, depositions on written questions of custodians of business records for third parties, 60 hours of nonparty depositions per side, and 3 expert witnesses per side.  "Side" means a party or a group of parties with a common interest</u>. ] Any party may later move to modify these limitations for good cause.

**6.      Privileged Information.**     There is no duty to disclose privileged documents or information.  However, the parties are directed to meet and confer concerning privileged documents or information after the Status Conference.  By the deadline set in the Docket Control Order, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection.  Any party may move the Court for an order compelling the production of any documents or information identified on any other party's privilege log.  If such a motion is made, the party asserting privilege shall respond to the motion within the time period provided by Local Rule CV-7.  The party asserting privilege shall then file with the Court within 30 days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for *in camera* inspection.

- 4 -

7.    **Signature.**  The disclosures required by this Order shall be made in writing and signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made.  If feasible, counsel shall meet to exchange disclosures required by this Order; otherwise, such disclosures shall be served as provided by Federal Rule of Civil Procedure 5.  The parties shall promptly file a notice with the Court that the disclosures required under this Order have taken place.

8.    **Duty to Supplement.**  After disclosure is made pursuant to this Order, each party is under a duty to supplement or correct its disclosures **immediately** if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.

9.    **Discovery Disputes.**

(a)    Except in cases involving claims of privilege, any party entitled to receive disclosures ("Requesting Party") may, after the deadline for making disclosures, serve upon a party required to make disclosures ("Responding Party") a written statement, in letter form or otherwise, of any reason why the Requesting Party believes that the Responding Party's disclosures are insufficient.  The written statement shall list, by category, the items the Requesting Party contends should be produced.  The parties shall promptly meet and confer.  If the parties are unable to resolve their dispute, then the Responding Party shall, within 14 days after service of the written statement upon it, serve upon the Requesting Party a written statement, in letter form or otherwise, which identifies (1) the requested items that will be disclosed, if any, and (2) the reasons why any requested items

will not be disclosed.  The Requesting Party may thereafter file a motion to compel.

(b)   An opposed discovery related motion, or any response thereto, shall not exceed 7 pages. Attachments to a discovery related motion, or a response thereto, shall not exceed 5 pages. No further briefing is allowed absent a request or order from the Court.

(c)   Prior to filing any discovery related motion, the parties must fully comply with the substantive and procedural conference requirements of Local Rule CV-7(h) and (i). Within 72 hours of the Court setting any discovery motion for a hearing, each party's lead attorney (*see* Local Rule CV-11(a)) and local counsel shall meet and confer in person or by telephone, without the involvement or participation of other attorneys, in an effort to resolve the dispute without Court intervention.

(d)   Counsel shall promptly notify the Court of the results of that meeting by filing a joint report of no more than two pages. Unless excused by the Court, each party's lead attorney shall attend any discovery motion hearing set by the Court (though the lead attorney is not required to argue the motion).

(e)   Any change to a party's lead attorney designation must be accomplished by motion and order.

(f)   Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(e).  If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(e).

10. **No Excuses.**   A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures.   Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand or to change venue.

11. **Filings.**   Only upon request from chambers shall counsel submit to the court courtesy copies of any filings.

12. **Proposed Stipulations by the Parties Regarding Discovery.**   [ The parties may include proposed stipulations regarding discovery here.   Proposed Stipulations may not be used to modify the ordinary procedures of the Court (e.g. the requirement that an in person conference be held prior to filing a discovery-related motion.)   If there are no proposed stipulations, indicate "None." ]

13. **Standing Orders.**   The parties and counsel are charged with notice of and are required to fully comply with each of the Standing Orders of this Court. Such are posted on the Court's website at http://www.txed.uscourts.gov/page1.shtml?location=info:judge&judge=17. The substance of some such orders may be included expressly within this Discovery Order, while others (including the Court's Standing Order Regarding Protection of Proprietary and/or Confidential Information to Be Presented to the Court During Motion and Trial Practice) are incorporated herein by reference. All such standing orders shall be binding on the parties and counsel, regardless of whether they are expressly included herein or made a part hereof by reference.