Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**



CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| AMAZON WEB SERVICES, INC., and VADATA, INC. | Civil Action No. 3:16 cv 619 |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD., | |
| Defendant. | |

---

**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND
INVALIDITY OF PATENTS HELD BY A NON-RESIDENT PATENTEE**

Plaintiffs Amazon Web Services, Inc. ("AWS") and VADATA, Inc. ("VADATA" and, collectively with AWS, the "Amazon Plaintiffs") bring this Action against Defendant Global Equity Management (SA) Pty. Ltd. ("GEMSA") and allege as follows:

**NATURE OF THE ACTION**

1.      This is a civil action seeking a declaratory judgment of non-infringement and invalidity under 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

2.      Plaintiff AWS is a corporation organized and existing under the laws of the state of Delaware, with offices and employees throughout several of the United States, including the Commonwealth of Virginia. AWS is a wholly-owned subsidiary of Amazon.com, Inc. ("Amazon").

3.      Plaintiff VADATA is a corporation organized and existing under the laws of the state of Delaware, with offices and employees throughout several of the United States, including the Commonwealth of Virginia.  VADATA is a wholly-owned subsidiary of Amazon.

4.      On information and belief, Defendant GEMSA is an Australian corporation with a principal place of business at 458 Morphett Road, Warradale, South Australia 5046.

## JURISDICTION

5.      This action arises under the Patent Laws of the United States, Title 35 of the United States Code, Sections 101 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and continuing justiciable controversy exists between the Amazon Plaintiffs and GEMSA.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

6.      Pursuant to 35 U.S.C. § 293:  "Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing with the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder.  . . . .  [I]f no person has been designated, the United States District Court for the Eastern District of Virginia shall have jurisdiction . . . to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court."

7.      On information and belief, GEMSA is the owner and assignee of United States patents, and, as an Australian corporation, is a "patentee not residing in the United States" under 35 U.S.C. § 293.  GEMSA has not filed with the Patent and Trademark Office a "written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder."  35 U.S.C. § 293.  Thus, GEMSA is subject to this Court's personal jurisdiction.

## VENUE

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 35 U.S.C. § 293.

9.     Plaintiffs have numerous large scale offices and data centers supporting AWS in the Commonwealth of Virginia with significant continued investment underway. These offices and data centers employ a large number of people in the Commonwealth. Among these employees are witnesses who may have knowledge relevant to the issues in this case, such as Kevin Miller who is a Director in EC2 Software Development.

## FACTUAL ALLEGATIONS

10.     Plaintiff AWS is a world-renowned provider of cloud computing services. AWS began offering its cloud services—recently proclaimed as "World-Changing"—over ten years ago. (*See* "Amazon's World-Changing Cloud Turns 10." *Fortune Magazine*, Mar. 11, 2016, *available at* http://fortune.com/2016/03/11/amazon-cloud-turns-10/.) Since then, AWS has developed a broad set of global cloud-based products and services that offer compute power, database storage, content delivery and other functionality to help businesses scale and grow.

11.     Among these products and services is the Elastic Compute Cloud or EC2. EC2 is a web service designed, among other things, to make web-scale cloud computing easier for developers. It allows users to rent virtual computers to run their own computer applications providing them with flexibility to use the computing resources they need without incurring sunk costs in expensive hardware.

12.     To provide this and other AWS services, AWS relies on a vast network of servers managed by Amazon-subsidiary VADATA, which has substantial operations and facilities within the Commonwealth of Virginia.

13.     GEMSA purports to be the owner of U.S. Patent No. 6,690,400 (the "'400 patent"), entitled "Graphic User Interface for Resources Management of Super Operating System

3

Based Computers," attached hereto as **Exhibit A,** and U.S. Patent No. 7,356,677 (the "'677 patent"), entitled "Computer System Capable of Fast Switching Between Multiple Operating Systems and Applications," attached hereto as **Exhibit B** (collectively, the "GEMSA Patents").

14.     On June 14, 2016, GEMSA filed twenty lawsuits against AWS customers Adroll, Inc., Alcatel-Lucent, Inc., Artek Surfin Chemicals, Ltd. (d/b/a Galata Chemicals, LLC), Ericsson, Inc., General Electric Co., Hitachi America, Ltd., Johnson & Johnson USA, Inc., Live Nation Entertainment, Inc. (d/b/a Ticketmaster, Inc.), McGraw Hill Financial, Inc. (d/b/a S&P Global and S&P Capital IQ), The Nasdaq OMX Group, Inc., NASDAQ, Inc., Netflix, Inc., Philips, Inc., SAP America, Inc., Siemens Corp., Spotify USA, Inc., Ticketleap.com LLC, Ticketleap, Inc., Uber Technologies, Inc., Ubisoft Studio, Inc. (d/b/a Ubisoft), Zillow, Inc., Zillow Group, Inc., and Zynga, Inc. (collectively, the "AWS Customer Defendants") in the United States District Court for the Eastern District of Texas.

