Ashley I. Kissinger (No. 193693)
email: akissinger@lskslaw.com
Matthew E. Kelley (*pro hac vice* motion pending)
Email: mkelley@lskslaw.com
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1888 Sherman Street, Suite 370
Denver, CO  80203
Phone: (303) 376-2407
Fax: (303) 376-2401

Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com
Kevin Vick (No. 220738)
email: kvick@jassyvick.com
JASSY VICK CAROLAN
601 Montgomery Street, Suite 850
San Francisco, CA  94111
Phone: (415) 539-3399
Fax: (415) 539-3394

Attorneys for Plaintiff
Electronic Frontier Foundation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY MANAGEMENT (SA) PTY LTD,<br><br>Defendant. | Case No. 3:17-CV-02053-MEJ<br><br>**ELECTRONIC FRONTIER FOUNDATION'S NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*Request for Judicial Notice and Declaration of Ashley I. Kissinger, Esq. with Exhibits A-C; [Proposed] Memorandum Opinion and Order filed concurrently herewith*<br><br>**Status Report Due:  July 20, 2017<br>Hearing Date: September 7, 2017<br>Time:  10:00 a.m.** |

**PLEASE TAKE NOTICE** that Plaintiff Electronic Frontier Foundation ("EFF") hereby states that on Thursday, September 7, 2017, at 10:00 a.m., it will move for a default judgment on its claims against Defendant, Global Equity Management (SA) Pty Ltd. ("GEMSA"), pursuant to Rule 55 of the Federal Rules of Civil Procedure.

In this action, EFF seeks a declaration that an Order and Injunction restricting its speech, which was entered by an Australian court on October 31, 2016, is repugnant to the First Amendment and California law, and is therefore unenforceable pursuant to the SPEECH Act, 28 U.S.C. §§ 4101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

EFF is entitled to such a declaration because the law applied by the court in Australia is far less protective of speech than the law of the United States and California, and neither this nor any other U.S. court would hold EFF liable under those applicable laws.  28 U.S.C. §§ 4101 *et seq.* & 2201.  As set forth in the Memorandum of Points and Authorities that follows, the statements GEMSA challenges in EFF's website article are (1) not alleged to be false; (2) not about GEMSA; (3) substantially true; (4) constitutionally protected statements of opinion; and/or (5) privileged under California's fair report privilege.

EFF is also entitled to the declaration because the Australian court's adjudication did not comport with the due process guarantees of the United States Constitution.

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on all pleadings, exhibits, files and records in this action; and on such other argument as may be received by the Court.

For the foregoing reasons, EFF respectfully requests that this Court grant its Motion for Default Judgment and afford it such other and further relief as the Court may deem just and proper.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION AND STATEMENT OF ISSUES ................................................... 1

FACTS AND PROCEDURAL HISTORY ................................................................... 1

ARGUMENT ................................................................................................................ 5

I.     Standard For Entry Of Default Judgment ......................................................... 5

II.    This Court Has Jurisdiction .............................................................................. 6

III.   Federal Law Expressly Provides For The Relief EFF Seeks ............................ 7

     A.    The Injunction is subject to the Act ....................................................... 8

     B.    EFF is entitled to the same relief under the Declaratory Judgment Act .............. 10

IV.   EFF Is Entitled To Relief Because The Injunction Is Repugnant To The United States Constitution And California Law .......................................................... 11

     A.    The Australian court's adjudication did not provide as much protection for freedom of speech as the First Amendment and California law .................... 11

          1.    The Injunction is an unconstitutional prior restraint ................................ 11

          2.    The Injunction was entered without California procedural protections for defamation actions ............................................................ 14

     B.    EFF would not have been found liable for defamation by this Court applying California law and the First Amendment ................................ 15

          1.    Statements 2 and 5-9 are not alleged to be false ...................................... 15

          2.    Statements 5 and 6 are not about GEMSA ............................................... 15

          3.    Statements 2 and 5-7 are demonstrably true ............................................ 16

          4.    Statements 1, 3-4, and 8-9 are protected statements of opinion .............. 17

               a.    Rhetorical hyperbole ................................................................. 17

               b.    Opinions based on disclosed facts ............................................ 19

          5.    Statements 2 and 7 are also protected by the Fair Report Privilege ................................................................................................ 21

i

C.     The exercise of personal jurisdiction by the Australian court over EFF

did not comport with constitutional due process requirements ........................... 22

1.     Australian courts do not have personal jurisdiction over EFF ................. 22

2.     The case initiating documents were not properly served on EFF ............ 25

CONCLUSION ......................................................................................................................... 25

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackermann v. Levine,*
    788 F.2d 830 (2d Cir. 1986).............................................................................................25

*Adelson v. Harris,*
    973 F. Supp. 2d 467 (S.D.N.Y. 2013)............................................................................20

*Air Wisconsin Airlines Corp. v. Hoeper,*
    134 S. Ct. 852 (2014).....................................................................................................15

*Alexander v. United States,*
    509 U.S. 544 (1993).......................................................................................................11

*Baker v. Los Angeles Herald Examiner,*
    42 Cal. 3d 254 (1986)....................................................................................................19

*Balboa Island Village Inn, Inc. v. Lemen,*
    40 Cal. 4th 1141 (2007).................................................................................................13

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006).....................................................................................................14

*Blatty v. New York Times Co.,*
    42 Cal. 3d 1033 (1986)..................................................................................................15

*Boschetto v. Hansing,*
    539 F.3d 1011 (9th Cir. 2008).......................................................................................22

*Brayton Purcell LLP v. Recordon & Recordon,*
    606 F.3d 1124 (9th Cir. 2010).......................................................................................22

*Brockmeyer v. May,*
    383 F.3d 798 (9th Cir. 2004).........................................................................................25

*Calder v. Jones,*
    465 U.S. 783 (1984).......................................................................................................22

*Carroll v. President & Commissioners of Princess Anne,*
    393 U.S. 175 (1968).......................................................................................................13

*Cascades Computer Innovation LLC v. RPX Corp.,*
    2013 WL 316023 (N.D. Cal. Jan. 24, 2013)................................................................19

*CBS Inc. v. Davis,*
    510 U.S. 1315 (1994).....................................................................................................13

iii

*Chang v. Cargill, Inc.*,
    168 F. Supp. 2d 1003 (D. Minn. 2001) ...................................................................18

*Cochran v. NYP Holdings, Inc.*,
    210 F.3d 1036 (9th Cir. 2000) ............................................................................19

*Columbia Broadcasting Systems, Inc. v. United States District Court*,
    729 F.2d 1174 (9th Cir. 1984) ............................................................................12

*Crane v. Arizona Republic*,
    972 F.2d 1511 (9th Cir. 1992) ............................................................................21

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ............................................................................................6

*Damon v. Ocean Hills Journalism Club*,
    85 Cal. App. 4th 468 (4th Dist. 2000) ................................................................14

*DFSB Kollective Co. v. Bourne*,
    2012 WL 2376209 (N.D. Cal. June 22, 2012) ....................................................25

*Dodds v. American Broadcasting Co.*,
    145 F.3d 1053 (9th Cir. 1998) ......................................................................17, 19

*Evans v. Evans*,
    162 Cal. App. 4th 1157 (4th Dist. 2008) .......................................................12, 13

*Ferlauto v. Hamsher*,
    74 Cal. App. 4th 1394 (2d Dist. 1999) ...............................................................18

*Franklin v. Dynamic Details, Inc.*,
    116 Cal. App. 4th 375 (4th Dist. 2004) ..............................................................20

*G. Fruge Junk Co. v. City of Oakland*,
    637 F. Supp. 422 (N.D. Cal. 1986) .......................................................................8

*Gibson v. Fleming*,
    2013 WL 552133 (E.D. Cal. Feb. 13, 2013) .......................................................11

*Gilbert v. National Enquirer, Inc.*,
    43 Cal. App. 4th 1135 (2d Dist. 1996) ...............................................................13

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ..............................................................................6

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) .................................................................................................8

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) .............................................................................................22

iv

*Joude v. WordPress Foundation*,
  2014 WL 3107441 (N.D. Cal. July 3, 2014) ..................................................................9

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006) .......................................................................................16

*Levine v. United States District Court*,
  764 F.2d 590 (9th Cir. 1985) ..................................................................................12, 13

*Love v. Associated Newspapers, Ltd.*,
  611 F.3d 601 (9th Cir. 2010) ............................................................................6, 22, 23

