UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:17-CV-02053-MEJ |
| | ) | |
| v. | ) | **[PROPOSED] MEMORANDUM** |
| | ) | **OPINION & ORDER** |
| GLOBAL EQUITY MANAGEMENT (SA) PTY | ) | |
| LTD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Plaintiff Electronic Frontier Foundation ("EFF") has moved for entry of default judgment

on its claim under the Securing the Protection of our Enduring and Established Constitutional

Heritage ("SPEECH") Act, 28 U.S.C. §§ 4101 *et seq.*, against Defendant Global Equity

Management (SA) Pty Ltd ("GEMSA").  Having reviewed the entire file in this matter, the court

has concluded that EFF is entitled to the relief it seeks.

## FINDINGS OF FACT[1]

On June 30, 2016, EFF published an article on its blog entitled "Stupid Patent of the

Month: Storage Cabinets on a Computer" (the "Article").  The Article focused on U.S. Patent No.

---

[1] In ruling on a motion for default judgment, "the factual allegations contained in the plaintiff's
complaint [are] taken as true."  *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW
MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006); *see also* Exhibits to EFF's Complaint
(EFF attached twenty-one exhibits to its complaint to support the factual contentions made therein).

1

6,690,400 ("the '400 patent"), which is owned by GEMSA, and it reported that GEMSA had filed more than three dozen lawsuits alleging infringement of the '400 patent in the Eastern District of Texas since October 2015.  The Article described GEMSA as "a classic patent troll," criticized GEMSA's litigation strategy, and characterized the '400 patent itself as "weak."  A copy of the article is attached as Appendix A to this Order.

In August 2016, GEMSA sent EFF a letter accusing it of engaging in "defamatory, false and malicious slander" by posting the Article "with the intention of portraying [GEMSA]'s intellectual property as stupid in addition to numerous other malicious lies and misleading statements about the '400 patent owned by [GEMSA]."  GEMSA then filed suit against EFF in the Supreme Court of South Australia in October 2016.  On or around October 4, 2016, GEMSA filed an Interlocutory Application with the Australian court seeking an order requiring EFF to "immediately remove" the Article from its website and restraining EFF "from publishing any content with respect to [GEMSA's] intellectual property."  GEMSA subsequently filed a Statement of Claim against EFF under Australia's Competition and Consumer Act, alleging "misleading and deceptive conduct," and common law "negligent misstatement of fact."  GEMSA alleged that nine "representations" in the Article were "misleading or deceptive or likely to mislead or deceive," including the "representation" that "the '400 patent is 'stupid'" and that GEMSA is a "classic patent troll."  GEMSA specifically challenged the following statements:

**Statement 1**:  The patent is "stupid."

**Statement 2**:  The patent "has claimed the idea of using virtual cabinets to graphically represent data storage and organisation."

**Statement 3**:  GEMSA "is suing anyone who runs a website."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "is suing *just about* anyone who runs a website.")

**Statement 4**:  GEMSA "is a classic patent troll."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "seems to be" a classic patent troll.)

**Statement 5**:  GEMSA "once offered a product that allowed its users to run multiple operating systems on personal computers with x86-compatible processors."  (This alleged "representation" misquotes the Article.  The Article said that *Flash VOS*, the company that obtained the patent from the USPTO, once offered such a product.)

2

**Statement 6**: GEMSA's "product 'FLASH VOS' did not invent partitions, did not invent virtual machines and did not invent running multiple operating systems on a single computer." (This alleged "representation" misquotes the Article. The Article made these statements about *the company Flash VOS*, not about a "product" owned by GEMSA.)

**Statement 7**: GEMSA's "patent claims require very specific structures, namely a 'secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'" (This alleged "representation" misquotes the Article. The Article said "*the '400 patent's* claims require very specific structures. *For example, claim 1* requires 'a secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'")

**Statement 8**: GEMSA "seems to think that anyone with a website that links to hosted content infringes its patent."

**Statement 9**: GEMSA "issued patent claims in the Eastern District of Texas because local rules favour patent trolls." (This alleged "representation" misquotes the Article. The Article said "[e]very one of [GEMSA's] cases was filed in the Eastern District of Texas," and noted that that court's local rules "favor patent trolls like GEMSA.")

