UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

ELECTRONIC FRONTIER FOUNDATION,

                  Plaintiff,

v.

GLOBAL EQUITY MANAGEMENT (SA) PTY
LTD,

                  Defendant.

Case No. 3:17-CV-02053-MEJ

**DECLARATION OF PAUL
SVILANS, ESQ., SUBMITTED IN
SUPPORT OF ELECTRONIC
FRONTIER FOUNDATION'S
SUPPLEMENTAL BRIEF IN
SUPPORT OF MOTION FOR
DEFAULT JUDGMENT**

**Hearing Date: N/A (hearing
cancelled)**

Pursuant to 28 U.S.C. § 1746, Paul Svilans hereby declares as follows:

    1.    The facts in this Declaration are based upon my personal knowledge.

    2.    I am a Principal in the law firm of Mark O'Brien Legal L.P., Level 3, 44 Martin
Place, Sydney NSW 2000 Australia.  My online biography is located here:
http://www.markobrienlegal.com.au/paul-svilans/.  I was licensed to practice in Australia by the
Supreme Court of New South Wales in 1985.  I have almost thirty years of experience litigating
defamation and other civil cases in Australian courts.

    3.    I have reviewed the Amended Affidavit of Service Upon Global Equity
Management (SA) Pty Ltd. ("GEMSA") filed in this action on June 30, 2017 [Dkt. No. 12], a copy
of which is attached hereto as **Exhibit A**.  Where service of process can, as here, be effectuated by
"leaving it at, or posting it to, the company's registered office," in my opinion it is sufficient that
the process is left at the registered office as Mr. Bruce-Gordon says he did.  In my opinion, it is
immaterial that Mobin "declined to accept service on behalf of GEMSA," *id.* ¶ 6; service of process
was adequately made, in spite of Mobin's statement, when the process server laid the documents on
the reception desk and stated that Mobin was being served with legal process on behalf of GEMSA.

    4.    In reaching this opinion, I reviewed the Australian cases referred to below and I
have attached copies of those cases hereto as follows:

1

5.      Attached hereto as **Exhibit B** is a true and correct copy of *Career Training on Line Pty Ltd v BES Training Solutions Pty Ltd* (2010) NSWSC 460.

6.      Attached hereto as **Exhibit C** is a true and correct copy of *Nutri-Care Ltd. v ACN 080 633 754 Pty Ltd.* (2009) SASC 72.

7.      Attached hereto as **Exhibit D** is a true and correct copy of *Woodgate v Garard Pty Ltd.* (2010) NSWSC 508.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 12, 2017

Paul Svilans

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of September, 2017, I electronically filed the foregoing DECLARATION OF PAUL SVILANS, ESQ. IN SUPPORT OF EFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT with the Clerk of the Court using the CM/ECF electronic filing system. I further certify that I caused a true and correct copy to be served via First Class Mail upon the following:

Global Equity Management (SA) Pty Ltd.
c/o United Accountants Group Pty Ltd
458 Morphett Rd.
Warradale, SA 5046
    Australia

/s/ Matthew E. Kelley
Matthew E. Kelley

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| ELECTRONIC FRONTIER FOUNDATION, Plaintiff<br><br>v.<br><br>GLOBAL EQUITY MANAGEMENT (SA) PTY LTD., Defendant. | Case No. 3:17-CV-02053-MEJ<br><br>**AMENDED AFFIDAVIT OF SERVICE UPON GLOBAL EQUITY MANAGEMENT (SA) PTY LTD.** |

I, Keith William Bruce-Gordon, process server and employee of Allstate Interstate, located at 8 Beulah Road, Norwood, South Australia, Australia, being duly sworn, make oath and say as follows, that:

1.  I am over the age of 21, a non-party to this action, and am authorized to serve legal process in Australia.

2.  On or about April 28, 2017, I was instructed by plaintiff's attorneys of the law firm Levine Sullivan Koch & Schulz, LLP to serve upon Defendant Global Equity Management (SA) Pty Ltd. (hereinafter "GEMSA") the following documents:

    - Hague Service Convention "Notice"
    - Hague Service Convention "Summary"
    - Summons in a Civil Action
    - Complaint for Declaratory Judgment with Exhibits 1-21
    - Civil Cover Sheet
    - Certification of Interested Entities or Persons
    - Order Setting Initial Case management Conference and ADR Deadlines
    - EFC Registration Information
    - Notice of Assignment of Case to a United States Magistrate Judge for Trial
    - Consenting to the Jurisdiction of a Magistrate Judge
    - Discovery Standing Order for Magistrate Judge Maria-Elena James
    - Civil Standing Order for Magistrate Judge Maria-Elena James
    - Contents of Joint Case Management Statement
    - Consent to Magistrate Judge Jurisdiction

MAXINE RAYE WILLIAMS 1713
*A Justice of the Peace in and for*
*the State of South Australia*

Amended Affidavit of Service of Process
Case No. 3:17-CV-02053-MEJ

United States District Court
Northern District of California

3. According to the Australian Securities and Investment Commission's ("ASIC") database, GEMSA's registered address is located at United Accountants Group Pty Ltd., 458 Morphett Road, Warradale, Southern Australia 5046, Australia (*see* Organisational Search on Global Equity Management (SA) Pty Ltd. extract attached hereto as Exhibit A).

4. The Australian Service and Execution of Process Act 1992 – Section 9, which applies in this instance, states: "Service of a process, order or document under this Act on a company is to be effected by leaving it at, or by sending it by post to, the company's registered office." *See also* Corporations Act 2001 – Sect. 109X (1)(a) ("For the purposes of any law, a document may be served on a company" by, among other things, "leaving it at . . . the company's registered office.").

5. On May 2, 2017 at 11:25 a.m., I visited United Accountants Group at the 458 Morphett Road address with the intention of serving the above-referenced documents upon GEMSA. Upon arrival I met with a receptionist and advised I had documents for service upon GEMSA.

6. The receptionist asked an accountant for United Accountants Group Pty Ltd. to meet me. The accountant, who identified himself only as "Mobin," acknowledged that United Accountants Group is the registered office for GEMSA and that GEMSA's offices were upstairs, but declined to accept service on behalf of GEMSA. I laid the above-referenced documents on the counter at reception and advised Mobin that he was being served with legal process on behalf of Global Equity Management (SA) Pty Ltd.

7. Mobin is a male of Middle Eastern appearance, approximately 28 years old, 5'9" tall with short black hair, a light beard and average build.

8. I believe service to have been effected upon defendant Global Equity Management (SA) Pty Ltd. in accordance with a method prescribed by the internal laws of Southern Australia for civil matters within this jurisdiction, and thus in accordance with Article 10(b) of the *Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters* and in compliance with the laws of the United States.

Amended Affidavit of Service of Process
Case No. 3:17-cv-02053-MEJ



MAXINE KATE WILLIAMS 17141
*A Justice of the Peace in and for
the State of South Australia*

United States District Court
Northern District of California

1          I declare under penalty of perjury under the laws of the United States and Australia that the

2    foregoing statements are true and accurate to the best of my knowledge and belief.

3

4    SWORN at Eastwood, South Australia before me on this _____ 23 _____ day of June 2017.

5

6

7

8    Signature of Australian Justice of the Peace/      Keith William Bruce-Gordon, Process Server
     Commissioner of Oaths

9

10              **MAXINE RAYE WILLIAMS 17141**
               *A Justice of the Peace in and for*
     [Seal]          *the State of South Australia*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   Amended Affidavit of Service of Process
     Case No. 3:17-CV-02053-MEJ

United States District Court
Northern District of California

# EXHIBIT A

# ASIC ORGANISATIONAL SEARCH FOR
# GLOBAL EQUITY MANAGEMENT (SA) PTY LTD

J.P.
23/6/17.

MAXINE RAYE WILLIAMS 17141
*A Justice of the Peace in and for
the State of South Australia*

## ASIC & Business Names

ORGANISATIONAL SEARCH ON GLOBAL EQUITY MANAGEMENT (SA) PTY LTD

**Current Extract**

This information was extracted from ASIC database on 18 April 2017 at 09:19AM

This extract contains information derived from the Australian Securities and Investment Commission's (ASIC) database under section 1274A of the Corporations Act 2001. Please advise ASIC of any error or omission which you may identify.

| 139 354 340 | GLOBAL EQUITY MANAGEMENT (SA) PTY LTD | DOCUMENT NO. |
|---|---|---|
| | 139 354 340 | |
| ABN | 38 139 354 340 | |
| Registered in | SA | |
| Date Registered | 09-Sep-2009 | |
| Review Date | 09-Sep-2017 | |

**Current Organisation Details**

| Name | GLOBAL EQUITY MANAGEMENT (SA) PTY LTD | 1E5797077 |
|---|---|---|
| Name Start | 09-Sep-2009 | |
| Status | REGISTERED | |
| Type | AUSTRALIAN PROPRIETARY COMPANY | |
| Class | LIMITED BY SHARES | |
| Subclass | PROPRIETARY COMPANY | |
| Disclosing Entity | NO | |

**Current Registered Office**

| Address | UNITED ACCOUNTANTS GROUP PTY LTD, 458 MORPHETT ROAD, WARRADALE, SA, 5046 | 7E4704172 |
|---|---|---|
| Start Date | 14-Sep-2012 | |

**Current Principal Place of Business**

| Address | 59 GULLY ROAD, SEACLIFF PARK, SA, 5049 | 1E5797077 |
|---|---|---|
| Start Date | 09-Sep-2009 | |

**Current Director**

| Officer Name | SCHUMANN RAFIZADEH | 7E7162175 |
|---|---|---|
| ABN | Not available | |
| Birth Details | 04-May-1952 TEHRAN IRAN, ISLAMIC REPUBLIC OF | |
| Address | 59 GULLY ROAD, SEACLIFF PARK, SA, 5049 | |
| Appointment Date | 03-Jul-2015 | |

**Current Secretary**

| Officer Name | SCHUMANN RAFIZADEH | 7E7162175 |
|---|---|---|
| ABN | Not available | |
| Birth Details | 04-May-1952 TEHRAN IRAN, ISLAMIC REPUBLIC OF | |
| Address | 59 GULLY ROAD, SEACLIFF PARK, SA, 5049 | |
| Appointment Date | 03-Jul-2015 | |

**Current Issued Capital**

| Type | Current | | 1E5797077 |
|---|---|---|---|
| Class | ORD | | |
| | ORDINARY SHARES | | |
| Number of Shares/Interests issued | | 1 | |
| Total amount paid/taken to be paid | | $1.00 | |
| Total amount due and payable | | $0.00 | |

Note: For each class of shares issued by a proprietary company, ASIC records the details of the twenty members of the class (based on shareholdings). The details of any other members holding the same number of shares as the twentieth ranked member will also be recorded by ASIC on the database. Where available, historical records show that a member has ceased to be ranked amongst the twenty members. This may, but does not necessarily mean, that they have ceased to be a member of the company.

