1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 ELECTRONIC FRONTIER
FOUNDATION,

8             Plaintiff,

9     v.

10 GLOBAL EQUITY MANAGEMENT (SA)
PTY LTD,

11            Defendant.

Case No. 17-cv-02053-MEJ

**ORDER FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 14

## INTRODUCTION

Plaintiff Electronic Frontier Foundation ("EFF") moves for default judgment on its claims against Defendant Global Equity Management (SA) Pty Ltd ("GEMSA"). Mot., Dkt. No. 14.[1] EFF seeks a judicial declaration that an order and injunction issued by the Supreme Court of Australia "is repugnant to the First Amendment and California law, and is therefore unenforceable pursuant to the SPEECH Act[, 28 U.S.C. § 4104,] and the Declaratory Judgment Act[, 28 U.S.C. § 2201]." *Id.* GEMSA did not respond to the Motion for Default Judgment. Because the undersigned found this matter suitable for disposition without oral argument, it previously vacated the September 7, 2017 hearing pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-(1)(b).

After carefully reviewing the motion and controlling authorities, the undersigned issues this Report and Recommendation. The undersigned **RECOMMENDS** the District Court **DENY** the Motion for Default Judgment for the reasons set forth below. Further, because GEMSA has not consented to magistrate judge jurisdiction, the Clerk of Court shall **REASSIGN** this case to a

---

[1] EFF did not request entry of default by the clerk. *See* Docket; Fed. R. Civ. P. 55(b)(1).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  district court judge for disposition.

2  **BACKGROUND**

3      EFF is the leading non-profit organization defending civil liberties in the digital world.

4  Compl. ¶ 4, Dkt. No. 1.  As part of its mission to support online privacy, free expression, and

5  innovation, EFF promotes reform of the U.S. patent system so that it supports the development of

6  new digital technologies, particularly by individuals, nonprofits, and small businesses.  *Id.* ¶ 9.

7  EFF alleges the United States Patent and Trademark Office too often issues questionable patents

8  for digital technology that is not innovative, and that "patent trolls" acquire those questionable

9  patents and use the threat of costly litigation to extract exorbitant and unjust licensing fees.  *Id.*

10      In 2014, EFF started publishing a series of "Stupid Patent of the Month" articles on its

11  website to highlight examples of questionable patents that stifle innovation, harm the public, and

12  can be used to shake down unsuspecting users of commonplace processes or technologies.  *Id.* ¶

13  10.  The articles describe the patent, explain the basis for EFF's opinion that it is stupid, and show

14  how the patent is or could be misused to stifle innovation or harm the public.  *Id.*

15      GEMSA is a privately-held Australian corporation that has filed more than three dozen

16  patent infringement lawsuits in the Eastern District of Texas.  *Id.* ¶¶ 5, 14.  GEMSA owns two

17  patents: U.S. Patent No. 6,690,400 ("the '400 patent") and U.S. Patent No. 7,356,677 ("the '677

18  patent").  *Id.* ¶ 15.  Daniel Nazer, an EFF attorney, decided to name the '400 patent as the Stupid

19  Patent of the Month for June 2016 (the "Article").  *Id.* ¶¶ 13, 15; *see id.*, Ex. 5 (article dated June

20  30, 2016 titled "Stupid Patent of the Month: Storage Cabinets on a Computer" written by Daniel

21  Nazer).  The Article describes the '400 patent, its history, and its context; it also describes the

22  litigation surrounding the patent and GEMSA's role in asserting the patent's claims.  *Id.* ¶¶ 15-17.

23  The Article concludes with a discussion and criticism of GEMSA's litigation and a push for patent

24  litigation reform.  *Id.* ¶ 18.

