Ashley I. Kissinger (No. 193693)
email: kissingera@ballardspahr.com
Matthew E. Kelley (admitted *pro hac vice*)
Email: kelleym@ballardspahr.com
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Phone: (303) 292-2400
Fax: (303) 296-3956

Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com
Kevin Vick (No. 220738)
email: kvick@jassyvick.com
JASSY VICK CAROLAN
601 Montgomery Street, Suite 850
San Francisco, CA  94111
Phone: (415) 539-3399
Fax: (415) 539-3394

*Attorneys for Plaintiff*
*Electronic Frontier Foundation*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>    Plaintiff,<br><br>v.<br><br>GLOBAL EQUITY MANAGEMENT (SA) PTY LTD,<br><br>    Defendant. | Case No. 3:17-CV-02053-JST<br><br>**ELECTRONIC FRONTIER FOUNDATION'S NOTICE OF MOTION AND MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*EFF's Request for Judicial Notice; Administrative Motion to Augment the Record with Declarations of Kurt Opsahl, Esq. and Benjamin Weed, Esq.; and Proposed Order filed concurrently herewith*]<br><br>**Date: November 16, 2017**<br>**Time: 2:00 p.m.**<br>**Place: Courtroom B, 15th Floor**<br><br>**Complaint Filed: April 12, 2017** |

**PLEASE TAKE NOTICE** that Plaintiff Electronic Frontier Foundation ("EFF") hereby states that on November 16, 2017, at 2:00 p.m., it will move under Civil L.R. 72-3 for de novo determination of its motion for a default judgment on its claims against Defendant, Global Equity Management (SA) Pty Ltd. ("GEMSA"), which were initially assigned to Magistrate Judge Maria-Elena James.

EFF objects to the Magistrate Judge's Report and Recommendation, which recommends denying EFF's Motion for entry of a default judgment, because the Magistrate Judge misapprehended the holding in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), and, as a result, erred in concluding that this Court does not have personal jurisdiction over GEMSA.

In this action, EFF seeks an order from this Court declaring that an Order and Injunction restricting EFF's speech, which was entered by an Australian court on October 31, 2016, is repugnant to the First Amendment and California law, and is therefore unenforceable pursuant to the SPEECH Act, 28 U.S.C. §§ 4101 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201. EFF is entitled to such a declaration because the law applied by the court in Australia is far less protective of speech than the laws of the United States and California, and neither this nor any other U.S. court would hold EFF liable under those laws. 28 U.S.C. §§ 4101 *et seq.*; *id.* § 2201. EFF is entitled to the declaration for the additional reason that the Australian court's adjudication did not comport with the due process guarantees of the United States Constitution.

After GEMSA failed to answer or otherwise respond to the Complaint in this matter, EFF moved for entry of a default judgment. Mot. for Default J., July 20, 2017, Dkt. No. 14. As noted above, on September 20, 2017, Magistrate Judge James issued a Report and Recommendation that the Court deny that motion for lack of personal jurisdiction over GEMSA. R. & R. (the "R&R"), Dkt. No. 23. By this Motion, EFF now objects to that Report and Recommendation. This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the concurrently-filed Administrative Motion to Augment the Record and the Declarations of Kurt Opsahl, Esq. and Benjamin Weed, Esq. submitted therewith; on the concurrently-filed Request for

1 | Judicial Notice and exhibits thereto; on all other pleadings, exhibits, files and records in this action;

2 | and on such other argument as may be received by the Court.

3 |      For the foregoing reasons, EFF respectfully requests that this Court grant its motion, reject

4 | the Report and Recommendation, hold that this Court has personal jurisdiction over GEMSA, grant

5 | its motion for default judgment, and afford it such other and further relief as the Court may deem

6 | just and proper.

7 | DATED:  October 4, 2017       Respectfully submitted by:

8 |

9 |      *s/ Ashley I. Kissinger*
Ashley I. Kissinger (No. 193693)
email: kissingera@ballardspahr.com

10 | Matthew E. Kelley (admitted *pro hac vice*)
Email: kelleym@ballardspahr.com

11 | BALLARD SPAHR LLP
1225 17th Street, Suite 2300

12 | Denver, CO 80202-5596
Phone: (303) 292-2400

13 | Fax: (303) 296-3956

14 | Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com

15 | Kevin Vick (No. 220738)
email: kvick@jassyvick.com

16 | JASSY VICK CAROLAN
601 Montgomery Street, Suite 850

17 | San Francisco, CA  94111
Phone: (415) 539-3399

18 | Fax: (415) 539-3394

19 | *Attorneys for Plaintiff*
*Electronic Frontier Foundation*

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION AND PROCEDURAL HISTORY ...................................................... 1

FACTS RELEVANT TO PERSONAL JURISDICTION ................................................ 2

ARGUMENT ........................................................................................................ 4

I.    The R&R Misinterprets the Supreme Court's Ruling in *Walden v. Fiore* .............................. 6

II.    *Calder v. Jones* Compels a Finding of Personal Jurisdiction Over GEMSA ...................... 12

CONCLUSION .................................................................................................... 16

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Abrahamson v. Berkley,*
   2016 WL 8673060 (E.D. Cal. Sept. 2, 2016)...............................................................16

