UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:17-CV-02053-JST |
| ) | |
| v. ) | **[PROPOSED] MEMORANDUM** |
| ) | **OPINION & ORDER** |
| GLOBAL EQUITY MANAGEMENT (SA) PTY ) | |
| LTD, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Plaintiff Electronic Frontier Foundation ("EFF") has moved for entry of default judgment on its claim under the Securing the Protection of our Enduring and Established Constitutional Heritage ("SPEECH") Act, 28 U.S.C. §§ 4101 *et seq.*, against Defendant Global Equity Management (SA) Pty Ltd ("GEMSA"). On September 20, 2017, Magistrate Judge Maria-Elena James, to whom this matter was originally assigned, issued a Report and Recommendation recommending that this Court deny the motion for default judgment on the ground that the Court does not have personal jurisdiction over GEMSA [Dkt. No. 23]. Having reviewed the entire file in this matter on a de novo basis, the Court has concluded that it does, in fact, have personal jurisdiction over GEMSA, and that EFF is entitled to the relief it seeks.

## **FINDINGS OF FACT**[1]

On June 30, 2016, EFF published an article on its blog entitled "Stupid Patent of the Month: Storage Cabinets on a Computer" (the "Article"). The Article focused on U.S. Patent No. 6,690,400 ("the '400 patent"), which is owned by GEMSA, and it reported that GEMSA had filed more than three dozen lawsuits alleging infringement of the '400 patent in the Eastern District of

---

[1] In ruling on a motion for default judgment, "the factual allegations contained in the plaintiff's complaint [are] taken as true." *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006); *see also* Exhibits to EFF's Complaint (EFF attached twenty-one exhibits to its complaint to support the factual contentions made therein).

1

Texas since October 2015.[2]  The Article described GEMSA as "a classic patent troll," criticized GEMSA's litigation strategy, and characterized the '400 patent itself as "weak."  A copy of the article is attached as Appendix A to this Order.

In August 2016, GEMSA sent a letter to EFF at its office in San Francisco accusing it of engaging in "defamatory, false and malicious slander" by posting the Article "with the intention of portraying [GEMSA]'s intellectual property as stupid in addition to numerous other malicious lies and misleading statements about the '400 patent owned by [GEMSA]."  GEMSA then filed suit against EFF in the Supreme Court of South Australia in October 2016.  On or around October 4, 2016, GEMSA filed an Interlocutory Application with the Australian court seeking an order requiring EFF to "immediately remove" the Article from its website and restraining EFF "from publishing any content with respect to [GEMSA's] intellectual property."  GEMSA subsequently filed a Statement of Claim against EFF under Australia's Competition and Consumer Act, alleging "misleading and deceptive conduct," and common law "negligent misstatement of fact."  GEMSA alleged that nine "representations" in the Article were "misleading or deceptive or likely to mislead or deceive," including the "representation" that "the '400 patent is 'stupid'" and that GEMSA is a "classic patent troll."  GEMSA specifically challenged the following statements:

> **Statement 1**:  The patent is "stupid."
>
> **Statement 2**:  The patent "has claimed the idea of using virtual cabinets to graphically represent data storage and organisation."
>
> **Statement 3**:  GEMSA "is suing anyone who runs a website."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "is suing *just about* anyone who runs a website.")
>
> **Statement 4**:  GEMSA "is a classic patent troll."  (This alleged "representation" misquotes the Article.  The Article said GEMSA "seems to be" a classic patent troll.)
>
> **Statement 5**:  GEMSA "once offered a product that allowed its users to run multiple operating systems on personal computers with x86-compatible processors."  (This alleged "representation" misquotes the

---

[2] EFF submitted, and this Court takes judicial notice of, complaints demonstrating that nine of the companies GEMSA sued are major technology companies that have their principal places of business in California.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (courts "may take judicial notice of undisputed matters of public record . . ., including documents on file in federal or state courts").

2

Article.  The Article said that *Flash VOS*, the company that obtained the patent from the USPTO, once offered such a product.)

