UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GLOBAL EQUITY MANAGEMENT (SA) PTY LTD,<br><br>　　　　　Defendant. | Case No. 17-cv-02053-JST<br><br>**ORDER REGARDING MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER ASSIGNED TO MAGISTRATE JUDGE**<br><br>Re: ECF Nos. 27, 28, 29 |

Before the Court is Plaintiff Electronic Frontier Foundation ("EFF")'s motion for a de novo determination of a dispositive matter referred to the magistrate judge. ECF No. 27. EFF seeks default judgment against the Defendant Global Equity Management (SA) Pty Ltd ("GEMSA"). The Court grants the motion, finds that there is personal jurisdiction, and grants default judgment in favor of EFF.

## I.      REQUESTS FOR JUDICIAL NOTICE

In conjunction with its motion, EFF seeks judicial notice of nine complaints that GEMSA filed in federal district courts against companies with principal places of business in California. ECF No. 28. The Court may take judicial notice of court filings. Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (providing that a court "may take judicial notice of proceedings in others court . . . if those proceedings have a direct relation to matters at issue."). Accordingly, the Court grants EFF's request for judicial notice of the nine publicly filed GEMSA complaints in federal district courts. [1]

---

[1] The Court adopts the Report and Recommendation's well-reasoned decision to take judicial notice of two complaints filed in federal district courts by GEMSA against companies with principal places of business in California and a PACER report listing GEMSA's patent suits in

United States District Court
Northern District of California

## II.      ADMINISTRATIVE MOTION TO AUGMENT THE RECORD

EFF also moved to augment the record under Civil Local Rule 72-3(b), 7-11 and 28 U.S.C. § 686.  ECF No. 29.  EFF seeks to add two declarations to the record: (1) A declaration from Kurt Opsahl, the General Counsel for EFF, describing EFF's connections with California (its property, banking, services, members, readers, and donors) and, (2) a declaration from Benjamin Weed, a partner at K&L Gates LLP who represents eBay in a suit in which GEMSA is suing eBay in another court in this district.  ECF No. 29-3 ¶¶ 1-4.  Weed explains that in January 2017, GEMSA's director Schumann Rafizadeh came to San Francisco for a several day mediation session, and, separately, for a two day deposition regarding the eBay suit.  ECF No. 29-3 ¶ 7-8.

Under 28 U.S.C. § 636(b)(1), a district court "may . . . receive further evidence" in reviewing a party's objections to a magistrate judge's findings and recommendations.  Under Civil Local Rule 72-3(b), a party may move to augment the record to accompany a motion for de novo determination of a dispositive matter referred to a magistrate judge.  Accordingly, this Court grants EFF's motion to augment the record and considers the declarations filed herein.  ECF No. 29.

## III.     BACKGROUND

EFF is a nonprofit that aims to protect civil liberties as they relate to digital life, the internet, and other modern technology.  ECF No. 1 ("Compl.") ¶ 4.  EFF advocates for free speech online and other civil liberties through litigation, blog posts, and policy analysis.  Id.  GEMSA is an Australian corporation that holds a number of patents and has filed several patent infringement lawsuits in the United States.  Id. ¶ 5.

EFF also advocates for reform of the United States patent system, including through an article series called the "Stupid Patent of the Month."  ECF No. 1 ¶ 9.  The "Stupid Patent of the Month" series "call[s] attention to examples of questionable patents that stifle innovation [and] harm the public" each month in an effort to ultimately inspire patent reform.  Id. ¶ 10.  On June 30, 2016, EFF staff attorney Daniel Nazer published a "Stupid Patent of the Month" article about a

---

federal courts.  ECF No. 23 at 5.  EFF did not object to this portion of the Report.  ECF No. 127.

1  patent owned by GEMSA, U.S. Patent No. 6,690,400 ("the '400 patent") and GEMSA's related

2  litigation efforts.  Id. ¶ 13; see Daniel Nazer, Stupid Patent of the Month: Storage Cabinets on a

3  Computer, Deeplinks Blog (June 30, 2016), https://www.eff.org/deeplinks/2016/06/stupid-patent-

4  month-storage-cabinets-computer (the "article"), available at ECF No. 1-5.  The article explains

5  that the '400 patent claims the idea of using a cabinet to graphically represent data organization,

6  and that GEMSA uses this basic idea to sue "just about anyone who runs a website."  Id.  The

7  article says that GEMSA "seems to be a classic patent troll."  Id.  The article calls on Congress to

8  pass venue reform legislation to reduce the harm caused by frequent patent litigators like GEMSA.

9  Id.

10      Two months after Nazer posted his article, GEMSA's counsel emailed EFF a demand

11  letter, alleging that EFF had slandered the company and demanding that EFF retract the article,

12  remove all copies of the article from the internet, issue an apology, and pay damages.  Id. at ¶ 20-

13  21.  GEMSA demanded a response within two weeks, and threatened litigation if EFF did not

14  comply.  Id. ¶ 21.  EFF responded by letter, seeking clarification.  Id. ¶ 22.  GEMSA did not

15  respond, and instead filed suit against EFF in October 2016 in the Supreme Court of South

16  Australia.  Id. ¶ 23.  GEMSA failed to properly serve EFF the lawsuit's initiating papers.  Id.  The

17  lawsuit sought an order requiring EFF to immediately remove the article and restraining EFF from

18  publishing any content regarding GEMSA's intellectual property.  Id. ¶ 25.  The lawsuit

19  challenged nine specific statements in the article as misleading and negligent.  Id. ¶ 27.   For

20  example, GEMSA alleged that: (1) EFF's statement that the '400 patent is "stupid" was false, (2)

21  EFF's description of the patent did not "accurately depict the complexities" of the patent, and (3)

22  EFF "did not have reasonable grounds" for stating that the local rules for the district court for the

23  Eastern District of Texas, where GEMSA filed its cases regarding the patent, favor frequent patent

24  litigators like GEMSA.  Id.  GEMSA alleged that EFF's article harmed GEMSA's litigation

25  efforts in the United States, as demonstrated by cancelled mediations, and a court setting a

26  Markman hearing.  Id. ¶ 31-32.  According to GEMSA, such harm was part of a conspiracy by

27  EFF, Airbnb (a defendant in a GEMSA patent litigation case), and Mark Cuban (an EFF donor),

28  though GEMSA did not provide further details on this alleged conspiracy.  Id.  Although EFF

United States District Court
Northern District of California

3

never appeared in the Supreme Court of South Australia, on October 31, 2016, that court issued an injunction against EFF which ordered EFF to immediately remove the article and restrained EFF from publishing any content regarding GEMSA's intellectual property.  Id. ¶ 34.  EFF faces asset seizure, imprisonment, and other potential penalties for failing to comply with the Australian injunction.  Id.

GEMSA's counsel emailed EFF a second demand letter in January 2017 which included a copy of the injunction, and demanded that EFF remove the article, remove all references to the article across the internet, and pay $750,000 in damages.  Id.  ¶ 35.  Counsel for EFF responded in February 2017 declining to comply as the injunction was unenforceable because EFF's commentary consisted of "substantially true facts, protected opinion, and rhetorical hyperbole."  Id. ¶ 36.  EFF has not removed the article and does not intend to do so, but nonetheless feels chilled from speaking about GEMSA's intellectual property.  Id. ¶ 36-68.