15.     In these complaints, GEMSA expressly accuses AWS, broadly alleging infringement of the GEMSA Patents by the AWS Customer Defendants through their "access[ing] AWS services" and use of AWS:

> "ADROLL, through http://www.adroll.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/adroll/. The use of http://www.adroll.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. AdRoll, Inc.*, No. 16-cv-00634-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

> "ALCATEL, through http://www.alcatel.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/alcatel-lucent/. The use of http://www.alcatel.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Alcatel-Lucent, Inc.*, No. 16-cv-00630-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"GALATA, through http://www.galatachemicals.com/ or one of its web-sites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/galata-chemicals/. The use of http://www.galatachemicals.com/, or one of its websites linked directly or indirectly thereto, and AWS in-fringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Artek Surfin Chemicals, Ltd.*, No. 16-cv-00632-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"ERICSSON, through ericsson.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrat-ed at https://aws.amazon.com/solutions/case-studies/ericsson/. The use of ericsson.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 16-cv-00618-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"GE, through www.GE.com or one of its websites linked directly or indi-rectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/casestudies/general-electric/. The use of www.GE.com, or one of its websites linked directly or indirectly there-to, including a least GE Digital Transformation, GE Oil & Gas, and others, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. General Electric Company*, No. 16-cv-00627-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"HITACHI, through http://www.hitachi.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/hitachi/. The use of http://www.hitachi.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Hitachi America, Ltd.*, No. 16-cv-00636-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"J&J, through jnj.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/casestudies/johnson-and-johnson/. The use of jnj.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Johnson & Johnson USA, Inc.*, No. 16-cv-00619-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"TICKETMASTER, through www.TICKETMASTER.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Ser-vices ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/ticketmaster/. The use of www.TICKETMASTER.com, or one of

5

its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Live Nation Entertainment, Inc.*, No. 16-cv-00625-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"S&P, through http://www.spcapitaliq.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/sp-capital-iq/. The use of http://www.spcapitaliq.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. McGraw Hill Financial, Inc.*, No. 16-cv-00628-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"NASDAQ, through www.NASDAQ.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/nasdaq-omx/. The use of www.NASDAQ.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. The NASDAQ OMX Group, Inc.*, et al., No. 16-cv-00623-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"NETFLIX, through http://www.netflix.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/netflix/. The use of http://www.netflix.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Netflix, Inc.*, No. 16-cv-00633-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"PHILIPS, through www.usa.philips.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/philips/. The use of www.usa.philips.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Philips, Inc.*, No. 16-cv-00620-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"SAP, through www.usa.SAP.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/sap/. The use of www.SAP.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. SAP America, Inc.*, No. 16-cv-00621-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"SIEMEN, through www.SIEMEN.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/siemens/. The use of www.SIEMEN.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Siemens Corp.*, No. 16-cv-00622-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"SPOTIFY, through http://www.spotify.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/spotify/. The use of http://www.spotify.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Spotify USA, Inc.*, No. 16-cv-00635-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"TICKETLEAP, through www.TICKETLEAP.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/ticketleap/. The use of www.TICKETLEAP.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Ticketleap.com LLC, et al.*, No. 16-cv-00624-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"UBER, through http://www.uber.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at http://datacenterfrontier.com/uber-data-center-expansion/. The use of http://www.uber.com/, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Uber Technologies, Inc.*, No. 16-cv-00631-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"UBISOFT, through www.UBISOFT.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/ubisoft/. The use of www.UBISOFT.com, or one of its websites linked directly or indirectly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Ubisoft Studio, Inc.*, No. 16-cv-00626-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"Zillow, through www.zillow.com or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/casestudies/zillow/. The use of www.zillow.com, or one of its websites linked directly or indirectly thereto, and others, and AWS infringes one or more claims of [the GEMSA Pa-

tents]." *Global Equity Management (SA) Pty. Ltd. v. Zillow, Inc., et al.*, No. 16-cv-00637-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

"ZYNGA, through http://www.zynga.com/ or one of its websites linked directly or indirectly thereto, accesses Amazon Web Services ('AWS') as illustrated at https://aws.amazon.com/solutions/case-studies/zynga/. The use of http://www.zynga.com/, or one of its websites linked directly or in-directly thereto, and AWS infringes one or more claims of [the GEMSA Patents]." *Global Equity Management (SA) Pty. Ltd. v. Zynga, Inc.*, No. 16-cv-00629-RWS-RSP, Dkt. No. 1 at ¶ 6 (E.D. Tex. June 14, 2016).