*M.I.C. Ltd. v. Bedford Township*,
  463 U.S. 1341 (1983) .....................................................................................................9

*Makaeff v. Trump University, LLC*,
  715 F.3d 254 (9th Cir. 2013) ........................................................................................14

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991) ......................................................................................................16

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ......................................................................................................10

*Metabolife International, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ........................................................................................14

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ..........................................................................................................17

*Morse v. County of Merced*,
  2016 WL 3254034 (E.D. Cal. June 13, 2016) ..............................................................15

*New York Times Co. v. United States*,
  403 U.S. 713 (1971) ................................................................................................12, 13

*National Socialist Party of America v. Village of Skokie*,
  432 U.S. 43 (1977) ..........................................................................................................9

*Near v. Minnesota ex rel. Olson*,
  283 U.S. 697 (1931) ......................................................................................................12

*Nebraska Press Association v. Stuart*,
  423 U.S. 1327 (1975) ......................................................................................................9

*Nebraska Press Association v. Stuart*,
  427 U.S. 539 (1976) ..........................................................................................11, 12, 13

*NewGen, LLC v. Safe Cig, LLC*,
  840 F.3d 606 (9th Cir. 2016) ..........................................................................................5

v

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999) ................................................................20

*Oakley, Inc. v. McWilliams*,
    879 F. Supp. 2d 1087 (C.D. Cal. 2012) .............................................................13

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ...............................................................................6

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ................................................................................15

*Reader's Digest Association v. Superior Court*,
    37 Cal. 3d 244 (1984) ..........................................................................................15

*Rio Properties, Inc. v. Rio International Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ..............................................................................23

*South Coast Newspapers, Inc. v. Superior Court*,
    85 Cal. App. 4th 866 (4th Dist. 2000).............................................................12, 13

*Securities and Exchange Commission v. Ross*,
    504 F.3d 1130 (9th Cir. 2007) ..............................................................................25

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................................22

*Sipple v. Foundation for National Progress*,
    71 Cal. App. 4th 226 (2d Dist. 1999)....................................................................14

*Standing Commission on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ................................................................................19

*Stevens v. Mavent, Inc.*,
    2008 WL 2824956 (C.D. Cal. July 21, 2008).......................................................18

*Taylor v. National Broadcasting Co.*,
    1994 WL 762226 (Cal. Super. Ct. Sept. 29, 1994)...............................................13

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (May 22, 2017)..............................................................................2

*Trout Point Lodge, Ltd. v. Handshoe*,
    729 F.3d 481 (5th Cir. 2013) ............................................................................7, 23

*Underwager v. Channel 9 Australia*,
    69 F.3d 361 (9th Cir. 1995) ..................................................................................18

*United Tactical Systems, LLC v. Real Action Paintball, Inc.*,
    143 F. Supp. 3d 982 (N.D. Cal. 2015) ..................................................................14

vi

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) .................................................................................................25

*Wadleigh Industries, Inc. v. Drilling Rig Atlantic Tiburon 2*,
2014 WL 1024019 (S.D. Tex. Mar. 17, 2014) ........................................................5

*Walters v. Statewide Concrete Barrier, Inc.*,
2006 WL 2527776 (N.D. Cal. Aug. 30, 2006)........................................................5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) ...........................................................................7, 10

**Statutes**

28 U.S.C.
§ 1257..........................................................................................................................9
§ 2101..........................................................................................................................9
§ 2201.....................................................................................................................6, 10
§ 4101................................................................................................................7, 8, 9
§ 4102...........................................................................................................8, 11, 22
§ 4104......................................................................................................................6, 8

**Other Authorities**

FEDERAL RULE OF CIVIL PROCEDURE 12...........................................................................5

FEDERAL RULE OF CIVIL PROCEDURE 55...........................................................................5

CAL. CIV. CODE § 47(d) .......................................................................................................21

CAL. CIV. PROC. CODE § 425.16 .........................................................................................14

SPEECH Act, Pub. L. No. 111-223, § 2(2), 124 Stat. 2380, 2380 (2010) (codified at
28 U.S.C. § 4101) .................................................................................................7, 8

### INTRODUCTION AND STATEMENT OF ISSUES

In the United States, there is a constitutional right to criticize the patent litigation system and those who abuse it, especially where that criticism is based on disclosed, true facts. Plaintiff, the Electronic Frontier Foundation ("EFF"), exercised this basic right in an article posted on its website, criticizing Defendant Global Equity Management (SA) Pty Ltd ("GEMSA") for obtaining what EFF believes is a frivolous patent, and then suing other companies for allegedly infringing that patent. GEMSA has sought to evade EFF's constitutional right to express this opinion by suing it in Australia, where there is far less protection for speech. That forum-shopping strategy paid off: An Australian court issued an injunction requiring EFF to remove the article from its website and prohibiting EFF from discussing GEMSA's intellectual property altogether.

This injunction would never withstand constitutional scrutiny in the United States, as it is an unlawful prior restraint on speech. Moreover, the article is not actionable under any theory of American law, and the injunction was entered in violation of American due process standards. The injunction is thus repugnant to the public policy and law of the United States and California.

EFF seeks a declaration from this Court saying so, which Congress has expressly authorized under the SPEECH Act. EFF needs such a declaration to lift the cloud the Australian injunction places over its continued communications to the public regarding GEMSA. EFF also needs this Court's declaration to combat all efforts GEMSA might make to enforce the injunction, whether in United States courts, or, of more immediate concern, by pressuring internet search engines and news aggregators to "deindex" the article, effectively censoring EFF's speech on a matter of legitimate concern to United States citizens.

GEMSA has failed to appear in this action. Accordingly, EFF respectfully requests that the Court enter the proposed order submitted herewith, which grants this Motion for Default Judgment.

### FACTS AND PROCEDURAL HISTORY

Since 1990, EFF has been the leading non-profit organization protecting civil liberties in the digital world. Compl. ¶ 4, Apr. 12, 2017, Doc. No. 1. One aspect of EFF's work is advocating for

1

reform of the U.S. patent system, and as part of that advocacy, EFF publishes "Stupid Patent of the Month" articles to "illustrate by example just how badly reform is needed." *Id.* ¶¶ 9-11 & Ex. 2.[1]

Last year, EFF noticed that GEMSA had filed more than three dozen lawsuits in the Eastern District of Texas asserting that prominent companies infringed two patents GEMSA owns, including U.S. Patent No. 6,690,400 ("the '400 patent" or "the patent"). *See* Compl. ¶¶ 14-15 & Ex. 1 (discussing the suits). Upon reviewing the '400 patent, EFF decided to name it as the Stupid Patent of the Month for June 2016. *See* Compl. ¶ 15. In that online article, EFF described the '400 patent and GEMSA's lawsuits, and sharply criticized both. *Id.* ¶¶ 16-18 & Ex. 5 (the "Article").

**GEMSA's Defamation Threats and Australian Lawsuit**

GEMSA took issue with the Article, characterizing it as "defamatory, false and malicious slander," and demanded that EFF issue a public retraction, remove the Article from the internet, and pay GEMSA $750,000. Compl. ¶¶ 20-21 & Ex. 10. GEMSA did not respond to EFF's request for clarification concerning what was defamatory about the Article, and instead it filed suit against EFF in the Supreme Court of South Australia. Compl. ¶¶ 22-26 & Exs. 12-13.

In the suit, GEMSA asserted causes of action against EFF for violation of Australia's Competition and Consumer Act by way of alleged "misleading and deceptive conduct," and for common law "negligent misstatement of fact." Compl. ¶ 27 & Ex. 14. The Statement of Claim sets forth nine "representations" in the Article that GEMSA asserts are "misleading or deceptive or likely to mislead or deceive" (hereafter, the challenged "Statements"), *see id.*:

> **Statement 1**: The patent is "stupid."
> GEMSA's assertion: The patent "is not in fact 'stupid.'"
>
> **Statement 2**: The patent "has claimed the idea of using virtual cabinets to graphically represent data storage and organisation."
> GEMSA's assertion: This description "does not accurately depict the complexities involved with the Patent."

---

[1] EFF's advocacy of patent reform through an amicus brief aided a recent victory in the United States Supreme Court. In *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (May 22, 2017), the Court restricted the available venues for bringing patent infringement cases, the effective result of which is that fewer cases will be filed in the Eastern District of Texas, a court that has received a disproportionate number of such cases in recent years. *See* Daniel Nazer, *Supreme Court Ends Texas' Grip On Patent Cases*, EFF (May 22, 2017), https://www.eff.org/deeplinks/2017/05/supreme-court-ends-texas-grip-on-patent-cases.