EFF was not served and did not appear in that lawsuit.

On October 31, 2016, the Australian court issued an injunction against EFF. The injunction ordered EFF to immediately remove the Article from its website and not to disseminate it. It further stated that "[u]ntil further order [EFF is] restrained from publishing any content with respect to the Plaintiff's intellectual property." The injunction also said that if EFF "does not comply with this order its assets may be seized and it[s] directors and other officers may be liable to be imprisoned for contempt of Court." A copy of the injunction, which GEMSA purported to serve on EFF in December 2016 under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), is attached as Appendix B to this Order.

GEMSA's counsel sent a second letter to EFF on January 20, 2017, enclosing a copy of the injunction and demanding that EFF take down the Article and "make immediate arrangements for any links to the article to be removed from the world wide web including any and all other websites which reference[] the [challenged] material," threatened that if EFF does not take such steps, it would "be forced to do so at [EFF's] expense," demanded that EFF pay "compensation" to GEMSA for purported damages "in the vicinity of $750,000.00" within twenty-one days, and

1  threatened to "seek full monetary damages and equitable relief" that the "relevant court" may deem

2  proper.  *Id.*

3     EFF filed a complaint for declaratory judgment under the SPEECH Act, 28 U.S.C. § 4104,

4  and the Declaratory Judgment Act, *id.* § 2201, and served it on GEMSA in Australia, pursuant to

5  the Hague Convention, on May 2, 2017.  Under Rule 12, GEMSA was required to answer or

6  respond to the complaint within 21 days thereafter, or by May 23, 2017, but it failed to do so.  Fed.

7  R. Civ. P. 12.  EFF filed the instant Motion for Default Judgment against GEMSA under Federal

8  Rule of Civil Procedure 55(b)(2).

9  **CONCLUSIONS OF LAW**

10    **A.**  **This Court Has Jurisdiction over GEMSA and This Case**

11     This court has subject matter jurisdiction pursuant to the SPEECH Act, 28 U.S.C. § 4104,

12  and the Declaratory Judgment Act, *id.* § 2201.  California's long-arm statute provides that personal

13  jurisdiction extends as far as federal due process allows.  *Daimler AG v. Bauman*, --- U.S. ---, 134

14  S. Ct. 746, 753 (2014) (applying California law); *Glencore Grain Rotterdam B.V. v. Shivnath Rai*

15  *Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  Personal jurisdiction is properly exercised

16  over a foreign defendant where that defendant has undertaken efforts to reach into the forum in an

17  attempt to silence a forum-based resident.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

18  *L'Antisemitisme*, 433 F.3d 1199, 1205-11 (9th Cir. 2006).

19     Here, GEMSA (a) emailed a demand letter to EFF in August 2016, demanding that EFF

20  take certain actions in San Francisco to benefit GEMSA, including removing the article from EFF's

21  website; (b) obtained a court injunction in October 2016 that requires EFF to undertake significant

22  acts in San Francisco, prohibits it from engaging in lawful speech there, and threatens penalties that

23  would be felt by EFF and its directors and officers there; (c) purported to serve EFF with the

24  injunction in December 2016 at its offices in San Francisco; and (d) mailed a letter to EFF at its

25  offices, dated January 20, 2017, that enclosed a copy of the injunction, again demanding that EFF

26  undertake certain acts in San Francisco, and threatening to pursue all available legal remedies,

27

28

4

including whatever relief "the relevant court may deem just and proper," if EFF did not comply. These actions are sufficient to subject GEMSA to the personal jurisdiction of this court. *See id.*

**B.      Entry of Default Judgment Is Appropriate in This Case**

Under Rule 55, default judgments are appropriately entered where "the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered." *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *3 (N.D. Cal. Aug. 30, 2006). Courts in this Circuit generally evaluate seven factors in considering a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citation omitted).