**Current Members**

| Class | ORD | | | 7E4234137 |
|---|---|---|---|---|
| No. Held | 1 | | | |
| Beneficially Owned | YES | Fully paid | YES | |

| Name | RAFIZADEH, MONDONA |
|---|---|
| ABN | Not available |
| Address | 59 GULLY ROAD, SEACLIFF PARK, SA, 5049 |
| Joint Holding | NO |

**Document Details**

| Received | Form Type | Processed | No. Pages | Effective | |
|---|---|---|---|---|---|
| 25-Jul-2015 | 484 | 25-Jul-2015 | 2 | 25-Jul-2015 | 7E7162175 |
| 484E | Change to Company Details Appointment or Cessation of A | | | | |
| | Company Officeholder | | | | |
| 07-Sep-2012 | 484 | 07-Sep-2012 | 2 | 07-Sep-2012 | 7E4704172 |
| 484B | Change to Company Details Change of Registered Address | | | | |
| 24-Jan-2012 | 484 | 24-Jan-2012 | 2 | 24-Jan-2012 | 7E4234278 |
| 484E | Change to Company Details Appointment or Cessation of A | | | | |
| | Company Officeholder | | | | |
| 24-Jan-2012 | 484 | 24-Jan-2012 | 2 | 24-Jan-2012 | 7E4234137 |
| 484N | Change to Company Details Changes to (Members) Share | | | | |
| | Holdings | | | | |
| 21-Sep-2011 | 484 | 21-Sep-2011 | 2 | 21-Sep-2011 | 7E3965721 |

484E     Change to Company Details Appointment or Cessation of A
Company Officeholder

| 09-Sep-2009 | 201 | 09-Sep-2009 | 3 | 09-Sep-2009 | 1E5797077 |

201C    Application For Registration as a Proprietary Company

Section 146A of the *Corporations Act 2001* states **'A contact address is the address to which
communications and notices are sent from ASIC to the company.'**

| Address | PO BOX 230, SEACLIFF PARK, SA, 5049 |
| Start Date | 21-Oct-2009 |

\*\*\* End of Extract \*\*\*

Career Training on Line Pty Ltd v B E S Training Solutions Pty Ltd; v Buckland [201... Page 1 of 10
Case 3:17-cv-02053-JST Document 22-1 Filed 09/12/17 Page 11 of 47
Exhibit B

AustLII

**Supreme Court of New South Wales**

**Career Training on Line Pty Ltd v B E S Training Solutions Pty Ltd; v Buckland [2010] NSWSC 460 (14 May 2010)**

Last Updated: 17 May 2010

NEW SOUTH WALES SUPREME COURT

CITATION:

Career Training on Line Pty Ltd v B E S Training Solutions Pty Ltd; v Buckland [2010] NSWSC 460

JURISDICTION:

Equity Division

Corporations List

FILE NUMBER(S):

(1) 2010/017465

(2) 2010/017475

HEARING DATE(S):

10/05/10

JUDGMENT DATE:

14 May 2010

PARTIES:

(1) Career Training Online Pty Ltd - Plaintiff

B E S Training Solutions Pty Limited - Defendant

(2) Career Training Online Pty Ltd - Plaintiff

Susan Caroline Buckland - Defendant


JUDGMENT OF:

Barrett J


LOWER COURT JURISDICTION:

Not Applicable


LOWER COURT FILE NUMBER(S):

Not Applicable


LOWER COURT JUDICIAL OFFICER:

Not Applicable


COUNSEL:

Mr P A Beale - Plaintiff

Mr K L Andronos - Defendant


SOLICITORS:

Spencer Whitby & Co

MWA Lawyers - Defendant


CATCHWORDS:

CORPORATIONS - winding up - statutory demand - application for order setting aside - time limit in s 459G measured from service of statutory demand - service by leaving at registered office - ascertaining situation of registered office defined by street address, floor number and accountancy practice - where street doors habitually locked carried sign identifying those doors as access to accountancy practice - observations on service outside normal office hours


LEGISLATION CITED:

Companies Act 1961, s 222

Corporations Act 2001 (Cth) ss 109X(1)(a), 145(1), 459E, 459G


CATEGORY:

Principal judgment


CASES CITED:

Cornick Pty Ltd v Brains Master Corporation [1995] FCA 1710; (1995) 60 FCR 565

David Grant& Co Pty Ltd v Westpac Banking Corporation [1995] HCA 43; (1995) 184 CLR 265

Falgat Constructions Pty Ltd v Equity Australia Corporation Pty Ltd [2006] NSWCA 259; (2006) 23 BCL 292

James v Ash Electrical Services Pty Ltd [2008] NSWSC 1112; (2008) 73 NSWLR 95

Jin Xin Investment and Trade (Australia) Pty Ltd v ISC Property Pty Ltd [2006] NSWSC 7; (2006) 196 FLR 350

Nutri-Care Ltd v ACN 080 663 754 Pty Ltd [2009] SASC 72

Re Emeritus Pty Ltd [1967] 1 NSWR 458

Saferack Pty Ltd v Marketing Heads Australia Pty Ltd [2007] NSWSC 1143; (2007) 214 FLR 393

SV Steel Supplies Pty Ltd v Palwizat [2007] QSC 24; (2007) 208 FLR 113

TEXTS CITED:

DECISION:

Originating process dismissed with costs.

JUDGMENT:

IN THE SUPREME COURT

OF NEW SOUTH WALES

EQUITY DIVISION

CORPORATIONS LIST

BARRETT J

FRIDAY, 14 MAY 2010

2010/017465 CAREER TRAINING ON LINE PTY LTD v B E S
TRAINING SOLUTIONS PTY LTD
2010/017475 CAREER TRAINING ON LINE PTY LTD v SUSAN
CAROLINE BUCKLAND

JUDGMENT

1 These two proceedings were heard together. Each purports to be an application under s 459G of the *Corporations Act* 2001 (Cth) in relation to a statutory demand served on the plaintiff, in one case by Ms Buckland and in the other by a company controlled by her.

2 There arises, in each proceeding, a threshold question concerning service of the statutory demand. The facts concerning service are the same in each case. This is because both demands were, at the relevant time, together in a single envelope with the respective accompanying affidavits.

3 It is not disputed that the defendant in each case served a statutory demand on the defendant. There is, however, a dispute about the time of service, that being an important matter under s 459G:

> "(1) A company may apply to the Court for an order setting
> aside a statutory demand served on the company.
>
> (2) An application may only be made within 21 days after the
> demand is so served.
>
> (3) An application is made in accordance with this section only
> if, within those 21 days:

(a) an affidavit supporting the application is filed with the Court; and

(b) a copy of the application, and a copy of the supporting affidavit, are served on the person who served the demand on the company."

4 Each defendant maintains that its statutory demand was served on 23 December 2009 by "leaving it at" the plaintiff's registered office: *Corporations Act*, s 109X(1)(a). If that was in truth the date of service, the originating process filed in each proceeding on 19 January 2010 was not filed within the period referred to in s 459G(2) and s 459G(3); and if that is the case, the court has no choice but to dismiss the originating process: *David Grant & Co Pty Ltd v Westpac Banking Corporation* [1995] HCA 43; (1995) 184 CLR 265.

5 The situation of the plaintiff's registered office was, at the relevant time, recorded by Australian Securities and Investments Commission as:

> "Watson & Proud, Ground Floor, 31 Egerton Street, Silverwater NSW 2128."

6 Watson & Proud is an accountancy practice conducted by Mr Michael Watson. It operates on the ground floor of a two-storey building at 31 Egerton Street, Silverwater. It is necessary to describe physical features of the building.

7 Access to the ground floor of 31 Egerton Street from the street is through glass doors positioned at the top of a flight of nine stairs leading from a concrete footpath. Inside those glass doors is a vestibule from which another flight of stairs leads to the upper storey. On the left-hand wall of the vestibule, as one enters the glass doors from the street, is a second set of glass doors. These provide access to an office suite. Visible through the second set of doors (but not, it seems, through the glass doors on the street frontage) is lettering identifying the suite as the office of Watson & Proud. The left-hand edge of the second set of doors is somewhat less than a metre along the vestibule wall from the street doors.

8 The actions on 23 December 2009 said by each defendant to have amounted to service were actions of Ms Buckland. She deposes that she went to 31 Egerton Street at about 1.30pm on 23 December 2009. She found the outer glass doors – those providing access to the building from the street – locked. There was a sign affixed to one of the doors:

> "Watson & Proud
>
> To gain access please call 9648 1666 or 0412 XXX XXX."

(I have omitted the last digits of the mobile number as it is Mr Watson's private telephone; those digits did, however, appear in the sign.)

9 Ms Buckland observed mail wedged between the two locked glass doors on the street frontage. This made her think that no-one was inside. She then slid under the glass doors the envelope containing the statutory demands.

10 At that point, Ms Buckland realised that she had failed to correct an error in the address written on the envelope. She removed the mail wedged between the two doors to make it easier to retrieve the envelope. She managed to get the envelope back from under the doors. She then corrected the address on the envelope, again pushed it under the doors and replaced the wedged mail in about the position she had found it.

11 The defendants have put into evidence a photograph taken by Ms Buckland's son (who was with her) showing the envelope deposited by Ms Buckland on the carpeted floor of the vestibule, wholly inside the glass doors and sufficiently clear of them not to be able to be reached by anyone outside. The photograph also shows what appear to be four envelopes wedged between the two doors.

12 Mr Watson closed his office early on 23 December 2003. All staff members other than himself left before 1pm. Mr Watson left "close to 2" he said, although accepting that it could have been around 1.30pm. No one attended the office the next day, which was Christmas Eve. The envelope containing the statutory demands was found in the ground floor vestibule at 31 Egerton Street by an employee of the Watson & Proud practice on 29 December 2009, the first business day after the Christmas break.

13 Mr Beale of counsel, who appeared for the plaintiff, accepted that the statutory demands had been served on the plaintiff but submitted that the date of service was 29 December 2009. Mr Andronos of counsel submitted on the defendant's behalf that service took place on 23 December 2009. There is no challenge to Ms Buckland's account of her actions at about 1.30pm on 23 December 2009.

14 Mr Beale's basic contention is that service occurred only when the documents came into the possession of the Watson & Proud employee on 29 December 2009. In resisting the proposition that there was service on 23 December 2009, Mr Beale sought to draw a parallel with *Jin Xin Investment and Trade (Australia) Pty Ltd v ISC Property Pty Ltd* [2006] NSWSC 7; (2006) 196 FLR 350. That case concerned service of an originating process on a company the address for service of which was:

> "David Kam & Co, Solicitors and Migration Agents, Suite 103, Level 1, The Chambers, 370 Pitt Street, Sydney NSW 2000."

15 The originating process was left in a letterbox in the ground floor lobby of the multi-storey office building at 370 Pitt Street. It was held that it had not been left at the nominated address on Level 1.

16 Mr Beale also relied on *James v Ash Electrical Services Pty Ltd* [2008] NSWSC 1112; (2008) 73 NSWLR 95 where it was held that a statutory demand placed in a letterbox on the external wall of a building at 14 Pacific Highway, Wyong was not left at a registered office described as

> "Berkman, Suite 1A, 14 Pacific Highway, Wyong NSW 2259".

17 Mr Andronos referred to a decision of McLelland CJ in Eq in *Re Emeritus Pty Ltd* [1967] 1 NSWR 458, a case involving s 222 of the *Companies Act* 1961, a forerunner of the present s 459E. Under s 222(2), a presumption of insolvency arose if certain conditions were satisfied, including that the creditor had "served on the company by leaving at the registered office" a demand for payment. The company in question had a registered office described as

> "Rooms Nos 2, 3 and 4, First Floor, corner of Hume Highway and Highland Avenue, Yagoona".

18 The affidavit of service of the demand referred to the process server's "placing the same under the door on the ground floor of premises situated at the Corner of Hume Highway and Highland Avenue Yagoona aforesaid giving access to the stairway leading to rooms numbers 2, 3 and 4 on the first floor of the said premises, the said door having been found by me to be locked". The court stated, without elaboration or explanation, that "service of the notice of demand did comply with the provisions of s 222 (2) ...".