25      In August 2016, GEMSA's Australian counsel, Pasha Mehr, emailed EFF a letter titled

26  "Demand of Apology for Slander and Defatory [sic] Statements" (the "Demand Letter").  *Id.* ¶ 20;

27  *see id.*, Ex. 10 (Demand Letter).  GEMSA accused EFF of engaging in "'defamatory, false and

28  malicious slander'" by posting the Article "'with the intention of portraying [GEMSA]'s

2

United States District Court
Northern District of California

intellectual property as stupid in addition to numerous other malicious lies and misleading statements about the '400 patent owned [by GEMSA].'" *Id.* ¶ 20 (quoting Demand Letter). GEMSA threatened to "institute a suit against [EFF] in a court of law" if EFF did not capitulate to its demands within two weeks, that is, to issue an apology and retraction, to make diligent efforts to remove the article from the internet, and pay damages. *Id.* ¶ 21.

EFF retained an Australian law firm for the limited purpose of responding to the Demand Letter. *Id.* ¶ 22. EFF responded on September 13, 2016 (the "First Response") and explained it would not accede to GEMSA's demands and asked GEMSA to clarify which specific statements it considered defamatory and the legal basis for its claims. *Id.*; *see id.*, Ex. 11 (First Response). GEMSA did not respond to this letter and instead filed suit against EFF in the Supreme Court of South Australia. *Id.* ¶ 23. "GEMSA did not properly serve copies of the case-initiating documents on EFF in the United States pursuant to the Federal Rules of Civil Procedure and the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and EFF did not waive service." *Id.*

On or around October 4, 2016, GEMSA filed an Interlocutory Application with the Australian court seeking an order that EFF "immediately remove" the Article from its website and that prohibits EFF "'from publishing any content with respect to [GEMSA's] intellectual property.'" *Id.* ¶ 24 (brackets in original) (quoting *id.*, Ex. 12 (Interlocutory Application and Summons)). In support of its Interlocutory Application, GEMSA filed the Affidavit of Schumann Rafizadeh. *Id.* ¶ 25; *see id.*, Ex. 13 (Rafizadeh Aff.). On or around October 20, 2016, GEMSA filed a Statement of Claim and a Second Affidavit of Schumann Rafizadeh. *Id.* ¶ 26. GEMSA did not serve these documents on EFF; it instead mailed them to EFF's Australian counsel even though the firm informed GEMSA it no longer represented EFF. *Id.*

GEMSA's Statement of Claim identifies nine representations that GEMSA alleges are "misleading of deceptive or likely to mislead or deceive." *Id.* ¶ 27; *see id.*, Ex. 14 ¶¶ 3, 5 (Statement of Claim). EFF did not appear in the Australian litigation. *Id.* ¶ 33. On or around October 31, 2016, the Australian court issued an Order with Injunction (the "Australian Injunction"). *Id.* ¶ 34; *see id.*, Ex. 18 (Australian Inj.). The Injunction orders EFF (1) to

immediately remove the Article from its website and not to otherwise disseminate it, and (2) to not publish any content regarding GEMSA's intellectual property. *Id.* ¶ 34; Australian Inj. ¶¶ 1-2.

On January 20, 2017, GEMSA's counsel emailed another letter to EFF (the "Second Demand Letter") with the Australian Injunction attached. Compl. ¶ 35; *see id.*, Ex. 19 (Second Demand Letter). GEMSA asserted that by not removing the Article from its website, EFF is in "continued violation of Australian laws" and "may be liable for contempt of Court" if EFF did not comply with the Australian court's order. *Id.* ¶ 35 (quoting Second Demand Letter). GEMSA demanded EFF immediately remove the Article and arrange for any links to the Article to be removed. *Id.* GEMSA threatened that if EFF does not take such steps, it would "'be forced to do so at [EFF's] expense.'" *Id.* (quoting Second Demand Letter). GEMSA further demanded EFF pay damages "'in the vicinity of $750,000.00'" within 21 days and stated it would "'seek full monetary damages and equitable relief'" that the "'relevant court'" may deem proper. *Id.* (quoting Second Demand Letter).