5

*Alahverdian v. Nemelka,*
6   2015 WL 5004886 (S.D. Ohio Aug. 24, 2015)............................................................11

7

*Alpha Phoenix Industries, LLC v. SCI International, Inc.,*
   666 F. App'x 598 (9th Cir. 2016) ................................................................................10

8

*Board of Education, Island Trees Union Free School District No. 26 v. Pico,*
9   457 U.S. 853 (1982).....................................................................................................15

10

*Bittorrent, Inc. v. Bittorrent Marketing GMBH,*
   2014 WL 5773197 (N.D. Cal. Nov. 5, 2014)...............................................................11

11

*Bristol-Myers Squibb Co. v. Superior Court,*
12   137 S. Ct. 1773 (2017) ................................................................................................10

13

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985).......................................................................................................8

14

*Calder v. Jones,*
15   465 U.S. 783 (1984) ............................................................................................. *passim*

16

*Christie v. National Institute for Newman Studies,*
   2017 WL 2798250 (D.N.J. June 28, 2017) ..................................................................12

17

*Clement v. California Department of Corrections,*
18   364 F.3d 1148 (9th Cir. 2004) .....................................................................................15

19

*Daimler AG v. Bauman,*
   134 S. Ct. 746 (2014)....................................................................................................4

20

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,*
21   284 F.3d 1114 (9th Cir. 2002) .......................................................................................4

22

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011).....................................................................................................10

23

*Havel v. Honda Motor Europe Ltd.,*
24   2014 WL 4967229 (S.D. Tex. Sept. 30, 2014) ............................................................11

25

*IPOX Schuster, LLC v. Nikko Asset Management Co.,*
   191 F. Supp. 3d 790, 800-01 (N.D. Ill. 2016)..............................................................12

26

*Love v. Associated Newspapers, Ltd.,*
27   611 F.3d 601 (9th Cir. 2010) ......................................................................................5, 8

28

ii

*MAG IAS Holdings, Inc. v. Schmückle*,
    854 F.3d 894 (6th Cir. 2017) .............................................................................11

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) .....................................................................5, 8, 10

*RHUB Communications, Inc. v. Karon*,
    2017 WL 3382339 (N.D. Cal. Aug. 7, 2017)...................................................10, 11

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ............................................................................... *passim*

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..............................................................................................8

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) (en banc) .................................................................5

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 46 illus. 1...............................................................8

## INTRODUCTION AND PROCEDURAL HISTORY

This case centers on a foreign corporation's brazen attempt to chill the constitutionally protected speech of a California-based advocacy organization discussing that corporation's pattern of aggressive, frivolous patent litigation against dozens of American businesses, including many that are based in California.  Plaintiff Electronic Frontier Foundation (EFF), located in San Francisco, is the leading non-profit organization defending civil liberties in the digital world.  One fifth of EFF's active members live in California, and its commentary on issues including online privacy, free expression, and innovation is of particular salience to California technology companies that are among those targeted for litigation by Defendant Global Equity Management (SA) Pty Ltd ("GEMSA").

That commentary includes an article posted on EFF's website in June 2016, in which EFF criticized GEMSA for obtaining what EFF believes is a frivolous patent and then bringing suit in the U.S. against more than 30 companies – including nine California-based companies – for allegedly infringing that patent.  GEMSA attempted to muzzle EFF by suing it over the article in Australia, which has far less protection for speech than the United States.  The Australian court issued an injunction requiring EFF to remove the article from its website and prohibiting EFF from discussing GEMSA's intellectual property altogether.  This injunction, which remains in effect, would never survive scrutiny under the laws of the United States, as it is an unlawful prior restraint on speech.  Moreover, the article is not actionable under any theory of American law, and the injunction was entered in violation of U.S. due process standards.  The injunction is thus repugnant to the public policy and law of the United States and California.

EFF seeks a declaration from this Court saying precisely that, which Congress has authorized this Court to provide under the SPEECH Act.  EFF needs such a declaration to lift the cloud that the Australian injunction has placed over its continued communications to its members and the public regarding GEMSA and its patents.  EFF also needs this Court's intervention to combat the efforts that GEMSA might make to enforce the injunction, whether in United States courts, or, of more immediate concern, by pressuring internet search engines and news aggregators

1

1  to "deindex" the article, effectively censoring EFF's speech on a matter of legitimate concern to

2  United States citizens and businesses.

3      EFF served its complaint on GEMSA but GEMSA has failed to appear in this action.  In

4  order to secure a declaratory judgment that can be shared with any U.S. entity that receives the

5  Australian injunction, EFF requested that the Court enter a default judgment on its claims.  The

6  action was originally assigned to Magistrate Judge Maria-Elena James, who correctly ruled that

7  GEMSA was properly served with process.  She concluded, however, that the Court lacks personal

8  jurisdiction over GEMSA and therefore recommended that the Court deny EFF's motion for default

9  judgment.  EFF objects on the ground that the Magistrate Judge's Report and Recommendation

10 misinterpreted and misapplied the controlling standards for determining whether a federal court has

11 specific personal jurisdiction over a defendant located outside of that court's forum state.  The

12 Supreme Court has consistently held that where, as here, a defendant intentionally reaches into a

13 state with the goal of harming citizens of that state, and with knowledge that the effects of its

14 actions will be felt in that state, that defendant is subject to the specific personal jurisdiction of a

15 court in that state for civil claims arising out of that conduct.