**Statement 6**:  GEMSA's "product 'FLASH VOS' did not invent partitions, did not invent virtual machines and did not invent running multiple operating systems on a single computer."  (This alleged "representation" misquotes the Article.  The Article made these statements about *the company Flash VOS*, not about a "product" owned by GEMSA.)

**Statement 7**:  GEMSA's "patent claims require very specific structures, namely a 'secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'"  (This alleged "representation" misquotes the Article.  The Article said "*the '400 patent's* claims require very specific structures.  *For example, claim 1* requires 'a secondary storage partitions window' and 'at least one visible cabinet representing a discrete operating system.'")

**Statement 8**:  GEMSA "seems to think that anyone with a website that links to hosted content infringes its patent."

**Statement 9**:  GEMSA "issued patent claims in the Eastern District of Texas because local rules favour patent trolls."  (This alleged "representation" misquotes the Article.  The Article said "[e]very one of [GEMSA's] cases was filed in the Eastern District of Texas," and noted that that court's local rules "favor patent trolls like GEMSA.")

EFF was not served and did not appear in that lawsuit.

On October 31, 2016, the Australian court issued an injunction against EFF.  The injunction ordered EFF to immediately remove the Article from its website and not to disseminate it.  It further stated that "[u]ntil further order [EFF is] restrained from publishing any content with respect to the Plaintiff's intellectual property."  The injunction also said that if EFF "does not comply with this order its assets may be seized and it[s] directors and other officers may be liable to be imprisoned for contempt of Court."  A copy of the injunction, which GEMSA purported to serve via a process server on EFF at its California offices in December 2016 under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention"), is attached as Appendix B to this Order.

GEMSA's counsel emailed a second letter to EFF at its California offices on January 20, 2017, enclosing a copy of the injunction and demanding that EFF take down the Article and "make immediate arrangements for any links to the article to be removed from the world wide web including any and all other websites which reference[] the [challenged] material," threatened that if EFF does not take such steps, it would "be forced to do so at [EFF's] expense," demanded that EFF

3

pay "compensation" to GEMSA for purported damages "in the vicinity of $750,000.00" within twenty-one days, and threatened to "seek full monetary damages and equitable relief" that the "relevant court" may deem proper. *Id.*

## PROCEDURAL POSTURE

EFF filed a complaint for declaratory judgment under the SPEECH Act, 28 U.S.C. § 4104, and the Declaratory Judgment Act, *id.* § 2201, and served it on GEMSA in Australia, pursuant to the Hague Convention, on May 2, 2017.  Under Rule 12, GEMSA was required to answer or respond to the complaint within 21 days thereafter, or by May 23, 2017, but it failed to do so.  Fed. R. Civ. P. 12.  EFF filed a Motion for Default Judgment against GEMSA under Federal Rule of Civil Procedure 55(b)(2), which Magistrate Judge James has recommended denying for lack of personal jurisdiction over GEMSA [Dkt No. 23].  EFF filed a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge ("Motion for De Novo Determination"), together with a Request for Judicial Notice, asking the Court to take judicial notice of the complaints filed in nine patent infringement actions instituted by GEMSA, and an Administrative Motion to Augment the Record, asking the Court to consider the Declarations of EFF's General Counsel, Kurt Opsahl, Esq., as well as counsel for one of the parties that GEMSA has sued, Ben Weed, Esq.  GEMSA has not responded to any of these filings.  The Court has granted the Request for Judicial Notice and Administrative Motion to Augment the Record this same day.

## CONCLUSIONS OF LAW

EFF's Motion for De Novo Determination is meritorious, as is its Motion for Default Judgment.