EFF turned to this Court for declaratory relief from the injunction under the Securing the Protection of our Enduring and Established Constitutional Heritage Act (the "SPEECH Act"), 28 U.S.C. §§ 4101-4105 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  EFF alleges that declaratory relief is due because the Australian injunction violates EFF's free speech rights under the United States Constitution and under California law, as the article's statements are true, opinion, hyperbole, or otherwise protected by the First Amendment.  Id. ¶ 42.  Moreover, EFF alleges that the Australian court's exercise of jurisdiction did not comport with United States due process, and therefore also did not comply with the Hague Convention.  EFF seeks only a declaration (1) "that the Australian Injunction is repugnant to the United States Constitution and the law of California and the United States," and (2) "that the Australian Injunction cannot be enforced in the United States."  Id. at 19.

GEMSA has not appeared in this action.  ECF No. 14 at 10.  Accordingly, EFF seeks default judgment on its claims.  Id.  EFF argues that default judgment is due because the Australian injunction was a prior restraint on speech, which would not survive constitutional scrutiny in the United States under the SPEECH Act and the Declaratory Judgment Act.  Id. at 10. In its motion for default judgment, EFF also elaborates on this Court's jurisdiction over GEMSA.

1    EFF explains that this case closely resembles a case where the Ninth Circuit found personal

2    jurisdiction because defendants sent demand letters and served process against a California

3    company in California, but obtained a French court's order against that plaintiff.  Id. at 16 (citing

4    Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 2006)).

5            Magistrate Judge James, who was originally assigned this case, ordered EFF to provide

6    supplemental briefing on how the Court had personal jurisdiction over GEMSA under the

7    Supreme Court's test articulated in Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) and whether

8    GEMSA was properly served.  ECF No. 17.  In its supplemental brief, EFF explained that in

9    addition to the contacts with California alleged in the complaint, GEMSA retained counsel in

10   California to prosecute three unrelated infringement actions.  ECF No. 22 at 2 n.1.  EFF also

11   argued that GEMSA's successful effort to obtain the Australian injunction was a part of a "course

12   of conduct explicitly aimed at suppressing a Californian's speech about litigation involving

13   California companies such as Airbnb that is of interest to readers in the Northern District and

14   throughout California.  Id. at 3.  EFF explained that GEMSA was properly served because its

15   process server left the documents on the reception counter in compliance with Australian law, and

16   therefore in compliance with the Hague Convention.  Id. at 5-6.

17           Shortly thereafter, Judge James issued a Report and Recommendation ("R&R")

18   recommending that this Court deny the Motion for Default Judgment.  ECF No. 23.  Judge James

19   concluded that the Court had subject matter jurisdiction over the federal questions raised under the

20   Declaratory Judgment Act and the SPEECH Act.  Id. at 6.  Judge James also concluded that

21   GEMSA was properly served.  Id. at 12.  The R&R concluded, however, that the court lacked

22   personal jurisdiction because GEMSA did not direct any conduct towards California or any

23   resident of California other than the conduct involving EFF at issue in this case.  Id. at 8-9.  Judge

24   James also rejected EFF's argument that GEMSA reached out to this district because it is

25   prosecuting unrelated patent infringement cases in this district, as those cases were transferred to

26   this district over GEMSA's opposition.  Id. at 9-10.

27           EFF then filed a motion for a de novo determination of the R&R, which is the subject of

28   this order.  ECF No. 27.  EFF objects to the R&R's determination that this Court lacked specific

United States District Court
Northern District of California

5

1    personal jurisdiction over GEMSA.  Id. at 8.  EFF argues that the Report misinterpreted Walden,

2    and that another Supreme Court case, Calder v. Jones, 465 U.S. 783 (1984), compels a finding of

3    personal jurisdiction in this case.  Id. at 10-11.  EFF explains that GEMSA knowingly injured EFF

4    in California because GEMSA knew EFF operated in California when it sought its injunction

5    against EFF's operations.  Id. at 15.  EFF argues that under Calder's effects test, the effect of

6    GEMSA's speech suppressing injunction is felt in California, where EFF does its speaking and

7    where many of its readers reside.  Id. at 20.

8    **IV.    LEGAL STANDARDS**

9         When subject matter jurisdiction is based on a federal question, as is the case here, a

10   federal court applies the long-arm statute of the state in which it sits to determine whether there is

11   personal jurisdiction.  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d

12   1114, 1123 (9th Cir. 2002).  California's long-arm statute provides that personal jurisdiction

13   extends as far as federal due process allows.  Daimler AG v. Bauman, 134 S. Ct. 746, 753 (2014)

14   (applying California law).  Under this standard, specific personal jurisdiction exists where:

15            (1) the defendant has performed some act or consummated some transaction within
             the forum or otherwise purposefully availed himself of the privileges of conducting
16            activities in the forum, (2) the claim arises out of or results from the defendant's
             forum-related activities, and (3) the exercise of jurisdiction is reasonable.
17

18   Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (citation omitted).  "If the

19   plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the

20   defendant to 'present a compelling case' that the exercise of jurisdiction would not be

21   reasonable."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)

22   (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

23        To decide whether the first prong is met in tort cases, the Ninth Circuit applies the "effects

24   test" set forth in Calder v. Jones, which "is satisfied if (1) the defendant committed an intentional

25   act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the

26   defendant knew was likely to be suffered in the forum state."  Love v. Associated Newspapers,

27   Ltd., 611 F.3d 601, 609 (9th Cir. 2010); see also, 465 U.S. 783.[2]  The Ninth Circuit has held that a

28

---

[2] The "effects test" is sometimes referred to as the "purposeful direction" test.  The two terms may

United States District Court
Northern District of California

1    case brought under the First Amendment, asserting that a foreign court's order is unenforceable by

2    an American court, is likewise analyzed under the "effects test."  <u>Yahoo!</u>, 433 F.3d at 1206.

3          Under this test, courts determine whether "the defendant has directed his actions at the

4    forum state, even if those actions took place elsewhere."  <u>Picot v. Weston</u>, 780 F.3d 1206, 1212

5    (9th Cir. 2015).  "An intentional act is one denot[ing] an external manifestation of the actor's will

6    . . . not includ[ing] any of its results, even the most direct, immediate, and intended."  <u>Morrill v.</u>

7    <u>Scott Fin. Corp.</u>, 873 F.3d 1136, 1142 (9th Cir. 2017) (internal citations omitted).  "[R]andom,

8    fortuitous, or attenuated contacts are insufficient to create the requisite connection with the

9    forum."  <u>Id.</u>

10         The decision to grant or deny a plaintiff's motion for default judgment is soundly within

11   this Court's discretion.  <u>See</u> <u>Aldabe v. Adabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court

12   may evaluate the following factors in considering a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of
> plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
> the sum of money at stake in the action, (5) the possibility of a
> dispute concerning material facts, (6) whether the default was due to
> excusable neglect, and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

16   <u>NewGen, LLC v. Safe Cig, LLC</u>, 840 F.3d 606, 616 (9th Cir. 2016) (citing <u>Eitel v. McCool</u>, 782

17   F.2d 1470, 1471-72 (9th Cir. 1986) (the "<u>Eitel</u> factors")).  In assessing default judgment, the

18   factual allegations in the complaint are taken as true.  <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d

19   915, 916-17 (9th Cir. 1987).  As EFF seeks default judgment in the form of declaratory relief

20   stating that GEMSA's injunction is unenforceable under the SPEECH Act, EFF "bear[s] the

21   burden of establishing that the foreign judgment would not be enforceable."  28 U.S.C. § 4104

22   (a)(2).