16.     GEMSA alleges that each of the AWS Customer Defendants infringes at least claim 1 of the '400 patent and claims 1, 3, and 6 of the '677 patent through their use of AWS. *See, e.g.*, *Global Equity Management (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 16-cv-00618-RWS-RSP, Dkt. No. 1 at ¶¶ 17-18, 23-24 (E.D. Tex. June 14, 2016); *see generally* AWS Customer Complaints at ¶¶ 17-18, 23-24.

17.     GEMSA has also asserted the GEMSA Patents against several other AWS cus-tomers in the Eastern District of Texas.  On information and belief, GEMSA intends to assert infringement by these parties based, *inter alia*, on their use of AWS services.  For example, GEMSA served infringement contentions against TripAdvisor LLC ("TripAdvisor") asserting infringement by the TripAdvisor website through its "use of Amazon AWS, either directly or indirectly," and identified in the accompanying claim chart AWS's EC2 service as purportedly infringing the patents. *Global Equity Management (SA) Pty. Ltd. v. TripAdvisor LLC*, No. 16-cv-00103-RWS (E.D. Tex.), Dkt. No. 12-8 (Ex. S to the Declaration of John J. Cotter in Support of TripAdvisor's Reply on Motion to Transfer Venue) at 3; *see also id.* at 7-8 (infringement claim charts noting that the TripAdvisor website "primarily operates on Amazon AWS EC2 plat-form").

18.     On July 14, 2016, GEMSA served a subpoena on AWS in *Global Equity Man-agement (SA) Pty. Ltd. v. Expedia, Inc., et al.*, Case No. 16-cv-00095 (E.D. Tex.) seeking "[a]ll

documents (including but not limited to invoices and reports) sent to or received from" various AWS customers. On information and belief, GEMSA seeks this discovery to identify evidence to support its allegations of infringement by AWS.

19.     On information and belief, GEMSA has strategically chosen to sue AWS customers rather than the Amazon Plaintiffs themselves to avoid testing its claims against the suppliers of the accused technology, who have the greatest interest in and ability to defend against these claims, in the hopes of extracting cost of litigation settlements from scores of customers.

20.     As a result of the allegations made by GEMSA against AWS customers, there is an immediate and actual case or controversy between the Amazon Plaintiffs and GEMSA regarding the non-infringement, invalidity, and enforceability of the GEMSA Patents as it pertains to the Amazon Plaintiffs' technology and services, particularly the AWS services referenced in GEMSA's complaints and infringement contentions.

21.     The Amazon Plaintiffs have a direct and substantial interest in defeating any patent infringement claims relating to AWS services identified by GEMSA in its complaints and infringement contentions. Through its infringement allegations, GEMSA has specifically targeted technology of AWS and VADATA. AWS designs and develops the accused technology, including specifically the EC2 web service. The EC2 virtualization GEMSA accuses, as well as the back-end processes purportedly directed by the accused graphical user interface, is carried out by servers in AWS and VADATA centers. Thus, AWS and VADATA are directly implicated by GEMSA's infringement allegations, and each is entitled to a declaratory judgment of non-infringement.

22.     The Amazon Plaintiffs deny that any of their technology, including the AWS services identified by GEMSA in its complaints and infringement contentions, infringes any claim of the GEMSA Patents, directly or indirectly.

23.     This controversy is between parties having adverse legal interests and is of sufficient immediacy and reality to warrant issuance of a declaratory judgment under 28 U.S.C. § 2201(a) as to the validity and enforceability of the patents in suit and the alleged infringement of the patents in suit by the Amazon Plaintiffs or their technology.