**Statement 3**:   GEMSA "is suing anyone who runs a website."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "is suing *just about* anyone who runs a website.")
<u>GEMSA's assertion</u>:  It "does not in fact sue anyone who runs a website."

**Statement 4**:   GEMSA "is a classic patent troll."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "seems to be" a classic patent troll.)
<u>GEMSA's assertion</u>:  It is "not in fact a classic patent troll."

**Statement 5**:   GEMSA "once offered a product that allowed its users to run multiple operating systems on personal computers with x86-compatible processors."  (This alleged "representation" misquotes the Article.  The Article said that *Flash VOS*, the company that obtained the patent from the USPTO, once offered such a product.)
<u>GEMSA's assertion</u>:  This description "does accurately portray the complexities and uses involved with its product."  (Presumably GEMSA intended to insert the word "not" after "does.")

**Statement 6**:   GEMSA's "product 'FLASH VOS' did not invent partitions, did not invent virtual machines and did not invent running multiple operating systems on a single computer."  (This alleged "representation" misquotes the Article.  The Article made these statements about *the company Flash VOS*, not about a "product" owned by GEMSA.)
<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

**Statement 7**:   GEMSA's "patent claims require very specific structures, namely a 'secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'"  (This alleged "representation" misquotes the Article.  The Article said "*the '400 patent's* claims require very specific structures.  *For example, claim 1* requires 'a secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'")
<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

**Statement 8**:   GEMSA "seems to think that anyone with a website that links to hosted content infringes its patent."
<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

**Statement 9**:   GEMSA "issued patent claims in the Eastern District of Texas because local rules favour patent trolls."  (This alleged "representation" misquotes the Article.  The Article said "[e]very one of [GEMSA's] cases was filed in the Eastern District of Texas," and noted that that court's local rules "favor patent trolls like GEMSA.")
<u>GEMSA's assertion</u>:  EFF "did not have reasonable grounds for making" this statement.

**<u>The Australian Injunction and its Effects on EFF</u>**

EFF did not appear in the action, and on October 31, 2016, the Australian court issued an "Order with Injunction" against EFF.  Compl. ¶ 34 & Ex. 18 (the "Injunction").  The Injunction

3

orders EFF to immediately remove the Article from its website and not to otherwise disseminate it. *Id.* It also states: "Until further order [EFF is] restrained from publishing any content with respect to the Plaintiff's intellectual property," a statement that, on its face, applies to speech about other GEMSA patents that EFF has never discussed. *Id.* It contains no discussion of the court's analysis.

GEMSA did not mail the case initiating documents to EFF, nor did it serve them via the Justice Department pursuant to the Hague Convention, which governs international service of documents in civil litigation. Compl. ¶ 23. GEMSA did, however, purport to serve a copy of the Injunction on EFF via the Justice Department. *Id.* ¶ 34. GEMSA then emailed a copy of the Injunction to EFF, demanding that EFF take down the Article and "make immediate arrangements for any links to the Article to be removed from the world wide web including any and all other websites which references [sic] the infringing [sic] material," and threatening "to do so at [EFF]'s expense" if EFF did not do so voluntarily. Compl. ¶ 35 & Ex. 19.

EFF has not removed the Article from its website and does not intend to do so. Compl. ¶ 37; *see also id.* ¶ 36 & Ex. 20. Nevertheless, the Injunction has cast a shadow over the legality of EFF's speech about GEMSA's '400 patent and litigation, and it is chilling EFF's further speech. Compl. ¶ 38. Given the present uncertainty concerning the Injunction's enforceability in the United States, EFF feels constrained from speaking further about these topics – indeed, about *any* of GEMSA's patents, since the Injunction sweeps that broadly – aside from simply reporting about this action to its readers. *Id.*

Also of significant concern to EFF is that, absent an order from a United States court declaring the Injunction repugnant to U.S. law and unenforceable here, GEMSA will follow through on its counsel's threat and successfully use the Injunction to persuade American search engines to "deindex" the Article, which would effectively preclude EFF from speaking publicly on this important U.S. legal and political issue altogether. *Id.* ¶ 39.[2]

---

[2] When an article has been "deindexed," any search that otherwise would have included the webpage in the list of results will no longer produce a list containing that webpage. Search engines generally permit users to submit "removal requests" requesting the deindexing of particular webpages. *See, e.g.*, Compl. ¶ 39 n. 25 & Ex. 21 (Google's "Legal Removal Request" page).

4

Accordingly, EFF filed this declaratory judgment action on April 12, 2017 and served it on GEMSA in Australia, pursuant to the Hague Convention, on May 2, 2017.  Am. Aff. of Service, June 30, 2017, Doc. No. 12.  GEMSA's deadline to answer or respond to the Complaint was May 23, 2017.  Fed. R. Civ. P. 12(a)(1); *see also, e.g.*, *Wadleigh Indus., Inc. v. Drilling Rig Atl. Tiburon 2*, 2014 WL 1024019, at *2 (S.D. Tex. Mar. 17, 2014) (Dutch defendant served via the Hague Convention had twenty-one days to respond to the complaint).  It has not appeared in this action.

## ARGUMENT

## I.    Standard For Entry Of Default Judgment

Federal Rule of Civil Procedure 55 governs default judgments.  As this Court has explained, default judgments "are appropriate where," as here, "the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered."  *Walters v. Statewide Concrete Barrier, Inc.*, 2006 WL 2527776, at *3 (N.D. Cal. Aug. 30, 2006).  Because a defendant's failure to participate makes a decision on the merits impractical, "'default judgments are more often granted than denied.'"  *Id.* at *6 (citation omitted).

The Court may evaluate the following factors in considering a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citation omitted)).  The complaint's factual allegations are taken as true, and granting a default judgment is appropriate "[i]f the court finds that the plaintiff would have likely succeeded on the merits of its substantive claim had the defendant not defaulted."  *Walters*, 2006 WL 2527776, at *3-4.

All of these factors weigh in favor of granting this motion.  EFF is operating under the cloud of an Australian court injunction censoring its speech.  While this Court cannot "undo" that foreign injunction, it can lift that cloud by providing assurance that the injunction will not be enforced here, where EFF operates and has assets, and where its employees reside.  Plaintiff's Complaint, the exhibits thereto, and this motion demonstrate that there is no possibility of a dispute of material fact, that EFF's Article is not actionable under U.S. law, and that the Injunction was

5

obtained in violation of EFF's due process rights – *i.e.*, this is precisely the kind of situation the SPEECH Act was designed to remedy.  And GEMSA, which is actively litigating patent claims in the United States, including in the Northern District of California, has not appeared, much less explained why its failure to respond is "excusable neglect."[3]  A default judgment against GEMSA is warranted.

## II.     This Court Has Jurisdiction

This Court has jurisdiction to grant the relief EFF seeks.  The Court has subject matter jurisdiction pursuant to both the SPEECH Act, 28 U.S.C. § 4104, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See* Section III *infra*.

The Court also has personal jurisdiction over GEMSA, an Australian company.  Where, such as here, subject matter jurisdiction is based on a federal question, a federal court applies the long-arm statute of the state in which it sits.  *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  California's long-arm statute provides that personal jurisdiction extends as far as federal due process allows.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (applying California law).

By this standard, GEMSA is subject to specific personal jurisdiction, which exists where:

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted).  To decide whether the first prong is met in tort cases, the Ninth Circuit applies an "effects test" which "is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state."  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010).

---

[3] GEMSA's cases in this district include *Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.*, 3:17-cv-02178-WHA and *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA. Attorneys have appeared for GEMSA in both of these proceedings, although GEMSA's counsel is seeking leave to withdraw in the Alibaba case.  *See* Motion to Withdraw as Attorney, *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA (June 15, 2017) (Doc. No. 103).

That test is satisfied here as demonstrated by the factually similar case of *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). In *Yahoo*, a French court entered two injunctions ordering the search engine to disable access from France to certain websites. *Id.* at 1202-03. Yahoo filed a declaratory judgment action, and this Court ruled that the injunctions were unenforceable as repugnant to the First Amendment. *Id.* at 1204.