Each of the factors relevant here weighs in favor of granting EFF's motion. EFF intends to maintain the article on its website, expressing its opinion about GEMSA's patent based on the facts and public information EFF provided to its readers. This is commentary about a matter of legitimate public concern and is protected by the First Amendment to the United States Constitution. The Australian injunction has cast a shadow over the legality of EFF's speech about GEMSA's '400 patent and litigation and is chilling EFF's further speech. EFF is prejudiced every moment that it is forced to operate under a restriction on, or shadow over, its First Amendment rights. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Further, with respect to the second, third and fifth factors, as discussed below, EFF would not be held liable for defamation in a United States court because, among other things, its speech is constitutionally protected as a matter of law, and no additional facts that GEMSA might provide can change that. For that reason, granting the motion for default judgment does not offend the policy favoring rulings on their merits. Finally, even though GEMSA has ongoing patent claim

5

litigation in the United States, including in this District,[2] it has failed to appear in this case, or even to respond to EFF's motion, much less to offer the Court any facts that would constitute excusable neglect. A default judgment against GEMSA is therefore warranted.

**C.  The Australian Injunction Does Not Comport with United States Constitutional Standards and State Law Protections for Speech and Thus is Unenforceable Under the SPEECH ACT**

The SPEECH Act offers protections for U.S. persons against "libel tourism," which is "a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law." *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013). The statute provides that U.S. courts "shall not recognize a foreign judgment for defamation" unless the court determines that the law applied by the foreign jurisdiction is at least as speech-protective as the First Amendment and the law of the forum state, or that the defendant "would have been found liable for defamation by a domestic court applying the [F]irst [A]mendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located." 28 U.S.C. § 4102(a). A U.S. person subjected to a foreign defamation judgment that runs afoul of these provisions may bring a declaratory judgment action in federal court and obtain a declaration that the foreign order is "repugnant to the Constitution or laws of the United States." *Id.* § 4104(a)(1).

The Australian injunction is a "foreign judgment for defamation" under the SPEECH Act's terms, because "[d]efamation" is defined broadly to include "any" cause of action "alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person." *Id.* § 4101(1). GEMSA's claim against EFF is effectively a claim for defamation under this definition, however otherwise labeled. Moreover, the Australian injunction is a "foreign judgment"

---

[2] GEMSA's cases in this District include *Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.*, 3:17-cv-02178-WHA and *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA. Attorneys have appeared for GEMSA in both of these proceedings, although GEMSA's counsel is seeking leave to withdraw. *See Motion to Withdraw as Attorney, Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA (June 15, 2017) (Doc. No. 103); *Motion to Withdraw as Attorney, Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02178-WHA (June 15, 2017) (Doc. No. 71).

6

under the Act, which is defined as "a final judgment rendered by a foreign court." *Id.* § 4101(4). Injunctions against speech operate as "final orders" under Title 28. *See, e.g.*, *M.I.C. Ltd. v. Bedford Twp.*, 463 U.S. 1341, 1342-43 (1983) (Brennan, J., in chambers) (staying, pursuant to 28 U.S.C. §§ 1257 and 2101, state court injunction prohibiting theater from exhibiting sexually oriented films during pendency of obscenity litigation); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 43-44 (1977) (holding state court injunction prohibiting march was reviewable as collateral order pursuant to 28 U.S.C. § 1257). And, here, by its terms, the Australian injunction requires EFF's compliance subject to threat of contempt and additional punishments.

The SPEECH Act therefore provides for the relief EFF seeks unless either (1) the law applied by the Australian court "provided at least as much protection for freedom of speech and press" as would be provided by the First Amendment and California law; or (2) EFF "would have been found liable for defamation" by a California court. 28 U.S.C. § 4102(a)(1). For all the reasons set out in EFF's Complaint and its Motion for Default Judgment, it is clear that the Australian court did not provide protection for speech comparable to that which would have been afforded under the First Amendment and California law, and EFF would not have been held liable for defamation by a California court. Specifically:

1)     The Australian court provided far less protection for freedom of speech than would have been available under the First Amendment and California law. Most notably, the Australian injunction operates as an unconstitutional prior restraint on speech that has never been adjudicated to be unlawful. The Australian court issued no findings to the effect that such a restraint was necessary to further a governmental interest of the highest magnitude, and that it was precise and narrowly tailored to achieve "the pin-pointed objective" of "the needs of the case." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights" and therefore are presumptively unconstitutional); *see also Evans v. Evans*, 162 Cal. App. 4th 1157, 1169 (4th Dist. 2008) ("the court cannot prohibit [a party] from making statements characterized only as 'false and

defamatory'" where "there has been no trial and no determination on the merits" that there is actionable defamation).

2)  None of the challenged statements in the Article are actionable under the First Amendment or California law.  "The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage."  *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal marks omitted).  Here, various challenged statements (Nos. 2, 5, 6, 7, 8, and 9) are not even alleged to be false, *see Air Wisconsin Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 863 (2014); certain statements (Nos. 5 and 6) are not "of and concerning" GEMSA, *see Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986); certain statements (Nos. 2, 5, 6, and 7) are substantially true, *see Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); certain statements (Nos. 2 and 7) are protected by the fair report privilege, as codified at Cal. Civ. Code § 47(d); and certain statements (Nos. 1, 3, 4, 8, and 9) are constitutionally protected expressions of opinion because they are either rhetorical hyperbole or based on disclosed facts, *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

Moreover, the Australian court did not provide the procedural protection that would be provided by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  That law provides a mechanism – a special motion to strike – for early dismissal of meritless lawsuits premised on the defendants' exercise of their First Amendment rights.  Were EFF to have filed a special motion to strike, the court would have engaged in a two-step process.

First, the court would have determined whether EFF had shown that the claim arose from an act in furtherance of the defendant's free speech rights.  *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 997-98 (N.D. Cal. 2015).  That is the case here because EFF's speech was in connection with, among other things, actions pending before a judicial body – the U.S. District Court for the Eastern District of Texas.  *See* Cal. Civ. Proc. Code § 425.16(e); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013).

The second step of the analysis requires the plaintiff "to establish a reasonable probability that it will prevail on its claim," a standard under which "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the

8

1   plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (citations and

2   internal marks omitted).  Here again, the law favors EFF because, as discussed above, GEMSA

3   cannot show any possibility that it would have prevailed on the merits.

4          Finally, although EFF is entitled to a declaratory judgment under 28 U.S.C. § 4102(a)(1), it

5   also would prevail pursuant to the separate SPEECH Act provision that prohibits enforcement of

6   foreign defamation judgments in which the foreign court's exercise of personal jurisdiction over the

7   defendants does not comport with constitutional due process requirements, *id.* § 4102(b).  EFF did

8   not expressly aim its conduct toward Australia.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th

9   Cir. 2008).  To the contrary, EFF's publication was aimed at its U.S. audience because it

10  exclusively discussed the operation of U.S. patent law and litigation in U.S. courts.  The Australian

11  court's exercise of personal jurisdiction over EFF under these circumstances does not comport with

12  U.S. due process standards.

13         In sum, EFF has shown that the Australian injunction is a "foreign judgment for

14  defamation" subject to the SPEECH Act, and EFF has met its burden of demonstrating that the

15  Australian injunction would not be enforceable in any U.S. court.  Accordingly, under the SPEECH

16  Act, this Court may properly declare the Australian injunction to be "repugnant to the Constitution

17  or laws of the United States."  28 U.S.C. § 4104(a).

18        **D.**    **EFF Is Entitled to the Same Relief Under the Declaratory Judgment Act**

19         The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its

20  jurisdiction," a federal court "may declare the rights and other legal relations of any interested party

21  seeking such declaration . . . ."  28 U.S.C. § 2201(a).  This "case of actual controversy" requirement

22  is identical to the "case or controversy" requirement for a matter to be justiciable under Article III.