19 In all three cases mentioned, a particular suite or room on a particular floor was identified as the location of the registered office. In two instances, the name of a practice or firm ("David Kam & Co" or "Berkman") also formed part of the description of the registered office.

20 The present case is different in that, while the name of a practice or firm is mentioned ("Watson & Proud"), there is no reference to a suite number or room number. There is merely a reference to the ground floor without identification of any part or section of it.

21 This makes the circumstances of the present case much more akin to those in *Saferack Pty Ltd v Marketing Heads Australia Pty Ltd* [2007] NSWSC 1143; (2007) 214 FLR 393. That case concerned a registered office recorded as:

> "c/- Stratford Fisher & Associates, Level 4, 44 Miller Street, North Sydney NSW 2060".

22 The solicitor seeking to effect service by leaving documents at that registered office went to Level 4 and saw on a desk in a reception area a sheet of A4 paper in the nature of a sign bearing the words "Stratford Fisher& Associates". Service by leaving the documents with a person at the location of that A4 sign was held to be good service within s 109X(1)(a) since, on the evidence, the A4 sign was used to identify the part of Level 4 at which contact could be made with Stratford Fisher & Associates. There was a finding that the sign had been put there by the principal of Stratford Fisher& Associates.

23 In the present case, the registered office is identified by three characteristics. The first is the street address of the relevant building, 31 Egerton Street. The second is the level within the building, that is, the ground floor. The third is the accounting practice, Watson & Proud. A person who has located the building at 31 Egerton Street thus has the task of finding Watson & Proud on the ground floor.

24 Anyone who went to 31 Egerton Street on 23 December 2009 found the name "Watson & Proud" prominently displayed on the sign affixed to the locked doors at the street frontage. The message conveyed by the sign was that the premises inside those doors were the premises of Watson & Proud. No reference to any part of those premises was contained in the sign. The remainder of the sign's content, coupled with the fact that the outer doors were locked, indicated that anyone wishing to enter in order to visit Watson & Proud should call one of the telephone numbers. Someone who wished merely to deposit documents and not to visit had no need to enter if, as was the case, it was possible to cause the envelope to be placed inside the identified premises by sliding it under the locked door to which the identifying sign was attached.

25 Mr Watson made it clear in his evidence that no one other than Watson& Proud occupied any part of the ground floor (apart from the Watson & Proud office suite and an electrical control room, the ground floor was vacant). He also made it clear and that it was his habit to keep the street doors locked at all times. He had control over the locking and unlocking of the street doors. Having chosen to keep them locked, he made it known by means of the sign attached to them that the locked doors were the means of access to Watson & Proud and that Watson & Proud was located behind those doors.

26 Here, as in *Saferack Pty Ltd v Marketing Heads Australia Pty Ltd* (above), the real question is as to the identification of a place described as "Watson & Proud, Ground Floor, 31 Egerton Street, Silverwater NSW 2128". The answer is that there was a place so identifiable at 31 Egerton Street: that the sign affixed by Mr Watson to the locked doors at the building's street frontage identified the ground floor premises behind those doors as those of Watson & Proud.

27 It follows that the action of Ms Buckland in depositing the envelope containing the two statutory demands under the glass doors at the street frontage so as to be wholly within the premises behind those doors constituted "leaving" each such document "at" the registered office of the plaintiff. Each statutory demand was therefore served on the plaintiff on 23 December 2009.

28 Mr Beale referred to the fact that s 145(1), dealing with opening hours of a registered office, requires that such an office be "open to the public" on each business day "from at least 10am to 12 noon and from at least 2pm to 4pm" (I leave to one side the alternative of "at least 3 hours chosen by the company between 9am and 5pm", given the absence of evidence of any specification of particular hours in accordance with s 145(2)); and that Ms Buckland's visit was at 1.30pm, that is, within the permitted period of closing. But there is nothing in s 109X, s 145 or elsewhere that somehow vitiates service effected by leaving a document at a registered office outside the hours that s 145(1) requires it to be "open to the public". The most that might flow from that is the possibility referred to as follows by Hodgson JA in *Falgat Constructions Pty Ltd v Equity Australia Corporation Pty Ltd* [2006] NSWCA 259; (2006) 23 BCL 292 at [54] with specific reference to s 109X of the *Corporations Act*:

> "In the case of leaving a document at a company's registered office, prima
> facie the time service is effected would be the time of leaving the document;
> although, if a document is left there outside normal office hours, at a time
> when the office is in fact closed, it is at least arguable that service is not
> effected until the document is either detected by a person acting on behalf
> of the company, or the commencement of the next period of normal office
> hours, whichever is the earlier."

29 It may be observed, however, that this suggestion in *obiter dicta* that the effective time of service made by delivery outside "normal office hours" is postponed until the earlier of the two later times mentioned does not seem to sit well with decided cases in which the point has arisen for determination: see, for example, *Cornick Pty Ltd v Brains Master Corporation* [1995] FCA 1710; (1995) 60 FCR 565, *SV Steel Supplies Pty Ltd v Palwizat* [2007] QSC 24; (2007) 208 FLR 113 and *Nutri-Care Ltd v ACN 080 663 754 Pty Ltd* [2009] SASC 72 where it was held that delivery to the registered office after normal office hours was good service and occurred on the day of delivery.

30 It is not necessary in this case to pinpoint the precise time of service. Even if the approach suggested by Hodgson JA should be taken, s 145(1) warrants the conclusion that what his Honour called "the next period of normal office hours" commenced at 2pm on 23 December 2009, some thirty minutes after Ms Buckland placed the documents inside the locked doors at the street frontage. Whatever view one takes about "normal office hours" and their significance, service of each statutory demand occurred on 23 December 2009.

31 The filing of each originating process and supporting affidavit on 19 January 2010 (and subsequent service thereof) therefore occurred outside (and not "within") the period of 21 days referred to in s 459G(2) and s 459G(3).

32 Consistently with *David Grant & Co Pty Ltd v Westpac Banking Corporation Ltd* (above), the originating process in each proceeding must be dismissed. It will also be ordered, in each case, that the plaintiff pay the defendant's costs of the proceedings.

**********

Case 3:17-cv-02053-JST Document 22-1 Filed 09/12/17 Page 20 of 47

LAST UPDATED:

14 May 2010

NUTRI-CARE LIMITED v ACN 080 633 754 PTY LTD [2009] SASC 72 (17 March... Page 1 of 3
Case 3:17-cv-02053-JST   Document 22-1   Filed 09/12/17   Page 21 of 47

Exhibit "C"

AustLII

**Supreme Court of South Australia**

**NUTRI-CARE LIMITED v ACN 080 633 754 PTY LTD [2009] SASC 72 (17 March 2009)**

Last Updated: 18 March 2009

### SUPREME COURT OF SOUTH AUSTRALIA

(Civil: Application)

DISCLAIMER - Every effort has been made to comply with suppression orders or statutory provisions prohibiting publication that may apply to this judgment. The onus remains on any person using material in the judgment to ensure that the intended use of that material does not breach any such order or provision. Further enquiries may be directed to the Registry of the Court in which it was generated.

### NUTRI-CARE LIMITED v ACN 080 633 754 PTY LTD

[2009] SASC 72

### Reasons of Judge Burley a Master of the Supreme Court

17 March 2009

CORPORATIONS

Application to set aside statutory demand - proceedings served outside business hours on 21st day after service of statutory demand - whether service required to be within business hours - Held: service effective if service takes place outside business hours.

*Corporations Act 2001* S 459G, referred to.

*David Grant & Co Pty Ltd v Westpac* [1995] HCA 43; (1995) 184 CLR 265, applied.

*Cornick Pty Ltd v Brains Master Corporation* [1995] FCA 1710; (1995) 60 FCR 565; *S.V. Steel Supplies Pty Ltd v Palwizat* (2007) 208 FLR 113, considered.

Case 3:17-cv-02053-JST Document 22-1 Filed 09/12/17 Page 22 of 47

NUTRI-CARE LIMITED v ACN 080 633 754 PTY LTD

[2009] SASC 72

1. JUDGE BURLEY: This is an application to set aside a statutory demand based on the provisions of s459G of the *Corporations Act*. The parties have agreed that the question of whether or not there was service of these proceedings within the relevant 21 day period is largely determinative of the application.

2. The statutory demand was issued on 22 December 2008 and was served upon the plaintiff on 26 December 2008. That is a matter of agreement between the parties and is substantiated by the affidavit evidence. All of the affidavits filed in this action have been treated as being before me for the purposes of this application.

3. The parties agree, correctly in my view, that the expiration of the 21 day period from 26 December 2008 occurred on 16 January 2009. The plaintiff alleges, and it has not been disputed, that copies of the application and the supporting affidavits were sent by facsimile transmission by the plaintiff's solicitors to the defendant's solicitors. The transmission commenced at 7.44 pm on 16 January 2009.

4. In addition to that, the plaintiff asserts, and it is not disputed, that the plaintiff's solicitor placed copies of the application and affidavits in support in the mail slot at the offices of Messrs Belperio Clark, the defendant's solicitors. Their office had been given in the statutory demand as being the address at which proceedings might be served. The placing of the documents in the mail slot occurred at approximately 8.15 pm on 16 January 2009.

5. Section 459G permits an application to be made for an order setting aside a statutory demand. The application must be both issued and served on the defendant/creditor within 21 days after service of the demand.

6. The point taken by the defendant on this application is that there has not been compliance with s459G because the proceedings were not served within the relevant 21 day period. It was the defendant's contention that, in order to comply with s459G(3)(b) of the *Corporations Act*, the documents had to be served within business hours on 16 January. It was the plaintiff's contention that as long as the documents were served on the calendar day, that is up to 12 midnight on the given day, there has been compliance with the section.

7. If the defendant is correct, it follows that the application must be dismissed because there must be strict compliance with the provisions of s459G. Both parties accepted that there is no ability to extend the 21 day period: cf *David Grant and Co. Pty Ltd v Westpac* [1995] HCA 43; (1995) 184 CLR 265.

8. Neither party was aware of any authority directly relevant to the point at issue on this application. Mr Coppola, counsel for the plaintiff, referred me to two cases dealing with service of a statutory demand. The first is *Cornick Pty Ltd v Brains Master Corporation* [1995] FCA 1710; (1995) 60 FCR 565. In that case Whitlam J had to consider whether or not the service of a statutory demand could be effected on a given day outside office hours. His Honour came to the conclusion that there was no requirement under the legislation or the rules that service had to be effected within normal business hours.

9. The same conclusion was reached by Cullinane J in *SV Steel Supplies Pty Ltd v Palwizat* (2007) 208 FLR 113. Mr Coppola argued that by parity of reasoning the proper interpretation of s459G should be that service on the day (as opposed to within business hours) is sufficient. Having heard the arguments of both

counsel I have come to the conclusion that it is appropriate to apply the same reasoning to the question of service of these proceedings.

10.  The defendant's contended that the documents must be served within business hours so that they would thereupon come to the attention of a person who might then take some action in relation to the documentation. I disagree with that submission. S 459G creates a strict regime according to which an application to set aside a statutory demand might be made. It would be somewhat draconian to add a further limit to the section and read it to mean that any relevant service had to take place within business hours.