EFF responded to the Second Demand Letter on February 10, 2017 (the "Second Response"). *Id.* ¶ 36; *see id.*, Ex. 20 (Second Response). In its Response, EFF declined to remove the Article or pay GEMSA damages. *Id.* ¶ 36; Second Resp. Among other things, EFF stated the Australian court's order is "contrary to longstanding United States law and the U.S. Constitution, is unenforceable" as "EFF's commentary includes substantially true facts, protected opinion, and rhetorical hyperbole, and is privileged under the law and the First Amendment of the U.S. Constitution." *Id.* ¶ 36; Second Resp. at 1.

EFF has not removed and does not intend to remove the Article from its website. Compl. ¶ 37. "The Article is a statement of EFF's opinion about GEMSA's patent based on disclosed facts and public information, commentary that is of significant public concern and protected by the First Amendment to the United States Constitution." *Id.* However, the Australian Injunction casts a shadow over the legality of EFF's speech about GEMSA's '400 patent and litigation and chills EFF's further speech. *Id.* ¶ 38. EFF is concerned that without an order declaring the Australian Injunction repugnant to and unenforceable under U.S law, GEMSA will use the Injunction to persuade American search engines to "deindex" the Article, which would effectively preclude EFF

4

1   from speaking publicly on this important U.S. legal and political issues.  *Id.* ¶ 39.

2       EFF initiated this lawsuit on April 12, 2017.  *See* Compl.  It asserts two claims: (1) a claim

3   for declaratory judgment under the Securing the Protection of our Enduring and Established

4   Constitutional Heritage ("SPEECH") Act, 28 U.S.C. §§ 4101-05; and (2) a claim for declaratory

5   judgment under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.  *Id.* ¶¶ 40-53.  EFF

6   seeks declarations that the Australian Injunction (1) is repugnant to the United States Constitution

7   and the laws of California and the United States and (2) cannot be recognized or enforced in the

8   United States.  *Id.*, Prayer for Relief.  GEMSA has not answered or otherwise responded to the

9   Complaint.  On July 20, 2017, EFF filed this Motion for Default.

10                                    **REQUEST FOR JUDICIAL NOTICE**

11      Before turning to EFF's substantive arguments, the undersigned first addresses EFF's

12   Request for Judicial Notice.  *See* RJN, Dkt. No. 14-1.  EFF requests the Court take judicial notice

13   of (1) the complaint filed in *Global Equity Management (SA) Pty. Ltd. v. Zillow*, Case No. 16-cv-

14   637 (E.D. Tex.); (2) the complaint filed in *Global Equity Management (SA) Pty. Ltd. v. Airbnb*,

15   Case No. 15-cv-1700 (E.D. Tex.); and (3) a report from the Federal Judiciary's Public Access to

16   Court Electronic Records system which lists every patent infringement suit GEMSA has filed in

17   any U.S. federal court.  *Id.*, Kissinger Decl., Exs. A-C.

18      Under Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not

19   subject to reasonable dispute because it: (1) is generally known within the trial court's territorial

20   jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

21   reasonably be questioned."  As these documents are court filings and matters of public record, the

22   undersigned takes judicial notice of them.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th

23   Cir. 2012) ("We may take judicial notice of undisputed matters of public record . . . , including

24   documents on file in federal or state courts.").

25                                             **DISCUSSION**

26      In considering whether to enter default judgment, a district court must first determine

27   whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d

28   707, 712 (9th Cir. 1999).

United States District Court
Northern District of California

## A.       Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action.  *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Jurisdiction arises under the DJA, which provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  The Court also has jurisdiction pursuant to the SPEECH Act, which provides that "[a]ny United States person against whom a foreign judgment is entered on the basis of the content of any writing, utterance, or other speech by that person that has been published, may bring an action in district court . . . for a declaration that the foreign judgment is repugnant to the Constitution or laws of the United States."  28 U.S.C. § 4104(a)(1).