16     EFF accordingly asks this Court to conduct a de novo review of its motion for default

17 judgment, find that GEMSA is in fact subject to specific personal jurisdiction in this matter, and

18 reaffirm the protections guaranteed to EFF by the Constitution and laws of the United States and

19 California by entering a default judgment on EFF's claims.

20                    **FACTS RELEVANT TO PERSONAL JURISDICTION**

21     Since 1990, EFF has been the leading non-profit organization defending civil liberties in the

22 digital world.  Compl. ¶ 4, Apr. 12, 2017, Doc. No. 1.  EFF's principal office is located in San

23 Francisco.  *See* Declaration of Kurt Opsahl, Esq. ("Opsahl Decl."), attached as Exhibit A to EFF's

24 Administrative Motion to Augment the Record filed concurrently herewith, ¶ 3.  One aspect of

25 EFF's work is advocating for reform of the U.S. patent system, and as part of that advocacy, EFF

26 publishes "Stupid Patent of the Month" articles to "illustrate by example just how badly reform is

27 needed."  Compl. ¶¶ 9-11 & Ex. 2.

28

EFF'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 3:17-CV-02053-JST

Last year, EFF noticed that GEMSA had filed more than three dozen lawsuits in the Eastern District of Texas asserting that prominent companies infringed two patents GEMSA owns, including U.S. Patent No. 6,690,400 ("the '400 patent").  *See id.* ¶¶ 14-15 & Ex. 1 (discussing the suits).  The targets of GEMSA's lawsuits include at least nine major technology companies that GEMSA itself alleged were based in California, specifically AdRoll, Inc., Airbnb, Inc., eBay, Inc., Hipmunk, Inc., Live Nation Entertainment, Inc., Netflix, Inc., Uber Technologies, Inc., Ubisoft Studio, Inc., and Zynga, Inc.  *See* EFF's Request for Judicial Notice, filed concurrently herewith (attaching those nine GEMSA complaints, each of which describes the companies as having its principal place of business in California).  GEMSA's actions in the course of those patent lawsuits has included its principal, Schumann Rafizadeh, physically attending both a mediation and a two-day deposition in separate trips to San Francisco.  *See* Declaration of Benjamin Weed ("Weed Decl."), attached as Exhibit B to EFF's Administrative Motion to Augment the Record, ¶¶ 6-8.

Upon reviewing the '400 patent, EFF decided to name it as the Stupid Patent of the Month for June 2016.  *See* Compl. ¶ 15.  In that online article, EFF described the '400 patent and GEMSA's lawsuits, and sharply criticized both.  *Id.* ¶¶ 16-18 & Ex. 5 (the "Article").  GEMSA responded by sending a letter to EFF in San Francisco that took issue with the Article, incorrectly characterizing it as "defamatory, false and malicious slander," and demanding that EFF issue a public retraction and remove the Article from the internet.  *Id.* ¶¶ 20-21 & Ex. 10.  EFF wrote to GEMSA seeking clarification but received no response.  GEMSA then filed suit against EFF in the Supreme Court of South Australia, *id.* ¶¶ 22-26 & Exs. 12-13, asserting that EFF's blog post had violated Australia's Competition and Consumer Act by way of alleged "misleading and deceptive conduct," and for common law "negligent misstatement of fact."  *Id.* ¶ 27 & Ex. 14.  EFF did not appear in the action.

On October 31, 2016, the Australian court issued an "Order with Injunction" against EFF.  *Id.* ¶ 34 & Ex. 18 (the "Injunction").  The Injunction orders EFF to immediately remove the Article from its website and not to otherwise disseminate it.  *Id.*  It also states:  "Until further order [EFF is] restrained from publishing any content with respect to the Plaintiff's intellectual property," a

statement that, on its face, applies to speech about other GEMSA patents that EFF has never

discussed.  *Id.*  The Injunction further warns that if EFF "does not comply with this order its assets

may be seized and it [sic] directors and other officers may be liable to be imprisoned for contempt

of Court."  *Id.*

GEMSA's agent purported to serve a copy of the Injunction on EFF at its California offices

on December 21, 2016.  *Id.* ¶ 34.  GEMSA later emailed a copy of the Injunction to EFF,

demanding that EFF pay GEMSA $750,000, take down the Article, and "make immediate

arrangements for any links to the Article to be removed from the world wide web including any and

all other websites which references [sic] the infringing [sic] material," and threatening "to do so at

[EFF]'s expense" if EFF did not do so voluntarily.  *Id.* ¶ 35 & Ex. 19.  EFF has not removed the

Article from its website and does not intend to do so.  *Id.* ¶ 37; *see also id.* ¶ 36 & Ex. 20.

Nevertheless, the Injunction has cast a shadow over the legality of EFF's speech about GEMSA's

patent and litigation, and it is chilling EFF's further speech.  *Id.* ¶ 38.  Given the present uncertainty

concerning the Injunction's enforceability in the United States, EFF feels constrained from

speaking further about these topics – indeed, about *any* of GEMSA's patents, since the Injunction

sweeps that broadly – aside from simply reporting about this action.  *Id.*  Accordingly, it filed this

action for declaratory relief.