### A.     This Court Has Jurisdiction over GEMSA and This Case

This court has subject matter jurisdiction pursuant to the SPEECH Act, 28 U.S.C. § 4104, and the Declaratory Judgment Act, *id.* § 2201.  California's long-arm statute provides that personal jurisdiction extends as far as federal due process allows.  *Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 753 (2014) (applying California law); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

Under the "effects test" of *Calder v. Jones*, where a defendant intends to cause harm to the plaintiff and knows that the brunt of the harm will be felt by the plaintiff in the forum state, the defendant is subject to the specific personal jurisdiction of the forum state's courts.  465 U.S. 783, 791 (1984) (exercising personal jurisdiction over Florida-based journalists "because of their intentional conduct in Florida calculated to cause injury to respondent in California").  The Ninth Circuit has thus held that jurisdiction is properly exercised over a foreign defendant where that defendant has undertaken actions inside and outside the forum that are intended to have the harmful effect of silencing a resident in the forum.  *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-11 (9th Cir. 2006).

That is precisely what GEMSA did here.  GEMSA took actions in both Australia and California that it knew would have harmful effects in California, both on EFF and others resident in California.  It emailed a letter to EFF in San Francisco demanding that EFF take certain actions in San Francisco to benefit GEMSA, including removing the Article from EFF's website.  It sought and obtained an injunction aimed to suppress EFF's speech and to create a chilling effect on that organization from speaking further about GEMSA's intellectual property.  The injunction was also intended in part to prevent interested Californians – including multiple companies sued by GEMSA – from receiving EFF's highly critical commentary about GEMSA and its patent litigation.  GEMSA physically entered California via mail, email, and by use of an agent (a process server) to threaten EFF with the injunction; specifically, with the injunction's threats of seizure of EFF's assets and imprisonment of its officers and directors for non-compliance with the injunction.  And the lion's share of those threats would necessarily have to be effectuated in California, where EFF has real estate and cash assets.  Accordingly, under *Calder*'s "effects test," which the United States Supreme Court reaffirmed in *Walden v. Fiore*, 134 S. Ct. 1115 (2014), this Court has personal jurisdiction over GEMSA.[3]

---

[3] The Court adopts, and incorporates herein by this reference, that portion of the Report and Recommendation holding that EFF properly served GEMSA with process in this action under the Hague Convention.

### B.   Entry of Default Judgment Is Appropriate in This Case

Under Rule 55, default judgments are appropriately entered where "the defendant has never appeared in the action, its failure to defend is unexplained, and the plaintiff would suffer prejudice if the default were not entered." *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *3 (N.D. Cal. Aug. 30, 2006).  Courts in this Circuit generally evaluate seven factors in considering a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (citation omitted).

Each of the factors relevant here weighs in favor of granting EFF's motion.  EFF intends to maintain the Article on its website, expressing its opinion about GEMSA's patent based on the facts and public information EFF provided to its readers.  This is commentary about a matter of legitimate public concern and is protected by the First Amendment to the United States Constitution.  The Australian injunction has cast a shadow over the legality of EFF's speech about GEMSA's '400 patent and litigation and is chilling EFF's further speech.  EFF is prejudiced every moment that it is forced to operate under a restriction on, or shadow over, its First Amendment rights.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Further, with respect to the second, third and fifth factors, as discussed below, EFF would not be held liable for defamation in a United States court because, among other things, its speech is constitutionally protected as a matter of law, and no additional facts that GEMSA might provide can change that.  For that reason, granting the motion for default judgment does not offend the policy favoring rulings on their merits.  Finally, even though GEMSA has ongoing patent claim litigation in the United States, including in this District,[4] it has failed to appear in this case, or even

---

[4] GEMSA's cases in this District include *Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.*, 3:17-cv-02178-WHA and *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA. Attorneys have appeared for GEMSA in both of these proceedings.  *See Notices of Appearance for Plaintiff, Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02177-WHA (Sept. 5, 2017) [Dkt. Nos. 122, 123]; *Notices of Appearance for Plaintiff, Global Equity Mgmt. (SA) Pty.*

6

to respond to EFF's motion, much less to offer the Court any facts that would constitute excusable neglect.  A default judgment against GEMSA is therefore warranted.