27   be used interchangeably.  <u>See, e.g.</u> <u>Axiom Foods, Inc. v. Acerchem Int'l, Inc.</u>, No. 15-56450, 2017
     WL 4929835, at *3 (9th Cir. Nov. 1, 2017); <u>Morrill v. Scott Fin. Corp.</u>, 873 F.3d 1136, 1142 (9th

28   Cir. 2017); <u>Picot v. Weston</u>, 780 F.3d 1206, 1212 (9th Cir. 2015); <u>Schwarzenegger v. Fred Martin</u>
     <u>Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).

1

## V.    DISCUSSION

### A.    Whether the Court has jurisdiction over GEMSA

When, as here, entry of judgment is sought against a party who has failed to plead or otherwise defend the action, the Court has an affirmative duty to determine whether it has jurisdiction over the subject matter and the parties.  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). At the outset, the Court agrees with and adopts the portions of the well-reasoned R&R concluding that the Court has subject matter jurisdiction over the claims and that GEMSA was properly served.  ECF No. 23, at 6, 10-12.  Remaining at issue, however, is whether the Court has specific personal jurisdiction over GEMSA.[3]

As is relevant here, specific personal jurisdiction exists where: (1) the defendant purposefully availed itself, (2) the claim arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.  Pebble Beach, 453 F.3d at 1155.   The first prong is analyzed under the effects test which "is satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state."  Love, 611 F.3d at 609.

EFF alleges that this Court has specific personal jurisdiction over GEMSA under these standards because GEMSA: (1) emailed EFF a demand letter in August 2016 demanding that EFF take certain actions which would infringe on EFF's First Amendment rights in California; (2) obtained a court injunction that required EFF to carry out those acts in California; (3) engaged an agent to physically present EFF a copy of the injunction in California;  (4) mailed a second demand letter to California threatening to enforce the injunction and demanding that EFF remove the article, pay $750,000, and engage with California based internet companies to deindex the article;[4] and (5) carries out significant litigation activities in this district, including when its director entered California for a mediation and deposition regarding the same '400 patent at issue

---

[3] No party argues that the Court has general personal jurisdiction over GEMSA.

[4] According to EFF, "when an article has been 'deindexed,' any search that otherwise would have included the webpage in the list of results will no longer produce a list containing that webpage. Search engines generally permit users to submit 'removal requests' requesting the deindexing of particular webpages."  ECF No. 14 at 13 n.2.

United States District Court
Northern District of California

1   in this case.  Compl. ¶ 8, 19-34; ECF No. 27 at 15-16.

2       **1.**     **The applicability of Walden v. Fiore**

3       The Court first addresses EFF's contention that the R&R misapplies Walden in concluding

4   that the Court lacks personal jurisdiction over GEMSA.  ECF No. 27 at 11-12.

5       In Walden, the Supreme Court expressly reaffirmed the Calder effects test, which guides

6   this Court's analysis, but narrowed its application by holding that "the plaintiff cannot be the only

7   link between the defendant and the forum."  Walden, 134 S. Ct. at 1122.  The Court held that

8   while "the parties' relationships with each other [continue to] be significant in evaluating their ties

9   to the forum," Walden, 134 S. Ct. at 1123 (quotation omitted), "a defendant's relationship with a

10  plaintiff or third party, *standing alone*, is an insufficient basis for jurisdiction," id. (emphasis

11  added).  But Walden did not eliminate the plaintiff/defendant relationship from consideration.

12  Post-Walden cases in the Ninth Circuit and in this district have continued to consider contacts

13  between a plaintiff and a defendant, along with the defendant's other contacts with the forum, in

14  finding personal jurisdiction.  See RHUB Commc'ns, Inc. v. Karon, No. 16-CV-06669-BLF, 2017

15  WL 3382339, at *7 (N.D. Cal. Aug. 7, 2017) (concluding that because Walden directed the court

16  to focus on the defendant's contacts with the forum states itself, and not to limit its analysis to

17  contacts with the plaintiff, such a showing was made where defendant initiated contact with

18  employees in the forum state); Bittorrent, Inc. v. Bittorrent Mktg. GMBH, No. 12-CV-02525-BLF,

19  2014 WL 5773197, at *5-8 (N.D. Cal. Nov. 5, 2014) (finding personal jurisdiction where a

20  trademark infringement scheme hurt plaintiff's reputation, and therefore injured the California-

21  based plaintiff in California despite the cybersquatting occurring in Germany); see also Picot, 780

22  F.3d at 1215 (finding the effects test was not met because, as in Walden, the injury was "not

23  tethered to California in any meaningful way" because the conduct occurred fully out of state).

24      The Walden court found no personal jurisdiction because there was no conduct in the

25  forum state, and the only connection between the defendant and that forum was the harm the

26  plaintiffs felt, which could have been felt in any state.  Walden, 134 S. Ct. at 1125-26.  Plaintiffs

27  filed suit in Nevada in response to the defendant seizing their gambling winnings as they

28  attempted to board a plane from Georgia to Nevada.  Id. at 1119.  The conduct in question

United States District Court
Northern District of California

1    occurred in Georgia, not in Nevada.  The defendants did nothing to reach out to the plaintiffs in

2    Nevada – the forum state – and the plaintiffs maintained residences in both Nevada and California.

3    Id.  The Court found that the harm at issue, the deprivation of money, was not "tethered to Nevada

4    in any meaningful way" because it would have been felt in any state the plaintiffs chose to be in

5    (and the plaintiffs in fact maintained residences in multiple states).  Id. at 1125.  In short, Walden

6    stands for the proposition that a defendant's relationship to the forum must rely on something

7    other than merely "random, fortuitous, or attenuated contacts."  Id. at 1123 (internal citation

8    omitted).

9        Here, by contrast, there are two instances of relevant conduct that are neither random nor

10   attenuated in their relationship to the forum:  (1) an injunction granted in an Australian court, and

11   (2) a threat to enforce that injunction in California should the current motion be denied.  Unlike

12   the seizure at issue in Walden, the effects of these actions cannot be felt with equal force just

13   anywhere.  Indeed, California may properly be said to be the epicenter of the parties' dispute.  EFF

14   is a California nonprofit whose employees, and a significant amount of donors and readers, are

15   located in the state.  ECF No. 29-2.  EFF uttered the challenged speech here.  If the injunction is

16   enforced, the actions to take the speech down will occur here.  Likewise, the harm to EFF will also

17   occur here.  Cf. id.; see also Bristol-Myers Squibb Co. v. Superior Court of California, San

18   Francisco Cty., 137 S. Ct. 1773, 1782 (2017) (rejecting specific jurisdiction where the plaintiffs

19   were not California residents, did not claim to have suffered harm in California, and all the

20   conduct giving rise to claims occurred elsewhere).  Walden is relevant to the court's

21   determination, but it does not defeat the exercise of specific personal jurisdiction.  Both the

22   conduct at issue, and the effect of that conduct, are substantially more tethered to the forum than in

23   Walden.

24              **2.    GEMSA purposefully directed its conduct toward California**

25       The Calder effects test requires the Court first to conduct a purposeful direction analysis.

26   "Purposeful direction 'requires that the defendant . . .  (1) committed an intentional act, (2)

27   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

28   suffered in the forum state.'"  Morrill, 873 F.3d at 1142 (quoting Schwarzenegger, 374 F.3d at

United States District Court
Northern District of California

802.  With regard to foreign acts, the effects test is satisfied when the conduct is both aimed at and has effect in the forum state, even if some or all of the challenged conduct occurred outside of the country.  Pebble Beach, 453 F.3d at 1156 (citing Calder, 465 U.S. 783).  "[T]he 'brunt' of the harm need not be suffered in the forum state.  If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state."  Yahoo!, 433 F.3d at 1207.  The Court addresses each of the elements of the effects test in turn.