24.     Pursuant to 35 U.S.C. § 293, GEMSA is subject to suit in this district.  And the Amazon Plaintiffs have therefore brought this action here in the Commonwealth of Virginia— where facilities and potential witnesses relevant to this case are located—to obtain just and speedy resolution of this dispute, to relieve their customers of the unnecessary burden of litigating GEMSA's cases targeting Amazon technology, and to once and for all remove the cloud of uncertainty that has been cast over that technology.  *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed.Cir.1987) ("the purpose of the Declaratory Judgment Act . . . in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."); *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (where patentee's "forceful threats [against customers] created a cloud over [supplier's] business, shareholders, and customers, and [supplier's] potential liability increased as it continued to sell the allegedly infringing products," supplier "entitled under the Declaratory Judgment Act to seek a timely resolution of . . . threats of litigation and remove itself from 'the shadow of threatened infringement litigation.'") (citation omitted).

### FIRST CLAIM – DECLARATION OF NON-INFRINGEMENT ('400 PATENT)

25.     The Amazon Plaintiffs restate and incorporate by reference each of the allegations in the preceding paragraphs of this complaint.

26.     GEMSA has alleged and continues to allege that use or incorporation of the Amazon Plaintiffs' technology infringes claims of the '400 patent.

27.     The Amazon Plaintiffs have not and do not make, use, offer for sale, or import any product, service or technology that infringes or contributes to any infringement of any claim of the '400 patent either literally or under the doctrine of equivalents.  The Amazon Plaintiffs further have not and do not induce any infringement of any claim of the '400 patent.

28.     The '400 patent is directed to the idea that a graphical user interface can allow a user to select an operating system on a computer device and view information about that operating system and secondary storage devices.  Claim 1, for example, requires a graphical user interface for "allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device . . . ."  The graphical user interface comprises (1) "a main menu bar," (2) "a cabinet selection button bar" that "graphically represent[s] at least one virtual cabinet" which "represent[s] a discreet operating system," (3) "a secondary storage partitions window," and (4) "a cabinet visible partition window" that "graphically illustrat[es] a cabinet record corresponding to a selected virtual cabinet" representing a discreet operating system.

29.     AWS does not directly or indirectly, literally or under the doctrine of equivalents, infringe the '400 patent.  For example, Claim 1 requires a graphical user interface for "allocating a computer device's resources to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device."  Accordingly, all of the claimed cabinets that are shown on the claimed graphical user interface must exist on a single physical computer.  AWS does not provide such a graphical user interface.  EC2 instances are different virtual machines spread across multiple computers.  Further, EC2 instances are not the claimed virtual cab-

11

inets as defined in the specification, nor does AWS provide an interface that displays the claimed virtual cabinets.   AWS also does not provide an interface for displaying partitions of storage devices, as claim 1 requires.  AWS, therefore, does not meet at least the claim requirements "allocating a computer device's resource to multiple operating system environments, partitioned on individual virtual cabinets, on said computer device," "said secondary storage partitions window graphically illustrating at least one partition of at least one secondary storage device," and "cabinet visible partition window" of claim 1 and similar claim limitations in the other claims of the '400 patent.  All of this information would have been readily apparent to GEMSA from even a cursory pre-filing investigation.

30.     An actual and justiciable controversy exists between the Amazon Plaintiffs and GEMSA as to the Amazon Plaintiffs' non-infringement of the '400 patent.

31.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Amazon Plaintiffs seeks a declaration that they do not infringe any claim of the '400 patent.

### SECOND CLAIM – DECLARATION OF INVALIDITY ('400 PATENT)

32.     The Amazon Plaintiffs restate and incorporate by reference each of the allegations in the preceding paragraphs of this complaint.

33.     GEMSA has alleged and continues to allege that use or incorporation of Amazon Plaintiffs' technology infringes of claims of the '400 patent.

34.     Claims of the '400 patent are invalid because they fail to comply with one or more of the conditions and requirements for patentability set forth in 35 U.S.C. § 1 *et seq.*, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

35.     The '400 patent is invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101.  The '400 patent does not describe any new solution, system or device.  Its claims are directed to a graphical user interface that can be drawn by hand with a pen and a piece

of paper, and neither the claims nor the specification recite any technological inventive concept to transform that abstract idea into a patent-eligible application. Instead, its eight-column-long specification merely refers to conventional well-known technologies and describes the claimed graphical user interface in purely functional language. The '400 patent is directed to patent-illegible subject matter.

36. The '400 patent is invalid also under 35 U.S.C. § 112 for failing to provide an enabling disclosure or adequate written description to support its claims, as it provides no special programming, algorithm, or technology for implementing the claimed graphical user interface, nor does it disclose the requisite structures for its numerous means-plus-function claim limitations.

37. The '400 patent is invalid also as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, in light of prior art including, for example, U.S. Patent Nos. 6,401,183 (the "'183 patent") and 6,178,503 (the "'503 patent").