On appeal, the Ninth Circuit held that this Court had specific personal jurisdiction because of three contacts the defendants had with California. First, the defendants sent a cease and desist letter to Yahoo at its offices in California. *Id.* at 1208. Second, the defendants served pleadings from the French litigation on Yahoo in California. *Id.* at 1209. And of most significance to the court, the defendants obtained court orders (albeit from a French court) requiring Yahoo to take actions at its offices in California to disable access from France to the offending sites. *Id.* at 1209-11. Although the defendants had taken no action to enforce the orders in the United States, they did not make a binding promise not to do so. *Id.* at 1210-11. "[E]ven if the French court's orders are not enforced against Yahoo!," the court noted, "the very existence of those orders may be thought to cast a shadow on the legality of Yahoo!'s current policy." *Id.* at 1211.

GEMSA's acts are nearly identical to those of the defendants in *Yahoo*. It sent two letters to EFF's San Francisco offices, first threatening to sue and then threatening additional actions if EFF did not make a six-figure "damages" payment. Compl. ¶¶ 20-21, 35 & Exs. 10, 19. It filed suit in Australia and successfully obtained an order that requires EFF to take actions in California to remove content from its website. Compl. ¶¶ 23-32, 34, Exs. 12-15. And it purported to serve the Injunction on EFF in San Francisco. Compl. ¶ 34 & Ex. 18.

This Court therefore has personal jurisdiction over GEMSA.

### III.     Federal Law Expressly Provides For The Relief EFF Seeks

This action falls squarely within the declaratory judgment provisions of the SPEECH Act, 28 U.S.C. § 4101, *et seq.* Enacted in 2010, the Act provides protections for U.S. persons against "libel tourism," which is "a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013); *see also* Securing the Protection of our

7

Enduring and Established Constitutional Heritage Act (SPEECH Act), Pub. L. No. 111-223, § 2(2), 124 Stat. 2380, 2380 (2010) (codified at 28 U.S.C. § 4101) (congressional finding that some plaintiffs are obstructing free speech "by seeking out foreign jurisdictions that do not provide the full extent of free-speech protections . . . available in the United States, and suing a United States author or publisher" there). The statute provides that U.S. courts "shall not recognize or enforce a foreign judgment for defamation" unless the court determines that the law applied by the foreign jurisdiction is at least as speech-protective as the First Amendment and the law of the forum state, or that the defendant "would have been found liable for defamation by a domestic court applying" U.S. law. 28 U.S.C. § 4102(a). Such a judgment also cannot be enforced where the foreign court's exercise of jurisdiction did not comport with the U.S. Constitution's due process requirements. *Id.* § 4102(b)(1). A U.S. person subjected to a foreign defamation judgment that runs afoul of these provisions may bring a declaratory judgment action in federal court and obtain a declaration that the foreign order is "repugnant to the Constitution or laws of the United States." *Id.* § 4104(a)(1).

### A.     The Injunction is subject to the Act

The Injunction is a "foreign judgment for defamation" under the SPEECH Act's defined terms. "Defamation" is defined broadly to include "*any*" cause of action "alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." *Id.* § 4101(1). The statute thus aligns with the settled legal principle that First Amendment protections for defamation apply to all claims premised on an injurious falsehood, no matter the cause of action the plaintiff pleads. *E.g.*, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (plaintiffs cannot evade First Amendment restrictions on defamation actions by pleading claims for other torts such as intentional infliction of emotional distress); *G. Fruge Junk Co. v. City of Oakland*, 637 F. Supp. 422, 425 (N.D. Cal. 1986) (where "communication is protected by the first amendment, it cannot form a basis for liability under California unfair competition law") (citation omitted).

The causes of action GEMSA pled in the Australian action fit this definition comfortably. GEMSA's Statement of Claim alleges that certain statements in the Article were false, and that others were "misleading and deceptive" or were "negligent misstatements of fact." Compl. ¶ 27 &

8

Ex. 14 ¶¶ 5-18.  GEMSA's "Director and Shareholder," Schumann Rafizadeh, further alleged in affidavits he submitted to the Australian court that the Article damaged GEMSA's reputation and caused him emotional distress.  *See, e.g.*, Compl. ¶¶ 25-26 & Ex. 13 ¶ 6 (he was "hurt and insulted" upon reading the Article); Compl. Ex. 15 ¶ 9 (asserting that GEMSA's "damaged credibility" has made infringement settlement negotiations more difficult).

The Injunction is a "foreign judgment" under the Act, defined as "a final judgment rendered by a foreign court."  28 U.S.C. § 4101(4).  While federal courts have not yet interpreted what "final judgment" means in the specific context of the SPEECH Act, the Supreme Court has repeatedly held that state court orders enjoining speech are "final orders" subject to appeal or stay pursuant to two other provisions in the same title – 28 U.S.C. §§ 1257 and 2101.  *See, e.g.*, *M.I.C. Ltd. v. Bedford Twp.*, 463 U.S. 1341, 1342-43 (1983) (Brennan, J., in chambers) (staying, pursuant to 28 U.S.C. §§ 1257 and 2101, state court injunction prohibiting theater from exhibiting sexually oriented films during pendency of obscenity litigation); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 43-44 (1977) (holding state court injunction prohibiting march was reviewable as collateral order pursuant to 28 U.S.C. § 1257).  As Justice Blackmun explained, an injunction on speech is reviewable as a final order because of the First Amendment interests involved:

> Where, however, a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment. . . .  To this extent, any First Amendment infringement that occurs with each passing day is irreparable. . . . In this sense, delay itself is a final decision.

*Nebraska Press Ass'n v. Stuart*, 423 U.S. 1327, 1329-30 (1975) (Blackmun, J., in chambers).

The same rationale applies equally here, and the Injunction thus should be considered a "final judgment" under the Act.  An analogous decision was reached by this Court in *Joude v. WordPress Found.*, 2014 WL 3107441 (N.D. Cal. July 3, 2014).  In *Joude*, this Court exercised supplemental jurisdiction over certain claims removed under 28 U.S.C. § 4103, which provides for removal of an "action brought in a State domestic court to enforce a foreign judgment for defamation," where the "foreign judgment" at issue was an order issued by a French court mandating the take-down of an allegedly defamatory blog post.  *See also* Section IV.A.1 *infra*.

9

Moreover, the Injunction, in effect now for eight months, does not suggest that the order to remove the Article is temporary or subject to further review.  Compl. ¶ 34 & Ex. 18 at 2.  Indeed, it suggests precisely the opposite:  The particular provision of the Injunction censoring EFF's speech about GEMSA's intellectual property states that that prohibition remains in effect "[u]ntil further order," but that caveat is *not* included in the provisions demanding removal of the Article.  *Id.*[4]

### B.   EFF is entitled to the same relief under the Declaratory Judgment Act

As illustrated by the proceedings in *Yahoo*, the Declaratory Judgment Act also authorizes the relief EFF seeks.  433 F.3d at 1223.  The Act provides that, "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a).  The "case of actual controversy" requirement is identical to the "case or controversy" requirement for a matter to be justiciable under Article III.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  Thus, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as being "real and substantial" and "admi[tting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 127 (citation and internal marks omitted).

For the same reasons that the Injunction functions as a final judgment under the SPEECH Act, the dispute between EFF and GEMSA is an actual controversy under these standards, and therefore EFF is entitled to the same relief under the Declaratory Judgment Act.[5]

---

[4] GEMSA has not informed EFF about any further developments in the Australian case.  A review of the Australian court's website indicates that no final judgment has been issued.  *See Judgments*, Courts Admin. Auth. of S. Australia, http://www.courts.sa.gov.au/Judgments/Pages/default.aspx (last visited July 11, 2017).

[5] Although the declaratory judgment action in *Yahoo* was dismissed, the grounds asserted for dismissal there are not present here.  In *Yahoo*, three judges found personal jurisdiction lacking, and three other judges found the case was not ripe for adjudication.  Because six of eleven judges voted for dismissal, the court ordered dismissal.  433 F.3d at 1201.  As set forth in Section II above, this court does have personal jurisdiction over GEMSA according to the controlling opinion by eight judges on that issue in the *Yahoo* case.  And the facts that caused three judges to conclude *Yahoo* was not ripe are not present here.  Those judges concluded the case was premature because (1) the French court's orders required Yahoo to disable certain content for users *in France*, not in the United States, and (2) the plaintiffs were not likely to attempt to enforce the orders here because they conceded that Yahoo's voluntary actions taken during the litigation brought it into compliance.  *Id.* at 1212-13.  Here, in contrast, (1) the Injunction regulates EFF's speech in the United States; and (2) GEMSA has expressly threatened to enforce it here given EFF's refusal to comply with it.