23  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  Thus, the dispute must be

24  "definite and concrete, touching the legal relations of parties having adverse legal interests," as well

25  as being "real and substantial" and "admi[tting] of specific relief through a decree of a conclusive

26  character, as distinguished from an opinion advising what the law would be upon a hypothetical

27  state of facts."  *Id.* at 127 (citation and internal marks omitted).  For all the same reasons that the

28  injunction functions as a final judgment under the SPEECH Act, the dispute between EFF and

9

GEMSA is an actual controversy under these standards, and EFF is therefore entitled to the same relief discussed above under the Declaratory Judgment Act.

## **CONCLUSION AND ORDER**

For the foregoing reasons, EFF's Motion for Default Judgment (Doc. # ___) and Request for Judicial Notice (Doc. #___) are GRANTED.  This Court hereby DECLARES that the Order and Injunction entered on October 31, 2016 against the Electronic Frontier Foundation by the Supreme Court of South Australia is repugnant to the Constitution and laws of the United States and California.  The Court further DECLARES that the Order and Injunction cannot be recognized or enforced in the United States.

_____

Hon. Maria-Elena James
United States Magistrate Judge

# Appendix A

*Electronic Frontier Foundation v. Global Equity Management (SA) Pty Ltd.*,
3:17-CV-02053-MEJ (N.D. Cal.)

**EFF's June 30, 2016 Article**

ELECTRONIC FRONTIER FOUNDATION    About    Issues    Updates    Take Action    Tools    **Donate**

# Stupid Patent of the Month: Storage Cabinets on a Computer

BY **DANIEL NAZER** | JUNE 30, 2016

How do you store your paper files? Perhaps you leave them scattered on your desk or piled on the floor. If you're more organized, you might keep them in a cabinet. This month's stupid patent, US Patent No. 6,690,400 (the '400 patent), claims the idea of using "virtual cabinets" to graphically represent data storage and organization. While this is bad, the worse news is that the patent's owner is suing just about anyone who runs a website.



The '400 patent is owned by Global Equity Management (SA) Pty. Ltd. ("GEMSA") which seems to be a classic patent troll. GEMSA is incorporated in Australia and appears to have no business other than patent litigation. The patent began its life with a company called Flash VOS. This company once offered a product that allowed users to run multiple operating systems on personal computers with x86-compatible processors. The '400 patent describes a graphical user interface for this system. The interface allows users to interact with "graphical depictions of cabinets" that represent memory partitions and different operating systems.

GEMSA says that Flash VOS moved the computer industry a "quantum leap forwarded in the late 90's when it invented Systems Virtualization." But Flash VOS didn't invent partitions, didn't invent virtual machines, and didn't invent running multiple operating systems on a single computer. All of these concepts predate its patent application, some by decades. In any event, the '400 patent claims only a very specific, and in our view, quite mundane user interface.

Importantly, the '400 patent's claims require very specific structures. For example, claim 1 requires "a secondary storage partitions window" and "at least one visible cabinet representing a discrete operating system." A user interface must have *all* of these features to infringe the claim.

In the past year, GEMSA has sued dozens of companies, ranging from Airbnb to Zillow. In each case, it makes the bare assertion that the defendant's website infringes the '400 patent. For example, it simply states that "AIRBNB maintains, controls and/or operates a website with a graphical user interface ("GUI") at www.airbnb.com that infringes one or more claims of the '400

GEMSA doesn't explain how Airbnb's website satisfies highly specific claim limitations like "a virtual cabinet representing a discrete operating system." In fact, the accused website bears almost no similarity to GEMSA's supposed invention:



As far as we can tell, GEMSA seems to think that anyone with a website that links to hosted content infringes its patent. Complaints with such sparse, and implausible, infringement allegations should be thrown out immediately for failure to state a claim.

There will be no prizes for guessing where GEMSA has filed its litigation. Every one of its cases was filed in the Eastern District of Texas, where we have long complained that local rules favor patent trolls like GEMSA. Venue reform legislation currently before Congress would stop trolls flocking to the Eastern District of Texas. That might help reduce abusive patent trolling. But we still need broader patent reform to ensure that such weak patents don't lead to abusive troll litigation.