11.  In my opinion, a proper interpretation of s459G allows for service to be effected on a given day, the underlying feature of the requirement being that if it is served out of hours on a particular day, in this case the last day of the 21 day period, it will shortly come to the attention of someone who might react to the proceedings the following day or, if the 21st day happens to be a Friday, the following Monday. It is for that reason that I have concluded that the proceedings have been effectively served by the plaintiff in accordance with the requirements of s459G.

12.  Counsel for the defendant indicated that, if I came to the conclusion that there had been effective service of the proceedings within the requirements of s459G, there was little he would wish to say in opposition to the application itself. The affidavits in support of the application disclose that the plaintiff accepts that there is a liability under a contract between the parties for the plaintiff to pay the amounts the subject of the statutory demand, but it was submitted that the plaintiff had established a genuine offsetting claim exceeding the amount of the statutory demand. In my opinion, the affidavits relied upon by the plaintiff clearly established a genuine offsetting claim. The affidavits of the defendant do not deal specifically with that aspect of the plaintiff's claim.

13.  Accordingly, I conclude that the application should be granted. There will be an order that the statutory demand dated 22 December 2008 be set aside.

Exhibit D

AustLII

Supreme Court of New South Wales

Woodgate v Garard Pty Ltd [2010] NSWSC 508 (24 May 2010)

# Woodgate v Garard Pty Ltd [2010] NSWSC 508 (24 May 2010)

Last Updated: 26 May 2010

NEW SOUTH WALES SUPREME COURT

CITATION:

Woodgate v Garard Pty Ltd [2010] NSWSC 508

This decision has been amended. Please see the end of the judgment for a list of the amendments.

JURISDICTION:

Equity Division

Corporations List

FILE NUMBER(S):

2009/290971

HEARING DATE(S):

1 March 2010

JUDGMENT DATE:

24 May 2010

PARTIES:

Giles Geoffrey Woodgate a.t.f. bankrupt estate Athol Albert Fenton (Plaintiff)

Garard Pty Ltd (Defendant)

JUDGMENT OF:

Palmer J

LOWER COURT JURISDICTION:

Not Applicable

LOWER COURT FILE NUMBER(S):

Not Applicable

LOWER COURT JUDICIAL OFFICER:

Not Applicable

COUNSEL:

S. Golledge (Plaintiff)

A. Crossland (Defendant)

C. Stapley (Sol) (Deputy Commissioner of Taxation, Supporting Creditor)

SOLICITORS:

Turks Legal (Plaintiff)

Dennis James, Director, Garard Pty Ltd (Defendant)

C. Stapley (ATO – Supporting Creditor)


CATCHWORDS:

CORPORATIONS – STATUTORY DEMAND – "SERVICE" – Statutory Demand not served in manner prescribed by s 109X Corporations Act – whether informal but effective service – consideration of "informal effective service rule".

PRESUMPTION OF INSOLVENCY – Whether presumption arises if time for compliance with Statutory Demand expires after winding up application is filed – construction of s 459C(2) and s 459Q – authorities and principles considered – earlier authorities not followed.


LEGISLATION CITED:

Acts Interpretation Act 1901 (Cth) – s 28A

Corporations Act 2001 (Cth) – s 109X, s 234, s 459A, s 459C, s 459E(1), s 459F(2), s 459G, s 459P, s 459R, s 459Q, s 459S, s 461, s 462, s 464

Corporations Law 1996 (Cth) – s 109X, s 220, s 459G


CATEGORY:

Principal judgment


CASES CITED:

- Allianz Australia Workers' Compensation (NSW) Ltd v Woodfast Joinery (Aust) Pty Ltd [2003] NSWSC 587

- Aussie Vic Plant Hire Pty Ltd v Esanda Finance Corp Ltd [2008] HCA 9; (2008) 243 ALR 207

- Austar Finance Group Pty Ltd v Campbell [2007] NSWSC 1493

- Australian Securities Commission v Bank Leumi Le-Israel (Switzerland) (1996) 69 FCR 531

- Career Training on Line Pty Ltd v BES Training Solutions Pty Ltd [2010] NSWSC 460

- Condor Asset Management Ltd v Excelsior Eastern Ltd [2005] NSWSC 1139

- Cornick Pty Ltd v Brains Master Corporation [1995] FCA 1710; (1995) 60 FCR 565

- David Grant & Co Pty Ltd (rec apptd) v Westpac Banking Corporation [1995] HCA 43; (1995) 184 CLR 265

- Dwyer v Canon Australia Pty Ltd [2007] SASC 100

- Eagles v Eagles [1960] VicRp 63; [1960] VR 400

- Emhill Pty Ltd v Bonsoc Pty Ltd [2004] VSC 322; (2004) 50 ACSR 305

- Faji (Australia) Constructions Pty Ltd v AC Professional Accounting Pty Ltd [2009] NSWSC 180

- Fingalbay Pty Ltd v Rengay Nominees Pty Ltd (1997) 142 FLR 340

- Forza Finance Pty Ltd v Vergepoint Sales & Management Pty Ltd [2010] QSC 46

- FP Leonard Advertising Pty Ltd v KD Travel Service Pty Ltd (1993) 12 ACSR 136

- Future Life Enterprises Pty Ltd, Re (1994) 33 NSWLR 559

- Grey v Pearson [1857] EngR 335; (1857) 6 HL Cas 61; 10 ER 1216

- Griffith Producers Co-operative Co Ltd v Calabria (1996) 15 ACLC 19

- Gryst v Dromana Estate Ltd, re Dromana Estate Ltd [2008] FCA 1148

- Howship Holdings Pty Ltd v Leslie (No 2) [1996] NSWSC 314; (1996) 41 NSWLR 542

- Italiano v Carbone [2005] NSWCA 177

- James v Ash Electrical Services Pty Ltd [2008] NSWSC 1112; (2008) 73 NSWLR 95

- Joe Mangraviti Pty Ltd v Lumley Finance Ltd [2010] NSWSC 61

- Ketrim Pty Ltd v AS&L Pty Ltd [2004] NSWSC 1046; (2004) 52 ACSR 252

- Millerview Constructions Pty Ltd v Palmer Plumbing Pty Ltd [2008] QSC 3

- Missing Link Network Integration Pty Ltd v Keene Consulting International Pty Ltd [2007] NSWSC 1377

- Nutri-Care Ltd v ACN 080 633 754 Pty Ltd [2009] SASC 72

- Pacific Mobile Phones Pty Ltd, Re [2008] QSC 210

- Parklands Blue Metal Pty Ltd v Kowari Motors Pty Ltd [2003] QSC 98; [2004] 1 Qd R 140

- Pearlburst Pty Ltd v Summers Resort Group Pty Ltd [2007] NSWSC 1126

- Peters v Oscar Mayer Pty Ltd [1963] VicRp 54; [1963] VR 390

- Pinn v Barroleg Pty Ltd (1997) 23 ACSR 541

- Players Pty Ltd v Interior Projects (1996) 20 ACSR 189

- Polstar Pty Ltd v Agnew [2007] NSWSC 114; (2007) 208 FLR 226

- R v Bolton; Ex parte Beane [1987] HCA 12; (1987) 162 CLR 514

- Racecourse Totalisators Pty Ltd v Hartley Cyber Engineering Pty Ltd (1989) 15 ACLR 457

- Rochester Communications Group Pty Ltd v Lader Pty Ltd (1997) 143 ALR 648

- Seventh Cameo Nominees Pty Ltd v Holdway Pty Ltd (unrep VSC, Chernov J, 24 April 1998)

- Sheslow v Diamond Rose NL [2005] NSWSC 492; (2005) 54 ACSR 376

- Sim v Ravenswood Resort Pty Ltd (Receivers and Managers Appointed) [2003] WASC 121

- SV Steel Supplies Pty Ltd v Palwizat [2009] QSC 24

- Telstra Corporation Ltd v Ivory [2008] QSC 123


TEXTS CITED:

Harmer Report (Law Reform Commission, Report No 45, General Insolvency Inquiry)

DECISION:

Declaration that Statutory Demand validly served on 13 August 2009 – further argument necessary as to whether leave to prove solvency should be granted.

JUDGMENT:

**2009/290971 Woodgate v Garard Pty Ltd**

**JUDGMENT**

**24 May, 2010**

**Introduction**

1 This is an application to wind up the Defendant ("Garard") in insolvency pursuant to s 459A, s 459C and s 459P of the *Corporations Act 2001* (Cth) ("*Corporations Act*"). The Plaintiff, Mr Woodgate, relies upon the presumption of insolvency arising under s 459C(2)(a) consequent upon the failure of Garard to comply with a Statutory Demand.

2 The application raises a number of points of law as to the service of a document on a company and as to the construction of those sections of the *Corporations Act* which afford a presumption of insolvency.

3 Mr Woodgate is the trustee of Mr Athol Fenton's bankrupt estate. Mr Fenton was an electrical contractor who carried out work for Garard.

4 On 31 July 2009 Mr Woodgate sent to Garard a Statutory Demand claiming a debt of $15,400 in respect of work which had been carried out by Mr Fenton. The Demand was sent by registered post to an address which, only a month before, had ceased to be Garard's registered office. Mr Woodgate, apparently, was unaware of the change. One of Garard's two directors, Mr Szkirpan, collected the registered letter containing the Demand from an Australia Post Office and, by letter to Mr Woodgate dated 14 August 2009, he acknowledged that he had received the Demand on 13 August.

Case 3:17-cv-02053-JST   Document 22-1   Filed 09/12/17   Page 30 of 47

5 Mr Woodgate concedes that the Demand has never been served at Garard's registered office or in any other manner authorised by s 109X for service of documents upon a company. Nevertheless, he says that the Demand was served upon Garard, within the meaning and for the purpose of s 459E(1) and s 459F(2)(b), because it was actually and effectively received by Garard.

6 Garard did not file and serve an application under s 459G to set aside the Demand within twenty-one days from 13 August 2009. At some time between 24 and 30 September 2009, Mr Szkirpan asked his co-director, Mr James, to take over dealing with the Demand. There is no evidence that Mr James was aware of the Demand before that time.

7 Mr Woodgate filed an Originating Process to wind up Garard on 13 October 2009. Mr Szkirpan had pointed out to Mr Woodgate that the Demand had not been served at Garard's registered office. Accordingly, Mr Woodgate's Originating Process sought, in addition to an order for the winding up of Garard, *"a declaration pursuant to s 109X(6)(b) of the Corporations Act that Garard is deemed served with the [Demand] ... on 13 August 2009"*.

8 On 2 December 2009, Garard filed an Interlocutory Process seeking leave, pursuant to s 459S, to oppose the Originating Process, presumably upon the ground that the debt was genuinely disputed: s 459S(1)(b). The application came before Austin J on 7 December 2009. Mr James appeared, unrepresented, and tendered evidence as to solvency. Austin J rejected the evidence as inadmissible and adjourned Mr Woodgate's winding up application and Garard's s 459S application to 1 March 2010. His Honour directed Garard to file and serve on or before 29 January 2010 the evidence upon which it wished to rely in support of its s 459S application and in opposition to the winding up application. Such evidence should have included admissible evidence of solvency, if Garard wished to oppose the winding up application on the ground that it was solvent.

9 Garard filed and served no evidence in compliance with his Honour's direction. Instead, when the winding up application came on for hearing on 1 March 2010, Garard filed in Court an Amended Interlocutory Process which abandoned the application for leave under s 459S and sought only a declaration that Garard was not duly served with the Statutory Demand and a consequential order that the winding up application be dismissed. At the conclusion of argument, Mr Crossland of Counsel, who appeared for Garard, informed me that he had to obtain Garard's instructions as to whether to seek leave to file evidence of solvency if his submissions as to invalid service of the Demand failed. Leave to file that evidence would be required because Garard had failed to comply with the directions of Austin J in that regard. On 3 March, Mr Crossland gave notice that he was instructed to seek leave to file evidence of solvency. That application remains to be determined.