## B.       Personal Jurisdiction

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendants in default.  *In re Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963 F.2d 1301, 1306 (9th Cir. 1992).  "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).  "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  *Id.*; *see* Cal. Civ. Proc. Code § 410.10. Traditional bases for conferring a court with personal jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within the forum state, or a defendant's citizenship or domicile in the forum state.  *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880-81 (2011).

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).  To that end, "the plaintiff cannot be the only link between the defendant and

1   the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the

2   forum State that is the basis for its jurisdiction over him." *Id.*

3        EFF argues the Court has specific personal jurisdiction over GEMSA because (1) "[i]t sent

4   two letters to EFF's San Francisco offices, first threatening to sue and then threatening additional

5   actions if EFF did not make a six-figure "damages" payment"; (2) "[i]t filed suit in Australia and

6   successfully obtained an order that requires EFF to take actions in California to remove content

7   from its website"; and (3) "it purported to serve the Injunction on EFF in San Francisco."  Mot. at

8   7; *see* Compl. ¶¶ 8(a)-(d).  EFF alleges GEMSA is an Australian corporation.  Compl. ¶ 5.  There

9   are no allegations that GEMSA has had other contacts with the state of California beyond its

10  conduct directed toward EFF.  *See* Mot.  The undersigned ordered EFF to address whether

11  GEMSA has sufficient contacts with California as required by *Walden* to confer personal

12  jurisdiction over it.  Order at 1-2, Dkt. No.  17.  EFF's supplemental brief confirms GEMSA does

13  not.  *See* Suppl. Br. at 1-3, Dkt. No.  22.

14       EFF argues "GEMSA reached out to California, communicated with people in California,

15  and conducted activities within and affecting California. . . .  with the express goal of forcing EFF

16  to suffer harm and take action in California that would enhance GEMSA's competitive standing

17  vis-à-vis California-based companies." *Id.* at 1.  EFF again points to the same allegations in the

18  Complaint, namely, that GEMSA:

19

20       • Emailed EFF in California and threatened to file suit against
           EFF if it did not act in California to take down the Article and
           pay GEMSA unspecified "damages";
21       • Obtained a court injunction that requires EFF to act in California
           to take down the Article and to refrain from engaging in any
22         speech whatsoever about GEMSA's "intellectual property"
           (speech that would be disseminated from California);
23       • Engaged an agent to physically present EFF with a copy of the
           injunction in California;
24       • Mailed a letter to EFF in California enclosing a copy of the
           injunction, threatening to enforce it, demanding that EFF take
25         down the Article and pay GEMSA $750,000, and alluding to
           potential efforts to seek the deindexing of the Article (efforts
26         that would require GEMSA to reach out to California-based
           search engines).
27

28  *Id.* at 2 (citing Compl. ¶¶ 8, 19-34).  EFF contends "[t]hese contacts between GEMSA and

7

California well suffice to establish personal jurisdiction of this Court over GEMSA." *Id.*  EFF mischaracterizes the nature of GEMSA's contacts: they are not between GEMSA and California but rather between GEMSA and EFF.

EFF further argues the *Walden* "Court emphasized that . . . a defendant's 'transactions or interactions with the plaintiff or other[s]' from the forum are jurisdictionally relevant where they are, as here, 'intertwined with' the defendant's contacts with the forum State itself because they are aimed at procuring actions in the forum state."  Suppl. Br. at 2 (quoting *Walden*, 134 S. Ct. at 1123) (edits in original).  EFF misstates the *Walden* analysis.  While the Supreme Court recognized that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,]" it held that

> a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. [] Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.

*Walden*, 134 S. Ct. at 1123.  Without more, the mere fact that GEMSA reached out to EFF, which happens to reside in California, does not create sufficient minimum contacts with the State of California itself.