## **ARGUMENT**

When subject matter jurisdiction is based on a federal question, as is the case here, a federal

court applies the long-arm statute of the state in which it sits.  *Glencore Grain Rotterdam B.V. v.*

*Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).  California's long-arm statute

provides that personal jurisdiction extends as far as federal due process allows.  *Daimler AG v.*

*Bauman*, 134 S. Ct. 746, 753 (2014) (applying California law).  Under this standard, an out-of-state

defendant is thus subject to specific personal jurisdiction in California federal courts when: (1) the

defendant has performed some act or consummated some transaction within California or otherwise

purposefully availed itself of the privileges of conducting activities in California, (2) the claim

arises out of or results from the defendant's California-related activities, and (3) the exercise of

4

jurisdiction is reasonable.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted).  To decide whether the first prong is met in tort cases, the Ninth Circuit applies the "effects test" which "is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state."  *Love v. Associated  Newspapers, Ltd.*, 611 F.3d 601, 609 (9th Cir. 2010) (citing *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

The R&R does not assess GEMSA's acts under this "effects test."  Instead, it relies almost exclusively on passages, taken out of their factual context, from the Supreme Court's opinion in *Walden v. Fiore*, 134 S. Ct. 1115 (2014).  In viewing these passages outside of that context, the R&R misapprehended *Walden*'s meaning and then erroneously held that *Walden* compels a finding of no personal jurisdiction here.

A careful reading of *Walden* and the personal jurisdiction jurisprudence that it reaffirms illuminates two significant errors made in the R&R.  First, as discussed below, the R&R misinterprets *Walden* to hold that GEMSA's interactions with EFF in California were irrelevant to the personal jurisdiction analysis, when in fact *Walden* expressly states that such conduct by a defendant towards a plaintiff within a forum state *can* lead to a finding of personal jurisdiction over that defendant.  The R&R's misinterpretation of *Walden* conflicts with how the Ninth Circuit, courts within it (including this one), and courts elsewhere have understood *Walden*, and it cannot be squared with them.

Second, and relatedly, the R&R overlooks the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783 (1984), which the Supreme Court expressly reaffirmed in *Walden*.  *Calder* teaches that when a defendant intends to cause harm to the plaintiff, and knows that the brunt of the harm will be felt by the plaintiff in the forum state, the defendant is subject to the specific personal jurisdiction of that state's courts.  Indeed, *Calder* <u>compels</u> a holding of personal jurisdiction over GEMSA here because of the harmful effects GEMSA intended to have on a California speaker and the many California persons and companies seeking to receive that speech.  It is these effects,

5

which will necessarily be felt in California (as was the case in *Calder*), that make GEMSA's

contacts with California not "random, fortuitous, or attenuated" but direct and intentional.

On a de novo review of EFF's motion for default judgment and the record supporting it, this

Court should find that it has personal jurisdiction over GEMSA in this case.  Although EFF

believes that the contacts already discussed in its motion are sufficient to establish jurisdiction, EFF

respectfully requests that the Court grant its Administrative Motion to Augment the Record, which

provides additional facts further demonstrating that GEMSA has sufficient "minimum contacts"

with California to render it subject to this Court's jurisdiction.

## I.      The R&R Misinterprets the Supreme Court's Ruling in *Walden*

The R&R's analysis of personal jurisdiction turns on the Supreme Court's decision in

*Walden*, and because the R&R misinterprets that ruling, it errs in its result. The plaintiffs in *Walden*

were a pair of Nevada residents who were travelling between San Juan, Puerto Rico and Las Vegas,

Nevada by way of Atlanta, Georgia.  134 S. Ct. at 1119.  The defendant, a law enforcement officer,

stopped the plaintiffs at the Atlanta airport and seized the $97,000 in cash that they were carrying.

*Id.*  Plaintiffs then filed a *Bivens* action against the officer in Nevada federal court, which that court

dismissed for lack of personal jurisdiction.  *Id.* at 1120.  After reversal in the Ninth Circuit, the

Supreme Court agreed with the district court that personal jurisdiction was lacking.  As the Court

explained, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-

related conduct must create a substantial connection with the forum State."  *Id.* at 1121.  Thus, "the

*plaintiff's* contacts with the forum," as opposed to the defendant's contacts, "cannot be decisive in

determining whether the defendant's due process rights are violated."  *Id.* at 1122 (emphasis added)

(citation and internal marks omitted).  In other words, "the plaintiff cannot be the only link between

the defendant and the forum," though "[t]o be sure, a defendant's contacts with the forum State

may be intertwined with his transactions or interactions with the plaintiff or other parties."  *Id.* at

1122-23.  The Court added that "physical entry into the State—either by the defendant in person or

through an agent, goods, mail, or some other means—is certainly a relevant contact" in this

analysis.  *Id.*

Applying that standard, the Court held that Nevada courts could not exercise personal jurisdiction over the defendant. *Id.* at 1124. The Court observed that "no part of [the defendant's] course of conduct occurred in Nevada," emphasizing that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* The Court added that the effects of the defendant's actions were also not "tethered to Nevada in any meaningful way," because the plaintiffs would have suffered the same alleged injury as a result of the seizure "in California, Mississippi, or wherever else they might have traveled and found themselves wanting more money than they had." *Id.* at 1125. Thus, the Court concluded that the defendant's "relevant conduct occurred entirely [outside Nevada], and the mere fact that his conduct affected plaintiffs with connections to [Nevada] does not suffice to authorize jurisdiction." *Id.* at 1126.