**C.**     **The Australian Injunction Does Not Comport with United States Constitutional Standards and State Law Protections for Speech and Thus is Unenforceable Under the SPEECH ACT**

The SPEECH Act offers protections for U.S. persons against "libel tourism," which is "a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in a foreign jurisdiction with more favorable substantive law."  *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 487 (5th Cir. 2013).  The statute provides that U.S. courts "shall not recognize a foreign judgment for defamation" unless the court determines that the law applied by the foreign jurisdiction is at least as speech-protective as the First Amendment and the law of the forum state, or that the defendant "would have been found liable for defamation by a domestic court applying the [F]irst [A]mendment to the Constitution of the United States and the constitution and law of the State in which the domestic court is located."  28 U.S.C. § 4102(a).  A U.S. person subjected to a foreign defamation judgment that runs afoul of these provisions may bring a declaratory judgment action in federal court and obtain a declaration that the foreign order is "repugnant to the Constitution or laws of the United States."  *Id.* § 4104(a)(1).

The Australian injunction is a "foreign judgment for defamation" under the SPEECH Act's terms, because "[d]efamation" is defined broadly to include "any" cause of action "alleging that forms of speech are false, have caused damage to reputation or emotional distress, have presented any person in a false light, or have resulted in criticism, dishonor, or condemnation of any person."  *Id.* § 4101(1).  GEMSA's claim against EFF is effectively a claim for defamation under this definition, however otherwise labeled.  Moreover, the Australian injunction is a "foreign judgment" under the Act, which is defined as "a final judgment rendered by a foreign court."  *Id.* § 4101(4).  Injunctions against speech operate as "final orders" under Title 28.  *See, e.g.*, *M.I.C. Ltd. v. Bedford Twp.*, 463 U.S. 1341, 1342-43 (1983) (Brennan, J., in chambers) (staying, pursuant to 28 U.S.C.

_____

*Ltd. v. Alibaba.com, Inc.*, 3:17-cv-02178-WHA (Sept. 5, 2017) [Dkt. Nos. 93, 94].  Moreover, in connection with its patent litigation, GEMSA's principal, Schumann Rafizadeh, traveled to California to attend mediation sessions and to sit for his deposition during the period January 23-27, 2017.

§§ 1257 and 2101, state court injunction prohibiting theater from exhibiting sexually oriented films during pendency of obscenity litigation); *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 43-44 (1977) (holding state court injunction prohibiting march was reviewable as collateral order pursuant to 28 U.S.C. § 1257).  And, here, by its terms, the Australian injunction requires EFF's compliance subject to threat of contempt and additional punishments.

The SPEECH Act therefore provides for the relief EFF seeks unless either (1) the law applied by the Australian court "provided at least as much protection for freedom of speech and press" as would be provided by the First Amendment and California law; or (2) EFF "would have been found liable for defamation" by a California court.  28 U.S.C. § 4102(a)(1).  For all the reasons set out in EFF's Complaint and its Motion for Default Judgment, it is clear that the Australian court did not provide protection for speech comparable to that which would have been afforded under the First Amendment and California law, and EFF would not have been held liable for defamation by a California court.  Specifically:

1) The Australian court provided far less protection for freedom of speech than would have been available under the First Amendment and California law.  Most notably, the Australian injunction operates as an unconstitutional prior restraint on speech that has never been adjudicated to be unlawful.  The Australian court issued no findings to the effect that such a restraint was necessary to further a governmental interest of the highest magnitude, and that it was precise and narrowly tailored to achieve "the pin-pointed objective" of "the needs of the case."  *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights" and therefore are presumptively unconstitutional); *see also Evans v. Evans*, 162 Cal. App. 4th 1157, 1169 (4th Dist. 2008) ("the court cannot prohibit [a party] from making statements characterized only as 'false and defamatory'" where "there has been no trial and no determination on the merits" that there is actionable defamation).