### a.    GEMSA committed an intentional act

For conduct to be "intentional," the defendant must act with the "intent to perform an actual, physical act in the real world."  Schwarzenegger, 374 F.3d at 806.  In conjunction with obtaining the Australian injunction by bringing a complaint and actively ligating that complaint in the Supreme Court of South Australia, GEMSA sent EFF a demand letter via email, as well as a demand letter and copy of the injunction via paper mail.[5]  GEMSA initiating a lawsuit and sending correspondence specifically addressed to EFF surely constitutes "intentional acts."  See Axiom Foods, Inc. v. Acerchem Int'l, Inc., No. 15-56450, 2017 WL 4929835, at *3 (9th Cir. Nov. 1, 2017) (finding that putting a logo on a newsletter and sending it to a list of recipients was an intentional act).  There is no question these acts were purposefully done and thus, the first prong is satisfied.

### b.    GEMSA's conduct was expressly aimed at California

The second prong requires EFF to demonstrate that GEMSA "expressly aimed" the aforementioned intentional acts at California.  Schwarzenegger, 374 F.3d at 806.  GEMSA engaged in several activities expressly aimed at the forum state by: (1) sending two demand letters to EFF in California, (2) obtaining an Australian injunction requiring EFF to take significant steps

---

[5] In August 2016, GEMSA emailed EFF requesting a public apology for and retraction of the article, as well as demanding an "unconditional agreement to payment of all the damages [the] article may cause as compensation."  Compl. ¶¶ 8, 20-21.  In January 2017, GEMSA contacted EFF via paper mail with a copy of the Australian injunction and a letter stating that EFF must remove the article and any reference links as well as pay approximately $750,000 in alleged damages.  Id. ¶¶ 8, 35.

1    in California, and (3) serving EFF with the injunction at its office in California.[6]

2           The first and third of these facts have little significance on their own.  "A cease and desist

3    letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the

4    letter."  Yahoo!, 433 F.3d at 1208 (citation omitted) (emphasis added).  Similarly, the Ninth

5    Circuit does "not regard the service of documents in connection with a suit brought in a foreign

6    court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign

7    litigant in a United States court."  Id. at 1209.  "If we were to hold that such service were a

8    sufficient basis for jurisdiction, we would be providing a forum-choice tool by which any United

9    States resident sued in a foreign country and served in the United States could bring suit in the

10   United States, regardless of any other basis for jurisdiction."  Id.  However, the Court can consider

11   both GEMSA's sending of a demand letter and the service of process in California along with

12   other factors in determining whether jurisdiction is appropriate.  Id. at 1208-09.

13          GEMSA's Australian injunction is more significant to the Court's analysis.   The

14   injunction calls for a California nonprofit to carry out activities in California, including removing

15   the allegedly offending article, along with references to the article found on "any and all other

16   websites."  ECF No. 27 at 10.  The injunction is similar in effect to the foreign order at issue in

17   Yahoo!, where the Ninth Circuit found that a foreign order which required "that significant acts

18   . . . be performed in California" satisfied the "expressly aimed" analysis.  Yahoo!, 433 F.3d at

19   1209.  The Ninth Circuit held that "to the extent that any financial penalty might be imposed

20   pursuant to the French court's orders, the impact of that penalty would be felt by Yahoo! at its

21   corporate headquarters in California."  Id.  Similarly here, EFF's principal place of business is in

22   California, and therefore its only means of compliance would require performance of significant

23   acts akin to those required in Yahoo!.  Moreover, many of the search engines EFF would have to

24   _____

25   [6] EFF also points to GEMSA's active engagement in patent litigation against various technology
     companies in this district, including physically entering California for several days on several
26   occasions, as a basis for jurisdiction.  ECF No. 27 at 15-16.  Because those cases are unrelated to
     the present one and EFF's claim does not "arise[] out of or result[] from [those] forum-related
27   activities," Pebble Beach, 453 F.3d at 1155, however, the Court does not consider them in
     applying the effects test.  Separately, the fact that GEMSA regularly appears in this district is
28   relevant to the question of whether the exercise of jurisdiction is reasonable, a question the Court
     addresses below.

engage in order to deindex its articles are also located in California.  ECF No. 14 at 13 n.2.

In fact, all three of these actions – the demand letter, service of process, and the Australian injunction – are similar to the actions the Ninth Circuit found sufficient to satisfy the effects test in Yahoo!.  In Yahoo!, the defendants sent a cease and desist letter and served pleadings from a lawsuit in France to Yahoo!'s offices in California.  Id. at 1208-09.  The defendants also obtained court orders from the French court requiring Yahoo!'s offices in California to disable access to the offending sites.  Id. at 1209-11.  Although the defendants took no action to enforce the orders in the United States, the defendants did not make a binding promise not to do so, and so – as with the injunction here – the threat of legal action remained.  Id. at 1210-11.

For the aforementioned reasons, the Court finds that the second prong is satisfied.

### c.   GEMSA's conduct caused harm that it knew was likely to be suffered in California

As for the third prong of the effects test, it is clear that any harm or effect caused by GEMSA's conduct would be suffered by EFF in California.  An organization "can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business.'"  RHUB, 2017 WL 3382339, at *7 (citing Dole Food Co. v. Watts, 303 F.3d 1104, 1113 (9th Cir. 2002)).  A court in this district determined that when a defendant sent correspondence regarding "a project explicitly located in California" and made threats to "specifically go after" the California plaintiff's customers, some of whom were in California, sufficient conduct occurred in California for the purposes of personal jurisdiction under the Calder test.  Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC., No. 15-CV-04538-MEJ, 2016 WL 6699295, at *2-4 (N.D. Cal. Sept. 30, 2016), adopted by, No. 3:15-CV-04538-JD, 2016 WL 6679548 (N.D. Cal. Nov. 14, 2016).[7]

---

[7] Personal jurisdiction is typically raised by defendants, and First Amendment claims are typically asserted as defenses.  See, e.g., Calder, 465 U.S. 783; New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964) (newspaper's First Amendment defense was proper because "debate on public issues should be uninhibited, robust, and wide-open"); see also Milkovich v. Lorain Journal Co., 497 U.S. 1, 13 (1990) (the privilege of "fair comment" is an affirmative defense to an action for defamation meant).  Accordingly, the Court has not located, nor has EFF pointed to, any cases where a plaintiff argues for personal jurisdiction in an affirmative First Amendment case.  However, analogies can be drawn from finding personal jurisdiction in copyright infringement cases alleging harm to a company's reputation and profits.  See Brayton Purcell LLP v. Recordon

United States District Court
Northern District of California

United States District Court
Northern District of California

1    EFF's principal place of business is here in California and EFF has suffered harm here.

2    ECF No. 29-2 (EFF's office, which it owns, is in San Francisco and it carries out its operations

3    and banking here).  The injunction seeks to remove the existing article and prevent EFF from

4    writing about GEMSA's patents in the future, limiting EFF from fulfilling its purpose as an

5    advocate for U.S. patent reform.  All of this conduct, were EFF to comply, would be carried out at

6    EFF's offices in California.  Compl. ¶ 8, 19-34; ECF No. 27 at 15-16; ECF No. 29-2 (EFF's

7    services and operations are in California).  Moreover, EFF currently fears the threat of the

8    injunction's enforcement in California.  Compl. ¶ 38.  Even if GEMSA did not pursue

9    enforcement of the Australian injunction, "the very existence of th[e] order[] may be thought to

10   cast a shadow on the legality" of EFF's speech.  Yahoo! 433 at 1211.