38. The '183 patent to Rafizadeh, titled "System and Method for Operating System Independent Storage Management," was filed on April 1, 1999. The '183 patent is directed to a storage manager that partitions secondary storage devices, which can be used, for example, in a computer system that contains multiple operating systems. ('183 patent at 2:10-11, 2:34, 2:57-59.) The '183 patent discloses and illustrates a nearly identical graphical user interface to that claimed in the '400 patent. With reference to Figure 20 shown below, the disclosed graphical user interface comprises a main menu (408), a selection bar (402), a secondary storage window (404), and a window providing information about the selected operating system (406). ('183 patent at FIG. 20; 11:62-13:20.)

13



39.    The '503 patent to Madden et al., titled "Managing Multiple Operating Systems on a Single Computer," was filed on September 11, 1998. The '503 patent is directed to "improved boot-time support for graphical user interfaces." ('503 patent at 3:52.) This involves pre-rendering menu options and other graphical components to bitmaps before boot-time and then displaying various bitmap combinations to provide a boot-time graphical user interface. The graphics components may include text in ASCII or non-ASCII fonts." (*Id.* at 3:49-57.) More specifically, the '503 patent describes "a boot-management software program which provides users with a single menu for all available operating systems and operating system modes on a given computer." (*Id.* at 5:3-9.)

40.    An actual and justiciable controversy exists between the Amazon Plaintiffs and GEMSA as to the invalidity of the claims of the '400 patent.

41.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Amazon Plaintiffs seeks a declaration of invalidity of the '400 patent.

### THIRD CLAIM – DECLARATION OF NON-INFRINGEMENT ('677 PATENT)

42.     The Amazon Plaintiffs restate and incorporate by reference each of the allegations in the preceding paragraphs of this complaint.

43.     GEMSA has alleged and continues to allege that use or incorporation of Amazon Plaintiffs' technology infringes of one or more claims of the '677 patent.

44.     The Amazon Plaintiffs have not and do not make, use, offer for sale, or import any product, service or technology that infringes or contributes to any infringement of any claim of the '677 patent either literally or under the doctrine of equivalents.  The Amazon Plaintiffs further have not and do not induce any infringement of any claim of the '677 patent.

45.     The '677 patent is generally directed to a computer system and method for switching between operating systems, or virtual computing systems, utilizing a modified version of the power down suspend feature of the basic input/output system (BIOS).  For example, claim 1 requires "means for selecting one of said virtual computer systems to become next operable before suspending a currently operational virtual computer system" and "means for suspending the currently operational virtual computer system in an active state."

46.     AWS does not directly or indirectly, literally or under the doctrine of equivalents, infringe claim 1 or any other claim of the '677 patent for at least the following reasons.  AWS does not have means to perform the functions required by the claim limitations "means for se-lecting one of said virtual computer systems to become next operable before suspending a cur-rently operational virtual computer system" and "means for suspending the currently operational virtual computer system in an active state," nor does AWS provide "means for switching of the virtual computer systems using a switch flag and BIOS ACPI solutions . . . wherein the switch

15

flag is a flag that is set up in storage to differentiate between suspend for fast switching and pow-er save suspend," nor does it provide its customers means to do so.  Neither AWS nor its cus-tomers, therefore, provide or use the claim requirement "means for selecting one of said virtual computer systems to become next operable before suspending a currently operational virtual computer system," "means for suspending the currently operational virtual computer system in an active state," and "means for switching of the virtual computer systems using a switch flag and BIOS ACPI solutions, and without initialization of power-on self test (POST) in the BIOS, wherein the switch flag is a flag that is set up in storage to differentiate between suspend for fast switching and power save suspend" of claim 1 and similar claim limitations in the other claims of the '400 patent.

47.     An actual and justiciable controversy exists between the Amazon Plaintiffs and GEMSA as to the Amazon Plaintiffs' non-infringement of the '677 patent.

48.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Amazon Plaintiffs seeks a declaration that they do not infringe any claim of the '677 patent.

### FOURTH CLAIM – DECLARATION OF INVALIDITY ('677 PATENT)

49.     The Amazon Plaintiffs restate and incorporate by reference each of the allegations in the preceding paragraphs of this complaint.

50.     GEMSA has alleged and continues to allege use or incorporation of Amazon Plaintiffs' technology infringes of claims of the '677 patent.