10

---

**IV.    EFF Is Entitled To Relief Because The Injunction Is Repugnant To The United States Constitution And California Law**

As discussed above, the SPEECH Act specifically authorizes the relief EFF seeks unless *either* (1) the law applied by the Australian court "provided at least as much protection for freedom of speech and press" as would be provided by the First Amendment and California law; *or* (2) EFF "would have been found liable for defamation" by a California court.  28 U.S.C. § 4102(a)(1).

Neither is the case.  And EFF is entitled to relief for an independent reason as well:  The Australian action did not comport with U.S. due process requirements.  *Id.* § 4102(b)(1).

**A.    The Australian court's adjudication did not provide as much protection for freedom of speech as the First Amendment and California law.**

It is apparent from the face of the Injunction, and the Statement of Claim and Interlocutory Application that led to its entry, that the law applied by the Australian court did not provide as much protection for EFF's speech as American law.  The Injunction is a prior restraint order that is facially unconstitutional under United States law.  It is also overbroad under the First Amendment because it prohibits *all* future speech by EFF about *any* of GEMSA's intellectual property.  And the Australian proceeding did not afford EFF the kind of procedural protection from GEMSA's baseless claims that would have been afforded by California's Anti-SLAPP statute, which EFF would have invoked had GEMSA brought its suit here.

**1.    The Injunction is an unconstitutional prior restraint**

It is a bedrock principle of First Amendment law that prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights" and therefore presumptively unconstitutional.  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).  Prior restraints include not only content-based prohibitions on speech before its actual expression but also government orders to cease publication (such as orders to take down online content) before the speech has been adjudicated to be unlawful.  *See, e.g.*, *Alexander v. United States*, 509 U.S. 544, 550 (1993) ("Temporary restraining orders and permanent injunctions—*i.e.*, court orders that actually forbid speech activities—are classic examples of prior restraints."); *Gibson v. Fleming*, 2013 WL 552133, at *3 (E.D. Cal. Feb. 13, 2013) (denying, as request for unconstitutional prior

11

restraint, plaintiff's motion for injunction ordering defendant to take down allegedly defamatory website).  Thus, both prongs of the Injunction – that ordering removal of the Article from EFF's website and that prohibiting EFF's future speech – are prior restraints.

The U.S. Supreme Court has never upheld a prior restraint of allegedly defamatory speech. Indeed, it has repeatedly held that prior restraints, to the extent they are allowed at all for non-criminal speech, are justifiable only in the most extreme (and theoretical) cases, such as to block publication of the travel schedules of troops during wartime.  *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 716 (1931); *see also Columbia Broad. Sys., Inc. v. U.S. Dist. Ct.*, 729 F.2d 1174, 1183 (9th Cir. 1984) ("[U]nder our constitutional system prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances.").  For example, the Supreme Court unanimously rejected injunctions against publication of the Pentagon Papers, which were allegedly stolen, classified military documents whose release federal officials claimed would gravely threaten national security.  *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (per curiam).

A prior restraint is invalid unless it survives the most exacting scrutiny, even more demanding than the strict scrutiny applied generally to content-based restrictions on speech.  To pass constitutional muster, under both the U.S. and California Constitutions, prior restraints must be *necessary* to further a governmental interest of the highest magnitude.  *See Nebraska Press*, 427 U.S. at 562-63 (finding that a criminal defendant's right to a fair trial was a sufficiently important governmental interest); *S. Coast Newspapers, Inc. v. Superior Court*, 85 Cal. App. 4th 866, 870 (4th Dist. 2000); *Evans v. Evans*, 162 Cal. App. 4th 1157, 1167 (4th Dist. 2008).  A prior restraint is *necessary* only if: (1) the harm to the governmental interest is highly likely to occur;[6] (2) the

_____

[6] *See Nebraska Press*, 427 U.S. at 563, 565, 567 (approving of the trial court's finding of a clear and present danger of impairment of criminal defendant's fair trial rights, but cautioning against uncertainty); *see also N.Y. Times*, 403 U.S. at 730 (Stewart, J. concurring) (requiring absence of prior restraint to "surely result" in feared harm); *Levine v. U.S. Dist. Ct.*, 764 F.2d 590, 595 (9th Cir. 1985) (activity restrained must pose "either a clear and present danger or a serious and imminent threat to a protected competing interest"); *S. Coast Newspapers*, 85 Cal. App. 4th at 874 (requiring a showing of "substantial probability" that the feared harm would occur absent the prior restraint).

harm will be irreparable;[7] (3) no less-restrictive alternative exists for preventing the harm;[8] *and* (4) the prior restraint will actually prevent the harm.[9]

Even in the rare cases in which a prior restraint is justified, such as an injunction against criminal speech, the First Amendment requires that such an order be precise and narrowly tailored to achieve "the pin-pointed objective" of "the needs of the case." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968).

As discussed above, prior restraints are presumptively invalid under California law. *Gilbert v. Nat'l Enquirer, Inc.*, 43 Cal. App. 4th 1135, 1144 (2d Dist. 1996). And although the California Supreme Court has recognized a narrow exception, holding that a court may enjoin repetition or republication of statements "*determined at trial* to be defamatory," *Balboa Island Vill. Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1150 (2007) (emphasis added), where "there has been no trial and no determination on the merits that there is actionable defamation, 'the court cannot prohibit [a party] from making statements characterized only as 'false and defamatory,'" *Evans*, 162 Cal. App. 4th at 1169. Such a nebulous prohibition is "invalid as unconstitutionally vague and overbroad." *Id.*

The Injunction at issue here is an unlawful prior restraint. There has been no trial and no judicial determination that any statement in the Article is unlawful. (Indeed, the Injunction contains no analysis and no indication that the Australian court even *considered* the merits.) And it is most certainly not narrowly tailored or precise. It calls for the removal of the *entire Article*, not just the statements GEMSA challenged, and it prohibits *all* future speech by EFF about GEMSA's intellectual property, whether it be true or false, lawful or unlawful.[10]

---

[7] *N.Y. Times*, 403 U.S. at 730; *Taylor v. Nat'l Broad. Co.*, 1994 WL 762226, at *2 (Cal. Super. Ct. Sept. 29, 1994) ("Thus, 'subsequent civil proceedings,' i.e. actions for damages, rather than a prior restraint, are normally 'the appropriate sanction for calculated defamation or other misdeeds in the First Amendment context.'") (quoting *CBS Inc. v. Davis*, 510 U.S. 1315, 1318 (1994)).

[8] *See Nebraska Press*, 427 U.S. at 563-65; *Levine*, 764 F.2d at 595; *S. Coast Newspapers*, 85 Cal. App. 4th at 872.

[9] *See Nebraska Press*, 427 U.S. at 565-66 (requiring assessment of "probable efficacy"); *Levine*, 764 F.2d at 598; *S. Coast Newspapers*, 85 Cal. App. 4th at 872-73.

[10] For the same reasons, the Injunction is facially overbroad. *See Oakley, Inc. v. McWilliams*, 879 F. Supp. 2d 1087, 1091 (C.D. Cal. 2012) (injunction that prohibits more than precise words adjudged defamatory is overbroad because it may ban speech protected by the First Amendment).

### 2.   The Injunction was entered without California procedural protections for defamation actions

The law applied by the Australian court also did not provide as much procedural protection for EFF's speech as California law would have.  California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, provides a mechanism for the early dismissal of lawsuits such as this one that have the purpose or effect of "chilling expression through costly, time-consuming litigation."  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  Had GEMSA filed its complaint against EFF in California, EFF would have filed an anti-SLAPP motion.

California courts considering anti-SLAPP motions engage in a two-step process.  First, the defendant must show that the claim arises from an act in furtherance of the defendant's free speech rights.  *Id.*; *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 997-98 (N.D. Cal. 2015).  Qualifying acts include statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body," and statements "made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013).

EFF's Article is a statement made in a public forum in connection with an issue of public interest.  *Barrett v. Rosenthal*, 40 Cal. 4th 33, 65 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."); *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (4th Dist. 2000) ("not only governmental matters, but also private conduct that impacts a broad segment of society" are issues of "public interest").  Moreover, its topic is GEMSA's patent infringement litigation, which is an "issue under consideration or review by . . . a judicial body."  *See, e.g.*, *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 236-37 (2d Dist. 1999) (article about domestic violence accusations against political consultant made in child custody case protected as statement made in connection with judicial proceeding).