📄 global_equity_management_v_airbnb_complaint.pdf
📄 global_equity_management_v_zillow_complaint.pdf

PATENTS    PATENT TROLLS    STUPID PATENT OF THE MONTH

CREATIVITY & INNOVATION

# JOIN EFF LISTS

**Join Our Newsletter!**    Email updates on news, actions, events in your area, and more.

| Email Address | Postal Code (optional) | SUBMIT |

# RELATED UPDATES



### The Death Knell is Tolling for Shipping & Transit LLC

**DEEPLINKS BLOG** BY VERA RANIERI | JULY 11, 2017

Second court recommends awarding legal fees to defendant hit with patent troll's lawsuit A court in the Southern District of Florida has underlined recommended (PDF) that underlined prolific patent troll Shipping & Transit LLC pay a defendant's legal costs. This is the...



### Court Orders Prolific Patent Troll Shipping & Transit LLC To Pay Defendant's Legal Bill

**DEEPLINKS BLOG** BY DANIEL NAZER | JULY 7, 2017

Shipping & Transit LLC, formerly known as Arrivalstar , is one of the most prolific patent trolls ever. It has filed more than 500 lawsuits alleging patent infringement. Despite having filed so many cases, it has never had a court rule on the validity of its patents. In recent...



### Photographer Attacked by Ludicrous Online Voting Patent

**DEEPLINKS BLOG** BY DANIEL NAZER | JULY 6, 2017

Ruth Taylor never expected that her hobby would get her sued for patent infringement. Her photography website, Bytephoto.com, barely made enough advertising revenue to cover hosting costs. The site hosts user-submitted photos and runs weekly competitions, decided by user vote, for the best. Ruth's main business is her own photography...



# Stupid Patent of the Month: Using A Computer To Count Calories

**DEEPLINKS BLOG** BY **DANIEL NAZER** | JUNE 30, 2017

This month's stupid patent, like many stupid patents before it, simply claims the idea of using a computer for basic calculations. U.S. Patent No. 6,817,863 (the '863 patent) is titled "Computer program, method, and system for monitoring nutrition content of consumables and for facilitating menu planning." It claims...



# How the STRONGER Patents Act Would Send Innovation Overseas

**DEEPLINKS BLOG** BY **DANIEL NAZER** | JUNE 23, 2017

Senator Chris Coons introduced a bill this week called the STRONGER Patents Act [ PDF ]. The bill contains many terrible ideas. It would gut *inter partes* review (a valuable tool for challenging bad patents). It would overturn the Supreme Court's decision in *eBay v....*



# Small Business Fights for its Life, Wins with Alice

**DEEPLINKS BLOG** BY **DANIEL NAZER** | JUNE 22, 2017

Michael Skelps was celebrating on New Year's Eve with family and friends when he got a strange email from a lawyer. It said that Michael's company, Capstone Photography, had just been sued for patent infringement. Michael went from celebrating to worrying about whether his small company would survive. Capstone is...



# The Patent Troll and the Scavenger Hunt

DEEPLINKS BLOG BY DANIEL NAZER | JUNE 22, 2017

Ken Cooper runs a small business out of his home. Unfortunately Ken's business was not so small that it avoided the notice of a patent troll. Ken has been writing code since 1973. His life in programming has ranged from small personal projects to founding a software company that was...



## A Startup Runs Into A Patent on Picture Menus

DEEPLINKS BLOG BY DANIEL NAZER | JUNE 22, 2017

If you've ever seen a picture menu, you've seen the supposed 'invention' claimed by U.S. Patent 6,585,516 . Although it had a complex-sounding title ("Method and system for computerized visual behavior analysis, training, and planning"), the patent simply claimed using picture menus on a computer. Patent troll DietGoal Innovations,...



## Saved by Alice: How a Key Supreme Court Decision Protects Businesses from Bad Patents

DEEPLINKS BLOG BY DANIEL NAZER, ELLIOT HARMON | JUNE 22, 2017

In 2014's *Alice v. CLS Bank* , the Supreme Court ruled that an abstract idea does not become eligible for a patent simply by being implemented on a generic computer. Since then, *Alice* has provided a lifeline for real businesses threatened or sued with bogus patents. This...