### Issues

10 The issues may be summarised thus:

– can the declaration sought by Mr Woodgate be made *"pursuant to s 109X(6)(b)"*;

– was the Demand validly served on Garard for the purposes of s 459E(1) and s 459F(2)(b):

– on 13 August 2009, when Mr Szkirpan received it,

or

– between 24 and 30 September 2009, when Mr James also found out about it,

or

– was the Demand never validly served;

– if the Demand was served between 24 and 30 September 2009, does the presumption of insolvency apply under s 459C(2)(a) in view of the fact that time for compliance with the Demand had not expired by the time that the winding up application was filed on 13 October 2009;

– if the Demand was validly served on 13 August or between 24 and 30 September 2009 and if the presumption of insolvency applies, should Garard now be given leave to adduce evidence of solvency.

## The undisputed facts

11 On 19 January 2009, Mr Szkirpan wrote to Mr Woodgate, who had by then been appointed trustee of Mr Fenton's bankrupt estate, disputing that Garard was indebted to Mr Fenton's estate for $15,400 and asserting that, in fact, Garard was a creditor of Mr Fenton's estate in the sum of $39,450, being the cost of rectification of faulty electrical work.

12 On 31 July 2009, an employee of Mr Woodgate sent the Demand by registered post in an envelope addressed *"D. James, Garard Pty Ltd"* at the former address of Garard's registered office.

13 On 14 August 2009, Mr Szkirpan wrote to Mr Woodgate as follows:

*"We refer to your statutory demand dated 31st July, 2009 received by us on Thursday 13th August, 2009. This debt is disputed, our previous correspondence dated 19th January 2009 indicated the nature of the dispute and provided you with supporting documentation. Your office has spoken to the electrician who conducted the rectification work.*

*We require you to advise us forthwith that the statutory demand is withdrawn. If you have not confirmed by Monday 17th August 2009 we are forced to instruct our lawyer to institute proceedings under Section 459G. We will claim for such application against you."*

14 By letter dated 19 August, Mr Woodgate responded to Mr Szkirpan, saying that he had not received sufficient evidence that there was a genuine dispute as to the existence of the debt claimed by the Demand *"served on you on 13 August 2009"*. Mr Woodgate requested specified evidence of the dispute by 24 August 2009.

15 By letter dated 24 August to Mr Woodgate, Mr Szkirpan supplied certain documentation said to evidence the dispute. He signed the letter as *"DIRECTOR For and on behalf of Garard Pty Ltd"*.

16 By letter dated 27 August, Mr Woodgate sought further information from Mr Szkirpan by 4pm the next day. By letter dated 28 August Mr Szkirpan responded, providing certain information. Again, he signed the letter as *"DIRECTOR For and on behalf of Garard Pty Ltd"*.

17 By letter dated 28 August, Mr Woodgate sought more information by 31 August 2009. Mr Szkirpan responded by letter dated 31 August, signed by him on behalf of Garard, as before.

18 If the Demand had been served on 13 August, time for the making of an application to set it aside under s 459G expired on 4 September. There is no evidence that Mr Woodgate informed Mr Szkirpan prior to 4

September that, despite the continuing correspondence, he would file an application to wind up Garard for non-compliance with the Demand unless a s 459G application was made within time.

19 On 24 September, Mr Szkirpan wrote to Mr Woodgate as follows:

*"I refer to my letter 31st August, 2009 and phone conversation yesterday 23rd September, 2009 with yourself.*

*Our position is clearly outlined in the correspondence in that Mr Fenton's work was defective and he was not prepared to carry out any rectification work.*

*The debt is clearly disputed. Hence, any proceedings commenced by you will be vigorously defended.*

20 On 13 October 2009, Mr Woodgate filed the present winding up application, relying upon presumed insolvency pursuant to s 459C(2)(a).

21 On 6 November 2009, the other director of Garard, Mr D. James, filed an affidavit alleging that the debt claimed in the Demand was genuinely disputed. He annexed the correspondence between Mr Woodgate and Mr Szkirpan and concluded:

*"This debt has always been disputed since it came to the attention of Garard Pty Limited that the work undertaken was defective. All questions asked by the Trustee have been answered."*

22 On 24 November 2009, Mr D. James swore another affidavit in which he said:

*"The correspondence from Garard Pty Ltd to Woodgate & Co annexed to my earlier affidavit was written by Mr Szkirpan, a director of the defendant company. Mr Szkirpan gave me the correspondence in September 2009 and asked me to deal with it."*

23 There is no evidence that Mr James was actually aware of receipt of the Demand by Mr Szkirpan until Mr Szkirpan asked him to take over dealing with it. I infer that Mr Szkirpan made that request after he had written the letter dated 24 September, i.e. at some time between 24 and 30 September.

**Can a declaration be made *"pursuant to s 109X(6)(b)"***

24 Section 109X provides:

*"**Service of documents***

*(1) For the purposes of any law, a document may be served on a company by:*

*(a) leaving it at, or posting it to, the company's registered office; or*

*(b) delivering a copy of the document personally to a director of the company who resides in Australia or in an external Territory; or*

*(c) if a liquidator of the company has been appointed—leaving it at, or posting it to, the address of the liquidator's office in the most recent notice of that address lodged with ASIC; or*

*(d) if an administrator of the company has been appointed—leaving it at, or posting it to, the address of the administrator in the most recent notice of that address lodged with ASIC.*

*(2) For the purposes of any law, a document may be served on a director or company secretary by leaving it at, or posting it to, the alternative address notified to ASIC under subsection 5H(2), 117(2), 205B(1) or (4) or 601BC(2). However, this only applies to service on the director or company secretary:*

*(a) in their capacity as a director or company secretary; or*

*(b for the purposes of a proceeding in respect of conduct they engaged in as a director or company secretary.*

*(3) Subsections (1) and (2) do not apply to a process, order or document that may be served under section 9 of the Service and Execution of Process Act 1992.*

*(6) This section does not affect:*

*(a) any other provision of this Act, or any provision of another law, that permits; or*

*(b) the power of a court to authorise;*

*a document to be served in a different way.*

*(7) This section applies to provisions of a law dealing with service whether it uses the expression "serve" or uses any other similar expression such as 'give' or 'send'."*

25 Mr Crossland submits that a declaration as to service of the Demand cannot be made *"pursuant to s 109X(6)(b)"*, as sought by the Originating Process, because that provision permits the Court to authorise only the manner in which a document, not yet served, is to be served on a company – it does not enable the Court to validate irregular service already made.

26 Mr Golledge of Counsel, who appears for Mr Woodgate, does not urge that s 109X(6)(b) can support the declaration sought but, as he does not expressly abandon a declaration in those terms, I will express my conclusions.

27 I accept Mr Crossland's submission that s 109X(6)(b) operates prospectively so that it cannot be used to validate service which has already been effected irregularly. That proposition is supported by unchallenged authority: see *Emhill Pty Ltd v Bonsoc Pty Ltd* [2004] VSC 322; (2004) 50 ACSR 305 at [14] per Mandie J; *Racecourse Totalisators Pty Ltd v Hartley Cyber Engineering Pty Ltd* (1989) 15 ACLR 457, at 459 per O'Bryan J; *Rochester Communications Group Pty Ltd v Lader Pty Ltd* (1997) 143 ALR 648, at 668 and 670 per Beaumont J.

### Service on a company

28 The contest between the parties has focussed on whether the Court should hold that receipt of the Demand by Mr Szkirpan on 13 August 2009 was, although informal, nevertheless good service on Garard. Mr Crossland, in submitting that it was not, relies heavily on the decision of the Full Federal Court in *Rochester Communications* (supra) and upon the authorities discussed therein by Beaumont J. For the contrary proposition, Mr Golledge relies upon the decision of Young J (as his Honour then was) in *Howship Holdings Pty Ltd v Leslie (No 2)* [1996] NSWSC 314; (1996) 41 NSWLR 542, and upon later cases which have followed that decision.

29 In *Rochester Communications*, the creditor had served a Statutory Demand in which, in accordance with the prescribed form, it had given its solicitors' office address as the address for service of *"any*

*application".* The debtor filed a s 459G application within the prescribed time but did not serve it either at the address stated in the Statutory Demand or at the creditor's registered office. Rather, the application was served at the office of one of the directors of the creditor. The primary judge held that the application had not been served on the creditor within the prescribed time so that the Court had no jurisdiction to entertain it.

30 The debtor appealed. Section 220 of the *Corporations Law* 1996 (Cth), which then applied, provided that a company *"may be served"* by leaving the document at, or sending it to, the registered office of the company. The debtor submitted that s 220 was facultative, not mandatory, and that, in the particular circumstances of the case, service on the director of the creditor was effective to bring the application to the attention of the creditor itself.

31 The principal judgment was given by Beaumont J. His Honour reviewed a number of English cases in which it was held that the precursor of s 220 was, in fact, mandatory and that service other than at the registered office of a company was not valid. His Honour also referred to *Eagles v Eagles* [1960] VicRp 63; [1960] VR 400 in which Pape J had held that a writ delivered to a bank at one of its branch offices, rather than at its registered office, was not validly served even though the branch manager had brought the writ to the attention of the bank's head office.

32 His Honour noted that *Eagles* had been distinguished in *Peters v Oscar Mayer Pty Ltd* [1963] VicRp 54; [1963] VR 390, at 395, on the ground that service of the writ in *Eagles* had to be effected in accordance with the rules of court, whereas service of a document on a company generally could be effected in accordance with the precursor of s 220 although that provision was not *"an exclusive mode of effecting service on a company. It provides what will be sufficient leaving other methods open of proving effective service".* However, Beaumont J distinguished *Peters* on the ground that it was concerned with proceedings under the *Health Act* 1958.

33 At 670, Beaumont J referred to the observations of Young J in *Howship*, upon which Mr Golledge now relies, to the effect that s 109X is facultative, not mandatory. Beaumont J said, by way of distinction, that those observations *"were made in the context of service on an individual".* He continued:

*"...the later course of authority previously mentioned now makes it clear that the 'actual notice' principle must be viewed in the light of specific statutory provision to the contrary, in particular the relevant provisions of the Law, and regulations, viz s 220(1) and the 'address for service' provisions of Form 509H ..."*

34 Beaumont J was of the view that, as the s 459G application had not been served in accordance with the statutory provisions, there was no valid service and the appeal should be dismissed. Whitlam and Moore JJ agreed in that result but gave their own reasons.

35 The reasoning of Whitlam J seems to be that:

– a s 459G application is a proceeding in the Court;

– the rules of Court prescribe that a document initiating a proceeding must be personally served;

– the mode of "personal service" on a company is prescribed by the Rules of Court and includes the modes of service prescribed by the then *Corporations Law*;

– the s 459G application was not served in accordance with the Rules of Court, which would have permitted service at the address specified in the Statutory Demand;

– the s 459G application was, therefore, not served at all and there was no reason why the Court should, ex post facto, dispense with compliance with the Rules of Court as to service, even if power to do so existed.