EFF argues "GEMSA obtained the injunction as part of a course of conduct explicitly aimed at suppressing a Californian's speech about litigation involving California companies such as Airbnb that is of interest to readers in the Northern District and throughout California."  Suppl. Br. at 3; *see* Compl., Ex. 5 ("In the past year, GEMSA has sued dozens of companies, ranging from Airbnb to Zillow.").  EFF contends "this Court has held that this kind of purposeful direction at the forum suffices to establish personal jurisdiction."  Suppl. Br. at 3 (citing *Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC*, 2016 WL 6699295, at *3 (N.D. Cal. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6679548 (N.D. Cal. Nov. 14, 2016); *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 739 (N.D. Cal. 2015)).  EFF's reliance on these cases is misplaced.  Unlike GEMSA, the defendants in *Mountz* and *United Tactical Systems* purposefully directed their activities to California residents, not just the plaintiffs.  *See Mountz*,

United States District Court
Northern District of California

2016 WL 6699295, at *4 (where plaintiff alleged, among other things, "[d]efendant sells to the general public, including to consumers who reside in the State of California and the Northern District of California" and finding plaintiff established the "[d]efendant ha[d] specifically targeted customers in California, including [p]laintiff's customers in California"); *United Tactical Sys.*, 108 F. Supp. 3d at 748 (finding act of signing settlement agreement that required financial transactions within California and which "may impact California's market for irritant projectiles as well as [the plaintiff's] business" showed defendant "expressly aimed its intentional act at California"). The finding of personal jurisdiction in those cases therefore comports with the *Walden* analysis that the defendant must have its own affiliation with the state. *See Walden*, 134 S. Ct. at 1123. Again, EFF's Complaint and Supplemental Brief show that GEMSA directed its communications exclusively toward EFF, not California. There are no facts that GEMSA has reached out to California persons or entities other than EFF. Moreover, GEMSA's injunction targets only EFF; it does not mention other California residents. *See* Australian Inj. In other words, it is only EFF's speech that GEMSA ostensibly seeks to suppress. That an EFF staff attorney mentioned California companies in the Article does not, in and of itself, show GEMSA has purposefully directed its activities toward California residents other than EFF.

In a footnote, EFF offers evidence that GEMSA is actively litigating three lawsuits in the Northern District of California. *See* Suppl. Br. at 2 n.1 (citing *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, Case No. 17-cv-2177-WHA; *Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.*, Case No. 17-cv-2178-WHA; *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba Grp. Holding, Ltd.*, Case No. 17-cv-2435-WHA). EFF does not explain why GEMSA's prosecution of these lawsuits confers personal jurisdiction over GEMSA. In each of these cases, GEMSA filed its complaints in the Eastern District of Texas, and the cases were subsequently transferred to the Northern District of California. *See* -2177 Dkt. No. 73; -2178 Dkt. No. 50; -2435 Dkt. No. 44. In a pre-*Walden* case, the Ninth Circuit acknowledged that "personal jurisdiction exists where a defendant . . . independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005) (emphasis omitted). But GEMSA did not independently seek relief in the Northern

United States District Court
Northern District of California

District of California; rather, it sought relief in Texas and opposed the transfer of those cases to this Court. *See* -2177 Dkt. No. 30; -2178 Dkt. No. 13; -2435 Dkt. No. 17 (GEMSA's oppositions to motions to transfer). EFF offers no basis to find that the opposed transfer of a lawsuit from one forum to another confers jurisdiction in the transferee court, nor does EFF address whether the relief sought in the aforementioned actions concerns the same transaction or occurrence as the one at issue here.

In sum, GEMSA's contacts with California are limited to its interactions with EFF; there is nothing in the record that suggests GEMSA has sufficient minimum contacts with California itself. EFF therefore fails to show that the Court may exercise personal jurisdiction over GEMSA without offending notions of due process. For this reason, the undersigned **RECOMMENDS** the District Judge **DENY** EFF's Motion for Default Judgment.

## C.     Service of Process

Additionally, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the W. v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "Without a proper basis for jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on an entity "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f)(1) provides that "an individual . . . may be served at a place not within any judicial district of the United States . . . by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[.]"