The R&R relies principally on *Walden* in recommending a holding that this Court lacks personal jurisdiction over GEMSA in this matter. But in doing so the R&R reads *Walden* far too expansively: instead of properly understanding *Walden* to be, as the Court itself put it, the application of "[w]ell-established principles of personal jurisdiction," *id.*, the R&R reads *Walden* to impose a sweeping new rule that a defendant's contacts with the plaintiff are simply irrelevant to the personal jurisdiction analysis, and that a defendant must therefore have contacts with the forum that are independent of its contacts with the plaintiff – even when those contacts with the plaintiff are themselves contacts with the forum. Applying this erroneous interpretation, the R&R states that the contacts GEMSA has made with California – including physical entry made by use of the mail, email, and a California agent (*i.e.*, the process server GEMSA hired to deliver the injunction to EFF at its offices) – do not suffice to establish personal jurisdiction because these contacts are "not between GEMSA and California but rather between GEMSA and EFF." *See* R&R at 8. Likewise, the R&R reads *Walden*'s uncontroversial statement that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State," 134 S. Ct. at 1123, to somehow mean that "the mere fact that GEMSA reached out

7

to EFF, which happens to reside in California, does not create sufficient minimum contacts with the State of California itself," R&R at 8.

A straightforward hypothetical based on a hornbook case of a tort committed remotely shows how this reading of *Walden* is unsound.  Suppose Adam, an Australian, sends a letter through the U.S. mail to Carl, an American citizen at his home in California, stating falsely that Carl's parents have suddenly died.  Assume that the statement was knowingly false, was intended to cause severe emotional distress, and did in fact cause Carl to suffer severe emotional distress and even have a heart attack.  Under well-settled tort principles, Adam is liable to Carl for intentional infliction of emotional distress.  *See, e.g.*, RESTATEMENT (SECOND) OF TORTS § 46 illus. 1.  In this situation, at least the first two prongs of the three-part test for specific personal jurisdiction have plainly been met.  Under the effects test used for examining the first prong, Adam committed an intentional act that was expressly aimed at California and that caused harm that Adam knew was likely to be suffered in California.  *See Love*, 611 F.3d at 609.  And with respect to the second prong, the claim arises out of or results from Adam's California-related activities.  *See Pebble Beach Co.*, 453 F.3d at 1155.  Under well-settled jurisprudence, a California federal court would have specific personal jurisdiction over Adam in a civil suit for intentional infliction of emotional distress because, "[u]nder the circumstances, [Adam] must [have] 'reasonably anticipate[d] being haled into court there' to answer for . . . the statements made in [his letter]." *Calder*, 465 U.S. at 790 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Now suppose that Ned, Carl's brother who just happens to be visiting from New York, opens the letter addressed to Carl and suffers the same reaction from the shock of reading that their parents have died.  What *Walden* teaches is that if Ned attempts to bring a claim in New York federal court, the mere fact that Ned is a New York citizen does not suffice to give New York courts personal jurisdiction over Adam, because "the plaintiff cannot be the only link between the defendant and the forum."  134 S. Ct. at 1122.  Adam's connection to New York in this hypothetical is "'random, fortuitous, or attenuated,'" and cannot alone create personal jurisdiction over Adam in New York courts. *Id.* at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

8

462, 475 (1985)).  Put another way, Adam could not have reasonably anticipated being haled into court by Ned in New York for sending a letter to Carl in California.

In both of these situations, Adam engaged in the same exact conduct: he mailed a letter to Carl in California intending to injure Carl there and knowing that the effects of his actions would likely be felt in California.  Under a correct reading of *Walden*, that conduct suffices to establish personal jurisdiction over Adam in California for a claim arising out of that conduct – but *not* to establish specific personal jurisdiction over Adam in New York (or any other state aside from California).  The R&R, however, would read *Walden* to foreclose Carl's claim in California federal court as well, simply because Adam's connections to California are coextensive with his connections to Carl.  Yet that is not the law: as the Supreme Court has emphasized, "[a]n individual injured in California need not go to [another forum] to seek redress from persons who, though remaining in [that other forum], knowingly cause the injury in California."  *Calder*, 465 U.S. at 790.

GEMSA has knowingly caused EFF injury in California through its attempts to chill EFF's speech.  Indeed, GEMSA acted with awareness that California was and is the only jurisdiction in which the Injunction it obtained would have direct effects – *i.e.*, it is the place where EFF would have to effectuate the Injunction's requirement to remove the Article from EFF's website, and the place where EFF's speech is currently being chilled by the Injunction's prohibition on further speech by EFF about any of GEMSA's intellectual property.[1]  It has achieved such effects through conduct – including use of the mail and a California agent to serve EFF – that the Supreme Court considers physical entry into California.  *Walden*, 134 S. Ct. at 1123.  And through these contacts with California, GEMSA could have reasonably foreseen that it would be brought before a California court.