2) None of the challenged statements in the Article are actionable under the First Amendment or California law.  "The tort of defamation involves (a) a publication that is (b) false,

8

(c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (internal marks omitted). Here, various challenged statements (Nos. 2, 5, 6, 7, 8, and 9) are not even alleged to be false, *see Air Wisconsin Airlines Corp. v. Hoeper*, 134 S. Ct. 852, 863 (2014); certain statements (Nos. 5 and 6) are not "of and concerning" GEMSA, *see Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 (1986); certain statements (Nos. 2, 5, 6, and 7) are substantially true, *see Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991); certain statements (Nos. 2 and 7) are protected by the fair report privilege, as codified at Cal. Civ. Code § 47(d); and certain statements (Nos. 1, 3, 4, 8, and 9) are constitutionally protected expressions of opinion because they are either rhetorical hyperbole or based on disclosed facts, *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

Moreover, the Australian court did not provide the procedural protection that would be provided by California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. That law provides a mechanism – a special motion to strike – for early dismissal of meritless lawsuits premised on the defendants' exercise of their First Amendment rights. Were EFF to have filed a special motion to strike, the court would have engaged in a two-step process.

First, the court would have determined whether EFF had shown that the claim arose from an act in furtherance of the defendant's free speech rights. *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 997-98 (N.D. Cal. 2015). That is the case here because EFF's speech was in connection with, among other things, actions pending before a judicial body – the U.S. District Court for the Eastern District of Texas. *See* Cal. Civ. Proc. Code § 425.16(e); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013).

The second step of the analysis requires the plaintiff "to establish a reasonable probability that it will prevail on its claim," a standard under which "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." *Makaeff*, 715 F.3d at 261 (citations and internal marks omitted). Here again, the law favors EFF because, as discussed above, GEMSA cannot show any possibility that it would have prevailed on the merits.

Finally, although EFF is entitled to a declaratory judgment under 28 U.S.C. § 4102(a)(1), it also would prevail pursuant to the separate SPEECH Act provision that prohibits enforcement of foreign defamation judgments in which the foreign court's exercise of personal jurisdiction over the defendants does not comport with constitutional due process requirements, *id.* § 4102(b).  EFF did not expressly aim its conduct toward Australia.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  To the contrary, EFF's publication was aimed at its U.S. audience because it exclusively discussed the operation of U.S. patent law and litigation in U.S. courts.  The Australian court's exercise of personal jurisdiction over EFF under these circumstances does not comport with U.S. due process standards.

In sum, EFF has shown that the Australian injunction is a "foreign judgment for defamation" subject to the SPEECH Act, and EFF has met its burden of demonstrating that the Australian injunction would not be enforceable in any U.S. court.  Accordingly, under the SPEECH Act, this Court may properly declare the Australian injunction to be "repugnant to the Constitution or laws of the United States."  28 U.S.C. § 4104(a).

**D.      EFF Is Entitled to the Same Relief Under the Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  28 U.S.C. § 2201(a).  This "case of actual controversy" requirement is identical to the "case or controversy" requirement for a matter to be justiciable under Article III.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007).  Thus, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," as well as being "real and substantial" and "admi[tting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* at 127 (citation and internal marks omitted).  For all the same reasons that the injunction functions as a final judgment under the SPEECH Act, the dispute between EFF and GEMSA is an actual controversy under these standards, and EFF is therefore entitled to the same relief discussed above under the Declaratory Judgment Act.

10

## **CONCLUSION, ORDER AND DECLARATION**

For the foregoing reasons, the Court hereby **GRANTS** EFF's Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge [Dkt. #__]; **ADOPTS** that portion of the Magistrate Judge's Report and Recommendation [Dkt. #23] holding that GEMSA was properly served with process in this case; **REJECTS** the remainder of the Report and Recommendation; **GRANTS** EFF's Motion for Default Judgment [Dkt. # 14]; and **DECLARES** that the Order and Injunction entered on October 31, 2016 against the Electronic Frontier Foundation by the Supreme Court of South Australia is repugnant to the Constitution and laws of the United States and California.  The Court further **DECLARES** that the Order and Injunction cannot be recognized or enforced in the United States.


_____
Hon. Jon S. Tigar
United States District Judge