11   Additionally, the effects of the injunction include limiting the information available to

12   EFF's California readers who "have a right to receive speech on matters of public concern."  ECF

13   No. 27 at 21.  "More than one-fifth of EFF's active donors, constituting over 8,500 people are

14   Californians" and "over 48,000 Californian's subscribe to EFF's newsletter."  ECF No. 27 at 20.

15   The Court has recognized that "the right to receive ideas follows ineluctably from the sender's

16   First Amendment right" and is therefore "an inherent corollary of the rights of free speech and

17   press that are explicitly guaranteed by the Constitution."  Bd. of Educ., Island Trees Union Free

18   Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 867 (1982) (citation omitted); see also Martin v. Struthers,

19   319 U.S. 141, 143 (1943) ("The right of freedom of speech and press . . . embraces the right to

20   distribute literature, and necessarily protects the right to receive it." (citation omitted)).  Even if

21   EFF was to move its principal place of business, the potential harm created by defendant's

22   conduct would still affect California residents.  See Mountz, 2016 WL 6699295, at *4; see also

23

24   & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010) (holding that "it was foreseeable that Brayton
     Purcell would be harmed by infringement of its copyright, including harm to its business
25   reputation and goodwill" and that "some of this harm would occur in the Forum, where Brayton
     Purcell was known to reside"); CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1079
26   (9th Cir. 2011).  An analogy can also be drawn to cybersquatting where courts "routinely" find
     specific personal jurisdiction where the defendant targeted a trademark owner and its readers in
27   the forum. Bittorrent, Inc. v. Bittorrent Mktg. GMBH, No. 12-CV-02525-BLF, 2014 WL
     5773197, at *5–6 (N.D. Cal. Nov. 5, 2014) (citing 4A Charles Alan Wright & Arthur R. Miller,
28   Federal Practice & Procedure Civil § 1073.1 (Personal Jurisdiction and the Internet) (3d ed.
     2002)).

1   Picot, 780 F.3d at 1215 (finding that where a defendant's injury was an inability to access funds, a

2   jurisdictionally relevant effect was not shown because the "injury is entirely personal to him and

3   would follow him wherever he might choose to live or travel.").[8]

4        Several factors weigh in favor of finding that GEMSA's conduct was "expressly aimed" at

5   California:  (1) the significant actions that the injunction requires to be taken in California, (2) the

6   location of EFF's principal place of business in California, (3) the chilling of EFF's free speech in

7   California, and (4) the violation of the readers' First Amendment rights to receive speech on

8   matters of public concern.  Thus, the third prong of the effects test is satisfied and the court

9   concludes that GEMSA has purposefully directed its conduct towards California.

10                    **3.    EFF's claims arise out of GEMSA's California-related activities**

11        Finding that the first prong of the specific jurisdiction test, the effects test, is met, the Court

12   moves on to assess whether the second and third prongs are also satisfied.  As to the second prong,

13   to properly exercise specific jurisdiction, "the contacts constituting purposeful availment must be

14   the ones that give rise to the current suit."  Campanelli v. Image First Unif. Rental Serv., Inc., No.

15   15-CV-04456-PJH, 2016 WL 4729173, at *4 (N.D. Cal. Sept. 12, 2016) (quoting Bancroft &

16   Masters, Inc., 223 F.3d at 1088).  This element is met if "but for" the contacts between the

17   defendant and the forum state, the cause of action would not have arisen.  Id. (citing Ziegler v.

18   Indian River County, 64 F.3d 470, 474 (9th Cir. 1995)).  Here, this standard is clearly met because

19   the SPEECH Act would not be triggered, and this lawsuit would not be before this Court, were it

20   not for GEMSA's contacts directed at California.  In other words, the contacts constituting

21   purposeful direction under the effects test, namely GEMSA's injunction and threatening demands,

22   directly give rise to EFF's SPEECH Act and Declaratory Judgment Act claims.

23                    **4.    The exercise of personal jurisdiction is reasonable**

24        Finally, for the third prong, GEMSA has not responded to EFF's motion and therefore it

25   has not met its burden of "present[ing] a compelling case" that the exercise of personal jurisdiction

26

27   _____

28   [8] The Court does not hold that a court in *any* state with EFF readers would have personal
    jurisdiction over GEMSA.  Rather, the Court holds that the harm felt upon the significant
    proportion of EFF readers who are in California is a jurisdictionally relevant fact.

United States District Court
Northern District of California

1    would be unreasonable.  See Schwarzenegger, 374 F.3d at 802.  In addition, GEMSA is engaged

2    in several active patent infringement cases in this district.  ECF No. 27 at 9.  GEMSA retained

3    local counsel in connection with the transferred cases.  ECF No. 29-3 at 4.  Moreover, GEMSA's

4    principle, Schumann Rafizadeh, physically attended mediations and depositions in San Francisco

5    in connection with this litigation.  Id.; see also ECF No. 27 at 9.  A defendant's "ongoing

6    participation" in litigation in the forum "undercuts any argument that subjecting it to suit in

7    [another case] would fail to 'comport with fair play and substantial justice.'"  In re Optical Disk

8    Drive Antitrust Litig., No. 10-MD-02143-RS, 2015 WL 1926635, at *2 (N.D. Cal. Apr. 28, 2015)

9    (quoting Burger King, 471 U.S. at 477).

10        For all these reasons, the Court concludes that the exercise of personal jurisdiction is

11   reasonable.

12                                          *   *   *

13        In sum, the Court concludes that all three prongs are met, and the Court has specific

14   personal jurisdiction over GEMSA.  Because the Court also has subject matter jurisdiction over

15   the case and service of process was proper, see supra, the Court concludes that it has jurisdiction

16   and accordingly considers the merits of EFF's motion for default judgment.

17        **B.    Whether Default Judgment should be entered**

18        The Ninth Circuit has stated that default judgment is a "two-step process," which consists

19   of: (1) seeking the clerk's entry of default, and (2) filing a motion for entry of default judgment.

20   Eitel, 782 F.2d at 1471.  EFF requested and received entry of default by the clerk as required by

21   Rule 55(b)(1) of the Federal Rules of Civil Procedure.  ECF No. 35, 36.  EFF has also filed a

22   motion for the entry of default judgment.  ECF No. 14.  The Court evaluates the following Eitel

23   factors in considering whether to grant EFF's motion for default judgment:

24            (1) the possibility of prejudice to the plaintiff; (2) the merits of
             plaintiff's substantive claim; (3) the sufficiency of the complaint; (4)
25            the sum of money at stake in the action; (5) the possibility of a
             dispute concerning material facts; (6) whether the default was due to
26            excusable neglect; and (7) the strong policy underlying the Federal
             Rules of Civil Procedure favoring decisions on the merits.
27
     NewGen, 840 F.3d at 616 (citing Eitel, 782 F.2d at 1472).