51.     Claims of the '677 patent are invalid because they fail to comply with one or more of the conditions and requirements for patentability set forth in 35 U.S.C. § 1 *et seq.*, in-cluding but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

52.    The '677 patent is invalid as anticipated or rendered obvious under 35 U.S.C. §§ 102 and/or 103, by prior art including, for example, U.S. Patent Publication No. 2001/0018717 (the "'717 publication") and U.S. Patent No. 6,393,560 (the "'560 patent").

53.    The '717 publication to Shimotono, titled "Computer System, Operating System Switching System, Operating System Mounting Method, Operating System Switching Method, Storage Medium, and Program Transmission Apparatus" was filed on February 26, 2001 and claims priority to a foreign application filed February 29, 2000. The '717 publication is directed to providing an environment where "switching among a plurality of operating systems coexisting in a single system can be performed at high speed." ('717 publication at para. 16.) The '717 publication explains that a first operating system is running ("First, assume that OS#3 is current-ly running"), and then "a user employs the user-interface 432 to request a change from OS#3 to OS#1." (*Id.* at para. 114.) In response, "OS#3 is shifted to the suspended state." (*Id.*) Thereaf-ter, "OS#1 can be restarted in the same manner as when it is resumed from a simple suspended state." (*Id.* at para. 115.) When the operating system is initiated, it "queries the BIOS concern-ing the memory configuration," and the "OS can be switched by using the suspend function and the resume function, without rebooting the OS." (*Id.* at paras. 116 and 135.)

54.    The '560 patent to Merrill et al., titled "Initializing and Restarting Operating Sys-tems" was filed on May 10, 1999 and claims priority to a CIP application filed April 30, 1998. The '560 patent describes "a method of enabling a computer system to run programs written for two different operating systems includes executing a first operating system. Information about the current state of the first operating system is stored to enable reinitialization. A second oper-ating system is executed and the first operating system is reinitialized using the stored infor-mation." ('560 patent at 2:15-22.)

55.     In addition to the '717 publication and the '560 patent, the '677 patent is invalid as anticipated or rendered obvious by, for example, U.S. Patent Nos. 6,385,721, 6,727,920, and Linux GRUB.

56.     The '677 patent is also invalid under, *inter alia*, 35 U.S.C. §§ 101 and 112 for its purely functional claiming. For example, claim 1 recites four "means-plus-function" limitations, purporting to claim a result rather than any specific way of achieving that result. The specification does not disclose sufficient structure for performing the claimed functions.

57.     An actual and justiciable controversy exists between the Amazon Plaintiffs and GEMSA as to the invalidity of the claims of the '677 patent.

58.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Amazon Plaintiffs seeks a declaration of invalidity of the '677 patent.

## PRAYER FOR RELIEF

WHEREFORE, the Amazon Plaintiffs respectfully request judgment in their favor and against GEMSA as follows:

A.      A declaration that AWS and VADATA have not and do not infringe, either directly or indirectly, contributorily or by inducement, any valid and enforceable claim of the '400 patent, literally or under the doctrine of equivalents;

B.      A declaration that AWS, and VADATA have not and do not infringe, either directly or indirectly, contributorily or by inducement, any valid and enforceable claim of the '677 patent, literally or under the doctrine of equivalents;

C.      A declaration that the '400 patent is invalid for failure to satisfy one or more of the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and 112;

D.      A declaration that the '677 patent is invalid for failure to satisfy one or more of

the conditions for patentability specified in Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, and 112;

      C.     An injunction against GEMSA, and all persons acting on its behalf or in concert with it, restraining them from further prosecuting or instituting any action alleging that any method, product, or technology of the Amazon Plaintiffs, or others' use thereof, infringes any claim of any of the GEMSA Patents;

      E.     A declaration that this case is exceptional and that the Amazon Plaintiffs are entitled to an award of reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

      F.     Any such other and further relief as the Court may deem just and fair.

Respectfully submitted,

By:

Robert A. Angle (VSB No. 37691)
robert.angle@troutmansanders.com
Laura Anne Kuykendall (VSB No. 82318)
la.kuykendall@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1468
Facsimile: (804) 697-1339

*Of counsel:*

J. David Hadden
Email: dhadden@fenwick.com
Saina S. Shamilov
Email: sshamilov@fenwick.com
Ravi Ranganath
Email: rranganath@fenwick.com
Dargaye Churnet
Email: dchurnet@fenwick.com
(Applications for admission *pro hac vice* to be
filed)
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200

Dated:    July 22, 2016

Counsel for Plaintiffs AMAZON.COM, INC.,
AMAZON WEB SERVICES, INC.,
and VADATA, INC.