In the second step of the anti-SLAPP motion analysis, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim," a standard under which "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff."  *Makaeff*, 715

14

F.3d at 261 (citations and internal marks omitted).  The burden is akin to that used in a motion for judgment as a matter of law: "The plaintiff must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010) (citation and internal marks omitted).

As set forth above and below, GEMSA cannot show a probability of success on the merits.  *See* Section IV.A.1 *supra* & Section IV.B *infra*.  Accordingly, EFF would have been entitled to a dismissal of GEMSA's case had the Australian court applied California's anti-SLAPP statute.

### B.   EFF would not have been found liable for defamation by this Court applying California law and the First Amendment

As a matter of law, none of the challenged statements in the Article is actionable under the First Amendment or California law for the following reasons:

#### 1.   Statements 2 and 5-9 are not alleged to be false

In its Australian pleadings, GEMSA did not allege that six of the nine allegedly defamatory statements – Statements 2, 5, 6, 7, 8, and 9 – are false.  That alone is enough to render the Injunction void to the extent that it is based on these statements, since under the First Amendment falsity is the *sine qua non* of a defamation claim.  *Air Wisconsin Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 863 (2014) (a statement must be materially false to be actionable as defamation); *Morse v. Cty. of Merced*, 2016 WL 3254034, at *5 (E.D. Cal. June 13, 2016) (dismissing defamation claim where plaintiff failed to allege false statements).  Moreover, the First Amendment does not allow for speech to be muzzled just because it is one-sided, incomplete, or "does not accurately reflect the complexities" of a certain subject, as GEMSA complains is the case with these six Statements.  *E.g.*, *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 259 (1984) ("[T]here is also room, within the protection of the First Amendment, for writing" that is "less than objective.").

#### 2.   Statements 5 and 6 are not about GEMSA

Another essential element of a defamation claim required by both the First Amendment and California law is that the challenged statement must be identifiably about the plaintiff.  *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986).  Two of the statements GEMSA challenges –

15

Statements 5 and 6 – are not about GEMSA; rather, they refer to Flash VOS, the company that previously owned the '400 patent. *See* Compl. ¶ 17 & Ex. 6 at 1 (original assignee of the '400 patent was Flash VOS, Inc.). Thus, the Injunction is unenforceable to the extent it is based upon these two statements. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398-400 (2d Cir. 2006) (statements about group of German companies did not defame companies' exclusive U.S. agent).

### 3. Statements 2 and 5-7 are demonstrably true

The First Amendment protects substantially true statements. Thus, to prevail, a defamation plaintiff must prove that statements about a matter of public concern are materially false. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("minor inaccuracies" are not actionable). GEMSA cannot meet this burden with respect to Statements 2, 5, 6, and 7.

Statement 2 – that the patent "claims the idea of using 'virtual cabinets' to graphically represent data storage and organization" – is simply a true summary of the patent, which says that the invention "is a Graphic User Interface (GUI) that enables a user to virtualize the system and to define secondary storage physical devices through the graphical depiction of cabinets." Compl. ¶ 16 & Ex. 6 at 1. And Statement 7 – that GEMSA's "patent's claims require very specific structures[,] for example Claim 1 requires 'secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system'" – directly quotes from the patent, *see id.* (claimed "graphical user interface" is composed of, *inter alia*, "at least one virtual cabinet representing a discrete operating system" and "a secondary storage partitions window").

The link to an archived copy of the website of the patent's previous owner, Flash VOS, proves that Statement 5 – that Flash VOS "once offered a product that allowed users to run multiple operating systems on personal computers with x86-compatible processors" – is true. Compl. ¶ 17 & Ex. 7 at 1 (website said product "allows multiple x86 operating systems to run on a single PC").

And the discussion of prior art in the patent demonstrates the truth of Statement 6 – that Flash VOS, the company that obtained the patent, "didn't invent partitions, didn't invent virtual machines, and didn't invent running multiple operating systems on a single computer." In the background information section, the patent says that "[t]his invention is particularly useful in conjunction with super or higher level multiple operating systems or multi-boot environments,"

16

Compl. Ex. 6 at 2, in other words, computers that already could run multiple operating systems. The patent acknowledges the existence of partitions and virtualization in the next paragraph:

> The cornerstone of a super operating systems GUI is *system virtualization*, in which physical devices, such as a hard disk and memory, are mapped repeatedly or *partitioned* into a number of logical devices, *each containing a separate operating system*. These *partitions*, however, need to be set up as stable and rigid partitions or mappings so that the operating systems do not mix, intermingle, call on each other, or exchange data, unless the user desires such exchange. It would thus be beneficial to the *prior art* to provide a GUI mechanism that enables such system management locally or remotely.

*Id.* (emphases added); *see also id.* at 3 ("Prior art . . . includes power management and configuration tools and standards such as . . . Self Virtualizing Storage.").[11]

Because all four of these statements are true, liability may not be based on them.[12]

### 4. Statements 1, 3-4, and 8-9 are protected statements of opinion

Statements 1, 3, 4, 8, and 9 are protected by the First Amendment as expressions of opinion, as some of them are rhetorical hyperbole and others are opinions based on disclosed facts.

### a. Rhetorical hyperbole

The First Amendment protects from defamation liability statements of opinion that "cannot reasonably be interpreted as stating actual facts about an individual," thus "provid[ing] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (citations and internal marks omitted).  Therefore, a threshold determination in a defamation case is whether a reasonable factfinder could conclude the challenged publication states or implies provably false factual assertions.  *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998).  This is a question of law for the court, which must consider: (1) the broad context in which the statement was made, including "the general tenor of the entire work, the subject of the statements, the setting, and the format of the work;" (2) the statement's

---

[11] EFF's link to an article discussing the history of x86 processors further supports the truth of Statement 6.  *See* Compl. ¶ 17 & Ex. 7 at 20 (article notes that "Computer Virtualization has a long history, spanning nearly half a century.").

[12] These statements also are not actionable to the extent they are viewed as EFF's opinions based on the disclosed patent, Flash VOS article, and website article.  *See* Section IV.B.4.b *infra*.

17

specific context, "analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation;" and (3) "whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). All three considerations point to the conclusion that Statements 1, 3, 4, 8 and 9 are protected opinions.

First, the broad context of the Article indicates to readers that it is an expression of opinion. The first phrase in the headline is "Stupid Patent of the Month," and it is part of a series of articles under that same title. Compl. ¶ 10. No reasonable reader would expect that any one of a running series of blog posts discussing "stupid patents" would be a dry recitation of facts about the patent and its enforcement. Rather, the context inescapably signals to readers what the Article is: A sharply-worded criticism of one patent in particular and the U.S. patent system more generally.

Second, the Article's overall tone and specific wording show that it reflects the author's opinions. The Article accurately relates factual information about the '400 patent and GEMSA's litigation, but it does so in the context of vigorously criticizing both with pointedly opinionated language, such as "stupid patents" and "abusive troll litigation." *Id.* ¶¶ 16-18. Adding to the Article's hyperbolic and irreverent tone, some of its hyperlinks direct the reader to humorous destinations, such as an article about the origins of the overused term "quantum leap." *Id.* ¶ 17.

Third, many of the statements themselves are too vague and subjective to be understood as statements of verifiable fact. How, for example, could one go about empirically proving whether or not a particular patent is "stupid," as EFF said in Statement 1? One person's stupid patent may be another's brilliant technological innovation. Understandably, courts in California and across the country have held that use of the epithet "stupid" is an unverifiable statement of opinion that is not actionable as defamation. *See, e.g.*, *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1403 (2d Dist. 1999) (characterizations of lawsuit and motion as "stupid," "laughed at," "a joke," "spurious," and "frivolous," were nonactionable hyperbole); *Stevens v. Mavent, Inc.*, 2008 WL 2824956, at *7 (C.D. Cal. July 21, 2008) (statement that plaintiff was "stupid" was not actionable); *Chang v. Cargill, Inc.*, 168 F. Supp. 2d 1003, 1011 (D. Minn. 2001) (same).

18

Likewise, no reasonable reader would understand the characterization of GEMSA as a "patent troll" – let alone a "classic" one, as EFF said in Statement 4 – to be a verifiable statement of fact.[13]  Moreover, the statement at issue was not definitive, but rather asserted that GEMSA "*seems to be* a classic patent troll."  Statements such as this that are "cautiously phrased in terms of apparency" are best understood as expressions of opinion.  *Baker v. Los Angeles Herald Exam'r*, 42 Cal. 3d 254, 260-61 (1986) (citation omitted).