## Copyright Law Shouldn't Pick Winners

DEEPLINKS BLOG BY ELLIOT HARMON | JUNE 20, 2017

Mandatory Filtering Proposals Curb Competition When looking at a proposed policy regulating Internet businesses, here's a good question to ask yourself: would this bar new companies from competing with the current big players? Google will probably be fine, but what about the *next* Google? In the past few years,...

**1**   2   3   4   5   6   7   8   9   ...   next >   last »



The leading nonprofit defending digital privacy, free speech, and innovation.

**FOLLOW EFF:**

**CONTACT**

General
Legal
Security
Membership
Press

**ABOUT**

Calendar
Volunteer
Victories
History
Internships
Jobs
Staff

**ISSUES**

Free Speech
Privacy
Creativity & Innovation
Transparency
International
Security

**UPDATES**

Blog
Events
Press Releases
Whitepapers

**PRESS**

Press Contact
Press Materials

**DONATE**

Join or Renew Membership Online
One-Time Donation Online
Shop
Other Ways to Give

COPYRIGHT (CC BY)          PRIVACY POLICY          THANKS

# Appendix B

*Electronic Frontier Foundation v. Global Equity Management (SA) Pty Ltd.*,
3:17-CV-02053-MEJ (N.D. Cal.)

**Australian Injunction**

FDN:

**IN THE SUPREME COURT OF SOUTH AUSTRALIA**

**IN THE CIVIL JURISDICTION**

**SCCIV 1280 of 2016**

Between:

**GLOBAL EQUITY MANAGEMENT (SA) PTY LTD**
Plaintiff

and

**ELECTRONIC FRONTIER FOUNDATION**
Defendant

---

### ORDER WITH INJUNCTION

---

Filed on behalf of the Plaintiff, GLOBAL       Conatur Legal
EQUITY MANAGEMENT (SA) PTY LTD                 1026 South Road
by                                             Edwardstown SA 5039

Telephone:  08 8177 2043
Mobile:
Facsimile:   08 8177 2049

Email:        info@conatur.com.au

'L' Code:    L2529
'P' Code:    P11257

Settled by:  Sean Richter

Date and time of filing or transmission:

| | |
|---|---|
| **Judicial Officer:** | Her Honour Judge Bochner |
| **Date of application:** | 4 October 2016 |
| **Application made by:** | Plaintiff |
| **Date of hearing:** | 31 October 2016 |
| **Date of order:** | 31 October 2016 |
| **Appearances:** | Mr S Richter counsel for the Plaintiff |
| | No appearance for the Defendant |

**Undertaking:**   The Plaintiff by its solicitor/counsel undertaking to:

(a)   submit to such order (if any) as the Court may consider to be just for the payment of compensation, to be assessed by the Court or as it may direct, to any person (whether or not a party) affected by the operation of the interlocutory order or undertaking or any continuation (with or without variation) of the order or undertaking; and

(b)   pay the compensation referred to in (a) to the person or persons referred to in the order.

**THE COURT ORDERS that:**

1.   The Defendant immediately remove the article entitled 'Stupid Patent of the Month: Storage Cabinets on a Computer' written by Daniel Nazer and published on 30 June 2016 through the website *'Electronic Frontier Foundation – Defending Your rights in the Digital World'*.

2.   The Defendant be restrained from publishing, selling, or otherwise disseminating the article titled 'Stupid Patent of the Month: Storage Cabinets on a Computer' written by Daniel Nazer and published on 30 June 2016 through the website *'Electronic Frontier Foundation – Defending Your rights in the Digital World'*.

3.   Until further order the Defendant be restrained from publishing any content with respect to the Plaintiff's intellectual property.



4.    The Defendant has liberty to apply within 28 days of service of these orders.



**SENIOR DEPUTY REGISTRAR**

**NOTE:**   If the within named Defendant does not comply with this order its assets
may by seized and it directors and other officers may be liable to be
imprisoned for contempt of Court.