36 The reasoning of Moore J seems to be:

– the *Corporations Law* does not require the s 459G application to be served at the address specified in the Statutory Demand but service at that address is good service;

– the only other mode of good service is in accordance with s 220;

– the modes of service of initiating process prescribed by the Rules of Court are not modes of service permitted by s 220;

– however, if the Rules of Court as to service were within the modes of service permitted by s 220 the Court had power under the Rules of Court to dispense with, or validate, ex post facto, service which was not in accordance with the Rules;

– in the factual circumstances of the case, such dispensation, or validation, should not be granted.

37 It will be seen that there is considerable divergence in the paths which led their Honours to dismiss the appeal. In attempting to distil a ratio from the judgments, the headnote of the case in the Australian Law Reports ventures only: *"Although not a complete code, s 220 of the Corporations Law generally governs service on a company"* – which is not a very useful statement of principle in an area of the law replete with technicality and variety of factual circumstance.

38 The apparent view of Beaumont J that the modes of service permitted by s 220 *Corporations Law* (now s 109X *Corporations Act*) are an exclusive code finds some support in the decision of McLelland CJ in Eq in *Griffith Producers Co-operative Co Ltd v Calabria* (1996) 15 ACLC 19. His Honour there held that a Statutory Demand is analogous to initiating proceedings and *"must in my view be effected formally in accordance with the applicable statutory procedure"*. His Honour did not undertake any extensive review of the legislation or of the authorities in arriving at that conclusion.

39 That approach has not been taken up in subsequent decisions. Rather, the pragmatic concept of effective service, as explained by Young J in *Howship* (supra) has carried the day, although only in first instance decisions, no authoritative pronouncement having been made by an appellate court.

40 In *Howship*, the creditors, a firm of solicitors, had served a Statutory Demand and the debtor had, within the stipulated time, filed a Summons to set it aside under s 459G *Corporations Law*. The Summons was posted to the creditor's Document Exchange box, not to the address specified in the Statutory Demand. There was no issue that the documents had been delivered to the Document Exchange box on a certain day and that, some time later, the creditors had actually received them, but there was no evidence as to when they had actually received them.

41 The creditors submitted that the manner of service on a company prescribed by s 109X *Corporations Law* was mandatory because the scheme of Pt 5.4 required certainty both of the fact and of the time of service of a document on a company. His Honour held that the section is facultative, not mandatory. As to other modes of service, his Honour said at 544B-D, in a frequently quoted passage:

*"Section 459G itself does not deal with what is service. The ordinary meaning of 'service' is personal service, and personal service merely means that the document in question must come to the notice of the person for whom it is intended. The means by which that person obtains the document are usually immaterial. This is clear in cases that have been considered good law over the centuries, including* Hope v Hope *[1854] EngR 805; (1854) 4 De GM & G 328 at 341-345; [1854] EngR 805; 43 ER 534 at 539-540;* R v Heron; Ex parte Mulder *(1884) 10 VLR 314 at 315;* Pino v Prosser *[1967] VicRp 107; [1967] VR 835 at 838. Some of those cases were complicated by the requirement in the former statutes that a person serving initiating process had to endorse the initiating process, but the principle is clear from them.*

*If this were not so, one would get the absurd situation referred to by McInerney J in* Pino v Prosser *(at 837), that the conclusion would be one which is:*

> '... remarkable to the point of seeming absurdity, in that the defendant who,
> on his own affidavit admits that he received the writ ... should be held not to
> have been served.' "

42 His Honour's pragmatic approach – what might be called *"the effective informal service rule"* – has been applied in many subsequent decisions concerning service of a Statutory Demand and other documents on a company, even though *Howship* was concerned only with service of a s 459G application on natural persons: see e.g. *Seventh Cameo Nominees Pty Ltd v Holdway Pty Ltd* (unrep VSC, Chernov J, 24 April 1998); *Players Pty Ltd v Interior Projects* (1996) 20 ACSR 189, at 193 per Lander J; *Ketrim Pty Ltd v AS&L Pty Ltd* [2004] NSWSC 1046; (2004) 52 ACSR 252; *Parklands Blue Metal Pty Ltd v Kowari Motors Pty Ltd* [2003] QSC 98; [2004] 1 Qd R 140, at 143 per Helman J; *Condor Asset Management Ltd v Excelsior Eastern Ltd* [2005] NSWSC 1139, at [6]-[13] per Barrett J; *Emhill Pty Ltd v Bonsoc Pty Ltd* (supra) at 312 per Mandie J; *Italiano v Carbone* [2005] NSWCA 177, at [58]-[61] per Basten JA; *Austar Finance Group Pty Ltd v Campbell* [2007] NSWSC 1493, at [36] per Austin J; *Dwyer v Canon Australia Pty Ltd* [2007] SASC 100, at [27] per Debelle J; *Polstar Pty Ltd v Agnew* [2007] NSWSC 114; (2007) 208 FLR 226, at [24]-[25]; *Pearlburst Pty Ltd v Summers Resort Group Pty Ltd* [2007] NSWSC 1126 per Barrett J at [26]; *James v Ash Electrical Services Pty Ltd* [2008] NSWSC 1112; (2008) 73 NSWLR 95, at [26] per Barrett J.

43 As I have noted, there is no authoritative decision of an appellate Court confirming the *"effective informal service rule"*: the discussion of the point by Basten J in *Italiano v Carbone* (supra) was not referred to by the other members of the Court. Further, there is conflict in the first instance decisions as to whether particular modes of informal service on a company are valid even for the purpose of the *"effective informal service rule"*: e.g. whether good service of a Statutory Demand or a s 459G application can ever be effected by e-mail or facsimile.

44 Inconsistency and uncertainty in an area of the law which is of everyday application merely multiply occasions for dispute. It may, therefore, be useful to summarise the principles which are supported by the preponderance of authority, as follows:

i) if a document required to be served on a company by the *Corporations Act*, whether or not it initiates proceedings, is served in accordance with any of the modes prescribed in s 109X *Corporations Act* and s 28A *Acts Interpretation Act* 1901 (Cth) or, in the case of a s 459G application, at an address for service nominated in the Statutory Demand (all of which are included in "a prescribed mode"), the document is validly served and once service in a prescribed mode is proved, a proceeding cannot be challenged on the basis that the document did not actually come to the attention of the company: *Austar Finance Group Pty*

*Ltd v Campbell* (supra) at [40]; *Allianz Australia Workers' Compensation (NSW) Ltd v Woodfast Joinery (Aust) Pty Ltd* [2003] NSWSC 587; *Rochester Communications* (supra); *James v Ash Electrical Services* (supra) at [27]; *Telstra Corporation Ltd v Ivory* [2008] QSC 123, at [61] per Lyons J; *Forza Finance Pty Ltd v Vergepoint Sales & Management Pty Ltd* [2010] QSC 46, at [14]-[16] per Daubney J;

ii) where service is effected by leaving the document at the company's registered office in accordance with s 109X(1)(a), it makes no difference whether the document is left within or outside normal business hours or within or outside the hours at which that office is kept open, and the date of service is the date of leaving the document, not when it comes to someone's attention: *Cornick Pty Ltd v Brains Master Corporation* [1995] FCA 1710; (1995) 60 FCR 565; *SV Steel Supplies Pty Ltd v Palwizat* [2009] QSC 24, at [30], [31]; *Nutri-Care Ltd v ACN 080 633 754 Pty Ltd* [2009] SASC 72; *Career Training on Line Pty Ltd v BES Training Solutions Pty Ltd* [2010] NSWSC 460, at [28], [29] per Barrett J.

iii) where a creditor serves a Statutory Demand in a prescribed mode and:

– knows, at the time of service or before the s 459G(3) period expires, that the Demand has not actually come to the attention of the company;

– knows that the company would dispute the Demand if made aware of it;

– refrains from bringing the Demand to the actual notice of a responsible officer of the company within the s 459G(3) period; and

– relies on good service of the Demand and the presumption of insolvency arising under s 459C(2)(a),

the Court may, in its discretion and in the interests of justice, set aside the Statutory Demand under s 459J (1)(b), not for want of good service but for want of fair notice: *FP Leonard Advertising Pty Ltd v KD Travel Service Pty Ltd* (1993) 12 ACSR 136, at 139 per Santow J; *Re Future Life Enterprises Pty Ltd* (1994) 33 NSWLR 559, at 564F-565C per McLelland CJ in Eq; *Faji (Australia) Constructions Pty Ltd v AC Professional Accounting Pty Ltd* [2009] NSWSC 180, at [31] per Barrett J; *Re Pacific Mobile Phones Pty Ltd* [2008] QSC 210, at [21]-[24]; *Joe Mangraviti Pty Ltd v Lumley Finance Ltd* [2010] NSWSC 61, at [11]-[16];

iv) the prescribed modes are not exclusive of other modes of service: if some other mode of service is employed, whether it is good service depends upon whether the serving party can prove to the Court's satisfaction that the document actually came to the attention of an officer of the company who was either expressly or implicitly authorised by the company to deal directly and responsively with the document, or documents of that nature ("a responsible officer"): see the cases referred to in paragraph 42;

v) there is no special exception to the *"effective informal service rule"* in the case of service by e-mail or facsimile – the question remains whether that mode of service actually brought the document to the attention of a responsible officer: *Austar Finance* (supra) at [49]; *Australian Securities Commission v Bank Leumi Le-Israel (Switzerland)* (1996) 69 FCR 531, at 550 per Lehane J; *Millerview Constructions Pty Ltd v Palmer Plumbing Pty Ltd* [2008] QSC 3, at [11]; *Dwyer v Canon Australia* (supra) at [7]; cf *Fingalbay Pty Ltd v Rengay Nominees Pty Ltd* (1997) 142 FLR 340; *Griffith Producers Co-operative Co v Calabria* (supra);

vi) where a document, not served in a prescribed mode, comes to the actual attention of the sole director of a company it will be presumed, unless a strong case to the contrary is shown, that the director is the responsible officer and that service is good: *Emhill* (supra) at [28]; *Polstar* (supra) at [24];

vii) a party invoking the effective informal service rule bears the onus of proving the time at which the document came to the actual attention of a responsible officer of the company and, in view of the serious consequences which may attend, the Court will not lightly draw inferences or make assumptions as to the time of service: *Howship* (supra) at 547C.

## When was service effected

45 I am satisfied that Mr Szkirpan was, at the relevant time, the director of Garard who was authorised to deal with the Statutory Demand directly and responsively – i.e. for the purposes of the effective informal service rule, he was Garard's responsible officer. My reason for so concluding is that he alone of Garard's two directors undertook correspondence with Mr Woodgate immediately on receipt of the Statutory Demand, expressly admitting receipt of the Demand and purporting to act on behalf of Garard in doing so. The other director, Mr James, in his evidence has adopted and confirmed what Mr Szkirpan did without comment, from which I draw the inference that Mr Szkirpan was expressly or implicitly authorised by Mr James to deal with the Statutory Demand, or with documents of that character, in the way that he did.

46 I am satisfied that the Statutory Demand actually came to the attention of the company, through Mr Szkirpan, on 13 August 2009 – the date on which Mr Szkirpan admits he received it. The Statutory Demand having validly been served on 13 August 2009, time for paying the debt or filing and serving a s 459G application expired on 4 September 2009. Accordingly, when Mr Woodgate filed his winding up application on 13 October 2009, he was entitled to rely upon the presumption of insolvency arising under s 459C(2)(a).

## The construction of s 459C(2) and s 459Q

47 A difficult question of law arose during the course of the hearing. It is not necessary to deal with it if I am correct in the conclusion I have reached above as to the time of service of the Statutory Demand. In case I am not correct, I should state my views for the assistance of the Court of Appeal.