GEMSA is a privately held Australian corporation. Compl. ¶ 5. On May 2, 2017, EFF caused to be served on GEMSA a copy of the Complaint, summons, and other documents at GEMSA's registered address at United Accountant Group Pty Ltd., 458 Morphett Road,

1   Warradale, Southern Australia 5046.  Aff. of Service ¶¶ 2-4, Dkt. No.  8; Am. Aff. of Service ¶¶

2   2-3, 5, Dkt. No. 12.  Process server Keith William Bruce-Gordon met with "Mobin," an

3   accountant for United Accountant Group, gave Mobin the documents, and informed him that he

4   was being served with legal process on behalf of GEMSA.  Aff. of Service ¶ 4; Am. Aff. of

5   Service ¶ 6.  Mobin refused to accept service on GEMSA's behalf.  *Id.* (both).  Mr. Bruce-Gordon

6   "laid the above-referenced documents on the counter at reception and advised Mobin that he was

7   being served with legal process on behalf of [GEMSA]."  *Id.* (both).

8          The United States and Australia are parties to the Hague Convention on the Service

9   Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.[2]  *See* Hague

10  Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

11  Commercial Matters, Nov. 15, 1965, T.I.A.S. No. 6638, 658 U.N.T.S. 163 ("Hague Convention").

12  Article 15 of the Hague Convention provides that

13          [w]here a writ of summons or an equivalent document had to be
            transmitted abroad for the purpose of service, under the provisions
14          of the present Convention, and the defendant has not appeared,
            judgment shall not be given until it is established that -
15              a) the document was served by a method prescribed by the
                internal law of the State addressed for the service of
16              documents in domestic actions upon persons who are within
                its territory, or
17              b) the document was actually delivered to the defendant or
                to his residence by another method provided for by this
18              Convention,
            and that in either of these cases the service or the delivery was
19          effected in sufficient time to enable the defendant to defend.

20  Hague Convention art. XV.  Australian law permits a company to be served by, among other

21  things, "leaving [the document] at, or posting it to, the company's registered office[.]"

22  *Corporations Act of 2001* ch. 1, pt. 1.2, div. 8, sub-div. 109X (Austl.).  EFF offers evidence that a

23  search of the Australian Securities & Investments Commission ("ASIC") records shows that

24  GEMSA's registered office is indeed located at United Accountants.  Am. Aff. of Service, Ex. A

25  (ASIC Organisational Search for Global Equity Management (SA) Pty Ltd); Svilans Decl., Ex. A

26

27  [2] HCCH, Status Table - 14: Convention of 15 November 1965 on the Service Abroad of Judicial
    and Extrajudicial Documents in Civil or Commercial Matters,
28  https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Sept. 19,
    2017).

1  (same), Dkt. No. 22-1.  That Mobin refused service does not render service ineffective under the

2  Corporations Act, so long as the documents were delivered to GEMSA's registered office.  *See,*

3  *e.g.*, *Gusdote Pty Ltd v Ashley*, 193 FCR 227 ¶ 50 (where documents were properly addressed and

4  posted to the corporation's registered office, "by the operation of . . . s 109X of the [Corporations]

5  Act, unless the contrary intention appears, service is deemed to have been effected.  That is to say,

6  delivery to the registered office is deemed to have been effected.").  GEMSA was properly served.

### CONCLUSION

8        Based on the above analysis, GEMSA lacks sufficient contacts with California to allow

9  this Court to exercise personal jurisdiction over GEMSA.  The undersigned therefore

10 **RECOMMENDS** the District Court **DENY** EFF's Motion for Default Judgment and issue an

11 order to show cause why the action should not be dismissed based on lack of personal jurisdiction

12 over GEMSA.

13       EFF shall serve a copy of this Report and Recommendation upon GEMSA.  Pursuant to 28

14 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file any

15 objections within 14 days after being served.

16       **IT IS SO RECOMMENDED.**

18 Dated: September 20, 2017

_____

20 MARIA-ELENA JAMES
   United States Magistrate Judge