Moreover, even outside of its interactions with EFF in California, GEMSA's self-described "Director and Shareholder," Schumann Rafizadeh, has also physically entered California during the

---

[1] California is the state in which the server that hosts EFF's main website is located, *see* Opsahl Decl. ¶ 5, and the state in which EFF has real estate and cash assets that could be seized under the Injunction's threat to do so, *id.* ¶¶ 3-4.

9

course of the patent litigation over the same patent that was the subject of the Article at the heart of this dispute.  *See* Weed Decl. ¶¶ 6-8.  Under a proper reading of *Walden*, therefore, GEMSA's actions suffice for this Court to exercise specific personal jurisdiction over GEMSA in this proceeding.  *See Pebble Beach*, 453 F.3d at 1155 (minimum contacts test is satisfied in part when "the claim arises out of or results from the defendant's forum-related activities") (citation omitted).

This conclusion is consistent with how the Ninth Circuit and this Court have interpreted *Walden* to hold that personal jurisdiction exists where the defendant's contacts with the plaintiff are concurrently its relevant contacts with the forum state.[2]  For instance, in *Alpha Phoenix Industries, LLC v. SCI International, Inc.*, 666 F. App'x 598 (9th Cir. 2016), the Ninth Circuit affirmed entry of a default judgment against Texas-based defendants who "'purposefully reach[ed] out beyond' Texas and into Arizona by posting allegedly defamatory statements about [the Arizona-based plaintiff] online."  *Id.* at 600 (quoting *Walden*, 134 S. Ct. at 1122).  The court observed that the defendants "acted with the stated intent to affect Plaintiff's business, which is based and operates in Arizona," and thus held that "Defendants' allegedly harmful acts were 'expressly aimed' towards Arizona, and the exercise of personal jurisdiction there was proper."  *Id.* (citing *Pebble Beach*, 453 F.3d at 1157).

Similarly, in *RHUB Communications, Inc. v. Karon*, 2017 WL 3382339 (N.D. Cal. Aug. 7, 2017), the Court denied the Iowa-based defendant's motion to dismiss for lack of personal jurisdiction where all of the contacts with California discussed in the Court's opinion were contacts between defendant and plaintiff and/or its employees, including phone calls and meetings with plaintiff's employees at its headquarters in California.  *Id.* at *5-6.  The Court specifically addressed and distinguished *Walden* on this point, noting that defendant "reached beyond his home

---

[2] The Supreme Court's recent opinion in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), which reaffirms *Walden*, is consistent with this conclusion.  There, the Court noted that "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"  *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The Court thus found that California courts lacked specific personal jurisdiction over an out-of-state defendant where "[t]he relevant plaintiffs are not California residents and do not claim to have suffered harm in that State," and where "as in *Walden*, all the conduct giving rise to the nonresidents' claims occurred elsewhere."  *Id.* at 1782.

state and into California" in several ways with respect to plaintiff, and explaining that "[i]t is [defendant]'s significant contacts with California, not [plaintiff]'s own connection to California, that are decisive." *Id.* at *7. And in *Bittorrent, Inc. v. Bittorrent Marketing GMBH*, 2014 WL 5773197 (N.D. Cal. Nov. 5, 2014), the Court granted plaintiff's motion for default judgment based in part on a finding of specific personal jurisdiction over defendant, a German company accused of cybersquatting. As the Court stated, "[b]ecause Plaintiff was the target of Defendant's scheme to extract money in exchange for domain names that incorporate Plaintiff's trademark, Defendant's contact with California is 'not based on the random, fortuitous, or attenuated contacts [it] makes by interacting with other persons affiliated with the State,' but rather by its extortion scheme expressly aimed at Plaintiff in Plaintiff's principal place of business." *Id.* at *7 (quoting *Walden*, 134 S. Ct. at 1123). Indeed, as the Sixth Circuit recently explained, "*Walden* simply holds that an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment. . . . It would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017).

Courts outside this Circuit agree that *Walden* does not prevent them from exercising specific personal jurisdiction over an out-of-forum defendant, like GEMSA, that has intentionally contacted the forum by way of its actions directed towards the plaintiff. *See, e.g.*, *Alahverdian v. Nemelka*, 2015 WL 5004886, at *6-7 (S.D. Ohio Aug. 24, 2015) (distinguishing *Walden* as a case where "the only connection the defendant had with Nevada was his link to the plaintiffs who resided there and the argument for jurisdiction rested solely on the plaintiffs' residency, not the actions of the defendant," and finding specific personal jurisdiction over Utah-resident defendant in action for defamation and related claims where "the contact Defendant allegedly had with the forum State, and the only contact that truly matters, stems from the emails allegedly sent by Defendant directed at Plaintiff that form the basis for the Complaint"); *Havel v. Honda Motor Europe Ltd.*, 2014 WL 4967229, at *9-10 (S.D. Tex. Sept. 30, 2014) (distinguishing *Walden* and finding specific personal jurisdiction over an out-of-state defendant whose employee "purposefully targeted the plaintiffs and