28

United States District Court
Northern District of California

1

### 1.      Prejudice to Plaintiff

The first factor favors granting default judgment.  As EFF alleges, the nonprofit is suffering, and will continue to suffer, irreparable injury to its First Amendment right to speak and advocate absent this Court's intervention.  Compl. ¶ 38.  EFF feels its speech is chilled by the Australian injunction.  Id.  Specifically, EFF alleges that it feels constrained from speaking about any of GEMSA's patents, as the injunction sweeps that broadly.  Id. ¶ 39.  EFF's fears are understandable.  The injunction itself threatens that if EFF does not remove the article, cease disseminating it, and restrain from publishing any content regarding GEMSA's intellectual property, EFF's "assets may be seized" and its "directors and other officers may be liable to be imprisoned."  Id. ¶ 34.  EFF appears to be violating the Australian injunction because it has not removed the Article and does not intend to do so.  Id. ¶ 36;  See Yahoo!, 433 F.3d at 1215-18 (holding a case was not ripe for review because a company was voluntarily in compliance with a foreign judgment challenged as repugnant to the laws of the U.S.).  Moreover, after entry of the Australian injunction, GEMSA sent a threatening demand letter demanding that EFF pay $750,000 in damages, and alleging EFF is in contempt of court.  Id. ¶ 35.

In sum, EFF convincingly argues that it would be prejudiced absent the entry of default judgment, as it would be forced to operate under a restriction on, or shadow over, its First Amendment rights. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  The first Eitel factor therefore weighs in favor of default judgment.

### 2.      Sufficiency of the complaint and likelihood of success on the merits

The second and third Eitel factors, in combination, ask whether EFF's complaint is sufficient, and whether this complaint, along with other judicially noticed facts or documents augmented to the record, show EFF is likely to succeed on the merits.  Because the second and third factors are so closely related, the Court examines them together.  See Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1055, 1060 (N.D. Cal. 2010).

#### a.      Likelihood of prevailing under the SPEECH Act

The SPEECH Act provides protections for U.S. persons against "libel tourism," which is

"a form of international forum-shopping in which a plaintiff chooses to file a defamation claim in

a foreign jurisdiction with more favorable substantive law." <u>Trout Point Lodge, Ltd. v. Handshoe</u>,

729 F.3d 481, 487 (5th Cir. 2013); <u>see also</u> Securing the Protection of our Enduring and

Established Constitutional Heritage Act (SPEECH Act), Pub. L. No. 111-223, § 2(2), 124 Stat.

2380, 2380 (2010) (codified at 28 U.S.C. § 4101).  The statute provides that U.S. courts "shall not

recognize or enforce a foreign judgment for defamation" unless the court determines that the law

applied by the foreign jurisdiction is at least as speech-protective as the First Amendment and the

law of the forum state, or that the defendant "would have been found liable for defamation by a

domestic court applying" U.S. law.  28 U.S.C. § 4102(a); <u>see also</u> <u>Trout Point Lodge</u>, 729 F.3d at

488.  Such a judgment also cannot be enforced where the foreign court's exercise of jurisdiction

did not comport with U.S. due process requirements.  28 U.S.C. § 4102(b)(1).  A U.S. person

subject to a foreign defamation judgment that does not comply with any one of these three

provisions may bring a declaratory judgment action in federal court and obtain a declaration that

the foreign order is "repugnant to the Constitution or laws of the United States."  <u>Id.</u> § 4104(a)(1),

(2).

        The Australian injunction is a qualifying order under the SPEECH Act because it is a final

judgment on a defamation claim.  First, the injunction entered by the Supreme Court of South

Australia is a "foreign judgment for defamation" subject to the SPEECH Act.  The SPEECH Act

defines defamation to include any cause of action "alleging that forms of speech are false, have

caused damage to reputation or emotional distress, have presented any person in a false light, or

have resulted in criticism, dishonor, or condemnation of any person."  <u>Id.</u> § 4101(1).  Under this

broad definition, the Australian injunction accusing EFF of making false, misleading, deceptive,

and negligent statements, and causing emotional harm certainly qualifies as a foreign judgment for

defamation.  ECF No. 14 at 17.  Moreover, the reasoning of <u>Hustler Magazine, Inc. v. Falwell</u>,

which held that plaintiffs cannot avoid First Amendment restrictions on defamation actions by

pleading claims for similar torts such as intentional infliction of emotional distress, also supports

finding that the Australian injunction qualifies as a foreign judgment for defamation.  485 U.S. 46,

56 (1988).

Second, the injunction is a final judgment, as required by the SPEECH Act.  Although no final judgment has been issued in the case in the Supreme Court of South Australia,[9] the injunction itself is a final reviewable order under U.S. First Amendment law.  The Supreme Court has held that an injunction prohibiting a march was reviewable as a collateral order under 28 U.S.C. § 1257.  Nat'l Socialist Party of Am. v. Vill. of Skokie, 432 U.S. 43, 43-44 (1977).  Accordingly, the injunction is a qualifying order under the SPEECH Act.

As to the merits of the SPEECH Act claim, EFF argues that it is entitled to declaratory relief from the injunction because (1) the law applied by the Supreme Court of South Australia did not "provide[] as least as much protection for freedom of speech and press" as the United States and California would, and (2) EFF would not be found liable for defamation in California.  28 U.S.C. § 4102(a)(1); see also Trout Point Lodge, 729 F.3d at 488 (describing the difference between the prongs as that "one [is] focused on the law applied by the foreign forum and one [is]focused on the facts the parties presented in the foreign proceeding").  Finally, EFF argues that it would prevail under the SPEECH Act because that Australian Court lacked jurisdiction over EFF as GEMSA failed to properly serve process.  28 U.S.C. § 4102(b).  The court addresses each potential SPEECH Act violation in turn.

### (1)   Whether the law applied in Australia provided as much protection of speech as would U.S. or California law

The Court first asks whether the law applied in Australia provided as much protection for speech as would United States or California law.  "The statute does not require that *all* of a foreign forum's law be coextensive with the First Amendment, but rather only the law applied "in that case'" was less protective.  Trout Point Lodge, 729 F.3d at 496 n.9 (emphasis in original) (quoting 28 U.S.C. § 4102(a)(1)(A)).  There are several reasons why U.S. and California First Amendment law would provide more First Amendment protections than EFF received in the Australian action.

First, the injunction would not withstand U.S. First Amendment scrutiny because it is a prior restraint.  "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications

---

[9] See Judgments, Courts Admin. Auth. of S. Australia, http://www.courts.sa.gov.au/Judgments /Pages/default.aspx (last visited Nov. 8, 2017).

are to occur." <u>Alexander v. United States</u>, 509 U.S. 544, 550 (1993) (quotation and emphasis omitted).  "Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." <u>Id.</u>  Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 559 (1976).  There is a heavy presumption against prior restraints, and they are subject to a strict scrutiny standard of review.  <u>In re Dan Farr Prods.</u>, 874 F.3d 590, 593 n.2 (9th Cir. 2017).  Applying this standard, the Australian court's injunction can only be upheld if GEMSA establishes that "(1) the activity restrained poses either a clear and present danger or a serious and imminent threat to a protected competing interest, (2) the [injunction] is narrowly drawn, and (3) less restrictive alternatives are not available." <u>Levine v. U.S. Dist. Court for Cent. Dist. of California</u>, 764 F.2d 590, 595 (9th Cir. 1985) (citations omitted); <u>see also</u> <u>Columbia Broad. Sys., Inc. v. U.S. Dist. Ct.</u>, 729 F.2d 1174, 1183 (9th Cir. 1984) ("[U]nder our constitutional system prior restraints, if permissible at all, are permissible only in the most extraordinary of circumstances.").  The same is true under California law.  <u>Gilbert v. Nat'l Enquirer, Inc.</u>, 43 Cal. App. 4th 1135, 1144 (1996).[10]

The Australian injunction cannot strict scrutiny.  It is unclear what, if any, governmental interest is served by the injunction, and any such interest could be served by a less broadly sweeping injunction.  ECF No. 14 at 13 (restraining all speech about GEMSA's intellectual property).  It is thus clear that EFF would have been subject to law much more protective of its speech in California than it was in Australia.