Particularly given the overall and specific context, no reasonable reader could conclude that Statement 3, that GEMSA "is suing just about anyone who runs a website," is a literal assertion of fact.  Rather, reasonable readers would understand the phrase as a colorful means of expressing the idea that GEMSA is filing numerous lawsuits.  In a similar vein, the Ninth Circuit upheld the dismissal of a defamation claim filed by the late attorney Johnnie Cochran over a newspaper column that stated he "will say or do just about anything to win, typically at the expense of the truth."  *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000).  The court held that, in the context in which it appeared, "[t]he statement is no more than a sweeping generalization that [trial tactics used by Cochran] will be at the expense of some amorphous, greater truth."  *Id.* (adopting analysis of district court at 58 F. Supp. 2d 1113, 1124 (C.D. Cal. 1998)).

### b.    Opinions based on disclosed facts

The First Amendment also shields from defamation liability statements of opinion based on facts disclosed to the audience.  *Dodds*, 145 F.3d at 1067.  This constitutional principle recognizes the common-sense notion that "[w]hen the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented," and thus the reader is free to make up her own mind regarding whether to accept or reject the writer's opinion.  *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439-40 (9th Cir. 1995).

---

[13] To the extent the term "patent troll" has been defined by the courts, GEMSA certainly fits that definition.  One court in the Northern District of California has described a patent troll as "an entity that enforces patent rights against accused infringers in an attempt to collect licensing fees, but does not manufacture products or supply services based upon the patents in question."  *Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, at *1 (N.D. Cal. Jan. 24, 2013) (citations omitted).  That describes GEMSA, which, by Mr. Rafizadeh's sworn admission, "largely makes its profits from the licensing fees borne by companies who have used, or who are interested in using, the Patent product."  Compl. Ex. 15 ¶ 6.

19

This First Amendment safeguard applies to many of the statements GEMSA challenges, as EFF fully disclosed in the article the facts supporting all of the opinions it expressed therein:

**The Patent.**  The Article links to the full text of the patent on file with the USPTO, *see* Compl. ¶ 16 & Ex. 6, so readers can review it and decide for themselves whether it is "stupid" as EFF said in Statement 1.[14]

**GEMSA's Infringement Litigation.**  EFF's accurate description of GEMSA's litigation also supports many of the opinions it expressed.  EFF noted that during the previous year, GEMSA had filed suits in the Eastern District of Texas alleging infringement of the patent by dozens of companies, from Airbnb to Zillow, and that GEMSA did not explain in those suits how the accused websites were infringing.  Compl. ¶ 18.  Links to GEMSA's complaints against Airbnb and Zillow are both embedded in the Article and provided beneath the text.  *Id.*  This information supports EFF's hyperbolic Statement 8, that "[a]s far as we can tell, GEMSA seems to think that anyone with a website that links to hosted content infringes its patent," Statement 3, that GEMSA "is suing just about anyone who runs a website," and Statement 4, that GEMSA "seems to be a classic patent troll."  The complaints contain boilerplate allegations that do not explain how the accused websites purportedly infringe the patent and do not allege that GEMSA markets any competing products. *See, e.g.*, Compl., *GEMSA v. Zillow, Inc.*, 2:16-cv-00637-RWS-RSP (E.D. Tex. June 14, 2016), attached as Exhibit A to the Declaration of Ashley I. Kissinger submitted herewith ("Kissinger Decl."), ¶ 18 ("Zillow directly infringes by using the GUI for the administration and management of www.zillow.com or one of its websites linked directly or indirectly thereto" and "induces infringement by consumers and advertisers by encouraging them to use the GUI"); Compl., *GEMSA v. Airbnb, Inc.*, 2:15-cv-01700-RWS-RSP (E.D. Tex. Oct. 30, 2015) ("Airbnb Compl."), Kissinger Decl. Ex. B, ¶ 15 ("[Airbnb] directly infringes by making its GUI available to advertisers

---

[14] Hyperlinks are "the twenty-first century equivalent of the footnote for purposes of attribution in defamation law" because they give readers the ability to assess the support for the writer's opinion with just a mouse click or two. *Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013). Indeed, this Court and others have long recognized that hyperlinks can provide the factual basis supporting statements of opinion. *See, e.g.*, *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1102-03 (N.D. Cal. 1999) (online statement was opinion based on facts disclosed in articles referenced via hyperlink); *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 388-89 (4th Dist. 2004) (statements in emails were opinions based on facts disclosed on hyperlinked websites).

and consumers.").[15]  In addition, EFF expressly quoted from the complaint against Airbnb to emphasize its points: "[GEMSA] simply states that 'AIRBNB maintains, controls and/or operates a website with a graphical user interface ('GUI') at www.airbnb.com that infringes one or more claims of the '400 patent.'"  Compl. ¶ 18; Airbnb Compl. ¶ 14.[16]

**Orders Entered By the Eastern District of Texas.**  EFF supported its opinion, in Statement 9, that "local rules [in the Eastern District of Texas] favor patent trolls like GEMSA."  The Article linked to earlier EFF blog posts regarding patent litigation in the Eastern District of Texas, which in turn linked to two orders entered in that court.  Compl. ¶ 18 & n.9.  Those orders demonstrate that two judges in that court required patent litigants to obtain leave before moving for summary judgment and that the local discovery rules favor plaintiffs.  *Id.* Ex. 8 at 9-20.[17]

**5.      Statements 2 and 7 are also protected by the Fair Report Privilege**

California has codified the "fair report privilege," which provides immunity for publication of "fair and true" reports of judicial, legislative, or other official proceedings, or anything said during the course of such proceedings.  Cal. Civ. Code § 47(d).  So long as the statement "convey[s] the substance of the proceedings," it is privileged.  *Crane v. Arizona Republic*, 972 F.2d 1511, 1519 (9th Cir. 1992) (applying California law).

Statements 2 and 7 are also non-actionable under the fair report privilege.  They quote from and accurately summarize statements in the '400 patent, an official publication of the United States Patent and Trademark Office ("USPTO") that is available in the public court files of GEMSA's patent litigation.  *See* pp. 16-17 *supra*.

---

[15] The Court may take judicial notice of publicly filed complaints.  *See* EFF's Request for Judicial Notice and Declaration of Ashley I. Kissinger, Esq. in support thereof, filed this same day.

[16] EFF also showed its readers a screenshot from the Airbnb website and juxtaposed it with a diagram from Claim 1 of the '400 patent, illustrating how "the accused website bears almost no similarity to GEMSA's supposed innovation."  Compl. ¶ 18; *id.* Ex. 6 at 1.  This website screenshot provides further support for EFF's statements that GEMSA is "suing anyone who runs a website" (Statement 3), is a "classic patent troll" (Statement 4), and "seems to think anyone with a website that links to hosted content infringes its patent" (Statement 8).

[17] EFF's statement that "[e]very one of [GEMSA's] cases was filed in the Eastern District of Texas" was true when made.  Before January of this year, GEMSA had not filed a patent infringement suit in any federal court in the United States other than the Eastern District of Texas.  Kissinger Decl. Ex. C (report from PACER).

21

## C. The exercise of personal jurisdiction by the Australian court over EFF did not comport with constitutional due process requirements

An independent provision of the SPEECH Act states that foreign defamation judgments are unenforceable if the foreign court's exercise of personal jurisdiction over the defendant does not "comport[] with the due process requirements that are imposed on domestic courts by the Constitution of the United States." 28 U.S.C. § 4102(b).

The Injunction is unenforceable pursuant to this provision as well, because EFF does not have sufficient minimum contacts with Australia and because GEMSA did not properly serve the case initiating documents on EFF.

### 1. Australian courts do not have personal jurisdiction over EFF

Under the Constitution's due process clause, for personal jurisdiction to attach, a defendant must have had minimum contacts with the forum such that the exercise of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As explained in Section II *supra*, to determine whether the defendant purposely directed its activities toward the forum sufficiently to support specific personal jurisdiction, courts in the Ninth Circuit use the "effects test" described in *Calder v. Jones*, 465 U.S. 783 (1984).