48 I have found that the Statutory Demand was served on 13 August 2009 because I have drawn an inference that Mr Szkirpan was then the relevant responsible officer of Garard. If I am wrong in drawing this inference, it follows that good service of the Statutory Demand was not effected until Garard's other director also received actual notice of the Demand – which I have inferred to be some time between 24 and 30 September 2009: see [23].

49 If service of the Demand was effected on Garard between 24 and 30 September, the twenty-one day period for compliance with it fixed by s 459F(b) had not expired by 13 October 2009, when Mr Garard filed his Originating Process to wind up Garard. The Originating Process expressly relies on Garard's failure to comply with the Statutory Demand, said to have been served on 13 August 2009, and upon the insolvency of Garard presumed to arise under s 459C(2)(a). Mr Woodgate has adduced no evidence to prove Garard's insolvency otherwise.

50 This raises an important question. Can the statutory presumption of insolvency be invoked if time for compliance with a Statutory Demand has not expired before a winding up application is filed, but has expired by the time the application comes on for final hearing? Mr Golledge submits that it can, and he rightly says that that proposition is supported by authority. However, I am respectfully of the opinion that I am not able to follow that authority.

51 Section 459C provides:

"*Presumptions to be made in certain proceedings*

*(1) This section has effect for the purposes of:*

>> *(a) an application under section 234, 459P, 462 or 464; or*

>> *(b) an application for leave to make an application under section 459P.*

*(2) The Court must presume that the company is insolvent if, during or after the 3 months ending on the day when the application was made:*

>> *(a) the company failed (as defined by section 459F) to comply with a statutory demand; or*

>> *(b) execution or other process issued on a judgment, decree or order of an Australian court in favour of a creditor of the company was returned wholly or partly unsatisfied; or*

>> *(c) a receiver, or receiver and manager, of property of the company was appointed under a power contained in an instrument relating to a floating charge on such property; or*

>> *(d) an order was made for the appointment of such a receiver, or receiver and manager, for the purpose of enforcing such a charge; or*

>> *(e) a person entered into possession, or assumed control, of such property for such a purpose; or*

>> *(f) a person was appointed so to enter into possession or assume control (whether as agent for the chargee or for the company).*

*(3) A presumption for which this section provides operates except so far as the contrary is proved for the purposes of the application."*

52 A difficult problem arises in applying to the provisions of subsection (2)(a) the introductory words of the subsection – *"... if, during or after, the 3 months ending on the day when the [winding up] application was made ..."*. There is no difficulty if the debtor has failed to comply with a Statutory Demand *"during the three months ending on the day when the application was made"*: if the creditor serves a Statutory Demand, waits until time for payment or the making of a s 459G application has expired and then files a winding up application not later three months after the expiry date, it can rely on the presumption of insolvency. However, if the creditor waits longer than three months from the expiry date before making the winding up application, then the presumption grows "stale" and cannot be invoked. This is in accordance with the intention of the Harmer Report (*Law Reform Commission, Report No 45, General Insolvency Inquiry*). Volume 1, para 154 of the Report, which is the origin of s 459C, states:

*"The Commission proposed ... that no presumption of insolvency should arise if more than three months has elapsed after the last day for compliance with a statutory demand and no application for the winding-up of the company based upon that non-compliance has been filed. ... Views were put to the Commission that three months was too short ... The Commission is not convinced that the time limits put forward in*

*DP 32 should be changed. Non-compliance with a statutory demand is supposed to provide contemporaneous evidence of insolvency at the time of or within a reasonably short time after non-compliance – not up to six months after that event."*

53 But how can the Court, consistently with the policy of the presumption of insolvency growing "stale" three months after non-compliance with a Statutory Demand, presume insolvency if non-compliance occurs *"after the three months ending on the day when the application was made"*?

54 In such a case, the three months "limitation period" has no meaning because nothing is required to happen within it and no specific consequence relating to a Statutory Demand or presumed insolvency will occur when the three month period ends. The whole phrase can, therefore, only mean *"at any time after the application was made the company failed to comply with the Statutory Demand"*. Bearing in mind that, under s 459R(1) a winding up application can be heard up to six months after it is made – and even later if an extension of time is granted under s 459R(2) – one can see that a literal reading of s 459C(2)(a) could produce the result that a winding up application could be filed, the creditor could then serve a Statutory Demand and six months or more after the company fails to pay, the creditor can rely upon presumed insolvency at the hearing.

55 Such a result is inconsistent with the recommendations in the Harmer Report. Even more importantly, however, it is repugnant to s 459Q, which provides:

*"Application relying on failure to comply with statutory demand*

*If an application for a company to be wound up in insolvency relies on a failure by the company to comply with a statutory demand, the application:*

> *(a) must set out particulars of service of the demand on the company and of the failure to comply with the demand; and*

> *(b) must have attached to it:*

*(i) a copy of the demand; and*

*(ii) if the demand has been varied by an order under subsection 459H(4)—a copy of the order; and*

> *(c) unless the debt, or each of the debts, to which the demand relates is a judgment debt—must be accompanied by an affidavit that:*

*(i) verifies that the debt, or the total of the amounts of the debts, is due and payable by the company; and*

*(ii) complies with the rules."*

56 The requirements of s 459Q are mandatory, not permissive, facultative or discretionary – "must" must mean "must". It is impossible for a creditor to file an application relying upon s 459C(2)(a) which complies with s 459Q(a) by setting out *"particulars of the failure to comply with the demand"* if the creditor serves the Demand <u>after</u> the winding up application is filed or if the time for compliance with the Demand has not already expired.

57 How, then, does one read s 459C(2), according to Lord Wensleydale's *"golden rule"*, in a manner which is consistent with, rather than repugnant to, s 459Q: *Grey v Pearson* [1857] EngR 335; (1857) 6 HL Cas 61, at

106; [1857] EngR 335; 10 ER 1216, at 1234; *R v Bolton; Ex parte Beane* [1987] HCA 12; (1987) 162 CLR 514, at 546.

58 One can only make consistent sense of s 459C and s 459Q if one reads s 459C, which deals with an evidentiary presumption in a variety of different circumstances, as qualified by, and subject to, s 459Q, which deals with a particular matter of procedure in one of those circumstances. One then reads the phrase *"during or after"* in subsection (2) distributively amongst the six events that follow, so that *"during or after"* does not apply to all six events equally but, rather, *"during"* and *"after"* apply respectively only to such of those events as can be relied upon having regard to the provisions of s 459Q.

59 The result is that, consistently with s 459Q, one can rely upon failure to comply with a Statutory Demand only if time for compliance has expired <u>during</u> the three months ending on the day when the application was made, but one can rely on any one of the other five insolvency events specified in s 459C (2)(b)-(f) if the event has occurred either <u>during</u> the three month period before the winding up application is filed or <u>after</u> filing and before the hearing.

60 Such a result does no violence to the words of s 459C(2) and it is in conformity with the recommendations in the Harmer Report. Further, it avoids absurdity and inconvenience. If time for compliance with a Statutory Demand could expire after filing of the winding up application, a creditor who is "in a hurry" could first file a winding up application relying upon failure to comply with a Statutory Demand, then serve the Statutory Demand and set the twenty-one day period running, in the expectation that the winding up application would not come on for hearing in less than twenty-one days. The debtor would then immediately move to have the application summarily dismissed because, at the date of filing and at the date of hearing of the Motion, no presumption of insolvency could possibly be available. The creditor would respond with an application for an adjournment of the Motion to a day after the twenty-one day period had expired. This kind of manoeuvring – at great expense to the parties and placing pressure on the resources of the Court to deal with the spate of urgent applications – is inimical to the ordered and predictable regime of dealing with Statutory Demands contemplated in Pt 5.4: see generally *David Grant & Co Pty Ltd (rec apptd) v Westpac Banking Corporation* [1995] HCA 43; (1995) 184 CLR 265; *Aussie Vic Plant Hire Pty Ltd v Esanda Finance Corp Ltd* [2008] HCA 9; (2008) 243 ALR 207.

61 In support of the construction of s 459C(2) which I favour, I observe that the events of presumed insolvency stipulated in s 459C(2) can be relied upon in winding up applications made under s 234 (oppressive conduct), s 459P (general insolvency), s 462 (grounds under s 461 other than insolvency including the just and equitable ground) and s 464 (applications by ASIC under s 462): s 459C(1). Obviously, many of the grounds for winding up under those sections may have nothing to do with insolvency – e.g. s 234 or s 461(1)(a)-(g), (h)(ii), (k) – so that an application to wind up on those grounds would not be application *"for a company to be wound up in insolvency"* to which s 459Q applies.

62 In my opinion, s 459C is intended to operate so that if a person with standing under any of the sections stipulated in s 459C(1) files an application for winding up on any of the grounds of those sections – including the general insolvency ground in s 459P – that person may take advantage of the presumption of insolvency afforded by s 459C(2) if the insolvency event occurs within three months before the application. So, for example, if a member of a company files a winding up application on the ground of oppression or the just and equitable ground, he may also rely upon presumed insolvency in support of the discretionary remedy if any of the six presumed insolvency events in s 459C(2) occurs in the three months before the application is filed. If the insolvency event relied upon is failure to comply with a

Statutory Demand, he will be able to, and must, include in his application at the time of filing the particulars and attachments required by s 459Q – which means that the time for compliance with the Statutory Demand must have expired before filing of the application.

63 However, if the presumed insolvency event is one specified in s 459C(2)(b)-(f) the applicant may rely upon it not only if it occurs during the three months before the winding up application is filed but also if it occurs after filing and before the hearing because the application, not relying upon non-compliance with the Statutory Demand, is not caught by s 459Q.

### A consideration of the authorities

64 I turn now to consider the authorities on which Mr Golledge relies to support the proposition that a creditor may rely upon the presumption of insolvency under s 459C(2)(a) if time for compliance with a Statutory Demand expires after the filing of the winding up application. There are five such authorities, none of them the decision of an appellate court.

65 The first reported decision concerning the construction of s 459C(2) is that of Santow J in *Pinn v Barroleg Pty Ltd* (1997) 23 ACSR 541. There, the creditor filed a winding up application relying upon the presumed insolvency arising from the company's failure to comply with a Statutory Demand. The application was filed more than three months after time for compliance with the Demand had expired. The issue before Santow J was whether non-compliance with the Statutory Demand had occurred *"during or after the three months ending on the day when the application was made".*

66 The creditor argued that the words *"or after"* meant that *"the application could be made after three months from the relevant event (i.e. expiry of the Statutory Demand) – even though this might be years later":* at 544. His Honour did not accept this construction. At 544, he said:

*"... despite its somewhat puzzling reference to the words 'or after', I am satisfied that the section means:*

*(a) that the s 459C(2) event relied upon goes stale after three months as the basis for a winding up application; but*

*(b) where the application is made at a date preceding the event, but based on it, it may still be granted, provided of course the event actually occurs before the winding up order is made; for example if the application were made before expiry of the 21 days after notice of demand.*

*Thus – giving practical effect to the words 'or after' – a concerned creditor may immediately lodge an application to wind up the company, knowing the 21 days for compliance with a statutory demand has still to expire, but on the basis that the 21 days will expire after (but before the application is heard). This would give a purpose to the words 'or after' in the clause above. Without those words, an application made before the s 459C(2) event could not satisfy the three months requirement, as it was not made during the three months. The sense of the section is seen more clearly when the syntax is therefore rearranged to read: 'during the three months ending on the date the application was made, or after [the day the application was made]'. Such an interpretation avoids patent absurdity because otherwise the words 'or after', would give no sense to the three months limitation. It would mean that in reality there was no time limitation at all – that a winding up application could be brought even years after the relevant event."*

67 For convenience, I will refer to the two propositions advanced by his Honour in paragraphs (a) and (b) above as "proposition (a)" and "proposition (b)".