11

their protected intellectual property in Houston, Texas, by unsolicited contacts via phone and email," and whose employee "intended her action to have . . . consequences in Texas," and where at least one of plaintiffs' claims "clearly arises out of [that employee]'s phone call and emails directed to Texas").[3]

As these cases illustrate, for purposes of determining under *Walden* whether a court has specific personal jurisdiction over a defendant, that defendant's contacts with the forum state can include, or even completely overlap with, defendant's contacts with the plaintiff – particularly where defendant intended to contact plaintiff in the forum state and knew that the effects of the contact would likely be felt in the forum state. This Court should likewise consider GEMSA's contacts with EFF, which include emailing and mailing EFF, and retaining an agent in California to purportedly serve papers on EFF, to be contacts with California as well, given that GEMSA had reason to know that it was communicating with EFF in California and that the effects of its attempt to chill EFF's speech would be especially felt in California – both by EFF and by the Californians who would want to receive information from EFF about GEMSA's patent litigation efforts. And since EFF's claims here relate to those contacts with California, GEMSA is properly subject to the Court's specific personal jurisdiction in this matter.

## II.    *Calder v. Jones* Compels a Finding of Personal Jurisdiction Over GEMSA

*Walden* expressly reaffirmed *Calder*, and *Calder* – not discussed in the R&R – compels a finding of personal jurisdiction here. In *Calder*, the Supreme Court concluded that California courts had specific personal jurisdiction over two Florida journalists who had published an allegedly defamatory article about a California plaintiff. *Walden*'s summary of *Calder*'s facts and

---

[3] *See also, e.g.*, *Christie v. Nat'l Inst. for Newman Studies*, 2017 WL 2798250, at *3-9 (D.N.J. June 28, 2017) (finding specific personal jurisdiction where Pennsylvania resident defendants "knew that their alleged hacking would harm Plaintiff in New Jersey, . . . Defendants affirmatively calculated their alleged hacking activities to harm Plaintiff in New Jersey, and . . . Plaintiff was in fact harmed in New Jersey"); *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.*, 191 F. Supp. 3d 790, 800-01 (N.D. Ill. 2016) (finding specific personal jurisdiction over defendant, a Japanese company, where defendant "corresponded with [plaintiff] repeatedly," and where plaintiff alleges that defendant "reached into Illinois by infringing [plaintiff]'s trademark rights and attempting to capitalize on [plaintiff]'s reputation and goodwill with knowledge that [plaintiff] had built its reputation and would be injured in Illinois," adding that defendant "purposefully directed its conduct at Illinois, and could reasonably foresee being haled into court here").

holding is instructive here – particularly its observation that the "crux" of *Calder* was that the harm alleged, because it would necessarily be suffered in the *forum*, connected the defendant to the *forum*, and not just to the plaintiff:

> In *Calder*, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida.  The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000.

> We held that California's assertion of jurisdiction over the defendants was consistent with due process. . . . [W]e examined the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story.

> We found those forum contacts to be ample: The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. "In sum, California [wa]s the focal point both of the story and of the harm suffered."  Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California."

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff.  The strength of that connection was largely a function of the nature of the libel tort.  However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons.  Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens.  Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred in California.  In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there.  That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 134 S. Ct. at 1123-24 (citations omitted).

This summary of *Calder* in *Walden* demonstrates that the R&R reached the wrong conclusion on the question of personal jurisdiction over GEMSA.  GEMSA's interactions with

13

California trigger this Court's personal jurisdiction in this case in much the same way that the *Calder* defendants' interactions with California did.  Where the *Calder* defendants wrote in Florida about plaintiff's activities in California, GEMSA brought litigation in Australia to limit EFF's speech that originated from its offices in California, the sole jurisdiction in which the Injunction would have direct effect.  Compl. ¶ 34; *see also supra* p. 12 & n.1.  Where the *Calder* defendants made calls to "California sources" to research their article, GEMSA engaged a process server in California to physically present EFF at its offices with a copy of the Australian Injunction.  *Id.* And, most significantly under *Calder*'s "effects test," where the alleged reputational injury caused by the *Calder* defendants was most keenly felt by the plaintiff actress in California, the injury caused by GEMSA is most keenly felt by EFF in California – the place where EFF is exercising its First Amendment right to express its opinion, and where many of its readers who would be most interested in the Article are residing, working, and investing.

More than one-fifth of EFF's active donors, constituting over 8,500 people, are Californians.  *See* Opsahl Decl. ¶ 6.  These are people who can reasonably be expected to be interested in reading EFF's publications.  Over 48,000 Californians subscribe to EFF's newsletter, the *EFFector*, which republished a summary of the "stupid patent" Article along with a link to the full Article online.  *See id.* ¶ 7.[4]  And the views that EFF was expressing in the Article concerned GEMSA's pattern of litigation directed at technology companies, many of which are based in California, and whose employees and investors likely include many Californians as well.  *See* EFF's Request for Judicial Notice and exhibits thereto (at least nine of the companies GEMSA sued are, according to GEMSA's own allegations, based in California).  Indeed, one of GEMSA's goals in attempting to chill EFF's speech was to prevent these and other businesses that have been or may be targeted by GEMSA's infringement lawsuits from learning about the flimsiness of its underlying patent.  *See* Compl. ¶¶ 25-32 & Ex. 15 (Second Aff. of S. Rafizadeh) ¶ 9 (in an affidavit submitted to the Australian court, GEMSA's principal observed that "[s]ince the publication of the Article,

---

[4] EFF does not have location information for all of its active members and subscribers, as the organization allows members to donate and people to subscribe with relative anonymity, and therefore the actual figure may well be higher.