EFF also argues that the Australian injunction would have been subject to an anti-SLAPP motion in California.  ECF No. 14 at 23.  "California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that

---

[10] The California Supreme Court has recognized a narrow exception to this doctrine, holding that a court may enjoin repetition or republication of statements "determined at trial to be defamatory." <u>Balboa Island Vill. Inn, Inc. v. Lemen</u>, 40 Cal. 4th 1141, 1150 (2007).  Where "there has been no trial and no determination on the merits" that there is actionable defamation, however, "the court cannot prohibit [a party] from making statements characterized only as 'false and defamatory.'" <u>Evans v. Evans</u>, 162 Cal. App. 4th 1157, 1169 (2008).

'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'"  Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013) (quoting Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003)).  The anti-SLAPP plaintiff – i.e., the defendant in the underlying proceeding – must show that the claim against it arose from an act in furtherance of the plaintiff's free speech rights.  Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001).  Qualifying acts include statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body," and statements "made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e).

EFF's article was "made in connection with an issue under consideration or review by a legislative . . . body" as the article expressly stated that it sought to spur patent reform currently pending before Congress.  ECF No. 1-5.  Moreover, EFF's article calling attention to aggressive patent litigation is a matter of public interest discussed in a public forum.  See Barrett v. Rosenthal, 40 Cal. 4th 33, 65 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."); Damon v. Ocean Hills Journalism Club, 85 Cal. App. 4th 468, 479 (4th Dist. 2000) ("[N]ot only governmental matters, but also private conduct that impacts a broad segment of society" are issues of "public interest[.]"); see also Makaeff, 715 F.3d at 262 (explaining that consumer complaints about Trump University were a matter of public interest).

In the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff, here GEMSA, "to establish a reasonable probability that it will prevail on its claim," a standard under which "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, no reasonable jury could find for the plaintiff." Makaeff, 715 F.3d at 261.  This Court concludes infra that EFF would likely not be found liable for defamation under California law, in assessing the second potential violation of the SPEECH Act.  Accordingly, the Court also concludes that GEMSA cannot establish a probability of success on its defamation claim for the purposes of anti-SLAPP, and that EFF has adequately shown that it would receive more protection under California's anti-SLAPP law than the Australian injunction

21

proceeding provided.

In sum, the U.S. and California would provide substantially more First Amendment protection by prohibiting prior restraints on speech in all but the most extreme circumstances, and providing additional procedural protections in the form of California's anti-SLAPP law.  EFF demonstrated that GEMSA violated subsection 28 U.S.C. § 4102(a)(1)(A) of the SPEECH Act.

### (2)    Whether EFF would be found liable for defamation under U.S. and California law

EFF argues that it also prevails on the second prong of the SPEECH Act, as EFF would not be found liable for defamation under California and U.S. law.  ECF No. 14 at 24.  GEMSA brought a defamation claim on the basis of nine statements in EFF's article:

| Alleged Defamatory Statement | Alleged Reason Statement is Defamatory |
|---|---|
| (1) GEMSA's patent is "Stupid." | GEMSA's patent is not "in fact" stupid. |
| (2) GEMSA's patent has claimed the idea of using virtual cabinets to graphically represent data storage. | The statement "does not accurately depict the complexities involved with the patent." |
| (3) GEMSA is suing anyone who runs a website. | GEMSA does not "in fact" sue anyone who runs a website. |
| (4) GEMSA is a classic patent troll. | GEMSA is not "in fact" a classic patent troll. |
| (5) GEMSA once offered a product that allows users to run multiple operating systems. | The statement "does not accurately depict the complexities" of the product. |
| (6) Flash VOS did not invent partitions. | EFF did not have reasonable grounds for making the statement. |
| (7) GEMSA's patent claims require very specific structures. | EFF did not have reasonable grounds for making the statement. |
| (8) GEMSA seems to think that anyone with a website that links to hosted content infringes its patent. | EFF did not have reasonable grounds for making the statement. |
| (9) GEMSA issued patent claims in the Eastern District of Texas because local rules favor patent trolls. | EFF did not have reasonable grounds for making the statement. |

1   ECF No. 1-14 at 6-8.[11]

2         None of these claims could give rise to defamation under U.S. and California law.  First,

3   statements 2 and 5-9 are not alleged to be false.  ECF No. 1-14 at 7-8; Air Wisconsin Airlines

4   Corp. v. Hoeper, 134 S. Ct. 852, 863 (2014) (a statement must be materially false to be actionable

5   as defamation).  As to these statements, GEMSA alleges only that EFF did not have reasonable

6   grounds for making the statements or that the statements "did not accurately depict complexities."

7   ECF No. 1-14 at 6-7.

8         With regard to Statement 6, that Flash VOS did not invent various technologies, GEMSA

9   appears to be making a claim for trade libel.  "Trade libel is defined as an intentional

10  disparagement of the quality of property, which results in pecuniary damage to plaintiff."  Nichols

11  v. Great Am. Ins. Companies, 169 Cal. App. 3d 766, 773 (1985).  "A cause of action for trade libel

12  thus requires (at a minimum): (1) a publication; (2) which induces others not to deal with plaintiff;

13  and (3) special damages."  Id.  To allege special damages, a plaintiff must "identify[] customers

14  or transactions lost as a result of disparagement, in order to state a prima facie case."  Isuzu

15  Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1043 (C.D. Cal. 1998).  Trade

16  libel also requires proof of actual malice.  Melaleuca, Inc. v. Clark, 66 Cal. App. 4th 1344, 1350

17  (1998).  "A statement is made with actual malice when the publisher either knows the statement is

18  false or has some serious subjective doubt about the truth of the statement."  Id.

19        GEMSA does not allege either special damages.  In fact, its complaint says nothing about

20  the harm it allegedly suffered.  Neither does it allege actual malice.  Instead, it alleges only

21  negligence by EFF in its Australian complaint.  See, e.g., ECF No. 1-14 at 7-8 (alleging that EFF

22  "did not have reasonable grounds" for making the challenged statements).

23        Statements 1 and 3-4 are statements of opinion, including opinions which constitute

24  rhetorical hyperbole and imaginative expression.  Milkovich v. Lorain Journal Co., 497 U.S. 1, 20

25  (1990); ECF No. 1-14 at 6-7.  The broad context of the article is clearly opinion, as it is a part of

27  [11] As EFF points out, GEMSA failed to accurately reproduce some of the alleged defamatory
    statements from EFF's article.  ECF No. 14 at 11-12.  For example, the article actually stated that
28  GEMSA "is suing *just about* anyone who runs a website," while GEMSA alleged that EFF stated
    "GEMSA is suing anyone who runs a website."  Id. at 12 (emphasis added).