Here, because GEMSA cannot show that EFF expressly aimed its conduct at Australia, courts there have no jurisdiction over EFF. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). EFF did not aim its activities toward Australia. The Article is a blog post on the website of a U.S. nonprofit discussing a U.S. patent and litigation in a Texas federal court alleging infringement of that patent in the United States. Simply posting an allegedly defamatory statement about a forum resident online is insufficient, without more, for personal jurisdiction to attach in that forum. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). Instead, the defendant must have expressly aimed its conduct at the forum. *Id.* As the Ninth Circuit has explained, "[w]here a defendant's express aim was local, the fact that it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff lived in the forum state, is insufficient to satisfy the effects test." *Love*, 611 F.3d at 609 (citation and internal marks

22

1  omitted).  EFF's "local aim" was and is to persuade readers within the United States that GEMSA's

2  U.S. patent and its infringement litigation here illustrate flaws in the U.S. patent system.[18]

3      Although the inquiry ends there, *id.*, courts in Australia also lack jurisdiction over EFF

4  because, by GEMSA's own admission, the bulk of its purported damages were felt in the United

5  States, not Australia.  In the Australian litigation, Mr. Rafizadeh alleges repeatedly in his first

6  affidavit that the Article is "prejudicial" to GEMSA's patent litigation in the Eastern District of

7  Texas.  Compl. Ex. 13 ¶¶ 7 & 12.  In his second affidavit, Mr. Rafizadeh asserts that GEMSA's

8  damages from the Article include:  the cancellation or delay of mediations in its U.S. patent

9  litigation, Compl. Ex. 15 ¶ 8; a "reduced interest in pursuing pre-trial settlement negotiations" by

10  defendants in the U.S. patent litigation, *id.* ¶ 9; and the existence of a declaratory judgment action

11  filed against GEMSA in the Eastern District of Virginia, *id.* ¶ 10.

12      Moreover, even if posting an article about the U.S. litigation activities of an Australian

13  entity would qualify as "express aiming" at Australia, the Australian court's exercise of jurisdiction

14  over EFF in this instance still would be unreasonable.  The Ninth Circuit has set forth seven factors,

15  none of which is dispositive, for courts to consider in making such a determination:

16  (1) the extent of a defendant's purposeful interjection; (2) the burden on the
17  defendant in defending in the forum; (3) the extent of conflict with the sovereignty
   of the defendant's state; (4) the forum state's interest in adjudicating the dispute;
18  (5) the most efficient judicial resolution of the controversy; (6) the importance of the
   forum to the plaintiff's interest in convenient and effective relief; and (7) the
19  existence of an alternative forum.

20  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

21      All seven factors favor EFF.  *First*, EFF's "purposeful interjection" in Australia is

22  nonexistent because the Article was solely about activities taking place in the United States.

23  *Second*, defending a lawsuit in Australia is an enormous burden for EFF.  It is a foreign jurisdiction

24  thousands of miles away whose courts (at least at this point in the litigation) have not applied the

---

[18] In the only federal appellate opinion interpreting the SPEECH Act, the Fifth Circuit said that the defendant in a Canadian defamation action had a "strong argument" that the Canadian court lacked jurisdiction over him because the "focal point" of the defendant's articles was a corrupt Louisiana official who owned property in Canada near the plaintiffs' hotel, not the plaintiffs themselves. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 496 (5th Cir. 2013).  The court declined to reach the jurisdictional issue, however, holding that the Canadian judgment failed to satisfy the First Amendment prong of the SPEECH Act.  *Id.*

23

speech protections that the First Amendment affords in the United States.  That burden of foreign litigation in a hostile forum is one reason why Congress enacted the SPEECH Act in the first place. Litigating here would be far less of a burden for GEMSA, which is already engaged in litigation it initiated in U.S. federal courts, including cases transferred to the Northern District of California. Compl. ¶ 19.  *Third*, there is no conflict with Australia's sovereignty.  Australia has no legitimate sovereign interest in litigation regarding speech by U.S. persons about activities occurring inside the U.S. judicial system, even where those activities are conducted by Australian entities.  And, as discussed above, the lion's share of the harm GEMSA alleges was in the United States.  By contrast, the United States has a strong interest in ensuring its citizens enjoy First Amendment protections for speech they make in the United States.  *Fourth*, the United States has an overriding interest in ensuring that disputes regarding speech made in the United States, and particularly speech about the U.S. legal system, are litigated here, where such speech is strongly protected. *Fifth*, any dispute between GEMSA and EFF regarding the Article would be far more efficiently resolved here, not on another continent across the Pacific Ocean.  All of the people and documents involved with publishing the Article are here in the Northern District of California.  The litigation the Article criticizes was filed in the Eastern District of Texas.  The USPTO, which awarded the "stupid" patent (and where an *inter partes* proceeding is occurring) is in Virginia.  The only relevant tie to Australia is GEMSA – a company that on its own initiative is already litigating dozens of lawsuits in the United States.  *Sixth*, GEMSA's interest in convenient and effective relief would not be hampered by litigating in the United States.  Litigating here would be more efficient because, as noted, nearly all of the witnesses and evidence relevant to GEMSA's purported claims are here, not in Australia.  And *seventh*, an alternative forum to Australia exists:  This one. GEMSA would not be left without a remedy in U.S. courts because defamation and related causes of action exist, so long as GEMSA is able to meet the requirements of U.S. law.

Traditional notions of fair play and substantial justice call for any dispute over the Article to be litigated in the United States.  Therefore, the Australian court's exercise of jurisdiction over EFF was unconstitutional under U.S. due process standards.

24

**2.     The case initiating documents were not properly served on EFF**

An additional reason that the Australian court's exercise of personal jurisdiction over EFF does not comport with constitutional due process requirements is that EFF was never properly served with the case initiating documents.  Proper service is not a mere procedural technicality; rather, a court does not acquire personal jurisdiction over a defendant unless and until that defendant is properly served.  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

Service in this case is governed by the Hague Convention, to which both the United States and Australia are signatories.  *DFSB Kollective Co. v. Bourne*, 2012 WL 2376209, at *3 (N.D. Cal. June 22, 2012).  Compliance with the Hague Convention's requirements "is mandatory in all cases to which it applies."  *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).  The Hague Convention provides for service via a "central authority" in the receiving nation, *id.* at 698, which in the United States is the Department of Justice.  *Ackermann v. Levine*, 788 F.2d 830, 839 n.9 (2d Cir. 1986).  The Hague Convention also allows service by mail to recipients in countries, including the United States, that do not object to that method.  *Id.* at 838-39; *see also Brockmeyer v. May*, 383 F.3d 798, 802-03 (9th Cir. 2004) (same).

In this case, GEMSA did not properly serve the case initiating documents on EFF.  Compl. ¶ 23.  Notably, GEMSA did purport to serve a copy of the Injunction on EFF via the Justice Department pursuant to the Hague Convention.  *Id.* ¶ 34.  Obviously, GEMSA is aware of at least one of the proper methods for serving a U.S. defendant in an Australian action, but for whatever reason it decided not to do so.  GEMSA's failure to serve the case initiating documents means the Australian court did not have personal jurisdiction over EFF, and its Injunction is therefore unenforceable in the United States for this additional reason.

## **<u>CONCLUSION</u>**

For these reasons, EFF respectfully requests a judgment in its favor that includes:

1.  A declaration that the Australian court's Order and Injunction is repugnant to the First Amendment and California law, and is therefore unenforceable pursuant to the SPEECH Act and the Declaratory Judgment Act; and

2.  Such additional relief as the Court deems appropriate.

DATED:  July 20, 2017                    Respectfully submitted by:


_____s/ Ashley I. Kissinger_____
Ashley I. Kissinger (No. 193693)
email: akissinger@lskslaw.com
Matthew E. Kelley (*pro hac vice* motion pending)
Email: mekelley@lskslaw.com
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1888 Sherman Street, Suite 370
Denver, CO  80203
Phone: (303) 376-2400
Fax: (303) 376-2401


Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com
Kevin Vick (No. 220738)
email: kvick@jassyvick.com
JASSY VICK CAROLAN
601 Montgomery Street, Suite 850
San Francisco, CA  94111
Phone: (415) 539-3399
Fax: (415) 539-3394

*Attorneys for Plaintiff*
*Electronic Frontier Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of July, 2017, I electronically filed the foregoing NOTICE OF

MOTION AND MOTION FOR DEFAULT JUDGMENT and MEMORANDUM OF POINTS

AND AUTHORITIES with the Clerk of the Court using the CM/ECF electronic filing system.  I

further certify that I caused a true and correct copy to be served via First Class Mail, return receipt

requested, upon the following:

Global Equity Management (SA) Pty Ltd.
c/o United Accountants Group Pty Ltd.
458 Morphett Rd.
Warradale, SA 5046
        Australia


                                        /s/ *Matthew E. Kelley*
                                        Matthew E. Kelley