68 What is remarkable in the judgment is that his Honour's attention obviously was not drawn to s 459Q, which was in force at the time. His Honour does not refer to that section at all in the judgment. For the reasons given above, I am unable to see how his Honour could have reached the conclusion that he did in proposition (b), so far as it relates to reliance upon an unsatisfied Statutory Demand, if his Honour's attention had been drawn to s 459Q. Further, his Honour reaches his conclusions by "rearranging" the words of s 459C(2) in a way which, I would respectfully suggest, does violence to the words used. The construction which I favour does no violence to the words of subsection (2) but simply requires them to be read alongside, and consistently with, s 459Q.

69 The second decision is that of Newnes M in *Sim v Ravenswood Resort Pty Ltd (Receivers and Managers Appointed)* [2003] WASC 121. There, the creditor sought to wind up the company on two grounds – presumed insolvency under s 459C(2)(c) (appointment of a receiver) and actual insolvency. The receiver had been appointed some six months before the winding up application was filed. The company argued that the appointment could not be relied upon under s 459C(2)(c) because the appointment had not occurred *"during"* the three months ending on the day when the application was made. The creditor argued, relying upon *Pinn*, that s 459C(2) meant that the application could be made *"after"* the three month period had expired, so that the presumption of insolvency could be invoked.

70 The learned Master quoted from the judgment in *Pinn* the passage which I have set out above. He noted a submission of the company's counsel that *Pinn* was wrongly decided. However, the Master then, without further exposition of his own reasons, said that he agreed with the reasoning in *Pinn* and held that the presumption could be invoked in the case before him.

71 With great respect, I am unable to see how the facts of *Sim* could give rise to the presumption of insolvency under either proposition (a) or proposition (b) in *Pinn*, even if one accepts those propositions as correct. The appointment of the receiver would be "stale", in accordance with proposition (a) as having occurred more than three months before the winding up application was filed. That "staleness" could not be cured under proposition (b) because that proposition requires the "insolvency event" to occur after the application is filed – which, of course, did not happen in *Sim*. Accordingly, all one can say about the decision in *Sim* is that it approves, without discussion, the reasoning in *Pinn* but only as obiter, because the actual decision in *Sim* is not in conformity with the reasoning in *Pinn*.

72 The third decision is that of Barrett J in *Sheslow v Diamond Rose NL* [2005] NSWSC 492; (2005) 54 ACSR 376. There, the creditor served a document purporting to be a Statutory Demand. More than three months after the time for compliance had expired, he filed a winding up application founded solely upon the presumption of insolvency under s 459C(2)(a). The company argued that the document served was not a Statutory Demand within the meaning of s 459E and that, even if it were, time for compliance had not expired *"during the three months"* prior to filing of the application.

73 Barrett J held that the document was not, in truth, a Statutory Demand so that the winding up application had to be dismissed. His Honour went on to consider the consequences under s 459C(2)(a) if the document had been a Statutory Demand. His Honour said that the application was *"made"* – i.e. the Originating Process was filed – on 17 May 2005 so that the three month period referred to in s 459C(2) commenced on 17 February 2005. Time for compliance with the "Demand" – if it had been a Statutory Demand – expired in September 2004. His Honour said at [10]:

*"The 'day when the application was made' is, in this case, 17 May 2005, being the date of the filing of the plaintiff's originating process. The period of 3 months to which s 459C(2)(a) refers therefore began on 17 February 2005. Failure to comply with a statutory demand could therefore be relied upon for the purposes of the current winding-up application only if the failure – that is, the elapsing of the period of 21 days after service without payment, securing or compounding in conformity with the demand – had occurred on or after 17 February 2005. This demand, as I have said, was served in August 2004 which is well outside the relevant period. The case is accordingly one in which comments by Santow J in* Pinn v Barroleg Pty Ltd *(1997) 23 ACSR 541 apply. As his Honour there noted, s 459C is intended to confine the applicable time period for the winding-up application so that the evidence relied upon for a presumption of insolvency 'would not go stale'. Statutory staleness of an unsatisfied statutory demand occurs, in this sense, after 3 months and 21 days have passed from its service."*

74 It will be seen that in *Sheslow*:

– the issue was not whether time for compliance with a Statutory Demand could expire after filing of a winding up application and still attract the presumption of insolvency;

– Barrett J approved and applied only that part of the reasoning in *Pinn*, proposition (a), which held that *"statutory staleness of an unsatisfied statutory demand occurs … after 3 months and 21 days have passed from its service"*;

– because of the facts of the case, his Honour was not called upon to decide the construction of s 459C(2)(a) in the light of s 459Q.

75 *Sheslow* is, therefore, not authority for proposition (b) in *Pinn* and I would respectfully agree with the conclusion reached by Barrett J, founded upon proposition (a).

76 The fourth decision is that of White J in *Missing Link Network Integration Pty Ltd v Keene Consulting International Pty Ltd* [2007] NSWSC 1377. There, the question squarely arose whether a winding up application relying solely on the presumption of insolvency for non-compliance with a Statutory Demand should be dismissed because the time for compliance with the Demand had expired after the filing of the winding up application.

77 White J held, at [19] that *"the presumption of insolvency for failure to comply with a statutory demand may arise after the day when the winding-up application is made"*. In support of that conclusion his Honour quoted the passage from the judgment of Santow in *Pinn* which I have set out above. His Honour added no reasoning of his own. As in *Pinn*, his Honour's attention was apparently not drawn to the impact of s 459Q on the construction of s 459C(2)(a) and his Honour makes no mention of s 459Q in his reasons for judgment.

78 The fifth decision is that of Finn J in *Gryst v Dromana Estate Ltd, re Dromana Estate Ltd* [2008] FCA 1148. There, the time for compliance with a Statutory Demand expired some six months before the creditor filed an application to wind up founded upon the presumption of insolvency under s 459C92)(a). His Honour held that the creditor could not rely upon the presumption because the application had not been made *"during the three months ending on the day when the application was filed"*, relying upon that part of the judgment in *Pinn* which relates to *"staleness"* in a Statutory Demand.

79 In short, the judgment in *Dromana* is to the same effect as the judgment in *Sheslow*: neither case, while applying proposition (a) in *Pinn*, is authority for proposition (b), i.e. that the presumption of

insolvency can arise by virtue of s 459C(2)(a) if the time for compliance with a Statutory Demand expires after a winding up application is filed.

80 Upon analysis, therefore, it appears that there is only one other decision which directly supports proposition (b) in *Pinn*, i.e. *Missing Link Network*. *Pinn* and *Missing Link Network* are first instance decisions but I would not depart from them unless I were convinced that the proposition for which they are authority is incorrect.

81 In proposition (a) in *Pinn*, Santow J refers to a *"s 459C(2) event"* – i.e., any of the six specified events, including non-compliance with a Statutory Demand. His Honour says that each of such events goes "stale" for the purposes of the presumption of insolvency if a winding up application relying on it is filed more than three months after its occurrence. I respectfully agree with that construction of s 459C(2).

82 In proposition (b), his Honour refers to a winding up application *"made at a date preceding the event but based on it"*. While *"event"* here could have the same meaning as in proposition (a) – i.e., any of the six specified events, including non-compliance with a Statutory Demand or, for example, the appointment of a receiver or entry into possession – his Honour could not really have intended that meaning. One could not file a winding up application *"based on"* the appointment of a receiver or the entry into possession when the appointment or entry had not yet occurred. The words of proposition (b) read as a whole and the example of its application which his Honour immediately gives make it clear that his Honour, in proposition (b), was contemplating only a *"s 459C(2) event"* which has two constituent elements, one of which has occurred before the application is filed and one of which has occurred after filing, so that the application is *"based on"* the event because the first constituent element occurred before filing and the remaining constituent element occurred after filing. In short, clearly his Honour was contemplating in proposition (b) the case where a Statutory Demand is served before filing the winding up application and time for compliance with it expires after filing.

83 In my opinion, proposition (b) in *Pinn* applies only to non-compliance with Statutory Demands. For the reasons I have given, I am unable to agree with that proposition. *Pinn* is the only case which gives reasoned consideration to the proposition and I think that the decision was per incuriam of s 459Q. Accordingly, and with great respect, I decline to follow *Pinn* and *Missing Link Network* as authority for proposition (b).

84 Proposition (b), correctly understood, is not intended to refer to a s 459C(2)(b)-(f) event occurring after the filing of a winding up application. As explained in [59], I conclude that if a s 459C(2)(b)-(f) event occurs after filing of a winding up application, it can be relied upon for presumed insolvency at the hearing, even if the hearing occurs more than three months from the event. Section 459C(3) protects against injustice or absurdity in such cases because the presumption cannot be invoked if the s 459C(2)(b)-(f) event is no longer current at the date of the hearing, such as if the company is no longer in receivership, or a mortgagee who has gone into possession has been discharged in full.

85 To summarise: s 459C(2) must be construed consistently with s 459Q, so that:

– the presumption of insolvency afforded by s 459C(2)(a) arises only where failure to comply with a Statutory Demand has occurred during the three months before the winding up application is filed;

– the presumption of insolvency afforded by s 459C(2)(b)-(f) arises where the insolvency event occurs either during the three months before the winding up application is filed or occurs after the filing date and before the hearing date;

– if an insolvency event referred to in s 459C(2)(b)-(f) occurs between the filing date and the hearing date, it does not go "stale" if the hearing takes place more than three months after the occurrence of the event.

86 In the present case, if I had found that the Statutory Demand was served on Garard between 24 and 30 September 2009, time for compliance would not have expired by the time of filing of the winding up application and I would have dismissed the application on the ground that:

– Mr Woodgate had not proved that Garard had failed to comply with a Statutory Demand within the three months ending on the day when the application was made so that the presumption of insolvency was unavailable and there was no other evidence of insolvency;

– if Mr Woodgate now wished to rely upon non-compliance with the Statutory Demand served in September 2009, he would have to file a new winding up application but such an application would necessarily be dismissed because it relied upon a Statutory Demand which was now "stale".

### Conclusion

87 In the result, I have held that the Statutory Demand was served on Garard on 13 August 2009 and that Mr Woodgate is entitled to rely upon the presumption of insolvency in this application. Unless leave is granted to Garard to prove its solvency, the company must be wound up.

88 At this stage I will make a declaration as to the date of service of the Statutory Demand in the terms sought in paragraph 1 of Mr Woodgate's Originating Process. I will make the declaration, not "pursuant to s 109X(6)(b) of the Corporations Act" as sought, but, rather in exercise of the Court's declaratory jurisdiction. Such a declaration is in accordance with the procedure suggested by Mandie J in Emhill (supra) at [12].

89 I will stand the proceedings over to a date to be fixed to enable the Plaintiff to bring in Short Minutes of Order as to the declaration to be made. I will then hear any application by Garard for leave to file evidence as to its solvency.

– oOo –

AMENDMENTS:

25/05/2010 - Error in date in Decision/Orders - date corrected to 13 August 2009. - Paragraph(s) Cover

sheet, "Decision/Orders"

LAST UPDATED:

25 May 2010