[GEMSA] has experienced a diminishment in interest from the respective U.S. Defendants whom are party to the patent litigation.  Those Defendant parties have shown a reduced interest in pursuing pre-trial settlement negotiations due to the damaged credibility of GEMSA."); *id.* Ex. 13 (Aff. of S. Rafizadeh) ¶ 11 (similarly observing that "[t]he article's continued publication and circulation . . . is continuing to damage the reputation and credibility of GEMSA, which it critically relies upon for its negotiations and ongoing discussions for the licensing arrangements and our Intellectual Property (IP), including the referenced patent."); *see also* Compl. ¶ 31 (citing additional statements made by Mr. Rafizadeh in his Affidavit concerning the alleged ill effects EFF's speech was having on GEMSA's litigation efforts in the United States).  GEMSA's chilling of EFF's speech thereby harms not only a California speaker, EFF, but also the Californians that wish to hear that speech as well.  This harm is significant; the Supreme Court has made clear that there is a First Amendment right to receive speech on matters of public concern:

> [I]n a variety of contexts the Constitution protects the right to receive information and ideas.  This right is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution, in two senses. First, the right to receive ideas follows ineluctably from the sender's First Amendment right to send them: The right of freedom of speech and press . . . embraces the right to distribute literature, and necessarily protects the right to receive it.  The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them.  It would be a barren marketplace of ideas that had only sellers and no buyers.
>
> More importantly, the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom.

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (citations and internal marks omitted); *accord Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1150-51 (9th Cir. 2004) (recognizing that the First Amendment right to receive information "protects material disseminated over the internet as well as by the means of communication devices used prior to the high-tech era").

In sum, just as an allegedly defamatory article about a California-resident actress could reasonably be expected to cause particularly significant reputational harm in California, so too does

obtaining an injunction that chills the speech of a California-based digital rights organization – speech that concerns patent litigation against technology companies, many of which are located in California – cause First Amendment harms that are particularly significant in California.  Thus, as were the defendants in *Calder*, GEMSA is subject to the specific personal jurisdiction of this Court. *See Calder*, 465 U.S. at 790 ("In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis."); *id.* at 791 ("We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California."); *see also, e.g.*, *Abrahamson v. Berkley*, 2016 WL 8673060, at *9 (E.D. Cal. Sept. 2, 2016) (finding personal jurisdiction over Texas-based defendants who allegedly made false statements to the FBI in Texas about the California resident plaintiff, where the allegedly false representations "were expressly aimed at California" and where the resulting FBI investigation would have necessarily involved "the investigation of [the plaintiff] in California, the possible extradition of [the plaintiff] from California to Texas, and a search of [the plaintiff's] property in California").

## CONCLUSION

GEMSA's litigation efforts chilling EFF's constitutionally-protected speech about GEMSA's patent litigation amount to an intentional effort to stop a California speaker from communicating with listeners in California (and elsewhere) about an issue of special interest to California businesses (and others).  Indeed, GEMSA knew or reasonably should have known that the intended effects of its conduct would be especially pronounced in California.  For these reasons and all those discussed above, this Court should reject the Report and Recommendation, hold that it has specific personal jurisdiction over GEMSA in this action, grant EFF's motion for default judgment, and afford EFF such other and further relief as the Court may deem just and proper.

DATED:  October 4, 2017          Respectfully submitted by:


_____ *s/ Ashley I. Kissinger* _____
Ashley I. Kissinger (No. 193693)
email: kissingera@ballardspahr.com
Matthew E. Kelley (admitted *pro hac vice*)
Email: kelleym@ballardspahr.com
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Phone: (303) 292-2400
Fax: (303) 296-3956

Duffy Carolan (No. 154988)
email: dcarolan@jassyvick.com
Kevin Vick (No. 220738)
email: kvick@jassyvick.com
JASSY VICK CAROLAN
601 Montgomery Street, Suite 850
San Francisco, CA  94111
Phone: (415) 539-3399
Fax: (415) 539-3394

*Attorneys for Plaintiff*
*Electronic Frontier Foundation*

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 4th day of October, 2017, I caused the foregoing MOTION FOR

DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE

JUDGE and accompanying papers to be filed with the Clerk of the Court using the CM/ECF

electronic filing system.  I further certify that I caused a true and correct copy to be served via First

Class Registered Mail upon the following:

Global Equity Management (SA) Pty Ltd.
c/o United Accountants Group Pty Ltd
458 Morphett Rd.
Warradale, SA 5046
Australia


/s/ *Ashley I. Kissinger*
Ashley I. Kissinger

EFF'S MOTION FOR DE NOVO DETERMINATION OF
DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE
Case No. 3:17-CV-02053-JST