United States District Court
Northern District of California

EFF's humorous and pointed "Stupid Patent of the Month" series, and the article includes

aggressive language including language referring to GEMSA's legal activities as "abusive troll

litigation." Compl. ¶ 10, 16-18; see Underwager v. Channel 9 Australia, 69 F.3d 361, 366-67 (9th

Cir. 1995) (first examining context to determine whether statement was hyperbole). As for

statement 1, EFF's reference to GEMSA's patent as "stupid" is clearly hyperbole. Ferlauto v.

Hamsher, 74 Cal. App. 4th 1394, 1403 (2d Dist. 1999) (characterizations of lawsuit and motion as

"stupid," "laughed at," "a joke," "spurious," and "frivolous," were nonactionable hyperbole).

Statement 3, that GEMSA "is suing just about anyone who runs a website" is expressive

exaggeration. Cochran v. NYP Holdings, Inc., 210 F.3d 1036, 1038 (9th Cir. 2000) (concluding

the same when a newspaper wrote that Johnnie Cochran would "say or do just about anything to

win"). Finally, as for statement 4, that GEMSA "seems to be a classic patent troll," this is

cautiously phrased as an expression of opinion, including by use of the phrase "seems to be."

Gregory v. McDonnell Douglas Corp., 17 Cal. 3d 596, 603 (1976) (explaining that a statement's

use of the phrase "apparent" demonstrates non-actionable opinion).

    In short, not one of the alleged defamatory statements would be defamatory under

California law. EFF would not have been found liable for defamation under U.S. and California

law. EFF demonstrated that GEMSA violated subsection 28 U.S.C. § 4102(a)(1)(B) of the

SPEECH Act.

                          **(3)     Whether the Australian court had jurisdiction over EFF**

    As a separate reason for relief under the SPEECH Act, EFF argues that the Supreme Court

of South Australia did not have jurisdiction over it. 28 U.S.C. § 4102(b)(1). EFF was never

properly served, thus the Australian court did not have jurisdiction over EFF. Service in the

Australian litigation was governed by the Hague Convention, to which both the United States and

Australia are signatories. DFSB Kollective Co. v. Bourne, 2012 WL 2376209, at *3 (N.D. Cal.

June 22, 2012). The Hague Convention provides for service via a "central authority" in the

receiving nation, which in the United States is the Department of Justice. Volkswagenwerk

Aktiengesellschaft v. Schlunk, 486 U.S. 694, 704-705 (1988). According to EFF, while GEMSA

served the final entered injunction via the DOJ, it did not serve the case initiating documents, a

United States District Court
Northern District of California

necessary step for proper service and jurisdiction.  Compl. ¶¶ 23, 34.  The Court concludes that the Australian court lacked jurisdiction over EFF, and that this constitutes a separate and independent reason that EFF would prevail under the SPEECH Act.

### b.     Likelihood of prevailing under the Declaratory Judgment Act

EFF also seeks relief under the Declaratory Judgment Act.  28 U.S.C. § 2201(a).  The Court concludes that EFF is likely to prevail under the SPEECH Act, and that this Act would provide the full relief that EFF requests, so the Court need not assess EFF's likelihood of prevailing on its Declaratory Judgment Act claim.  Compl. at 19; ECF No. 14 at 19 (explaining that EFF is entitled to the same relief under the Declaratory Judgment Act); see also 28 U.S.C. § 4104 (a)(1) (explaining that the Declaratory Judgment Act is merely the mechanism by which a person subject to a judgment which violates the SPEECH Act initiates their SPEECH Act suit).

In sum, the second and third Eitel factors favor granting default judgment as EFF has shown a likelihood of prevailing.

### 3.     Sum of money at stake

The next Eitel factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct.  Eitel, 782 F.2d at 1471.  Here EFF seeks no money, and asks this Court only to declare its constitutional rights.  Compl. at 19.  Accordingly, the fourth Eitel factor favors the entry of default judgment.

### 4.     Possibility of dispute concerning material facts

The fifth Eitel factor examines the likelihood of a dispute between the parties regarding the material facts surrounding the case.  Eitel, 782 F.2d at 1471–72.  In assessing this factor, courts examine whether, if defendants appeared, they would be able to dispute material facts.  Here, the default judgment is largely a question of law, and setting aside the declarations filed by EFF augmenting the record, any facts at issue are based entirely on publicly filed legal documents.  Craigslist, 694 F. Supp. 2d at 1061.  It is unlikely GEMSA would dispute the facts contained in the declarations submitted by EFF, which objectively describe GEMSA's litigation activities in California and the nature of EFF's presence here.  ECF No. 29.  Accordingly, the fifth Eitel factor favors granting default judgment.

United States District Court
Northern District of California

### 5.      Possibility of excusable neglect

The sixth <u>Eitel</u> factor is whether Defendant's failure to respond to Plaintiff's allegations was the result of excusable neglect.  <u>Eitel</u>, 782 F.2d at 1472.  GEMSA was properly served in this litigation.  ECF No. 23 at 10-11.  Moreover, GEMSA is currently appearing in and actively litigating others cases in this district.  See <u>supra</u>; <u>see also</u> <u>Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.</u>, 3:17-cv-02178-WHA (N.D. Cal. 2017); <u>Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com, Inc.</u>, 3:17-cv-02177-WHA (N.D. Cal. 2017).  Although GEMSA initially brought these cases in the district court for the Eastern District of Texas, the cases were transferred here, where venue was proper including because the defendant companies' principal places of business are in California.  <u>See</u>, <u>e.g.</u>, 3:17-cv-02178-WHA, ECF No. 50.  Counsel for GEMSA recently withdrew in at least one of the actions, but has been replaced, and GEMSA appears to be actively litigating both cases including by attending hearings in a courtroom down the hall from this Court. <u>See</u> 3:17-cv-02178-WHA, ECF No. 80, 88, 96.  The Ninth Circuit held that a party showed excusable neglect where failure to answer resulted from an understanding that final settlement had been achieved.  <u>Eitel</u>, 782 F.2d at 1472.  Nothing close to that is present here, where GEMSA has demonstrated that it knows how to sue EFF in Australian court, how to litigate against others in this court, including regarding the patent at issue, has been properly served, and failed to enter any appearance, including to contest service or jurisdiction.  This factor also favors granting default judgment.

### 6.      Policy for deciding on the merits

The final <u>Eitel</u> factor is that generally, default judgments are disfavored, and a case should be decided on the merits whenever possible.  <u>See Pena v. Seguros La Comercial, S.A.</u>, 770 F.2d 811, 814 (9th Cir. 1985).  However, where a defendant's failure to appear "makes a decision on the merits impracticable, if not impossible," entry of default judgment is nonetheless warranted. <u>Craigslist</u>, 694 F. Supp. 2d at 1061 (citation omitted).

### 7.      Summary of <u>Eitel</u> factors and remedies

Each factor weighs in favor of granting default judgment.  The only relief that EFF seeks is a declaration (1) that the Australian Injunction is repugnant to the United States Constitution and

the laws of California and the Unites States; and (2) that the Australian injunction cannot be recognized or enforced in the United States.  ECF No. 14-2 at 10.  The Court finds that EFF is entitled to this declaratory relief and accordingly grants default judgment.

### CONCLUSION

For the foregoing reasons, the Court declines to adopt the Report and Recommendation. The Court concludes that it has jurisdiction and the Court grants EFF's motion for default judgment.

**IT IS SO ORDERED.**

Dated: November 17, 2017

_____
JON S. TIGAR
United States District Judge